# UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

## No. 14-1816

DALE A. KAYMARK, individually and on behalf of other similarly situated
current and former homeowners in Pennsylvania,
Appellants

v.

BANK OF AMERICA, N.A. and UDREN LAW OFFICES, P.C.,

Appellees

---

Appeal from the Western District of Pennsylvania's Order Entered on March 31,
2014 at Civil Action Number 2:13-cv-00419-CB-CRE

---

## APPENDIX (VOLUME II)

---

MICHAEL P. MALAKOFF, P.C.
Michael P. Malakoff, Esquire
Pennsylvania Attorney I.D. #11048
Jonathan R. Burns, Esquire
Pennsylvania Attorney I.D. #315206
Suite 200, the Frick Building
Pittsburgh, PA 15219
Telephone: (412) 281-4217
Facsimile:  (412) 281-3262
malakoff@mpmalakoff.com
jburns@mpmalakoff.com

*Attorneys for Appellants, Dale A. Kaymark, individually and on behalf of other
similarly situated former and current homeowners in Pennsylvania*

# TABLE OF CONTENTS

Docket Entries..................................................................................................8a

Amended Complaint dated May 20, 2013 ......................................................17a

    Exhibit A: BOA's August 1, 2011 Act 91 Notice ............................................32a

    Exhibit B: BOA's September 13, 2012 Foreclosure Complaint.........................41a

    Exhibit C: December 26, 2006 Mortgage ..................................................60a

Udren's Motion to Dismiss the Amended Complaint dated June 3, 2013..................78a

    Exhibit A: December 26, 2006 Note.......................................................80a

    Exhibit B: FannieMae's Allowable Attorney & Trustee Foreclosure Fees.........84a

    Exhibit C: Glover v. Udren, No. GD-11-018015 (C.P.Allegheny Jun 13, 2012)
        Opinion .........................................................................................87a

    Exhibit D to Motion to Dismiss initial Complaint: 41 Pa.B. 6684 .......................104a

BOA's Motion to Dismiss the Amended Complaint dated June 3, 2013 ...................107a

      Exhibit A: Foreclosure Action Docket ........................................................110a

Magistrate Reed Eddy's Report and Recommendation dated December 11, 2013 ....114a

Mr. Kaymark's Objections to Report and Recommendation dated January 21, 2014 ...140a

Udren's Response to Mr. Kaymark's Objections dated February 24, 2014 ...............187a

    Exhibit A: BOA's September 13, 2012 Foreclosure Complaint.........................210a

    Exhibit B: Mr. Kaymark's Answer and Affirmative Defenses to Foreclosure
        Complaint........................................................................................230a

    Exhibit C: FannieMae's Allowable Attorney & Trustee Foreclosure Fees.........238a

BOA's Response to Mr. Kaymark's Objections dated February 24, 2014.................241a

Mr. Kaymark's Reply in Response to BOA's Response dated March 4, 2014 ...........261a

Mr. Kaymark's Reply in Response to Udren's Response dated March 4, 2014 .........268a

1

ACS,APPEAL,CLOSED,DJOPT,MAG,MJL

# U.S. District Court
## Western District of Pennsylvania (Pittsburgh)
## CIVIL DOCKET FOR CASE #: 2:13-cv-00419-CB-CRE

KAYMARK v. BANK OF AMERICA, N.A. et al          Date Filed: 03/21/2013
Assigned to: Judge Cathy Bissoon                Date Terminated: 03/31/2014
Referred to: Magistrate Judge Cynthia Reed Eddy Jury Demand: Plaintiff
Case in other court: Third Circuit, 14-01816    Nature of Suit: 190 Contract: Other
                     Court of Common Pleas of Allegheny   Jurisdiction: Federal Question
                     County, GD 13-002739
Cause: 28:1441 Petition For Removal--Other Contract

**Plaintiff**

**DALE KAYMARK**                    represented by   **Emily S. Gomez**
*individually and on behalf of other*               Law Office of Emily Gomez, LLC
*similarly situated current and former*             239 Fourth Avenue
*homeowners in Pennsylvania*                        Suite 1602
                                                    Pittsburgh, PA 15222
                                                    412-378-5854
                                                    Fax: 412-357-1564
                                                    Email: esg@egomezlaw.com
                                                    *TERMINATED: 04/12/2013*
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

                                                    **Michael P. Malakoff**
                                                    Michael P. Malakoff, PC
                                                    437 Grant Street
                                                    Suite 200, The Frick Building
                                                    Pittsburgh, PA 15219
                                                    (412) 281-4217
                                                    Fax: (412) 281-3262
                                                    Email: malakoff@mpmalakoff.com
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**BANK OF AMERICA, N.A.**           represented by   **Jonathan J. Bart**
*and*                                               Wilentz Goldman & Spitzer, P.A.
                                                    Two Penn Center Plaza
                                                    Suite 910
                                                    Philadelphia, PA 19102

8a                                                                              8a

(215) 636-4466
Fax: 215-636-3999
Email: jbart@wilentz.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Thomas L. Allen**
Reed Smith
Reed Smith Centre
225 Fifth Avenue, Suite 1200
Pittsburgh, PA 15222
(412) 288-3131
Fax: (412) 288-3063
Email: tallen@reedsmith.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew J. Soven**
REED SMITH LLP
THREE LOGAN SQUARE
1717 ARCH STREET
SUITE 3100
PHILADELPHIA, PA 19103
(215) 851-8288
Fax: (215) 851-1420
Email: asoven@reedsmith.com
*ATTORNEY TO BE NOTICED*

**Marc A. Goldich**
REED SMITH LLP
THREE LOGAN SQUARE
1717 ARCH STREET
SUITE 3100
PHILADELPHIA, PA 19103
(215) 241-5476
Fax: (215) 851-1420
Email: mgoldich@reedsmith.com
*ATTORNEY TO BE NOTICED*

**Nellie E. Hestin**
Reed Smith LLP
Reed Smith Centre
225 Fifth Avenue
Pittsburgh, PA 15222
412-288-3627
Fax: 412-288-3063
Email: nhestin@reedsmith.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**UDREN LAW OFFICES, P.C.**          represented by  **Jonathan J. Bart**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 03/21/2013 | 1 | NOTICE OF REMOVAL from Court of Common Pleas of Allegheny County, case number GD 13-002739 with Jury Demand (Filing fee $350, receipt number 0315-2721300), filed by BANK OF AMERICA, N.A.. (Attachments: # 1 Civil Cover Sheet, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D) (jsp) (Entered: 03/22/2013) |
| 03/22/2013 | 2 | Disclosure Statement identifying Bank of America Corporation as corporate parent or other affiliate, by BANK OF AMERICA, N.A.. (Allen, Thomas) (Entered: 03/22/2013) |
| 03/22/2013 | 3 | NOTICE of Appearance by Nellie E. Hestin on behalf of BANK OF AMERICA, N.A.. (Hestin, Nellie) (Entered: 03/22/2013) |
| 03/25/2013 | 4 | Stipulation for Extension of Time to Answer by BANK OF AMERICA, N.A., UDREN LAW OFFICES, PL.C., DALE KAYMARK. Answer due from BANK OF AMERICA, N.A., UDREN LAW OFFICES, P.C. on 4/10/2013 (Allen, Thomas) Modified as filer did not complete entry on 3/26/2013. (jsp) (Entered: 03/25/2013) |
| 03/27/2013 | 5 | ORDER: Rule 26 Meeting to be conducted on or before 4/23/2013. Willingness to proceed before Magistrate Judge due by 4/23/2013. A Case Management Conference has been scheduled for 5/9/2013 at 10:00 AM before Magistrate Judge Cynthia Reed Eddy. Signed by Magistrate Judge Cynthia Reed Eddy on 3/27/2013. (jlh ) (Entered: 03/27/2013) |
| 03/28/2013 | 6 | Disclosure Statement identifying None as corporate parent or other affiliate, by UDREN LAW OFFICES, P.C.. (Bart, Jonathan) (Entered: 03/28/2013) |
| 03/28/2013 | 7 | MOTION ("Notice") to Withdraw as Attorney by DALE KAYMARK. (Gomez, Emily) Modified on 4/1/2013. (jsp) (Entered: 03/28/2013) |
| 04/01/2013 | | ORDER entered 7 Motion to Withdraw as Attorney. Signed by Magistrate Judge Cynthia Reed Eddy on April 1, 2013. Text-only entry; no PDF document will issue. This text-only entry constitutes the Order of the Court or Notice on the matter. (Eddy, J.) (Entered: 04/01/2013) |
| 04/04/2013 | 8 | DISTRICT JUDGE OPTION by BANK OF AMERICA, N.A. to have this case randomly assigned to a U.S. District Judge. (Allen, Thomas) (Entered: 04/04/2013) |
| 04/05/2013 | 9 | MOTION for attorney Andrew J. Soven to Appear Pro Hac Vice, (Filing fee $40, Receipt # 0315-2740175) by BANK OF AMERICA, N.A.. (Attachments: # 1 Exhibit A, # 2 Proposed Order) (Allen, Thomas) (Entered: 04/05/2013) |

| 04/05/2013 | 10 | MOTION for attorney Marc A. Goldich to Appear Pro Hac Vice, (Filing fee $40, Receipt # 0315-2740189) by BANK OF AMERICA, N.A. (Attachments: # 1 Exhibit A, # 2 Proposed Order) (Allen, Thomas) (Entered: 04/05/2013) |
| 04/10/2013 | 11 | Errata re 9 Motion to Appear Pro Hac Vice *for Andrew J. Soven* by BANK OF AMERICA, N.A.. Reason for Correction: Certificate of good standing now attached as an exhibit. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Proposed Order) (Allen, Thomas) (Entered: 04/10/2013) |
| 04/10/2013 | 12 | Errata re 10 Motion to Appear Pro Hac Vice *for Marc A. Goldich* by BANK OF AMERICA, N.A.. Reason for Correction: Certificate of good standing now attached as an exhibit. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Proposed Order) (Allen, Thomas) (Entered: 04/10/2013) |
| 04/10/2013 | 13 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by UDREN LAW OFFICES, P.C.. (Attachments: # 1 Proposed Order) (Bart, Jonathan) (Entered: 04/10/2013) |
| 04/10/2013 | 14 | BRIEF in Support re 13 Motion to Dismiss for Failure to State a Claim filed by UDREN LAW OFFICES, P.C.. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit) (Bart, Jonathan) (Entered: 04/10/2013) |
| 04/10/2013 | 15 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by BANK OF AMERICA, N.A.. (Attachments: # 1 Proposed Order) (Allen, Thomas) (Entered: 04/10/2013) |
| 04/10/2013 | 16 | BRIEF in Support re 15 Motion to Dismiss for Failure to State a Claim filed by BANK OF AMERICA, N.A.. (Allen, Thomas) (Entered: 04/10/2013) |
| 04/12/2013 | 17 | ORDER granting 9 Errata 11 Motion for Andrew J. Soven to Appear Pro Hac Vice. Signed by Magistrate Judge Cynthia Reed Eddy on 4/12/2013. (jlh ) (Entered: 04/12/2013) |
| 04/12/2013 | 18 | ORDER granting 10 Errata 12 Motion for Marc A. Goldich to Appear Pro Hac Vice. Signed by Magistrate Judge Cynthia Reed Eddy on 4/12/2013. (jlh ) (Entered: 04/12/2013) |
| 04/12/2013 |  | ORDER re 13 Motion to Dismiss for Failure to State a Claim filed by UDREN LAW OFFICES, P.C., and 15 Motion to Dismiss for Failure to State a Claim filed by BANK OF AMERICA, N.A. Plaintiff's Response to the Motions shall be due by 5/10/2013. Signed by Magistrate Judge Cynthia Reed Eddy on 4/12/2013. Text-only entry; no PDF document will issue. This text-only entry constitutes the Order of the Court or Notice on the matter. (jlh ) (Entered: 04/12/2013) |
| 04/12/2013 |  | ORDER : The 5/9/2013 Case Management Conference has been canceled until further Order of the Court. Signed by Magistrate Judge Cynthia Reed Eddy on 4/12/2013. Text-only entry; no PDF document will issue. This text-only entry constitutes the Order of the Court or Notice on the matter. (jlh ) (Entered: 04/12/2013) |
| 04/12/2013 | 19 | ORDER granting 7 Motion for Emily S. Gomez to Withdraw as Attorney. Signed by Magistrate Judge Cynthia Reed Eddy on 4/12/2013. (jlh) Modified on 4/18/2013. (tt) (Entered: 04/12/2013) |

| 04/16/2013 | | ORDER: re 5 Scheduling Order. IT IS HEREBY ORDERED that all the deadlines ordered on 3/27/2013 at docket number 5 are hereby stayed pending further order of the Court. Signed by Magistrate Judge Cynthia Reed Eddy on 4/16/2013. Text-only entry; no PDF document will issue. This text-only entry constitutes the Order of the Court or Notice on the matter. (jlh) (Entered: 04/16/2013) |
| --- | --- | --- |
| 04/16/2013 | 20 | CONSENT to Trial/Jurisdiction by US Magistrate Judge by DALE KAYMARK. (Malakoff, Michael) (Entered: 04/16/2013) |
| 05/03/2013 | 21 | MOTION for Extension of Time to File *Oppositions to Defendants' Motions to Dismiss* by DALE KAYMARK. (Malakoff, Michael) Text modified on 5/6/2013. (ept) (Entered: 05/03/2013) |
| 05/06/2013 | | CLERK'S OFFICE QUALITY CONTROL MESSAGE re 21 Motion for Extension of Time to File. ERROR: Proposed Order was not attached. CORRECTION: Attorney is advised to file a proposed order by using the Proposed Order event and linking it to the document in question. This message is for informational purposes only. (ept) (Entered: 05/06/2013) |
| 05/06/2013 | 22 | Proposed Order re 21 Motion for Extension of Time to File by DALE KAYMARK. (Malakoff, Michael) (Entered: 05/06/2013) |
| 05/06/2013 | | ORDER granting 21 Motion for Extension of Time to File Response to Defendants' Motions to Dismiss. The Response is due by 5/28/2013. Replies are due by 6/11/2013. Signed by Magistrate Judge Cynthia Reed Eddy on 05/06/2013. Text-only entry; no PDF document will issue. This text-only entry constitutes the Order of the Court or Notice on the matter. (Eddy, J.) (Entered: 05/06/2013) |
| 05/20/2013 | 23 | First AMENDED COMPLAINT against BANK OF AMERICA, N.A., UDREN LAW OFFICES, P.C., filed by DALE KAYMARK. (Attachments: # 1 Exhibit A - Act 91 Notice, # 2 Exhibit B - Forelcourse Complaint, # 3 Exhibit C - Mortgage) (Malakoff, Michael) (Entered: 05/20/2013) |
| 05/21/2013 | | ORDER denying as moot, in light of Amended Complaint 23 filed by Plaintiff, Motions to Dismiss for Failure to State a Claim ( 13 , 15 ) filed on behalf of Defendants Undren Law Offices and Bank of America, N.A., respectively. These Motions may be refiled insofar as they pertain to claims made in the Amended Complaint. Signed by Magistrate Judge Eddy on May 21, 2013. (ssn) (Entered: 05/21/2013) |
| 06/03/2013 | 24 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *(Amended Complaint)* by UDREN LAW OFFICES, P.C.. (Attachments: # 1 Proposed Order) (Bart, Jonathan) (Entered: 06/03/2013) |
| 06/03/2013 | 25 | BRIEF in Support re 24 Motion to Dismiss for Failure to State a Claim *(Amended Complaint)* filed by UDREN LAW OFFICES, P.C.. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit) (Bart, Jonathan) (Entered: 06/03/2013) |
| 06/03/2013 | 26 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by BANK OF AMERICA, N.A.. (Attachments: # 1 Proposed Order) (Allen, Thomas) (Entered: 06/03/2013) |

| 06/03/2013 | 27 | BRIEF in Support re 26 Motion to Dismiss for Failure to State a Claim filed by BANK OF AMERICA, N.A.. (Attachments: # 1 Exhibit A, # 2 Exhibit B) (Allen, Thomas) (Entered: 06/03/2013) |
| 06/10/2013 | 28 | MOTION for Extension of Time to File *Oppositions to Defendants' Motions to Dismiss* by DALE KAYMARK. (Attachments: # 1 Proposed Order) (Malakoff, Michael) (Entered: 06/10/2013) |
| 06/11/2013 | | ORDER granting 28 Motion for Extension of Time to File Response to Defendants' Motions to Dismiss. The Response is due by 7/8/2013. Replies, if any, are due by 7/22/2013. Signed by Magistrate Judge Cynthia Reed Eddy on 06/11/2013. Text-only entry; no PDF document will issue. This text-only entry constitutes the Order of the Court or Notice on the matter. (Eddy, J.) (Entered: 06/11/2013) |
| 06/14/2013 | | Magistrate Judge Cynthia Reed Eddy no longer presiding in case. (gv) (Entered: 06/14/2013) |
| 06/14/2013 | | Judge Cathy Bissoon is presiding and Magistrate Judge Cynthia Reed Eddy is referred. (gv) (Entered: 06/14/2013) |
| 07/05/2013 | 29 | Second MOTION for Extension of Time to File *Oppositions to Defendants'* 24 , 26 *Motions to Dismiss* by DALE KAYMARK. Motion(s) referred to Cynthia Reed Eddy. (Attachment: # 1 Proposed Order) (Malakoff, Michael) Modified on 7/8/2013. (jsP) (Entered: 07/05/2013) |
| 07/05/2013 | 30 | AMENDED MOTION for Extension of Time by DALE KAYMARK. Amendment to 29 Second MOTION for Extension of Time to File Oppositions to Defendants' 24], 26 Motions to Dismiss. (Attachments: # 1 Exhibit, # 2 Proposed Order) (Malakoff, Michael) Modified on 7/8/2013. (jsp) (Entered: 07/05/2013) |
| 07/08/2013 | | ORDER granting 29 Motion for Extension of Time to File Response to Motions to Dismiss. The Response is due by 7/12/2013. Replies are due by 7/26/2013. Signed by Magistrate Judge Cynthia Reed Eddy on 7/8/2013. Text-only entry; no PDF document will issue. This text-only entry constitutes the Order of the Court or Notice on the matter. (Eddy, J.) (Entered: 07/08/2013) |
| 07/12/2013 | 31 | RESPONSE to Motion re 24 MOTION TO DISMISS (Amended Complaint) FOR FAILURE TO STATE A CLAIM, 26 MOTION TO DISMISS (Amended Complaint) FOR FAILURE TO STATE A CLAIM filed by DALE KAYMARK. (Malakoff, Michael) Modified on 7/15/2013. (jsp) (Entered: 07/12/2013) |
| 07/24/2013 | 32 | MOTION to Substitute a Section of 31 Response to Motion *Section on Debt Validation (pp. 35-37) by DALE KAYMARK. Motion(s) referred to Cynthia Reed Eddy. (Attachments: # 1 Exhibit Substituted Argument, # 2 Proposed Order) (Malakoff, Michael) Modified on 7/25/2013. (jsp) (Entered: 07/24/2013)* |
| 07/25/2013 | 33 | ORDER granting 32 MOTION to Substitute a Section of 31 Response to Motion Section on Debt Validation (pp. 35-37). Signed by Magistrate Judge Cynthia Reed Eddy on 7/25/2013. (jlh ) (Entered: 07/25/2013) |
| 07/26/2013 | 34 | |

| | | REPLY BRIEF in further support re [24](#) Motion to Dismiss for Failure to State a Claim, filed by UDREN LAW OFFICES, P.C.. (Bart, Jonathan) Modified on 7/29/2013. (jsp) (Entered: 07/26/2013) |
|---|---|---|
| 07/26/2013 | [35](#) | REPLY BRIEF in further support re [26](#) Motion to Dismiss for Failure to State a Claim, filed by BANK OF AMERICA, N.A.. (Allen, Thomas) Modified on 7/29/2013. (jsp) (Entered: 07/26/2013) |
| 09/20/2013 | [36](#) | NOTICE *of Supplemental Authority* by DALE KAYMARK (Malakoff, Michael) (Entered: 09/20/2013) |
| 10/09/2013 | [37](#) | NOTICE *of Supplemental Authority* by DALE KAYMARK (Malakoff, Michael) (Entered: 10/09/2013) |
| 10/11/2013 | [38](#) | RESPONSE to [36](#) Notice of Supplemental Authority, [37](#) Notice of Supplemental Authority filed by UDREN LAW OFFICES, P.C. (Bart, Jonathan) Modified on 10/15/2013. (jsp) (Entered: 10/11/2013) |
| 10/22/2013 | [39](#) | NOTICE *of Supplemental Authority* by DALE KAYMARK (Malakoff, Michael) (Entered: 10/22/2013) |
| 10/25/2013 | [40](#) | RESPONSE *to Notice of Supplemental Authority* to [39](#) Notice, filed by BANK OF AMERICA, N.A.. (Allen, Thomas) (Entered: 10/25/2013) |
| 12/11/2013 | [41](#) | REPORT AND RECOMMENDATION re [24](#) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by UDREN LAW OFFICES, P.C., and [26](#) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by BANK OF AMERICA, N.A. For the reasons set forth, it is recommended that the Motions to Dismiss filed by Udren and BOA (ECF Nos. [24](#) , [26](#) ) be granted, and the Amended Complaint be dismissed, with prejudice. Objections to R&R due by 12/30/2013. Responses to Objections are due on or before January 17, 2013. Signed by Magistrate Judge Cynthia Reed Eddy on 12/11/2013. (MJL) (Entered: 12/11/2013) |
| 12/20/2013 | [42](#) | Consent MOTION to Extend Time to file Objections to the Magistrate's Report and Recommendation by DALE KAYMARK. Motion(s) referred to Cynthia Reed Eddy. (Attachments: # [1](#) Proposed Order) (Malakoff, Michael) (Entered: 12/20/2013) |
| 12/23/2013 | | ORDER granting [42](#) Motion to Extend Time, Plaintiffs Objections to the Magistrates Report and Recommendation are due on/before January 15, 2014. Defendants Responses to Plaintiffs Objections are due on/before January 31, 2014. Signed by Judge Cathy Bissoon on 12/23/13. Text-only entry; no PDF document will issue. This text-only entry constitutes the Order of the Court or Notice on the matter. (jhi) (Entered: 12/23/2013) |
| 01/13/2014 | [43](#) | Second MOTION to Extend Time to file Objections to the Magistrate's Report and Recommendation by DALE KAYMARK. Motion(s) referred to Cynthia Reed Eddy. (Attachments: # [1](#) Proposed Order) (Malakoff, Michael) (Entered: 01/13/2014) |
| 01/14/2014 | | ORDER granting [43](#) Motion to Extend Time to File Objections. Objections to R&R due by 1/21/2014. Absent extraordinary circumstances, no further extensions will be granted. Signed by Judge Cathy Bissoon on 1/14/2014. Text- |

| | | only entry; no PDF document will issue. This text-only entry constitutes the Order of the Court or Notice on the matter. (acs) (Entered: 01/14/2014) |
|---|---|---|
| 01/21/2014 | 44 | OBJECTIONS to 41 Report and Recommendation, by DALE KAYMARK. (Malakoff, Michael) (Entered: 01/21/2014) |
| 01/27/2014 | 45 | Unopposed MOTION for Extension of Time to File Response/Reply as to 44 Objections by BANK OF AMERICA, N.A.. Motion(s) referred to Cynthia Reed Eddy. (Attachments: # 1 Proposed Order) (Allen, Thomas) (Entered: 01/27/2014) |
| 01/27/2014 | | ORDER granting 45 Motion for Extension of Time to File Response/Reply. Response(s) to Objections due by 2/18/2014. Signed by Judge Cathy Bissoon on 1/27/2014. Text-only entry; no PDF document will issue. This text-only entry constitutes the Order of the Court or Notice on the matter. (acs) (Entered: 01/27/2014) |
| 01/29/2014 | 46 | NOTICE of Supplemental Authority by DALE KAYMARK (Malakoff, Michael) Error: Title of document is incorrect. Document removed from public view. Modified on 1/31/2014. (jsp) (Entered: 01/29/2014) |
| 01/31/2014 | | CLERK'S OFFICE QUALITY CONTROL MESSAGE re 46 Notice. ERROR: Title of document is incorrect. Document appears to be a draft. CORRECTION: Document removed from public view. Attorney advised to promptly file correct document using the Errata event. Filer should link the Errata to Document 46 . This message is for informational purposes only. (jsp) (Entered: 01/31/2014) |
| 01/31/2014 | 47 | Errata re 46 Notice of Supplemental Authority by DALE KAYMARK. Reason for Correction: Title of Document is Incorrect. (Malakoff, Michael) Modified on 1/31/2014. (jsp) (Entered: 01/31/2014) |
| 02/10/2014 | 48 | NOTICE *of Supplemental Authority* by DALE KAYMARK (Malakoff, Michael) (Entered: 02/10/2014) |
| 02/11/2014 | 49 | Consent MOTION for Extension of Time to File Response/Reply as to 41 REPORT AND RECOMMENDATION re 24 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *(Amended Complaint)* filed by UDREN LAW OFFICES, P.C., 26 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by BANK OF AMERICA, N.A.. by UDREN LAW OFFICES, P.C.. Motion(s) referred to Cynthia Reed Eddy. (Attachments: # 1 Proposed Order) (Bart, Jonathan) (Entered: 02/11/2014) |
| 02/12/2014 | | ORDER granting 49 Motion for Extension of Time to File Response. Response to Objections due by 2/24/2014. Signed by Judge Cathy Bissoon on 2/12/2014. Text-only entry; no PDF document will issue. This text-only entry constitutes the Order of the Court or Notice on the matter. (acs) (Entered: 02/12/2014) |
| 02/24/2014 | 50 | RESPONSE to 44 Objections, filed by UDREN LAW OFFICES, P.C.. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit) (Bart, Jonathan) (Entered: 02/24/2014) |
| 02/24/2014 | 51 | RESPONSE to 44 Objections, filed by BANK OF AMERICA, N.A.. (Allen, Thomas) (Entered: 02/24/2014) |

| 02/25/2014 | 52 | Unopposed MOTION for Leave to File Replies in support of 44 Objections by DALE KAYMARK. Motion(s) referred to Cynthia Reed Eddy. (Attachment: # 1 Proposed Order) (Malakoff, Michael) Modified on 2/26/2014. (jsp) (Entered: 02/25/2014) |
| 02/26/2014 | | ORDER granting 52 Motion for Leave to File Reply. Plaintiff's replies are due by 3/4/2014. Each reply shall be no more than five (5) pages in length. Signed by Judge Cathy Bissoon on 2/26/2014. Text-only entry; no PDF document will issue. This text-only entry constitutes the Order of the Court or Notice on the matter. (acs) (Entered: 02/26/2014) |
| 03/04/2014 | 53 | REPLY in support re 44 Objection (Opposition to BOA's Response), filed by DALE KAYMARK. (Malakoff, Michael) Modified on 3/6/2014. (jsp) (Entered: 03/04/2014) |
| 03/04/2014 | 54 | REPLY in Support of 44 Objections (Opposition to Udren's Response) filed by DALE KAYMARK. (Malakoff, Michael) Modified on 3/6/2014. (jsp) (Entered: 03/04/2014) |
| 03/31/2014 | 55 | ORDER adopting Report and Recommendation 41 ; granting 24 Motion to Dismiss for Failure to State a Claim; granting 26 Motion to Dismiss for Failure to State a Claim. Signed by Judge Cathy Bissoon on 3/31/2014. (acs) (Entered: 03/31/2014) |
| 03/31/2014 | 56 | JUDGMENT in favor of Defendants and against Plaintiff. Signed by Judge Cathy Bissoon on 3/31/20014. (acs) (Entered: 03/31/2014) |
| 04/03/2014 | 57 | NOTICE OF APPEAL as to 55 Order on Report and Recommendations, Order on Motion to Dismiss for Failure to State a Claim, by DALE KAYMARK. Filing fee $505, receipt number 0315-3148862. Motion for IFP N/A. Certificate of Appealability N/A. Court Reporter(s): N/A. The Clerk's Office hereby certifies the record and the docket sheet available through ECF to be the certified list in lieu of the record and/or the certified copy of the docket entries. The Transcript Purchase Order form will NOT be mailed to the parties. The form is available on the Court's internet site. (Malakoff, Michael) (Entered: 04/03/2014) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 05/08/2014 12:33:30 | | |
| **PACER Login:** | md0074 | **Client Code:** | Kaymark |
| **Description:** | Docket Report | **Search Criteria:** | 2:13-cv-00419-CB-CRE |
| **Billable Pages:** | 7 | **Cost:** | 0.70 |

## UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DALE A. KAYMARK, individually and on behalf of other similarly situated current and former homeowners in Pennsylvania, | Civil Action #2:13-cv-00419-CRE |
| Plaintiffs, | |
| v. | |
| BANK OF AMERICA, N.A. and UDREN LAW OFFICES, P.C. | |
| Defendants. | |

## AMENDED COMPLAINT

Dale Kaymark ("Mr. Kaymark") brings this class action pursuant to the Fair Credit Extension Uniformity Act ("FCEUA"), 73 P.S. §2270.1, *et seq*., the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692, *et seq.*, the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. §201-1, *et seq.*, and for breach of contract on behalf of himself and all others similarly situated, and makes this his Amended Class Action Complaint ("Amended Complaint") against Bank of America, N.A. ("BOA") and Udren Law Offices, P.C. ("Udren") ( collectively "Defendants").  Mr. Kaymark alleges as follows.

## I.   THE PARTIES

1.  Plaintiff, Dale Kaymark, is a natural person residing at 108 Economy Grade Road, Coraopolis, Pennsylvania.  He is a consumer as defined by §1692a(3) of the FDCPA.  Mr. Kaymark brings this action on his own behalf and on behalf of the putative class defined herein.

2.  Defendant Bank of America, N.A., is a national bank with its principal place of business at 450 American Way, Simi Valley, California.  BOA is the holder of Mr. Kaymark's Mortgage.

3.   Defendant, Udren Law Offices, P.C., is a professional corporation with a law office located at 123 South Broad Street, Suite 2080, Philadelphia, Pennsylvania.   Udren is a debt collector as defined by the FDCPA, 15 U.S.C. §1692a(6).

**II.   FACTUAL ALLEGATIONS**

*A.   Several Years After Refinancing His Home, Mr. Kaymark Falls on Hard Times*

4.   In December 2006, Mr. Kaymark refinanced his home, located at 108 Economy Grade Road, Coraopolis Pennsylvania (the "home"), to consolidate his finances and pay off a few debts.   To this end, he executed a Note for $245,600.00.   In consideration for the funds to refinance, Mr. Kaymark granted a Mortgage to lender Bank of America, N.A.

5.   In June 2011, after suffering a steep drop in income due to lower customer demand for his truck driving services, Mr. Kaymark was unable to maintain his monthly mortgage payments.

6.   Despite his best efforts to attract more business, Mr. Kaymark has since been unable to replace his lost income and catch-up on his arrearages.

*B.   BOA Sends Mr. Kaymark a Defective Act 91 Notice Containing False and Misleading Information*

7.   On or about August 1, 2011, BOA sent Mr. Kaymark a document that purported to be an Act 91 Notice.   See Exhibit A, attached hereto.

8.   Under the terms of the Housing Finance Agency Law ("Act 91"), 35 P.S. §1680.403c, mortgage holders considering foreclosure are required to send homeowners a notice meeting specific statutory requirements as a prerequisite to initiating any legal action.

9.   These statutory notification requirements include, *inter alia*, that the homeowner receive an accurate, itemized breakdown of the total amount past due as of the date of the notice; that the homeowner be informed that (s)he is entitled to thirty-three (33) days to have a face-to-face

meeting with a consumer credit counseling agency; and that the homeowner be made aware (s)he can apply for financial assistance under the state-funded Homeowner's Emergency Mortgage Assistance Program ("HEMAP").

10. The Act 91 Notice that BOA sent Mr. Kaymark failed to satisfy the Act 91 requirements in two important respects. First, BOA's Notice misrepresented the outstanding amount due and owing. A true Act 91 Notice must provide an accurate default amount due **as of the date of mailing**, to enable the homeowner to identify the default or delinquency.

11. As of the date of mailing, Mr. Kaymark was two months in arrears on his Mortgage payments. BOA's Notice, however, attempted to collect three months' worth of payments. In a clever bid to conceal the attempt to collect a month not in arrears, BOA indicated an amount due and owing of $4,599.98 for July 2011, in contrast to an amount due and owing of $2,306.94 for June 2011. See Exhibit A. This attempt to collect an amount not due and owing violated several provisions of the FCEUA, 73 P.S. §2270, *et seq*., which broadly prohibits unfair or deceptive debt collection acts or practices by creditors.

12. Second, BOA's Notice misrepresented the amount of time Mr. Kaymark had to meet with a consumer credit counseling agency. BOA informed Mr. Kaymark that he had thirty (30) days to meet with a consumer credit counseling agency, opposed to the thirty-three (33) days he was entitled to by the statute. See Act 91, §1680.403c.

13. To add insult to injury, BOA also threatened to initiate legal action if Mr. Kaymark did not pay the inaccurate amount claimed to be owed within thirty (30) days. See Exhibit A. As noted *supra*, no legal action may be initiated unless and until: (1) the mortgagee sends the homeowner a notice meeting the statutory requirements of Act 91; and, (2) at least thirty-three (33) days pass without the homeowner applying for financial assistance from HEMAP. If a

homeowner does apply for assistance through HEMAP, the lender will be unable to initiate any legal action for an even longer period, lasting at least sixty (60) days.

14. Because BOA did not send Mr. Kaymark a Notice complying with the provisions of Act 91 and because thirty-three (33) days had not elapsed, BOA's threat to initiate legal action could not lawfully be taken. This threat constituted a separate violation of the FCEUA, §2270.4(b)(5)(v).

### C. BOA and Udren Filed a Foreclosure Complaint Containing False and Misleading Information and Demand Illegal Fees

15. On September 13, 2012, BOA filed a Verified Foreclosure Complaint against Mr. Kaymark in Allegheny County, Pennsylvania through its attorney, Udren. <u>See</u> Exhibit B, attached hereto. BOA verified the Foreclosure Complaint on August 28, 2012.

16. The Foreclosure Complaint, ¶6, stated that as of the pre-foreclosure date of July 12, 2012, a total of $230,839.92, divided into several categories, was due and owing.

| | |
|---|---|
| Unpaid Principal Balance | $213,224.26 |
| Accumulated Interest (07/01/2011-07/12/2012) | $13,452.47 |
| Accumulated Late Charges | $177.74 |
| Escrow Deficit/(Reserve) | $1,935.45 |
| **Title Report** | **$325.00** |
| **Attorney Fees** | **$1,650.00** |
| **Property Inspection** | **$75.00** |
| GRAND TOTAL | $230,839.92 |

The bolded amounts are the complained about foreclosure fees and costs. Furthermore, the attorneys' fees of $1,650.00 and the foreclosure costs, as demanded, were not due or owning as of July 12, 2012.

17. In addition, the Foreclosure Complaint failed to provide any loan contract documentation that the demanded fixed expenses and fees were authorized by any agreement between the

parties or were incurred, despite the Rule that any such documents relied upon must be attached. See Pa.R.Civ.P. 1019(i). No such documentation exists. In addition, it is believed, and therefore averred, that BOA never incurred charges for the claimed professional services as of July 12, 2012.

18. With respect to attorneys' fees, the Foreclosure Complaint demanded a flat amount of $1,650.00, $325.00 for a title report, and $75.00 for a property inspection. Not only are these sums not alleged to reflect work Udren performed, but there is no indication that BOA ever paid them and, if it did, when. In accord with the loan contracts, only reasonable fees, actually incurred may be recovered.

19. For these reasons, Mr. Kaymark's current account balance (payoff amount) was falsely inflated upon the filing of the Foreclosure Complaint. Currently, it reflects paid (or liened) and unpaid foreclosure-related fees and legal expenses. The lien wrongly caused a diminution in the value of Mr. Kaymark's property. Mr. Kaymark has suffered deprivation of property equal to the charges improperly liened against, and encumbering, his property.

20. Equally surprising, homeowners and BOA signed mortgages that provide, as to the allocation of monthly payments, that:

> **2. Application of Payments or Proceeds**. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payments in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance on the Note.

See Exhibit C, attached hereto. The Mortgage continued:

> If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any

> late charge due, the payment any be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payment if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.
>
> Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

Id.

21. BOA, however, in its Act 91 Notice, purports to unilaterally alter its own Mortgage with respect to how homeowners' monthly payments would be allocated. See Exhibit A, p. 2, which provides:

> How we post your payments: All accepted payments of principal and interest will be applied to the longest outstanding installment due, unless otherwise expressly prohibited or limited by law. If you submit an amount in addition to your scheduled monthly amount, we will apply your payments as follows: (i) to outstanding monthly payments of principal and interest, (ii) escrow deficiencies, (iii) late charges and other amounts you owe in connection with your loan and (iv) to reduce the outstanding principal balance of your loan. Please specify if you want an additional amount applied to future payments, rather than principal reduction.

## III.  CLASS ALLEGATIONS

22. The class consists of all former or current homeowners ("Homeowners") who obtained financing secured by a first mortgage on residential property located within the Commonwealth of Pennsylvania, where Defendant BOA, within six (6) years of the filing of the original Complaint, sent an Act 91 Notice and where a foreclosure complaint was subsequently filed. The class also includes Homeowners that:

22a                                                                                                  22a

(1) received an Act 91 Notice that failed to accurately contain "an itemized breakdown of the total amount past due" (see Act 91, §1680.403c);

(2) received an Act 91 Notice that containing a thirty (30) day time period to arrange a meeting with a consumer credit counseling agency to attempt to resolve the delinquency or default by restructuring the loan payment schedule or otherwise (see Act 91, §1680.403c);

(3) were charged and/or liened foreclosure fees and costs in excess of fifty dollars during a time proceeding the filing of the foreclosure action; and/or

(4) were charged and/or liened foreclosure fees and costs in fixed amounts not authorized.

A sub-class exists where Udren caused a foreclosure complaint to be filed on behalf of BOA within one year of the filing of the original Complaint.

### A. Numerosity

23. The class is so numerous that it is impracticable to bring all Homeowners before the Court. The exact number of Homeowners is unknown, but is believed to be over five thousand (5,000). The exact number can be determined from Udren's records.

### B. Predominance and Commonality

24. There are questions of law and fact that are common to the class and which predominate over any issues affecting only individual members. See Fed.R.Civ.P. 23(b)(3). Without limitation, the focus of the litigation will be Defendants' uniform collection conduct and procedures, including its standardized billing practices with respect to its Pennsylvania foreclosure cases; whether Defendants' practices violate Act 91; whether Defendants' practices violate the UTPCPL; whether Defendants' practices violate the FCEUA; and whether Defendants' practices violate the FDCPA.

### C.  Typicality

25. Mr. Kaymark's claims are identical, or at least typical, to the class claims.  Mr. Kaymark and the class of Homeowners have sustained virtually identical types of damages, have been subjected to identical illegal foreclosure-related collection attempts and their claims are based on identical statutory theories.  Damages can be mechanically and mathematically determined from business records maintained by Defendants.  See Fed.R.Civ.P. 23(a)(3).

### D.  Adequacy of Representation

26. Mr. Kaymark is an adequate class representative because his interests coincide with, and are not antagonistic to, the interests of the class.  Furthermore, class counsel is competent and experienced in such litigation.  See Fed.R.Civ.P. 23(a)(4).

### E.  Superiority

27. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Fed.R.Civ.P. 23(b)(3).  The damages sought by each member are such that individual prosecution would prove burdensome and expensive, given the complex and extensive litigation necessitated by Defendants' conduct.  It would be virtually impossible for members of the class to individually redress the wrongs done to them in an economic and effective manner. Many class members are not even aware they have been harmed.  Furthermore, individualized litigation presents an extra burden on the courts, holds potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and to the court system.  By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon proof of the facts in just one case.  The answer to one question will answer the same question for the class of Homeowners.

## COUNT 1 – FCEUA

### (Bank of America, N.A.)

28. The preceding paragraphs are incorporated by reference.

29. This Count is brought against BOA as a creditor under the FCEUA, §2270.4(b). The FCEUA prohibits, *inter alia*, creditors from using "any false, deceptive or misleading representation or means in connection with the collection of any debt," [FCEUA, §2270.4(b)(5)] or any "unfair or unconscionable means to collect or attempt to collect any debt," [FCEUA, §2270.4(b)(6)].

30. BOA's actions violated both of these provisions in several respects.

    a. The purported Act 91 Notice BOA sent to Mr. Kaymark was misleading and attempted to collect an amount beyond that required to cure the default, thereby overstating the amount owed. Such an attempt constitutes a false representation of the character, amount, or legal status of a debt in violation of the FCEUA, §2270.4(b)(5)(ii), as well as a false representation or deceptive means to attempt to collect a debt in violation of the FCEUA, §2270.4(b)(5)(x).

    b. BOA's Act 91 Notice threatened legal action if Mr. Kaymark did not cure his default within thirty (30) days, as opposed to the thirty-three (33) days he was statutorily entitled to. This threat to take action that could not legally be taken both violated the FCEUA, §2270.4(b)(5)(v), and constituted a "false representation or deceptive means to attempt to collect a debt" in violation of the FCUEA, §2270.4(b)(5)(x).

    c. The Foreclosure Complaint filed against Mr. Kaymark sought attorneys' fees and legal costs that are not authorized by the loan contracts governing the debt at issue

by seeking payment of unreasonable flat fees, or fees for services that were never incurred.

    d.   The foreclosure fees and costs were charged against Mr. Kaymark's account and liened against his property before such charges were incurred and before the foreclosure action was commenced.

    e.   BOA unilaterally changed how it allocated Homeowners' monthly payments in its Act 91 Notice and thereby misrepresented the actual terms of its mortgages.

31. BOA's charges to Mr. Kaymark of $1,650.00 for attorneys' fees and $400.00 for legal costs as of July 12, 2012, thus, overstate the amount in arrears. Such an attempt constitutes a false representation of the character, amount, or legal status of a debt in violation of the FCEUA, §2270.4(b)(5)(ii), as well as a false representation or deceptive means to attempt to collect a debt in violation of the FCEUA, §2270.4(b)(5)(x).

32. Because the attorneys' fees BOA seeks to charge are not authorized by the loan contracts and are therefore unlawful, BOA's attempt to impose the fees constitutes a threat to take an action that cannot legally be taken in violation of the FCEUA, §2270.4(b)(5)(v), and an attempt to collect an amount incidental to the principal obligation not permitted by law, in violation of the FCEUA, §2270.4(b)(6)(i).

## COUNT 2 - FDCPA

### (Udren Law Offices, P.C.)

33. The preceding paragraphs are incorporated by reference.

34. This Count is brought under the FDCPA, 15 U.S.C. §1692, *et seq.*, against Udren as a debt collector. The FDCPA prohibits, *inter alia*, debt collectors from using "any false, deceptive or misleading representation or means in connection with the collection of any debt," [FDCPA,

§1692e], or any "unfair or unconscionable means to collect or attempt to collect any debt," [FDCPA, §1692f].

35. The loan contracts governing the debt at issue prohibit the debt collector from collecting either unreasonable flat fees (which, by their nature, are not fees for specific services) or fees for services never incurred. The Foreclosure Complaint at issue never establishes any loan contract that authorizes fixed fee demands and never avers that such fees were actually incurred or paid for. Consequently, it is averred that BOA never incurred charges for the alleged professional services claimed, and that such charges did not reflect reasonable charges for services actually performed.

36. The non-contractual, and therefore unlawful, attorneys' fees and legal costs in the Foreclosure Complaint caused Udren to violate the FDCPA, §1692e because the inflated amount falsely represented the "character, amount or legal status" of Mr. Kaymark's debt, thereby rendering the complaint a "false, deceptive or misleading representation." FDCPA, §1692e(2)(A). The inclusion of such fees also violated the FDCPA, §1692e(10), which prohibits "the use of any false representation or deceptive means to collect or attempt to collect any debt," and the FDCPA, §1692e(5), which prohibits "the threat to take any action that cannot legally be taken."

37. Similarly, Udren's attempt to collect unlawful attorneys' fees and legal costs violated the FDCPA, §1692f because the attempted collection "of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt" constitutes an "unfair or unconscionable means" to collect a debt. See FDCPA, §1692f(1).

## COUNT 3 - UTPCPL

### (Bank of America, N.A. and Udren Law Offices, P.C.)

38. The preceding paragraphs are incorporated by reference.

39. This Count arises under the UTPCPL, 73 P.S. §201-1, *et seq.* BOA also violated the UTPCPL by virtue of its violations of the FCEUA, as set forth in Count 1. Violations of the FCEUA are per se violations of the UTPCPL. See FCEUA, §2270.5(a).

40. In addition, BOA and Udren violated the UTPCPL by virtue of their violations of UTPCPL, §201-2(4), which prohibits the following unfair and deceptive practices:

> (v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have…
> …
> (xxi) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

41. Defendants violated the UTPCPL by overcharging Homeowners for attorneys' fees and legal costs, thereby misrepresenting the amount that they actually owed. The Defendants also charged Homeowners for attorneys' fees and legal costs that were not authorized by the loan contracts. These actions violated the above-cited portions of the UTPCPL, §201-2(4), by "representing that… services have… characteristics… that they do not have" and by "engaging in… fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding."

42. In addition, BOA unilaterally changed how it allocated homeowners' monthly payments in its Act 91 Notice and thereby misrepresented the actual terms of its mortgages.

43. Homeowners suffered an ascertainable loss by either paying the misrepresented and overcharged amounts in whole or in part, or, where Homeowners did not make an actual

monetary payment, Homeowners suffered an ascertainable loss of property when the unauthorized charges were liened against their homes, thereby decreasing the value of their property. The fact of the Homeowners' payments, in part for the unauthorized charges added to their debt, established reliance on Defendants' overcharges and misrepresentations.

## <u>COUNT 4 – BREACH OF CONTRACT</u>

### **(Bank of America, N.A.)**

44. The preceding paragraphs are incorporated by reference.

45. BOA breached its contractual obligations to Mr. Kaymark and the class by charging and/or collecting legal fees and costs in violation of the terms of the standardized mortgages it entered into.

46. Mr. Kaymark's Mortgage states, *inter alia*, that the lender "may not charge fees that are expressly prohibited… by law." <u>See</u> Exhibit C, ¶14, attached hereto. The Mortgage further specifies that, in instances of a borrower's default, the lender may only charge fees for "services **performed**" in connection with that default. Exhibit C, ¶14 (emphasis added). Finally, in the context of attorneys' fees and related costs, the mortgage only permits the lender to collect "expenses **incurred**." Exhibit C, ¶14 (emphasis added). These provisions are standard terms found in most, if not all, residential mortgages.

47. The fees enumerated in the Foreclosure Complaint were never established to be specific charges actually incurred for services actually performed. Yet those fees were charged to and liened against his property. Accordingly, it is believed, and averred, that these demands amounted to charging fees for services not performed, in contrast to the mortgage's explicit language requiring that any fees be for services actually performed.

48. BOA changed how it allocated Homeowners' monthly payments. <u>See</u> Exhibit C (quoted above). <u>Contrast</u> Exhibit A (quoted above).

## IV.    <u>REQUEST FOR RELIEF</u>

Wherefore, Plaintiff, Dale Kaymark, individually and on behalf of all those similarly situated, hereby requests that this Court:

1. declare that the Defendants' actions violated the FCEUA [BOA], FDCPA [Udren], and UTPCPL [BOA and Udren] (Counts I, II and III);

2. declare that the BOA's actions breached the mortgage contracts BOA entered into with Plaintiffs (Count IV);

3. enter judgment in Plaintiffs' favor for actual damages, costs, and reasonable attorneys' fees as provided by the FDCPA, §1691(a) and the UTPCPL, §201-9.2;

4. enter judgment in Plaintiffs' favor for treble damages as provided by the UTPCPL, §201-9.2; and

5. grant any further relief as deemed just.

Respectfully Submitted,
MICHAEL P. MALAKOFF, P.C.
*/s/Michael P. Malakoff*
Michael P. Malakoff, Esquire
Pennsylvania Attorney I.D. #11048
Ralph N. Feldman, Esquire
Pennsylvania Attorney I.D. #207507
Suite 200, The Frick Building
Pittsburgh, PA 15219
Telephone: (412) 281-4217
Facsimile:  (412) 281-3262
malakoff@mpmalakoff.com
*Attorneys for Named Plaintiff Dale A. Kaymark, individually and on behalf of other similarly situated former and current homeowners in Pennsylvania*

**CERTIFICATE OF SERVICE**

I hereby certify that on the **20th** day of **May**, **2013**, a true and correct copy of the foregoing **Amended Complaint** was served upon the following parties of interest via the Court's Electronic Filing System:

Thomas L. Allen, Esquire
Nellie E. Hestin, Esquire
REED SMITH, LLP
225 Fifth Avenue
Pittsburgh, PA 15222

Jonathan J. Bart, Esquire
WILENTZ GOLDMAN & SPITZER, PA
Two Penn Center, Suite 910
Philadelphia, PA 19102

*/s/Michael P. Malakoff*
Michael P. Malakoff, Esquire



**Bank of America**

Home Loans
PO Box 9048
Temecula, CA 92589-9048



2252815184

**Send Payments to:**
P.O. Box 15222
Wilmington, DE 19886-5222

**Send Correspondence to:**
PO Box 5170, MS SV314B
Simi Valley, CA 93065

20110601-7

Dale A Kaymark
108 Economy Grade Rd
Imperial, PA 15108-8950



BLOPA1 12870 12/23/2010

32a                                                                    32a



**Bank of America**

**Home Loans**
P.O. Box 660694
Dallas, TX 75266-0694

*Send Payments to:*
*P.O. Box 15222*
*Wilmington, DE 19886-5222*

August 1, 2011

**Account No.:** 871351979
**Property Address:**
108 Economy Grade Rd
Imperial, PA 15108-8950

Dale A Kaymark
108 Economy Grade Rd
Imperial, PA 15108-8950

**Current Servicer:**
Bank of America, N.A.

# ACT 91 NOTICE
# TAKE ACTION TO SAVE
# YOUR HOME FROM
# FORECLOSURE

This is an official notice that the mortgage on your home is in default, and the lender intends to foreclose. Specific information about the nature of the default is provided in the attached pages

The HOMEOWNER'S EMERGENCY MORTGAGE ASSISTANCE PROGRAM (HEMAP) may be able to help to save your home. This Notice explains how the program works.

To see if HEMAP can help, you must MEET WITH A CONSUMER CREDIT COUNSELING AGENCY WITHIN 30 DAYS OF THE DATE OF THIS NOTICE. Take this Notice with you when you meet with the Counseling Agency

The names, addresses and phone numbers of Consumer Credit Counseling Agencies serving your County are listed at the end of this Notice. If you have any questions, you may call the Pennsylvania Housing Finance Agency toll free at 1-800-342-2397. (Persons with impaired hearing can call 1-717-780-1869)

This Notice contains important legal information. If you have any questions, representatives at the Consumer Credit Counseling Agency may be able to help explain it. You may also want to contact an attorney in your area. The local bar association may be able to help you find a lawyer.

LA NOTIFICACIÓN EN ADJUNTO ES DE SUMA IMPORTANCIA, PUES AFECTA SU DERECHO A CONTINUAR VIVIENDO EN SU CASA. SI NO COMPRENDE EL CONTENIDO DE ESTA NOTIFICACIÓN OBTENGA UNA TRADUCCIÓN INMEDIATAMENTE LLAMANDO ESTA AGENCIA (PENNSYLVANIA HOUSING FINANCE AGENCY) SIN CARGOS AL NÚMERO MENCIONADO ARRIBA. PUEDE SER ELEGIBLE PARA UN PRÉSTAMO POR EL PROGRAMA LLAMADO "HOMEOWNER'S EMERGENCY MORTGAGE ASSISTANCE PROGRAM" EL CUAL PUEDE SALVAR SU CASA DE LA PERDIDA DEL DERECHO A REDIMIR SU HIPOTECA.

HOMEOWNER'S NAME(S):      Dale A Kaymark
PROPERTY ADDRESS:      108 Economy Grade Rd
                      Imperial, PA 15108-8950
LOAN ACCT. NO.:      871351979
ORIGINAL LENDER:
CURRENT LENDER/SERVICER:      Bank of America, N.A.

## HOMEOWNER'S EMERGENCY MORTGAGE ASSISTANCE PROGRAM

YOU MAY BE ELIGIBLE FOR FINANCIAL ASSISTANCE WHICH CAN SAVE YOUR HOME FROM FORECLOSURE AND HELP YOU MAKE FUTURE MORTGAGE PAYMENTS.

This communication is from Bank of America, N.A., the servicer of your home loan.

Please write your account number on all checks and correspondence.
We may charge you a fee (of up to $40.00) for any payment returned or rejected by your financial institution, subject to applicable law.    BLQPA1 12870 12/23/2010

**Payment Instructions:**

- Make your check payable to Bank of America, N.A.
- Don't send cash
- Please include coupon with your payment

For all full month payment periods, interest is calculated on a monthly basis. Accordingly, interest for all full months, including February, is calculated as 30/360 of annual interest, irrespective of the actual number of days in the month. For partial months, interest is calculated daily on the basis of a 365 day year.

Account Number: 871351979-4
Dale A Kaymark
108 Economy Grade Rd
Imperial, PA 15108-8950

BLQPA1

Bank of America, N.A.
PO BOX 15222
Wilmington, DE 19886-5222
1-800-669-6654

Balance Due for charges listed above: $7,084.46 as of August 1, 2011.
Please update e-mail information on the reverse side of this coupon.

*Additional Principal*

*Additional Escrow*

*Check Total*

87135197940000070844600708446



⑆586990058⑆87135197⑈

                          

IF YOU COMPLY WITH THE PROVISIONS OF THE HOMEOWNER'S EMERGENCY MORTGAGE ASSISTANCE ACT OF 1983 (THE "ACT"), YOU MAY BE ELIGIBLE FOR EMERGENCY MORTGAGE ASSISTANCE:

IF YOUR DEFAULT HAS BEEN CAUSED BY CIRCUMSTANCES BEYOND YOUR CONTROL,

IF YOU HAVE A REASONABLE PROSPECT OF BEING ABLE TO PAY YOUR MORTGAGE PAYMENTS, AND

IF YOU MEET OTHER ELIGIBILITY REQUIREMENTS ESTABLISHED BY THE PENNSYLVANIA HOUSING FINANCE AGENCY.

**TEMPORARY STAY OF FORECLOSURE** - Under the Act, you are entitled to a temporary stay of foreclosure on your mortgage for Thirty (30) days from the date of this Notice. During that time you must arrange and attend a "face-to-face" meeting with one of the consumer credit counseling agencies listed at the end of this Notice. **THIS MEETING MUST OCCUR WITHIN THE NEXT THIRTY (30) DAYS.** IF YOU DO NOT APPLY FOR EMERGENCY MORTGAGE ASSISTANCE, YOU MUST BRING YOUR MORTGAGE UP TO DATE. THE PART OF THIS NOTICE CALLED "HOW TO CURE YOUR MORTGAGE DEFAULT" EXPLAINS HOW TO BRING YOUR MORTGAGE UP TO DATE.

**CONSUMER CREDIT COUNSELING AGENCIES** - If you meet with one of the consumer credit counseling agencies listed at the end of this notice, the lender may NOT take action against you for Thirty (30) days after the date of this meeting. The names, addresses and telephone numbers of designated consumer credit counseling agencies for the county in which the property is located are set forth at the end of this Notice. It is only necessary to schedule one face-to-face meeting. Advise your lender immediately of your intentions.

**APPLICATION FOR MORTGAGE ASSISTANCE** - Your mortgage is in default for the reasons set forth later in this Notice (see following pages for specific information about the nature of your default.) If you have tried and are unable to resolve this problem with the lender, you have the right to apply for financial assistance from the Homeowner's Emergency Mortgage Assistance Program. To do so, you must fill out, sign and file a completed Homeowner's Emergency Mortgage Assistance Program Application with one of the designated consumer credit counseling agencies listed at the end of this Notice. Only consumer credit counseling agencies have applications for the program and they will assist you in submitting a complete application to the Pennsylvania Housing Finance Agency. Your application MUST be filed or postmarked within Thirty (30) days of your face-to-face meeting.

YOU **MUST** FILE YOUR APPLICATION PROMPTLY. IF YOU FAIL TO DO SO OR IF YOU DO NOT FOLLOW THE OTHER TIME PERIODS SET FORTH IN THIS LETTER, FORECLOSURE MAY PROCEED AGAINST YOUR HOME IMMEDIATELY AND YOUR APPLICATION FOR MORTGAGE ASSISTANCE WILL BE DENIED.

**AGENCY ACTION** - Available funds for emergency mortgage assistance are very limited. They will be disbursed by the Agency under the eligibility criteria established by the Act. The Pennsylvania Housing Finance Agency has sixty (60) days to make a decision after it receives your application. During that time, no foreclosure proceedings will be pursued against you if you have met the time requirements set forth above. You will be notified directly by the Pennsylvania Housing Finance Agency of its decision on your application.

NOTE: IF YOU ARE CURRENTLY PROTECTED BY THE FILING OF A PETITION IN BANKRUPTCY, THE FOLLOWING PART OF THIS NOTICE IS FOR INFORMATION PURPOSES ONLY AND SHOULD NOT BE CONSIDERED AS AN ATTEMPT TO COLLECT THE DEBT.

**(If you have filed bankruptcy you can still apply for Emergency Mortgage Assistance.)**

NOTICE OF INTENT TO FORECLOSE YOUR HOME LOAN IS IN A STATE OF DEFAULT DUE TO THE REASONS MENTIONED IN THIS NOTICE. YOU MUST TAKE ACTION TO SAVE YOUR HOME FROM FORECLOSURE.

**NATURE OF THE DEFAULT** - The MORTGAGE debt held by the above lender on your property located at:

108 Economy Grade Rd Imperial, PA  15108-8950

IS SERIOUSLY IN DEFAULT because

**YOU HAVE NOT MADE MONTHLY MORTGAGE PAYMENTS for the following months and the following amounts are now past due:**

| | | |
|---|---|---|
| Monthly Charges: | 06/01/2011 | $2,306.74 |
| | 07/01/2011 | $4,599.98 |
| Late Charges: | 06/01/2011 | $177.74 |
| Other Charges: | Uncollected Late Charges: | $0.00 |
| | Uncollected Costs: | $0.00 |
| | Partial Payment Balance: | ($0.00) |
| | TOTAL DUE: | $7,084.46 |

YOU HAVE FAILED TO TAKE THE FOLLOWING ACTION (Do not use if not applicable)

**HOW TO CURE THE DEFAULT** - You may cure the default within **THIRTY (30) DAYS** of the date of this notice **BY PAYING THE TOTAL AMOUNT PAST DUE TO THE LENDER, WHICH IS $7,084.46** PLUS ANY MORTGAGE PAYMENTS AND LATE CHARGES WHICH BECOME DUE DURING THE THIRTY (30) DAY PERIOD.

This communication is from Bank of America, N.A., the servicer of your home loan.

E-mail use: Providing your e-mail address below will allow us to send you information on your account.
Account Number: 871351979
Dale A Kaymark E-mail address:

How we post your payments: All accepted payments of principal and interest will be applied to the longest outstanding installment due, unless otherwise expressly prohibited or limited by law. If you submit an amount in addition to your scheduled monthly amount, we will apply your payments as follows: (i) to outstanding monthly payments of principal and interest, (ii) escrow deficiencies, (iii) late charges and other amounts you owe in connection with your loan and (iv) to reduce the outstanding principal balance of your loan. Please specify if you want an additional amount applied to future payments, rather than principal reduction.

Postdated checks: Postdated checks will be processed on the date received unless a loan counselor agrees to honor the date written on the check as a condition of a repayment plan.

34a                                                                                                    34a

Payments must be made either by cashier's check, certified check or money order made payable and sent to:

Bank of America, N.A. at P.O. Box 15222, Wilmington, DE 19886-5222.

You can cure any other default by taking the following action within THIRTY (30) DAYS of the date of this letter. (Do not use if not applicable)

**IF YOU DO NOT CURE THE DEFAULT** - If you do not cure the default within THIRTY (30) DAYS of the date of this Notice, **the lender intends to exercise its rights to accelerate the mortgage debt.** This means that the entire outstanding balance of this debt will be considered due immediately and you may lose the chance to pay the mortgage in monthly installments. If full payment of the total amount past due is not made within THIRTY (30) DAYS, the lender also intends to instruct its attorneys to start legal action to **foreclose upon your mortgaged property.**

**IF THE MORTGAGE IS FORECLOSED UPON** - The mortgaged property will be sold by the Sheriff to pay off the mortgage debt. If the lender refers your case to its attorneys, but you cure the delinquency before the lender begins legal proceedings against you, you will still be required to pay the reasonable attorney's fees actually incurred, up to $50.00. However, if legal proceedings are started against you, you will have to pay all reasonable attorney's fees actually incurred by the lender even if they exceed $50.00. Any attorney's fees will be added to the amount you owe the lender, which may also include other reasonable costs. **If you cure the default within the THIRTY (30) DAY period, you will not be required to pay attorney's fees. YOU HAVE THE RIGHT TO REINSTATE AFTER ACCELERATION AND THE RIGHT TO ASSERT IN THE FORECLOSURE PROCEEDING THE NON-EXISTENCE OF A DEFAULT OR ANY OTHER DEFENSE YOU MAY HAVE TO ACCELERATION AND FORECLOSURE.**

**OTHER LENDER REMEDIES -** The lender may also sue you personally for the unpaid principal balance and all other sums due under the mortgage.

**RIGHT TO CURE THE DEFAULT PRIOR TO SHERIFF'S SALE -** If you have not cured the default within the THIRTY (30) DAY period and foreclosure proceedings have begun, you still have the right to cure the default and prevent the sale at any time up to one hour before the Sheriff's Sale. You may do so by paying the total amount then past due, plus any late or other charges then due, reasonable attorney's fees and costs connected with the foreclosure sale and any other costs connected with the Sheriff's Sale as specified in writing by the lender and by performing any other requirements under the mortgage. **Curing your default in the manner set forth in this notice will restore your mortgage to the same position as if you had never defaulted**

**EARLIEST POSSIBLE SHERIFF'S SALE DATE** - It is estimated that the earliest date that such a Sheriff's Sale of the mortgage property could be held would be **approximately six (6) months from the date of this Notice.** A notice of the actual date of the Sheriff's Sale will be sent to you before the sale. Of course, the amount needed to cure the default will increase the longer you wait. You may find out at any time exactly what the required payment or action will be by contacting the lender.

**HOW TO CONTACT THE LENDER:**

| | |
|---|---|
| Name of Lender: | **Bank of America, N.A.** |
| Address: | **P. O. Box 660694 Dallas, TX 75266-0694** |
| Phone Number: | **1-800-669-6654** |
| Fax Number: | **1-817-230-6811** |
| Contact Person: | **MS TX2-977-01-13** |
| | **Attention: Loan Counselor** |

**We are currently developing a process to ensure secure email communications for your Home Retention inquiries. In the interim, please contact us at the telephone number or address provided.**

**EFFECT OF SHERIFF'S SALE** - You should realize that a Sheriff's Sale will end your ownership of the mortgaged property and your right to occupy it. If you continue to live in the property after the Sheriff's sale, a lawsuit to remove you and your furnishings and other belongings could be started by the lender at any time.

**ASSUMPTION OF MORTGAGE** - You may sell or transfer your home to a buyer or transferee who will assume the mortgage debt, provided that all the outstanding payments, charges and attorney's fees and costs are paid prior to or at the sale and that the other requirements of the mortgage are satisfied.

## YOU MAY ALSO HAVE THE RIGHT:

TO SELL THE PROPERTY TO OBTAIN MONEY TO PAY OFF THE MORTGAGE DEBT OR TO BORROW MONEY FROM ANOTHER LENDING INSTITUTION TO PAY OFF THIS DEBT.

TO HAVE THIS DEFAULT CURED BY ANY THIRD PARTY ACTING ON YOUR BEHALF.

TO HAVE THE MORTGAGE RESTORED TO THE SAME POSITION AS IF NO DEFAULT HAD OCCURRED, IF YOU CURE THE DEFAULT. (HOWEVER, YOU DO NOT HAVE THIS RIGHT TO CURE YOUR DEFAULT MORE THAN THREE TIMES IN ANY CALENDAR YEAR.)

TO ASSERT THE NONEXISTENCE OF A DEFAULT IN ANY FORECLOSURE PROCEEDING OR ANY OTHER LAWSUIT INSTITUTED UNDER THE MORTGAGE DOCUMENTS.

TO ASSERT ANY OTHER DEFENSE YOU BELIEVE YOU MAY HAVE TO SUCH ACTION BY THE LENDER.

TO SEEK PROTECTION UNDER THE FEDERAL BANKRUPTCY LAW.

Your loan is in default. Pursuant to your loan documents, Bank of America, N.A. may, enter upon and conduct an inspection of your property. The purposes of such an inspection are to (i) observe the physical condition of your property, (ii) verify that the property is occupied and/or (iii) determine the identity of the occupant. If you do not cure the default prior to the inspection, other actions to protect the mortgagee's interest in the property (including, but not limited to, winterization, securing the property, and valuation services) may be taken. **The costs of the above-described inspections and property preservation efforts will be charged to your account as provided in your security instrument.**



This communication is from Bank of America, N.A., the servicer of your home loan.

35a                                                                                                          35a

If you are unable to cure the default on or before August 31, 2011, Bank of America, N.A. wants you to be aware of various options that may be available to you through Bank of America, N.A. to prevent a foreclosure sale of your property. For example:

- Repayment Plan: It is possible that you may be eligible for some form of payment assistance through Bank of America, N.A.. Our basic plan requires that Bank of America, N.A. receive, up front, at least ⅓ of the amount necessary to bring the account current, and that the balance of the overdue amount be paid, along with the regular monthly payment, over a defined period of time. Other repayment plans also are available.

- Loan Modification: Or, it is possible that the regular monthly payments can be lowered through a modification of the loan by reducing the interest rate and then adding the delinquent payments to the current loan balance. This foreclosure alternative, however, is limited to certain loan types.

- Sale of Your Property: Or, if you are willing to sell your home in order to avoid foreclosure, it is possible that the sale of your home can be approved through Bank of America, N.A. even if your home is worth less than what is owed on it.

- Deed-in-Lieu: Or, if your property is free from other liens or encumbrances, and if the default is due to a serious financial hardship which is beyond your control, you may be eligible to deed your property directly to the Noteholder and avoid the foreclosure sale.

If you are interested in discussing any of these foreclosure alternatives with Bank of America, N.A., you must contact us immediately. If you request assistance, Bank of America, N.A. will need to evaluate whether that assistance will be extended to you. In the meantime, Bank of America, N.A. will pursue all of its rights and remedies under the loan documents and as permitted by law, unless it agrees otherwise in writing. Failure to bring your loan current or to enter into a written agreement by August 31, 2011 as outlined above will result in the acceleration of your debt.

If your loan is currently being evaluated for a loan modification, forbearance or other loan assistance solution, this notice will not cancel or delay that evaluation process. However, it is important that you promptly respond to all requests made in connection with your evaluation for a loan assistance solution, including all requests for you to contact us and any documentation required. If you do not comply with these requests in a timely manner, it may cause your loan to enter the foreclosure process as indicated in this notice. If your loan is not eligible for a loan assistance program, please note this letter will continue to serve as notice of our right to initiate foreclosure.

Time is of the essence. If you have any questions concerning this notice, please contact Loan Counseling Center immediately at 1-800-669-6654.

**Attachment: Itemization of Charges and Fees**

| | | | | | | |
|---|---|---|---|---|---|---|
| Monthly Charges: | 06/01/2011 | - | 06/30/2011 | @ | $2,306.74 | $2,306.74 |
| | 07/01/2011 | - | 08/31/2011 | @ | $2,299.99 | $4,599.98 |
| Late Charges: | 06/01/2011 | - | 07/31/2011 | @ | $88.87 | $177.74 |
| Other Charges: | Uncollected Late Charges: | | | | | $0.00 |
| | Partial Payment Balance: | | | | | ($0.00) |
| | | | **TOTAL DUE:** | | | **$7,084.46** |



This communication is from Bank of America, N.A., the servicer of your home loan.

37a

2252815184

37a

| CONSUMER CREDIT COUNSELING AGENCIES SERVING YOUR COUNTY |
|---|

## ALLEGHENY COUNTY

Action Housing, Inc
425 6th Avenue
Suite 950
Pittsburgh, PA 15219
412.281.2102
800.792.2801

CCCS of Western PA
River Park Commons
2403 Sidney Street, Suite 400
Pittsburgh, PA 15203
888.511.2227
888.511.2227

Community Action Southwest
58 East Greene Street
Waynesburg, PA 15370
724.852.2893

Fair Housing Partnership of Greater
Pittsburgh, Inc.
2840 Liberty Avenue
Suite 205
Pittsburgh, PA 15222
412.391.2535

Garfield Jubilee Associates
5138 Penn Avenue
Pittsburgh, PA 15224
412.665.5200

Mon Valley Unemployment Committee
1800 West Street
3rd Floor
Homestead, PA 15120
412.462.9962

Nazareth Housing Services
301 Bellevue Road
Pittsburgh, PA 15229
412.931.6996

NeighborWorks of Western Pennsylvania
710 5th Avenue
Suite 1000
Pittsburgh, PA 15219
412.281.9773

Pennsylvania Housing Finance Agency
2275 Swallow Hill Road
Bldg 200
Pittsburgh, PA 15220
412.429.2842

The Pittsburgh Community Reinvestment
Group (PCRG)
1901 Centre Avenue
Suite 200
Pittsburgh, PA 15219
412.391.6732

Urban League Of Pittsburgh
610 Wood Street
Pittsburgh, PA 15222
412.227.4602

This communication is from Bank of America, N.A., the servicer of your home loan.

Options are Available to Help You

# Avoid Foreclosure

## Call the number on the enclosed notice to learn more.

When you call, please have your income and expense information available
so we can discuss which option(s) could work for you.

**Options to consider if your goal is to stay in your home**

| Program | Description |
|---|---|
| Home Affordable Modification Program (HAMP) | A federal government program that allows you to repay the loan on newly agreed upon terms, which may include lowering the interest rate, placing past due amounts at the end of the loan, and/or extending the term of the loan. You may be eligible for this program if you meet the following requirements:<br><br>• The home is your primary residence and you currently live in it.<br>• The amount you owe on the first mortgage is equal to or less than $729,750 for a single-family home, $934,200 for a 2 unit property, $1,129,250 for a 3 unit property or $1,403,400 for a 4 unit property<br>• You have experienced a hardship that has impacted your income. For example, a significant increase in your mortgage payment OR reduction in your income OR other hardship.<br>• Your mortgage was obtained before Jan. 1, 2009.<br>• Your payment on your first mortgage (including principal, interest, taxes, insurance and homeowner's association dues, if applicable) is more than 31% of your current gross income. To calculate this, divide your first mortgage payment by your gross income (income before taxes). |
| Loan Reinstatement | If you can bring your loan payments up to date, we will accept the funds needed to bring the loan up to date until the day of your foreclosure sale. |
| Repayment Plan | A temporary agreement which allows for the repayment of the unpaid, past due amount along with regular mortgage payments. This may include principal, interest, fees, and/or costs assessed to your loan. |
| Temporary Forbearance Agreement | An agreement whereby we agree not to proceed with foreclosure and/or collection of payments for a period of time, to allow you to re-establish your ability to make the required payments. |
| Loan Modification (non-HAMP) | Repay the loan on newly agreed upon terms, which may include lowering the interest rate, placing amounts past due at the end of the loan, and/or extending the term of the loan. |
| Partial Claim (FHA loans Only) | If you have a Federal Housing Administration (FHA) loan and your payments are past due but you are now able to make your regular monthly mortgage payment, this program is designed to bring your loan up to date by creating a second mortgage/lien on your property for the amount that is past due. |

**Options to consider if you cannot or do not wish to stay in your home**

| Program | Description |
|---|---|
| Home Affordable Foreclosure Alternatives Program (HAFA) | Designed to help borrowers who are eligible for the Home Affordable Modification Program (HAMP) but were unsuccessful in securing a permanent modification through the program. HAFA provides the option of a short sale and, if unsuccessful, a deed in lieu of foreclosure. A short sale is a transaction in which you sell your property for less than the total amount owed on the loan (subject to agreement by your servicer/lender/investor), resulting in the release of our lien on your home and avoidance of foreclosure. A deed in lieu of foreclosure is a transaction in which you agree to voluntarily transfer ownership of your property to us in order to avoid foreclosure. |
| Short Sale/ Preforeclosure Sale (non-HAFA) | Offered to borrowers who are not eligible for HAMP or other home retention alternatives. With a short sale, you sell your property for less than the total amount owed on the loan (subject to agreement by your servicer/lender/investor), resulting in the release of our lien on your home and avoidance of foreclosure. |
| Deed in Lieu of Foreclosure (non-HAFA) | Offered to borrowers not eligible for HAMP or other home retention alternatives, and who were not able to sell the property through a short sale. With a deed in lieu of foreclosure, you agree to voluntarily transfer ownership of your property to us in order to avoid foreclosure. |



## We are here to help you. Please call us today.

2252815164

Hay Opciones Disponibles Para Ayudarle a

# Evitar la Ejecución Hipotecaria

## Llame al número que aparece en la notificación adjunta para obtener más información

Cuando llame, tenga la información de sus ingresos y gastos disponibles para que podamos discutir cual opción(es) pueden funcionar para usted.

**Opciones a considerar si su objetivo es permanecer en su casa**

| Programa | Descripción |
|---|---|
| Home Affordable Modification Program (HAMP) | Un programa del gobierno federal que le permite pagar el préstamo bajo los nuevos términos acordados, que pueden incluir la reducción de la tasa de interés, agregando la cantidad adeudada al final del préstamo, y / o extender el plazo del préstamo. Usted puede ser elegible para este programa si cumple con los siguientes requisitos:<br><br>• La casa es su residencia principal y actualmente vive en ella.<br>• La cantidad adeudada en la primera hipoteca debe ser igual o menos que $729,750 dólares para una vivienda unifamiliar, $934,200 dólares para una propiedad de 2 unidades, $1,129,250 dólares para una propiedad de 3 unidades o $1,403,400 para una propiedad de 4 unidades<br>• Ha experimentado una dificultad que ha afectado sus ingresos. Por ejemplo, un aumento significativo en su pago hipotecario O reducción de sus ingresos U otras dificultades.<br>• Obtuvo su hipoteca antes del 01 de enero 2009.<br>• Su pago de la primera hipoteca (incluyendo principal, interés, impuestos, seguro y cuotas de asociación de propietarios, si se aplica) debe ser más del 31% de sus ingresos brutos actuales. Para calcular esto, divida su pago hipotecario por sus ingresos brutos (ingresos antes de impuestos). |
| Restablecimiento del Préstamo | Si usted puede traer sus pagos del préstamo hipotecario al día, se le aceptarán los fondos necesarios para que el préstamo este al día hasta la fecha de la venta judicial. |
| Plan de Pago | Un acuerdo temporal que permite el pago de la cantidad adeudada, cantidad del pago atrasado junto con los pagos regulares de la hipoteca. Esto puede incluir principal, interés, honorarios y/o costos aplicados a su préstamo. |
| Acuerdo Temporal de Tolerancia | Un acuerdo por el cual nos comprometemos a no proceder con la ejecución hipotecaria y/o colección de pagos por un período de tiempo, para permitirle que restablezca su habilidad de hacer los pagos requeridos. |
| Modificación de Préstamo (no por medio de HAMP) | Pagar el préstamo bajo los nuevos términos acordados, que puede incluir la reducción de la tasa de interés, agregando la cantidad adeudada al final del préstamo, y/o extender el plazo del préstamo. |
| Reclamo Parcial (solamente prestamos de la FHA | Si usted tiene un préstamo de la Administración Federal de Vivienda (FHA) y sus pagos están vencidos, pero ahora puede hacer sus pagos regulares mensuales de la hipoteca, este programa está diseñado para que su préstamo este al día mediante la creación de una segunda hipoteca / gravamen sobre su propiedad por la cantidad adeudada. |

**Opciones a considerar si no puede o no desea quedarse en su casa**

| Programa | Descripción |
|---|---|
| Home Affordable Foreclosure Alternatives Program (HAFA) | Diseñado para ayudar a los prestatarios que son elegibles para el Programa de Home Affordable Modification (HAMP), pero no tuvieron éxito en obtener una modificación permanente a través del programa. HAFA ofrece la posibilidad de una venta corta, y si no tiene éxito, una entrega de escritura para evitar juicio hipotecario. Una venta corta es una transacción en la que usted vende su propiedad por menos de la cantidad adeudada en el préstamo (sujeto a previo acuerdo de su administrador / prestamista / inversionista), resultando en la liberación de nuestro derecho de retención sobre su propiedad y evitar la ejecución hipotecaria. Una entrega de escritura para evitar juicio hipotecario es una transacción en la que usted está de acuerdo de transferir voluntariamente las escrituras de su propiedad a nosotros con el fin de evitar la ejecución hipotecaria. |
| Venta Corta/ Venta antes de Ejecución Hipotecaria (no por medio de HAFA) | Se ofrece a los prestatarios que no son elegibles para HAMP u otras alternativas de retención de hogar. Con una venta corta, usted vende su propiedad por menos de la cantidad total adeudada en el préstamo (sujeto a un acuerdo por su administrador / prestamista / inversionista), resultando en la liberación de nuestro derecho de retención sobre su propiedad y evitando la ejecución hipotecaria. |
| Entrega de Escritura Para Evitar Juicio Hipotecario (no por medio de HAFA) | Se ofrece a los prestatarios que no son elegibles para HAMP u otras alternativas de retención de hogar, y que no pudieron vender la propiedad a través de una venta corta. Con una entrega de escritura para evitar juicio hipotecario, usted está de acuerdo a transferir voluntariamente las escrituras de su propiedad a nosotros para evitar la ejecución hipotecaria. |

**Estamos aquí para ayudarle. Por favor llámenos hoy.**

40a                                                                                                                              40a

# IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
## CIVIL DIVISION
COVER SHEET (ONLY for cases involving mortgage foreclosure)

**Plaintiff(s)**

Bank of America, N.A.

Case Number :

Type of pleading :

Complaint in Mortgage
Foreclosure

**Vs**

**Defendant(s)**

Dale A. Kaymark

Code and Classification :

Filed on behalf of

Bank of America, N.A.

If Case involves real estate please enter the
Property Information.

(Name of the filing party)

### Certificate of Location

I hereby certify that the location of the real estate is:

Findlay Township
City, Boro or Township

[✓] Counsel of Record

[ ] Individual, If Pro Se

Parcel ID: 9910 - X - 269 Tiebreaker:

Name, Address and Telephone Number :

Address :

108 Economy Grade Road, Imperial, PA 15108 a/k/a
108 Economy Grade Road, Corapolis, PA 15108

Udren Law Offices, P.C.
Woodcrest Corporate Center
111 Woodcrest Road
Cherry Hill, NJ 08003
(856)669-5400

**YOU MUST CHECK ONE SELECTION IN EACH BOX**

[✓] OWNER OCCUPIED RESIDENTIAL

[ ] NON-OWNER OCCUPIED RESIDENTIAL

[ ] COMMERCIAL

[ ] OTHER (explain )

Attorney's State ID : 209197

[✓] FOUR UNITS OR LESS

[ ] OVER FOUR UNITS

Attorney's Firm ID :

IF RESIDENTIAL: Name address and telephone number of representative of lending institution with authority to discuss this action.

Daniel Skidell     16001 North Dallas Parkway, Addison, TX 75006     818-251-7532

By _Elana B. Flehinger, Esq._

[cover_mg]

**UDREN LAW OFFICES, P.C.**     **ATTORNEY FOR PLAINTIFF**
**BY: MARK J. UDREN, ESQUIRE - ID #04302**
**STUART WINNEG, ESQUIRE - ID#45362**
**LORRAINE GAZZARA DOYLE, ESQUIRE - ID#34576**
**SHERRI J. BRAUNSTEIN, ESQUIRE - ID#90675**
**SALVATORE CAROLLO, ESQUIRE - ID#311050**
**PAIGE M. BELLINO, ESQUIRE - ID#309091**
**HARRY B. REESE, ESQUIRE - ID#310501**
**KASSIA FIALKOFF, ESQUIRE - ID#310530**
**ELIZABETH L. WASSALL, ESQUIRE - ID#77788**
**AGNES MOMBRUN, ESQUIRE - ID#309356**
**ELANA B. FLEHINGER, ESQUIRE - ID#209197**
**KATHERINE E. KNOWLTON, ESQUIRE - ID#311713**
**WOODCREST CORPORATE CENTER**
**111 WOODCREST ROAD, SUITE 200**
**CHERRY HILL, NJ 08003-3620**
**856-669-5400** pleadings@udren.com

| | |
|---|---|
| **Bank of America, N.A.**<br>**C/O Bank of America, N.A., as successor**<br>**by merger to BAC Home Loans**<br>**, LP**<br>**16001 North Dallas Parkway**<br>**Addison, TX 75006** | COURT OF COMMON PLEAS<br>CIVIL DIVISION<br>ALLEGHENY County |
|    Plaintiff | NO. |
|    v. | |
| **DALE A. KAYMARK**<br>**108 ECONOMY GRADE ROAD, IMPERIAL,**<br>**PA 15108 A/K/A 108 ECONOMY GRADE**<br>**ROAD**<br>**CORAOPOLIS, PA 15108** | |
|    Defendant(s) | |

## COMPLAINT IN MORTGAGE FORECLOSURE

YOU HAVE BEEN SUED IN COURT.  If you wish to defend against the claims set forth in the

# URGENT NOTICE

Under a new Pilot Project of the Court of Common Pleas of Allegheny County:

## You may be able to get help with your Mortgage.

## Call the "Save Your Home" Hotline at
## 1-866-298-8020

You will be put in touch with a non-profit housing counselor **FREE OF CHARGE** to help you try to work out arrangements with your mortgage company.

The housing counselor will schedule a conference under the Court's supervision to determine whether a work out can be arranged.

To get this help you must call the Hotline and go to a housing counselor. They will tell you what to do next.

Call the Hotline immediately. Call 1-866-298-8020.

### Make this call to save your home!
# THIS PROJECT IS FREE

43a                                                                                          43a

following pages, you must take action within twenty (20) days after this Complaint and Notice are served, by entering a written appearance personally or by attorney and filing in writing with the Court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the Court without further notice for any money claimed in the Complaint or for any other claim or relief requested by the Plaintiff. You may lose money or property or other rights important to you.

**YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER. IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.**

LAWYERS REFERRAL SERVICE
**Allegheny County Bar Association**
**11th Floor Koppers Building**
**436 Seventh Avenue**
**Pittsburgh, PA 15219**
**(412) 261-5555**

### AVISO

Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta ascentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se dafiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

**LLEVE ESTA DEMANDA A UN ABOGADO IMMEDIATAMENTE, SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.**

**Allegheny County Bar Association**
**11th Floor Koppers Building**
**436 Seventh Avenue**
**Pittsburgh, PA 15219**
**(412) 261-5555**

## NOTICE

The amount of your debt is as stated in the attached document. The name of the creditor to whom the debt is owed is as named in the attached document. Unless you notify us within 30 days after receipt of this Notice and the attached document that the validity of the stated debt, or any portion of it, is disputed, we will assume that the debt is valid. If you do notify us in writing of a dispute within the 30 day period, we will obtain verification of the debt or a copy of a judgment against you, and mail it to you. If you do not dispute the debt, it is not an admission of liability on your part. Also, upon your written request within the 30 day period, we will provide you with the name and address of the original creditor if different from the current creditor.

If you notify us in writing within the 30 day period as stated above, we will cease collection of your debt, or any disputed portion of it, until we obtain the information that is required and mail it to you. Once we have mailed to you the required information, we will then continue the collection of your debt.

This law firm is deemed to be a debt collector and this Notice and the attached document is an attempt to collect a debt, and any information obtained will be used for that purpose.

UDREN LAW OFFICES, P.C.
/s/ Mark J. Udren, Esquire
Woodcrest Corporate Center
111 Woodcrest Road, Suite 200
Cherry Hill, NJ 08003-3620
(856) 669-5400

1. Plaintiff is **Bank of America, N.A.**. Plaintiff is the legal holder of the Mortgage that is the subject of this Action. Plaintiff is either the current mortgagee of record, is the legal holder of the Mortgage by virtue of being successor in interest to the current mortgagee of record, or is the legal holder of the Mortgage by virtue of Assignment of Mortgage. If Plaintiff is the legal holder of the Mortgage by virtue of Assignment of Mortgage, it is by the following Assignments of Mortgage, all of which have either been recorded or Plaintiff is in the process of formalizing the actual Assignment of Mortgage in Plaintiff's favor:

Assignor: N/A

Assignee: **N/A**

Date of Assignment: **N/A**

Recorded Date: **N/A**

Book/Instrument #**: N/A**

Page: **N/A**

2. Upon information and belief Defendant(s) and/or their predecessor:

   **Dale A. Kaymark**

   (hereinafter "Defendants")**,** are the owners of property located at **108 Economy Grade Road, Imperial, PA 15108 a/k/a 108 Economy Grade Road, (Findlay Township), Coraopolis, PA 15108 ,** by virtue of Deed dated **12/15/2006** and recorded **12/21/2006** in Official Records Book **13095** at Page **91** of the Public Records of **Allegheny** County, Pennsylvania (hereinafter the "Property").

3. On **12/26/2006** , Defendant(s) and/or their predecessor:

   **DALE A. KAYMARK**

   promised to pay to the order of **Bank of America, N.A.** , the principal sum of **$ 245,600.00** payable with interest thereon provided in the Note.

4. By Mortgage dated **12/26/2006** , Defendant(s) and/or their predecessor:

## DALE A. KAYMARK

to secure the Note, mortgaged to **Bank of America, N.A.,** the Property which is the subject of this action. The Mortgage was recorded on **01/10/2007** in Official Records Book **33222** at Page **221.** Said Mortgage is incorporated herein by referenced in accordance with Pa.R.C.P 1019(g). A legal description of the mortgage premises is attached hereto and made a part hereof.

5. Said mortgage is in default in that the payment due **08/01/2011**, and all subsequent payments have not been made, and by its terms, upon breach and failure to cure said breach after notice, all sums secured by said Mortgage, together with the other charges authorized by said Mortgage and itemized below, shall be immediately due.

6. After demand, the Defendant(s) continues to fail or refused to comply with the terms of the Mortgage as follows:

   (a) By failing or refusing to pay the installments of principal and interest when due in the amounts indicated below;

   (b) By failing or refusing to pay other charges, if any, indicated below.

   The following amounts are due on the said Mortgage or modification agreement as of the date stated below

| | |
|---|---|
| Unpaid Principal Balance | $213,224.26 |
| Accumulated Interest(07/01/2011-07/12/2012) | $13,452.47 |
| Accumulated Late Charges | $177.74 |
| Escrow Deficit/(Reserve) | $1,935.45 |
| Title Report | $325.00 |
| Attorney Fees | $1,650.00 |
| Property Inspection | $75.00 |
| Grand Total | $230,839.92 |

The above figures are calculated as of **07/12/2012**:

The interest rate is subject to adjustment if more fully described as such in the note and mortgage. The interest rate on the subject note is at **6.12500 %.** The per diem interest accruing on this debt is **$35.6830** and that sum should be added each day after the above date.

The late charge is subject to adjustment if more fully described as such in the note and mortgage. The late charge rate on the subject note should be added in accordance to the terms of the note and mortgage charged monthly at **$88.87**.

7.     Breach letters have been sent to Defendant(s) in accordance with the requirements of the subject mortgage and/or The Pennsylvania Act 6 of 1974 of the Commonwealth of Pennsylvania and, if applicable, Act 91 of 1983.  Copies of the breach letters are attached hereto as Exhibit "A"

WHEREFORE, the Plaintiff demands judgment, in rem,  against the Defendant(s) herein in the

sum of **$230,839.92** plus ongoing interest, costs and attorneys fees and for sale of the Mortgaged

premises.

UDREN LAW OFFICES, P.C.

BY:

Elana B. Flehinger, Esq
PA ID 209197

ALL that certain lot or piece of ground situate in the Township of Findlay, County of Allegheny and Commonwealth of Pennsylvania, being bounded and described more particularly as follows:

BEGINNING at a point in the center line of the Clinton and Economy Grade Road, at the line of land now or formerly of Joseph Kachik, et ux; thence along said Kachik line North 39° 40' East, a distance of 252.44 feet to a point; thence by a line through property now or formerly of Edward L. Boggs, et ux, of which the herein described parcel was a part, North 4° East a distance of 171.64 feet to a point on the line of land now or formerly of E. K. Hicks, et ux; thence along said Hicks line of North 64° 37' West, a distance of 234.75 feet to a point; thence continuing along said Hicks line North 10° 56' West, a distance of 56.65 feet to a point; thence still along the same South 73° 07' West, a distance of 158.30 feet to a point in the center line of the Clinton and Economy Grade Road; thence along the center line of said Road the following three courses and distances, South 12° 55' East, 272 feet; South 25° 39' East, 134 feet and South 42° 28' East, 121.93 feet to the point at the place of beginning.

TAX IDENTIFICATION NO.: 9910-x-269

(KAYMARK20061204.PFD/KAYMARK20061204/12)



**Bank of America**

Home Loans
PO Box 9048
Temecula, CA 92589-9048

***Send Payments to:***
P.O. Box 15222
Wilmington, DE 19886-5222

***Send Correspondence to:***
PO Box 5170, MS SV314B
Simi Valley, CA 93065

2252815184

20110601-7

Dale A Kaymark
108 Economy Grade Rd
Imperial, PA  15108-8950

Exhibit A

BLOPA1 12870 12/23/2010



**Bank of America**

**Home Loans**
P.O. Box 660694
Dallas, TX 75266-0694

*Send Payments to:*
*P.O. Box 15222*
*Wilmington, DE 19886-5222*

August 1, 2011

**Account No.:** 871351979
**Property Address:**
108 Economy Grade Rd
Imperial, PA 15108-8950

Dale A Kaymark
108 Economy Grade Rd
Imperial, PA 15108-8950

**Current Servicer:**
Bank of America, N.A.

# ACT 91 NOTICE
# TAKE ACTION TO SAVE
# YOUR HOME FROM
# FORECLOSURE

**This is an official notice that the mortgage on your home is in default, and the lender intends to foreclose. Specific information about the nature of the default is provided in the attached pages.**

**The HOMEOWNER'S EMERGENCY MORTGAGE ASSISTANCE PROGRAM (HEMAP) may be able to help to save your home. This Notice explains how the program works.**

**To see if HEMAP can help, you must MEET WITH A CONSUMER CREDIT COUNSELING AGENCY WITHIN 30 DAYS OF THE DATE OF THIS NOTICE. Take this Notice with you when you meet with the Counseling Agency**

**The names, addresses and phone numbers of Consumer Credit Counseling Agencies serving your County are listed at the end of this Notice. If you have any questions, you may call the Pennsylvania Housing Finance Agency toll free at 1-800-342-2397. (Persons with impaired hearing can call 1-717-780-1869)**

This Notice contains important legal information. If you have any questions, representatives at the Consumer Credit Counseling Agency may be able to help explain it. You may also want to contact an attorney in your area. The local bar association may be able to help you find a lawyer.

LA NOTIFICACIÓN EN ADJUNTO ES DE SUMA IMPORTANCIA, PUES AFECTA SU DERECHO A CONTINUAR VIVIENDO EN SU CASA. SI NO COMPRENDE EL CONTENIDO DE ESTA NOTIFICACIÓN OBTENGA UNA TRADUCCIÓN INMEDIATAMENTE LLAMANDO ESTA AGENCIA (PENNSYLVANIA HOUSING FINANCE AGENCY) SIN CARGOS AL NÚMERO MENCIONADO ARRIBA. PUEDE SER ELEGIBLE PARA UN PRÉSTAMO POR EL PROGRAMA LLAMADO "HOMEOWNER'S EMERGENCY MORTGAGE ASSISTANCE PROGRAM" EL CUAL PUEDE SALVAR SU CASA DE LA PERDIDA DEL DERECHO A REDIMIR SU HIPOTECA.

| | |
|---|---|
| HOMEOWNER'S NAME(S): | Dale A Kaymark |
| PROPERTY ADDRESS: | **108 Economy Grade Rd** |
| | **Imperial, PA 15108-8950** |
| LOAN ACCT. NO.: | **871351979** |
| ORIGINAL LENDER: | |
| CURRENT LENDER/SERVICER: | Bank of America, N.A. |

## HOMEOWNER'S EMERGENCY MORTGAGE ASSISTANCE PROGRAM

**YOU MAY BE ELIGIBLE FOR FINANCIAL ASSISTANCE WHICH CAN SAVE YOUR HOME FROM FORECLOSURE AND HELP YOU MAKE FUTURE MORTGAGE PAYMENTS.**

This communication is from Bank of America, N.A., the servicer of your home loan.

Please write your account number on all checks and correspondence.
We may charge you a fee (of up to $40.00) for any payment returned or rejected by your financial institution, subject to applicable law.

BLQPA1 12870 12/23/2010

**Payment Instructions:**

- Make your check payable to Bank of America, N.A.
- Don't send cash
- Please include coupon with your payment

For all full month payment periods, interest is calculated on a monthly basis. Accordingly, interest for all full months, including February, is calculated as 30/360 of annual interest, irrespective of the actual number of days in the month. For partial months, interest is calculated daily on the basis of a 365 day year.

Account Number: 871351979-4
Dale A Kaymark
108 Economy Grade Rd
Imperial, PA 15108-8950

BLQPA1

Bank of America, N.A.
PO BOX 15222
Wilmington, DE 19886-5222
1-800-669-6654

Balance Due for charges listed above: $7,084.46 as of August 1, 2011.
Please update e-mail information on the reverse side of this coupon.

| | |
|---|---|
| *Additional Principal* | |
| *Additional Escrow* | |
| *Check Total* | |

871351979400000708446000708446



‖:586990056‖:871351979‖'

51a     51a

IF YOU COMPLY WITH THE PROVISIONS OF THE HOMEOWNER'S EMERGENCY MORTGAGE ASSISTANCE ACT OF 1983 (THE "ACT"), YOU MAY BE ELIGIBLE FOR EMERGENCY MORTGAGE ASSISTANCE:

IF YOUR DEFAULT HAS BEEN CAUSED BY CIRCUMSTANCES BEYOND YOUR CONTROL,

IF YOU HAVE A REASONABLE PROSPECT OF BEING ABLE TO PAY YOUR MORTGAGE PAYMENTS, AND

IF YOU MEET OTHER ELIGIBILITY REQUIREMENTS ESTABLISHED BY THE PENNSYLVANIA HOUSING FINANCE AGENCY.

**TEMPORARY STAY OF FORECLOSURE** - Under the Act, you are entitled to a temporary stay of foreclosure on your mortgage for Thirty (30) days from the date of this Notice. During that time you must arrange and attend a "face-to-face" meeting with one of the consumer credit counseling agencies listed at the end of this Notice. **THIS MEETING MUST OCCUR WITHIN THE NEXT THIRTY (30) DAYS. IF YOU DO NOT APPLY FOR EMERGENCY MORTGAGE ASSISTANCE, YOU MUST BRING YOUR MORTGAGE UP TO DATE. THE PART OF THIS NOTICE CALLED "HOW TO CURE YOUR MORTGAGE DEFAULT" EXPLAINS HOW TO BRING YOUR MORTGAGE UP TO DATE.**

**CONSUMER CREDIT COUNSELING AGENCIES** - If you meet with one of the consumer credit counseling agencies listed at the end of this notice, the lender may NOT take action against you for Thirty (30) days after the date of this meeting. The names, addresses and telephone numbers of designated consumer credit counseling agencies for the county in which the property is located are set forth at the end of this Notice. It is only necessary to schedule one face-to-face meeting. Advise your lender immediately of your intentions.

**APPLICATION FOR MORTGAGE ASSISTANCE** - Your mortgage is in default for the reasons set forth later in this Notice (see following pages for specific information about the nature of your default.) If you have tried and are unable to resolve this problem with the lender, you have the right to apply for financial assistance from the Homeowner's Emergency Mortgage Assistance Program. To do so, you must fill out, sign and file a completed Homeowner's Emergency Assistance Program Application with one of the designated consumer credit counseling agencies listed at the end of this Notice. Only consumer credit counseling agencies have applications for the program and they will assist you in submitting a complete application to the Pennsylvania Housing Finance Agency. Your application MUST be filed or postmarked within Thirty (30) days of your face-to-face meeting.

YOU **MUST** FILE YOUR APPLICATION PROMPTLY. IF YOU FAIL TO DO SO OR IF YOU DO NOT FOLLOW THE OTHER TIME PERIODS SET FORTH IN THIS LETTER, FORECLOSURE MAY PROCEED AGAINST YOUR HOME IMMEDIATELY AND YOUR APPLICATION FOR MORTGAGE ASSISTANCE WILL BE DENIED.

**AGENCY ACTION** - Available funds for emergency mortgage assistance are very limited. They will be disbursed by the Agency under the eligibility criteria established by the Act. The Pennsylvania Housing Finance Agency has sixty (60) days to make a decision after it receives your application. During that time, no foreclosure proceedings will be pursued against you if you have met the time requirements set forth above. You will be notified directly by the Pennsylvania Housing Finance Agency of its decision on your application.

NOTE: IF YOU ARE CURRENTLY PROTECTED BY THE FILING OF A PETITION IN BANKRUPTCY, THE FOLLOWING PART OF THIS NOTICE IS FOR INFORMATION PURPOSES ONLY AND SHOULD NOT BE CONSIDERED AS AN ATTEMPT TO COLLECT THE DEBT.

**(If you have filed bankruptcy you can still apply for Emergency Mortgage Assistance.)**

NOTICE OF INTENT TO FORECLOSE YOUR HOME LOAN IS IN A STATE OF DEFAULT DUE TO THE REASONS MENTIONED IN THIS NOTICE. YOU MUST TAKE ACTION TO SAVE YOUR HOME FROM FORECLOSURE.

**NATURE OF THE DEFAULT** - The MORTGAGE debt held by the above lender on your property located at:

108 Economy Grade Rd Imperial, PA  15108-8950

IS SERIOUSLY IN DEFAULT because

**YOU HAVE NOT MADE MONTHLY MORTGAGE PAYMENTS** for the following months and the following amounts are now past due:

| | | |
|---|---|---|
| Monthly Charges: | 06/01/2011 | $2,306.74 |
| | 07/01/2011 | $4,599.98 |
| Late Charges: | 06/01/2011 | $177.74 |
| Other Charges: | Uncollected Late Charges: | $0.00 |
| | Uncollected Costs: | $0.00 |
| | Partial Payment Balance: | ($0.00) |
| | TOTAL DUE: | $7,084.46 |

YOU HAVE FAILED TO TAKE THE FOLLOWING ACTION (Do not use if not applicable)

**HOW TO CURE THE DEFAULT** - You may cure the default within **THIRTY (30) DAYS** of the date of this notice **BY PAYING THE TOTAL AMOUNT PAST DUE TO THE LENDER, WHICH IS $7,084.46** PLUS ANY MORTGAGE PAYMENTS AND LATE CHARGES WHICH BECOME DUE DURING THE THIRTY (30) DAY PERIOD.

This communication is from Bank of America, N.A., the servicer of your home loan.

E-mail use: Providing your e-mail address below will allow us to send you information on your account.
Account Number: 871351979
Dale A Kaymark E-mail address:

How we post your payments: All accepted payments of principal and interest will be applied to the longest outstanding installment due, unless otherwise expressly prohibited or limited by law. If you submit an amount in addition to your scheduled monthly amount, we will apply your payments as follows: (i) to outstanding monthly payments of principal and interest, (ii) escrow deficiencies, (iii) late charges and other amounts you owe in connection with your loan and (iv) to reduce the outstanding principal balance of your loan. Please specify if you want an additional amount applied to future payments, rather than principal reduction.

Postdated checks: Postdated checks will be processed on the date received unless a loan counselor agrees to honor the date written on the check as a condition of a repayment plan.

Payments must be made either by cashier's check, certified check or money order made payable and sent to:

Bank of America, N.A. at P.O. Box 15222, Wilmington, DE 19886-5222.

You can cure any other default by taking the following action within THIRTY (30) DAYS of the date of this letter. (Do not use if not applicable)

**IF YOU DO NOT CURE THE DEFAULT** - If you do not cure the default within THIRTY (30) DAYS of the date of this Notice, **the lender intends to exercise its rights to accelerate the mortgage debt.** This means that the entire outstanding balance of this debt will be considered due immediately and you may lose the chance to pay the mortgage in monthly installments. If full payment of the total amount past due is not made within THIRTY (30) DAYS, the lender also intends to instruct its attorneys to start legal action to **foreclose upon your mortgaged property.**

**IF THE MORTGAGE IS FORECLOSED UPON** - The mortgaged property will be sold by the Sheriff to pay off the mortgage debt. If the lender refers your case to its attorneys, but you cure the delinquency before the lender begins legal proceedings against you, you will still be required to pay the reasonable attorney's fees that were actually incurred, up to $50.00. However, if legal proceedings are started against you, you will have to pay all reasonable attorney's fees actually incurred by the lender even if they exceed $50.00. Any attorney's fees will be added to the amount you owe the lender, which may also include other reasonable costs. **If you cure the default within the THIRTY (30) DAY period, you will not be required to pay attorney's fees. YOU HAVE THE RIGHT TO REINSTATE AFTER ACCELERATION AND THE RIGHT TO ASSERT IN THE FORECLOSURE PROCEEDING THE NON-EXISTENCE OF A DEFAULT OR ANY OTHER DEFENSE YOU MAY HAVE TO ACCELERATION AND FORECLOSURE.**

**OTHER LENDER REMEDIES** - The lender may also sue you personally for the unpaid principal balance and all other sums due under the mortgage.

**RIGHT TO CURE THE DEFAULT PRIOR TO SHERIFF'S SALE** - If you have not cured the default within the THIRTY (30) DAY period and foreclosure proceedings have begun, you still have the right to cure the default and prevent the sale at any time up to one hour before the Sheriff's Sale. You may do so by paying the total amount then past due, plus any late or other charges then due, reasonable attorney's fees and costs connected with the foreclosure sale and any other costs connected with the Sheriff's Sale as specified in writing by the lender and by performing any other requirements under the mortgage. **Curing your default in the manner set forth in this notice will restore your mortgage to the same position as if you had never defaulted**

**EARLIEST POSSIBLE SHERIFF'S SALE DATE** - It is estimated that the earliest date that such a Sheriff's Sale of the mortgage property could be held would be **approximately six (6) months from the date of this Notice.** A notice of the actual date of the Sheriff's Sale will be sent to you before the sale. Of course, the amount needed to cure the default will increase the longer you wait. You may find out at any time exactly what the required payment or action will be by contacting the lender.

**HOW TO CONTACT THE LENDER:**

| | |
|---|---|
| Name of Lender: | **Bank of America, N.A.** |
| Address: | **P. O. Box 660694 Dallas, TX 75266-0694** |
| Phone Number: | **1-800-669-6654** |
| Fax Number: | **1-817-230-6811** |
| Contact Person: | **MS TX2-977-01-13** |
| | **Attention: Loan Counselor** |

**We are currently developing a process to ensure secure email communications for your Home Retention inquiries. In the interim, please contact us at the telephone number or address provided.**

**EFFECT OF SHERIFF'S SALE** - You should realize that a Sheriff's Sale will end your ownership of the mortgaged property and your right to occupy it. If you continue to live in the property after the Sheriff's sale, a lawsuit to remove you and your furnishings and other belongings could be started by the lender at any time.

**ASSUMPTION OF MORTGAGE** - You may sell or transfer your home to a buyer or transferee who will assume the mortgage debt, provided that all the outstanding payments, charges and attorney's fees and costs are paid prior to or at the sale and that the other requirements of the mortgage are satisfied.

## YOU MAY ALSO HAVE THE RIGHT:

TO SELL THE PROPERTY TO OBTAIN MONEY TO PAY OFF THE MORTGAGE DEBT OR TO BORROW MONEY FROM ANOTHER LENDING INSTITUTION TO PAY OFF THIS DEBT.

TO HAVE THIS DEFAULT CURED BY ANY THIRD PARTY ACTING ON YOUR BEHALF.

TO HAVE THE MORTGAGE RESTORED TO THE SAME POSITION AS IF NO DEFAULT HAD OCCURRED, IF YOU CURE THE DEFAULT. (HOWEVER, YOU DO NOT HAVE THIS RIGHT TO CURE YOUR DEFAULT MORE THAN THREE TIMES IN ANY CALENDAR YEAR.)

TO ASSERT THE NONEXISTENCE OF A DEFAULT IN ANY FORECLOSURE PROCEEDING OR ANY OTHER LAWSUIT INSTITUTED UNDER THE MORTGAGE DOCUMENTS.

TO ASSERT ANY OTHER DEFENSE YOU BELIEVE YOU MAY HAVE TO SUCH ACTION BY THE LENDER.

TO SEEK PROTECTION UNDER THE FEDERAL BANKRUPTCY LAW.

Your loan is in default. Pursuant to your loan documents, Bank of America, N.A. may, enter upon and conduct an inspection of your property. The purposes of such an inspection are to (i) observe the physical condition of your property, (ii) verify that the property is occupied and/or (iii) determine the identity of the occupant. If you do not cure the default prior to the inspection, other actions to protect the mortgagee's interest in the property (including, but not limited to, winterization, securing the property, and valuation services) may be taken. **The costs of the above-described inspections and property preservation efforts will be charged to your account as provided in your security instrument.**



This communication is from Bank of America, N.A., the servicer of your home loan.

53a                                                                                                    53a

If you are unable to cure the default on or before August 31, 2011, Bank of America, N.A. wants you to be aware of various options that may be available to you through Bank of America, N.A. to prevent a foreclosure sale of your property. For example:

- Repayment Plan: It is possible that you may be eligible for some form of payment assistance through Bank of America, N.A.. Our basic plan requires that Bank of America, N.A. receive, up front, at least ⅓ of the amount necessary to bring the account current, and that the balance of the overdue amount be paid, along with the regular monthly payment, over a defined period of time. Other repayment plans also are available.

- Loan Modification: Or, it is possible that the regular monthly payments can be lowered through a modification of the loan by reducing the interest rate and then adding the delinquent payments to the current loan balance. This foreclosure alternative, however, is limited to certain loan types.

- Sale of Your Property: Or, if you are willing to sell your home in order to avoid foreclosure, it is possible that the sale of your home can be approved through Bank of America, N.A. even if your home is worth less than what is owed on it.

- Deed-in-Lieu: Or, if your property is free from other liens or encumbrances, and if the default is due to a serious financial hardship which is beyond your control, you may be eligible to deed your property directly to the Noteholder and avoid the foreclosure sale.

If you are interested in discussing any of these foreclosure alternatives with Bank of America, N.A., you must contact us immediately. If you request assistance, Bank of America, N.A. will need to evaluate whether that assistance will be extended to you. In the meantime, Bank of America, N.A. will pursue all of its rights and remedies under the loan documents and as permitted by law, unless it agrees otherwise in writing. Failure to bring your loan current or to enter into a written agreement by August 31, 2011 as outlined above will result in the acceleration of your debt.

If your loan is currently being evaluated for a loan modification, forbearance or other loan assistance solution, this notice will not cancel or delay that evaluation process. However, it is important that you promptly respond to all requests made in connection with your evaluation for a loan assistance solution, including all requests for you to contact us and any documentation required. If you do not comply with these requests in a timely manner, it may cause your loan to enter the foreclosure process as indicated in this notice. If your loan is not eligible for a loan assistance program, please note this letter will continue to serve as notice of our right to initiate foreclosure.

Time is of the essence. If you have any questions concerning this notice, please contact Loan Counseling Center immediately at 1-800-669-6654.

**Attachment: Itemization of Charges and Fees**

| | | | | | | |
|---|---|---|---|---|---|---|
| Monthly Charges: | 06/01/2011 | - | 06/30/2011 | @ | $2,306.74 | $2,306.74 |
| | 07/01/2011 | - | 08/31/2011 | @ | $2,299.99 | $4,599.98 |
| Late Charges: | 06/01/2011 | - | 07/31/2011 | @ | $88.87 | $177.74 |
| Other Charges: | Uncollected Late Charges: | | | | | $0.00 |
| | Partial Payment Balance: | | | | | ($0.00) |
| | | | **TOTAL DUE:** | | | **$7,084.46** |



This communication is from Bank of America, N.A., the servicer of your home loan.

2252815184

55a

| CONSUMER CREDIT COUNSELING AGENCIES SERVING YOUR COUNTY |
|---|

**ALLEGHENY COUNTY**

Action Housing, Inc
425 6th Avenue
Suite 950
Pittsburgh, PA 15219
412.281.2102
800.792.2801

CCCS of Western PA
River Park Commons
2403 Sidney Street, Suite 400
Pittsburgh, PA 15203
888.511.2227
888.511.2227

Community Action Southwest
58 East Greene Street
Waynesburg, PA 15370
724.852.2893

Fair Housing Partnership of Greater
Pittsburgh, Inc.
2840 Liberty Avenue
Suite 205
Pittsburgh, PA 15222
412.391.2535

Garfield Jubilee Associates
5138 Penn Avenue
Pittsburgh, PA 15224
412.665.5200

Mon Valley Unemployment Committee
1800 West Street
3rd Floor
Homestead, PA 15120
412.462.9962

Nazareth Housing Services
301 Bellevue Road
Pittsburgh, PA 15229
412.931.6996

NeighborWorks of Western Pennsylvania
710 5th Avenue
Suite 1000
Pittsburgh, PA 15219
412.281.9773

Pennsylvania Housing Finance Agency
2275 Swallow Hill Road
Bldg 200
Pittsburgh, PA 15220
412.429.2842

The Pittsburgh Community Reinvestment
Group (PCRG)
1901 Centre Avenue
Suite 200
Pittsburgh, PA 15219
412.391.6732

Urban League Of Pittsburgh
610 Wood Street
Pittsburgh, PA 15222
412.227.4602

This communication is from Bank of America, N.A., the servicer of your home loan.

Options are Available to Help You

# Avoid Foreclosure

### Call the number on the enclosed notice to learn more.

When you call, please have your income and expense information available
so we can discuss which option(s) could work for you.

### Options to consider if your goal is to stay in your home

| Program | Description |
|---|---|
| Home Affordable Modification Program (HAMP) | A federal government program that allows you to repay the loan on newly agreed upon terms, which may include lowering the interest rate, placing past due amounts at the end of the loan, and/or extending the term of the loan. You may be eligible for this program if you meet the following requirements:<br><br>• The home is your primary residence and you currently live in it.<br>• The amount you owe on the first mortgage is equal to or less than $729,750 for a single-family home, $934,200 for a 2 unit property, $1,129,250 for a 3 unit property or $1,403,400 for a 4 unit property<br>• You have experienced a hardship that has impacted your income. For example, a significant increase in your mortgage payment OR reduction in your income OR other hardship.<br>• Your mortgage was obtained before Jan. 1, 2009.<br>• Your payment on your first mortgage (including principal, interest, taxes, insurance and homeowner's association dues, if applicable) is more than 31% of your current gross income. To calculate this, divide your first mortgage payment by your gross income (income before taxes). |
| Loan Reinstatement | If you can bring your loan payments up to date, we will accept the funds needed to bring the loan up to date until the day of your foreclosure sale. |
| Repayment Plan | A temporary agreement which allows for the repayment of the unpaid, past due amount along with regular mortgage payments. This may include principal, interest, fees, and/or costs assessed to your loan. |
| Temporary Forbearance Agreement | An agreement whereby we agree not to proceed with foreclosure and/or collection of payments for a period of time, to allow you to re-establish your ability to make the required payments. |
| Loan Modification (non-HAMP) | Repay the loan on newly agreed upon terms, which may include lowering the interest rate, placing amounts past due at the end of the loan, and/or extending the term of the loan. |
| Partial Claim (FHA loans Only) | If you have a Federal Housing Administration (FHA) loan and your payments are past due but you are now able to make your regular monthly mortgage payment, this program is designed to bring your loan up to date by creating a second mortgage/lien on your property for the amount that is past due. |

### Options to consider if you cannot or do not wish to stay in your home

| Program | Description |
|---|---|
| Home Affordable Foreclosure Alternatives Program (HAFA) | Designed to help borrowers who are eligible for the Home Affordable Modification Program (HAMP) but were unsuccessful in securing a permanent modification through the program. HAFA provides the option of a short sale and, if unsuccessful, a deed in lieu of foreclosure. A short sale is a transaction in which you sell your property for less than the total amount owed on the loan (subject to agreement by your servicer/lender/investor), resulting in the release of our lien on your home and avoidance of foreclosure. A deed in lieu of foreclosure is a transaction in which you agree to voluntarily transfer ownership of your property to us in order to avoid foreclosure. |
| Short Sale/ Preforeclosure Sale (non-HAFA) | Offered to borrowers who are not eligible for HAMP or other home retention alternatives. With a short sale, you sell your property for less than the total amount owed on the loan (subject to agreement by your servicer/lender/investor), resulting in the release of our lien on your home and avoidance of foreclosure. |
| Deed in Lieu of Foreclosure (non-HAFA) | Offered to borrowers not eligible for HAMP or other home retention alternatives, and who were not able to sell the property through a short sale. With a deed in lieu of foreclosure, you agree to voluntarily transfer ownership of your property to us in order to avoid foreclosure. |



## We are here to help you. Please call us today.

2252815164

Hay Opciones Disponibles Para Ayudarle a

# Evitar la Ejecución Hipotecaria

## Llame al número que aparece en la notificación adjunta para obtener más información

Cuando llame, tenga la información de sus ingresos y gastos disponibles para que podamos discutir cual opción(es) pueden funcionar para usted.

**Opciones a considerar si su objetivo es permanecer en su casa**

| Programa | Descripción |
|---|---|
| Home Affordable Modification Program (HAMP) | Un programa del gobierno federal que le permite pagar el préstamo bajo los nuevos términos acordados, que pueden incluir la reducción de la tasa de interés, agregando la cantidad adeudada al final del préstamo, y / o extender el plazo del préstamo. Usted puede ser elegible para este programa si cumple con los siguientes requisitos:<br><br>• La casa es su residencia principal y actualmente vive en ella.<br>• La cantidad adeudada en la primera hipoteca debe ser igual o menos que $729,750 dólares para una vivienda unifamiliar, $934,200 dólares para una propiedad de 2 unidades, $1,129,250 dólares para una propiedad de 3 unidades o $1,403,400 para una propiedad de 4 unidades.<br>• Ha experimentado una dificultad que ha afectado sus ingresos. Por ejemplo, un aumento significativo en su pago hipotecario O reducción de sus ingresos U otras dificultades.<br>• Obtuvo su hipoteca antes del 01 de enero 2009.<br>• Su pago de la primera hipoteca (incluyendo principal, interés, impuestos, seguro y cuotas de asociación de propietarios, si se aplica) debe ser más del 31% de sus ingresos brutos actuales. Para calcular esto, divida su pago hipotecario por sus ingresos brutos (ingresos antes de impuestos). |
| Restablecimiento del Préstamo | Si usted puede traer sus pagos del préstamo hipotecario al día, se le aceptarán los fondos necesarios para que el préstamo este al día hasta la fecha de la venta judicial. |
| Plan de Pago | Un acuerdo temporal que permite el pago de la cantidad adeudada, cantidad del pago atrasado junto con los pagos regulares de la hipoteca. Esto puede incluir principal, interés, honorarios y/o costos aplicados a su préstamo. |
| Acuerdo Temporal de Tolerancia | Un acuerdo por el cual nos comprometemos a no proceder con la ejecución hipotecaria y/o colección de pagos por un período de tiempo, para permitirle que restablezca su habilidad de hacer los pagos requeridos. |
| Modificación de Préstamo (no por medio de HAMP) | Pagar el préstamo bajo los nuevos términos acordados, que puede incluir la reducción de la tasa de interés, agregando la cantidad adeudada al final del préstamo, y/o extender el plazo del préstamo. |
| Reclamo Parcial (solamente prestamos de la FHA | Si usted tiene un préstamo de la Administración Federal de Vivienda (FHA) y sus pagos están vencidos, pero ahora puede hacer sus pagos regulares mensuales de la hipoteca, este programa está diseñado para que su préstamo este al día mediante la creación de una segunda hipoteca / gravamen sobre su propiedad por la cantidad adeudada. |

**Opciones a considerar si no puede o no desea quedarse en su casa**

| Programa | Descripción |
|---|---|
| Home Affordable Foreclosure Alternatives Program (HAFA) | Diseñado para ayudar a los prestatarios que son elegibles para el Programa de Home Affordable Modification (HAMP), pero no tuvieron éxito en obtener una modificación permanente a través del programa. HAFA ofrece la posibilidad de una venta corta, y si no tiene éxito, una entrega de escritura para evitar juicio hipotecario. Una venta corta es una transacción en la que usted vende su propiedad por menos de la cantidad adeudada en el préstamo (sujeto a previo acuerdo de su administrador / prestamista / inversionista), resultando en la liberación de nuestro derecho de retención sobre su propiedad y evitar la ejecución hipotecaria. Una entrega de escritura para evitar juicio hipotecario es una transacción en la que usted está de acuerdo de transferir voluntariamente las escrituras de su propiedad a nosotros con el fin de evitar la ejecución hipotecaria. |
| Venta Corta/ Venta antes de Ejecución Hipotecaria (no por medio de HAFA) | Se ofrece a los prestatarios que no son elegibles para HAMP u otras alternativas de retención de hogar. Con una venta corta, usted vende su propiedad por menos de la cantidad total adeudada en el préstamo (sujeto a un acuerdo por su administrador / prestamista / inversionista), resultando en la liberación de nuestro derecho de retención sobre su propiedad y evitando la ejecución hipotecaria. |
| Entrega de Escritura Para Evitar Juicio Hipotecario (no por medio de HAFA) | Se ofrece a los prestatarios que no son elegibles para HAMP u otras alternativas de retención de hogar, y que no pudieron vender la propiedad a través de una venta corta. Con una entrega de escritura para evitar juicio hipotecario, usted está de acuerdo a transferir voluntariamente las escrituras de su propiedad a nosotros para evitar la ejecución hipotecaria. |

**Estamos aquí para ayudarle. Por favor llámenos hoy.**

**UDREN LAW OFFICES, P.C.**      **ATTORNEY FOR PLAINTIFF**
**WOODCREST CORPORATE CENTER**
**111 WOODCREST ROAD, SUITE 200**
**CHERRY HILL, NJ 08003-3620**
**856-669-5400** pleadings@udren.com

---

| | |
|---|---|
| **Bank of America, N.A.**<br>Plaintiff<br><br>v.<br><br>**DALE A. KAYMARK**<br>**108 ECONOMY GRADE ROAD, IMPERIAL,**<br>**PA 15108 A/K/A 108 ECONOMY GRADE**<br>**ROAD**<br>**CORAOPOLIS, PA 15108**<br><br>Defendant(s) | **COURT OF COMMON PLEAS**<br>**CIVIL DIVISION**<br>**ALLEGHENY County**<br><br>NO. |

## V E R I F I C A T I O N

_Matthew E Cottman_ , hereby states that he/she is

_Assistant Vice President_ of **Bank of America, N.A.**, Plaintiff in this matter, that

he/she is authorized to make this Verification, and verify that the statements made in the

foregoing Civil Action in Mortgage Foreclosure are true and correct to the best of his/her

knowledge, information and belief.

The undersigned understands that this statement is made subject to the penalties of 18 Pa. C.S.

Section 4904 relating to unsworn falsification to authorities.

Date: _August 28, 2012_      _Matthew E Cottman  8/28/12_

Name: _Matthew Cottman_
Title: _Assistant Vice President_
Company: _Bank of America NA_

**MJU #: 12050577 CASE #: 12050577-1**



61 2007 00003337

**Allegheny County**
**Valerie McDonald Roberts**
**Recorder of Deeds**
**Pittsburgh, PA 15219**

Instrument Number: 2007-3337

**Recorded On: January 10, 2007**        As-Mortgage

**Parties: KAYMARK DALE A**

**To        BANK AMERICA N A**        # of Pages: 18

**Comment:**

## **DO NOT REMOVE-THIS PAGE IS PART OF THE RECORDED DOCUMENT**

| | | |
|---|---|---|
| Mortgage | | 72.00 |
| Pages > 4 | 13 | |
| Names > 4 | 0 | |
| Total: | | 72.00 |

*I hereby certify that the within and foregoing was recorded in the Recorder's Office in  Allegheny County, PA*

## **DO NOT REMOVE-THIS PAGE IS PART OF THE RECORDED DOCUMENT**

**File Information:**

Document Number: 2007-3337
Receipt Number: 833527
Recorded Date/Time: January 10, 2007 11:04:21A
Book-Vol/Pg: BK-M VL-33222 PG-221
User / Station: B Plake - Cash Station 25

**Record and Return To:**

FALCON CLOSING SERVICES LTD
112 E PIKE ST
HOUSTON PA 15342



**Valerie McDonald-Roberts Recorder of Deeds**

60a

Case 2:16-cv-00419-CRE Document 16-3 Filed 05/05/21 Page 56 of 188
Case 13-cv-00419-CRE Document 11-3 Filed 05/20/13 Page 26 of 182

17

Prepared By: ETHAN BYRD
BANK OF AMERICA, N.A.
1201 MAIN STREET, 7TH FLOOR
DALLAS, TX 752020000

*return to:*
*Falcon Closing Services Ltd*
*112 East Pike St.*
*Houston, PA 15342*

Return To:   FL9-700-01-01
JACKSONVILLE POST CLOSING
BANK OF AMERICA
9000 SOUTHSIDE BLVD.
BLDG 700, FILE RECEIPT DEPT.
JACKSONVILLE, FL 32256

Parcel Number:
9910-X-269
Premises:   108 ECONOMY GRADE ROAD
            IMPERIAL , PA 15108

──────────── [Space Above This Line For Recording Data] ────────────

# MORTGAGE

LOAN # 6299353026

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated DECEMBER 26, 2006 , together with all Riders to this document.

**(B) "Borrower"** is DALE A KAYMARK

Borrower is the mortgagor under this Security Instrument.

**(C) "Lender"** is BANK OF AMERICA, N.A.

Lender is a NATIONAL BANKING ASSOCIATION
organized and existing under the laws of THE UNITED STATES OF AMERICA

**PENNSYLVANIA** – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

VMP®–6(PA) (0509)       **Form 3039 1/01**

Page 1 of 16         Initials: DA K

VMP Mortgage Solutions, Inc. (800)521-7291

CVPA 12/26/06 8:09 AM 6299353026

61a                                                                     61a

ALL that certain lot or piece of ground situate in the Township of Findlay, County of Allegheny and Commonwealth of Pennsylvania, being bounded and described more particularly as follows:

BEGINNING at a point in the center line of the Clinton and Economy Grade Road, at the line of land now or formerly of Joseph Kachik, et ux; thence along said Kachik line North 39° 40' East, a distance of 252.44 feet to a point; thence by a line through property now or formerly of Edward L. Boggs, et ux, of which the herein described parcel was a part, North 4° East a distance of 171.64 feet to a point on the line of land now or formerly of E. K. Hicks, et ux; thence along said Hicks line of North 64° 37' West, a distance of 234.75 feet to a point; thence continuing along said Hicks line North 10° 56' West, a distance of 56.65 feet to a point; thence still alongthe same South 73° 07' West, a distance of 158.30 feet to a point in the center line of the Clinton and Economy Grade Road; thence along the center line of said Road the following three courses and distances, South 12° 55' East, 272 feet; South 25° 39' East, 134 feet and South 42° 28' East, 121.93 feet to the point at the place of beginning.

TAX IDENTIFICATION NO.: 9910-x-269

Lender's address is 1201 MAIN STREET, 7TH FLOOR, DALLAS, TX 752020000

Lender is the mortgagee under this Security Instrument.

**(D) "Note"** means the promissory note signed by Borrower and dated DECEMBER 26, 2006 .
The Note states that Borrower owes Lender TWO HUNDRED FORTY FIVE THOUSAND SIX
HUNDRED AND 00/100                                                          Dollars
(U.S. $       245,600.00   ) plus interest. Borrower has promised to pay this debt in regular
Periodic Payments and to pay the debt in full not later than FEBRUARY 01, 2027 .
**(E) "Property"** means the property that is described below under the heading "Transfer of Rights
in the Property."

**(F) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late
charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(G) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The
following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

**(H) "Applicable Law"** means all controlling applicable federal, state and local statutes,
regulations, ordinances and administrative rules and orders (that have the effect of law) as well as
all applicable final, non-appealable judicial opinions.

**(I) "Community Association Dues, Fees, and Assessments"** means all dues, fees,
assessments and other charges that are imposed on Borrower or the Property by a condominium
association, homeowners association or similar organization.

**(J) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction
originated by check, draft, or similar paper instrument, which is initiated through an electronic
terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize
a financial institution to debit or credit an account. Such term includes, but is not limited to,
point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire
transfers, and automated clearinghouse transfers.

**(K) "Escrow Items"** means those items that are described in Section 3.

**(L) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or
proceeds paid by any third party (other than insurance proceeds paid under the coverages
described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or
other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv)
misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(M) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or
default on, the Loan.

**(N) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and
interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

Initials: DAV

-6(PA) (0508)                    Page 2 of 16                    Form 3039 1/01

CVPA 12/26/06 8:09 AM 6299353026

63a                                                                          63a

(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(P) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in the COUNTY of ALLEGHENY :

[Type of Recording Jurisdiction]           [Name of Recording Jurisdiction]

"LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF."

which currently has the address of

108 ECONOMY GRADE ROAD                                    [Street]
IMPERIAL                          [City], Pennsylvania 15108        [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

Initials: DAK

®-6(PA) (0508)                    Page 3 of 16                    Form 3039 1/01

CVPA 12/26/06 8:09 AM 6299353026

64a                                                                        64a

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be

Initials: DAK

-6(PA) (0508)   Page 4 of 16   Form 3039 1/01

CVPA 12/26/06 8:09 AM 6299353026

65a                                                                                   65a

applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

Initials DAK

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of

Initials: DAV

the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the

68a                                                              68a

date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

Initials: DAK

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any**

Initials: _DAK_

other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the

Initials: DAK

-6(PA) (0508)   Page 10 of 16   **Form 3039 1/01**

CVPA 12/26/06 8:09 AM 6299353026

71a                 71a

Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security

Initials: DAL

-6(PA) (0508)    Page 11 of 16    Form 3039 1/01

CVPA 12/26/06 8:09 AM 6299353026

72a    72a

Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums

Initials: _DAK_

which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Initials: DAK

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). Lender shall notify Borrower of, among other things: (a) the default; (b) the action required to cure the default; (c) when the default must be cured; and (d) that failure to cure the default as specified may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. Lender shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured as specified, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by Applicable Law.**

23. **Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Waivers.** Borrower, to the extent permitted by Applicable Law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

Initials: D A K

**25. Reinstatement Period.** Borrower's time to reinstate provided in Section 19 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

**26. Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

**27. Interest Rate After Judgment.** Borrower agrees that the interest rate after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____     _____ (Seal)
                                    DALE A KAYMARK           -Borrower

_____     _____ (Seal)
                                                              -Borrower

_____ (Seal)     _____ (Seal)
                       -Borrower                              -Borrower

_____ (Seal)     _____ (Seal)
                       -Borrower                              -Borrower

_____ (Seal)     _____ (Seal)
                       -Borrower                              -Borrower

76a                                                          76a

**COMMONWEALTH OF PENNSYLVANIA,** Allegheny      County ss:

On this, the 26 day of December 2006, before me, the undersigned officer, personally appeared Dale A. Kaymark

known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged that he/she/they executed the same for the purposes herein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.
My Commission Expires:

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Paul E. Hytla, Notary Public
Moon Twp., Allegheny County
My Commission Expires Oct. 16, 2008
Member, Pennsylvania Association of Notaries

NOTARY PUBLIC
Title of Officer

**Certificate of Residence**

I, ~~ETHAN BYRD~~ Joy Hrl , do hereby certify that the correct address of the within-named Mortgagee is 1201 MAIN STREET, 7TH FLOOR, DALLAS, TX 752020000

Witness my hand this 26TH day of DECEMBER, 2006.

Agent of Mortgagee

Initials: DAK

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

```
-----------------------------------------------------
                                            :
DALE KAYMARK, Individually and on behalf    :
of other similarly situated current and former :
homeowners in Pennsylvania,                 :
                                            :
            Plaintiff,                      :   NO.  2:13:cv-00419-CRE
                                            :
v.                                          :
                                            :
BANK OF AMERICA, N.A. and UDREN             :
LAW OFFICES, P.C.,                          :
                                            :
            Defendants.                     :
                                            :
-----------------------------------------------------
```

## DEFENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT

Defendant Udren Law Offices, P.C. ("Udren"), by its undersigned counsel, hereby

moves this Court for an Order dismissing the Amended Complaint of Plaintiff Dale Kaymark

with prejudice for failure to state a claim upon which relief may be granted pursuant to Rule

12(b)(6) of the Federal Rules of Civil Procedure.  In further support of this motion, Udren

incorporates by reference the annexed Memorandum of Law.

Respectfully submitted,

WILENTZ GOLDMAN & SPITZER, P.A.

Dated:  June 3, 2013          By: /s/ Jonathan J. Bart
                                  Daniel S. Bernheim, 3d, Esquire
                                  Jonathan J. Bart, Esquire
                                  Attorneys for Defendant,
                                  Udren Law Offices, P.C.
                                  Two Penn Center, Suite 910
                                  Philadelphia, PA  19102
                                  215-636-4466
                                  jbart@wilentz.com

## CERTIFICATE OF SERVICE

I, JONATHAN J. BART, certify that on June 3, 2013, I caused a true and correct copy of the foregoing Motion to Dismiss the Amended Complaint to be served in accordance with the electronic notification system upon the following:

**Emily S. Gomez, Esquire**
**Law Office of Emily Gomez, LLC**
**239 Fourth Avenue**
**Suite 1602**
**Pittsburgh, PA 15222**

**Michael P. Malakoff, Esquire**
**437 Grant Street**
**Suite 200, The Frick Bldg.**
**Pittsburgh, PA 15219**

**Thomas L. Allen, Esquire**
**Nellie E. Hestin, Esquire**
**Reed Smith**
**Reed Smith Centre**
**225 Fifth Avenue, Suite 1200**
**Pittsburgh, PA 15222**

WILENTZ GOLDMAN & SPITZER, P.A.

By: */s/ Jonathan J. Bart*
Jonathan J. Bart, Esquire
Attorney for Defendant,
Udren Law Offices, P.C.

#6950009.1(148845.009)

# EXHIBIT "A"

**LOAN NUMBER: 6299353026**

# NOTE

12/26/06                              IMPERIAL                                    **PA**
[Date]                                                [City]                                    [State]
108 ECONOMY GRADE ROAD, IMPERIAL, PA 15108

[Property Address]

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $   245,600.00   (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is   BANK OF AMERICA, N.A.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of       6.125    %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

### 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the      1ST      day of each month beginning on  MARCH 01, 2007     .
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on      FEBRUARY 01, 2027       I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at   BANK OF AMERICA, N.A., P.O. BOX 17404, BALTIMORE, MD
21297-1404                                        or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $       1,777.32    .

### 4. BORROWER'S RIGHT TO PREPAY

I HAVE THE RIGHT TO MAKE PAYMENTS OF PRINCIPAL AT ANY TIME BEFORE THEY ARE DUE. A PAYMENT OF PRINCIPAL ONLY IS KNOWN AS A "PREPAYMENT." WHEN I MAKE A PREPAYMENT, I WILL TELL THE NOTE HOLDER IN WRITING THAT I AM DOING SO. I MAY NOT DESIGNATE A PAYMENT AS A PREPAYMENT IF I HAVE NOT MADE ALL THE MONTHLY PAYMENTS DUE UNDER THIS NOTE.

I MAY MAKE A FULL PREPAYMENT OR PARTIAL PREPAYMENT WITHOUT PAYING ANY PREPAYMENT CHARGE. AFTER PAYING ANY LATE FEES OR OUTSTANDING FEES THAT I OWE, THE NOTE HOLDER WILL USE MY PREPAYMENTS TO REDUCE THE AMOUNT OF PRINCIPAL THAT I OWE UNDER THIS NOTE. HOWEVER, THE NOTE HOLDER MAY APPLY MY PREPAYMENT TO THE ACCRUED AND UNPAID INTEREST ON THE PREPAYMENT AMOUNT BEFORE APPLYING MY PREPAYMENT TO REDUCE THE PRINCIPAL AMOUNT OF THIS NOTE. IF I MAKE A PARTIAL PREPAYMENT, THERE WILL BE NO CHANGES IN THE DUE DATES OR IN THE AMOUNT OF MY MONTHLY PAYMENT UNLESS THE NOTE HOLDER AGREES IN WRITING TO THOSE CHANGES.

**MULTISTATE FIXED RATE NOTE** – Single Family          Page 1 of 3
**BS5N** (0101)                        VMP MORTGAGE FORMS - (800)521-7291

BS5R 12/26/06 8:09 AM 6299353026

81a



81a

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of     15
calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be
5.0          % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

BS5N (0101)                                    Page 2 of 3

BS5R 12/26/06 8:09 AM 6299353026

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____   (Seal)
DALE A KAYMARK                                      -Borrower

_____   (Seal)
                                                   -Borrower

PAY TO THE ORDER OF
_____   (Seal)
                                                   -Borrower

WITHOUT RECOURSE
BANK OF AMERICA, N.A.
_____   (Seal)
                                                   -Borrower
BY _____
   CHRISTINA M SCHMITT
   ASSISTANT VICE PRESIDENT
_____   (Seal)
                                                   -Borrower

_____   (Seal)
                                                   -Borrower

_____   (Seal)
                                                   -Borrower

_____   (Seal)
                                                   -Borrower
                                              (Sign Original Only)

BS5N (0101)                    Page 3 of 3
        BS5R 12/26/06 8:09 AM 6299353026

83a                                                            83a

# EXHIBIT "B"

# FannieMae

## Allowable Attorney and Trustee Foreclosure Fees

This list contains the maximum attorney's or trustee's fees that Fannie Mae allows for legal work related to foreclosures of whole mortgage loans, participation pool mortgage loans, and MBS mortgage loans serviced under special servicing options.

| State | Non-Judicial Foreclosure | Judicial Foreclosure |
|---|---|---|
| Alabama | $900 | On Approval[2] |
| Alaska | $1,200 | On Approval[2] |
| Arizona | $925 | On Approval[2] |
| Arkansas | $1,050 | On Approval[2] |
| California | $1,000[3] | On Approval[2] |
| Colorado | $1,225 | On Approval[2] |
| Connecticut | N/A | $1,700[4, 5] |
| Delaware | N/A | $1,350 |
| District of Columbia | $600[1,6] | On Approval[2] |
| Florida | N/A | $2,250[12] |
| Georgia | $900 | On Approval[2] |
| Guam | $1,200 | On Approval[2] |
| Hawaii | $1,100 | $2,400[8] |
| Idaho | $1,050 | On Approval[2] |
| Illinois | N/A | $1,750 |
| Indiana | N/A | $1,500 |
| Iowa | $850 | $1,300 |
| Kansas | N/A | $1,250 |
| Kentucky | N/A | $1,700 |
| Louisiana | N/A | $1,350 |
| Maine | N/A | $1,750 |
| Maryland | $2,100 | On Approval |
| Massachusetts | N/A | $2,000[4] |
| Michigan | $1,000 | On Approval |
| Minnesota | $1,025[9] | On Approval |
| Mississippi | $900[1] | On Approval[2] |
| Missouri | $950 | On Approval |
| Montana | $1,000 | On Approval[2] |
| Nebraska | $900 | On Approval[2] |
| Nevada | $1,100 | On Approval |
| New Hampshire | $1,150 | On Approval[2] |
| New Jersey | N/A | $2,425 |
| New Mexico | N/A | $1,500 |
| New York | $800[10] | $2,000[4, 10] |
| North Carolina | $1,150 | On Approval |
| North Dakota | N/A | $1,250 |

85a                                                                                                    85a

| State | Non-Judicial Foreclosure | Judicial Foreclosure |
|-------|--------------------------|----------------------|
| Ohio | N/A | $1,700 |
| Oklahoma | N/A | $1,450 |
| Oregon | $1,000 | $2,050 |
| Pennsylvania | N/A | $1,650 |
| Puerto Rico | N/A | $1,500[4,11] |
| Rhode Island | $1,300 | On Approval[2] |
| South Carolina | N/A | $1,650 |
| South Dakota | N/A | $1,250 |
| Tennessee | $900 | On Approval |
| Texas | $900 | On Approval |
| Utah | $925 | On Approval |
| Vermont | N/A | $1,700 |
| Virgin Islands | N/A | $1,800 |
| Virginia | $925 | On Approval |
| Washington | $1000 | On Approval |
| West Virginia | $1,000[1,6] | On Approval[2] |
| Wisconsin | N/A | $1,500 |
| Wyoming | $1,000 | On Approval[2] |

Notes:
[1]This fee covers the combined attorney's and notary's fees.
[2]Because this is not the preferred method of foreclosure, the servicer must obtain approval of its use from Fannie Mae's Regional Counsel prior to initiation by sending a request to nonroutine_litigation@fanniemae.com. Fannie Mae will provide procedural instructions and applicable fees at the time it grants approval.
[3]This fee applies to completed foreclosures. If the mortgage loan is reinstated after recordation of the Notice of Default (but before mailing of the Notice of Sale), the maximum fee is $500 or the maximum allowed by statute, whichever is less. If the mortgage loan is reinstated after mailing of the Notice of Sale but before the Trustee's Sale, the maximum fee is $750 or the maximum allowed by statute, whichever is less.
[4]An additional $200 will be permitted when the property is sold to a third party and the attorney must perform additional work to complete the transfer of title to the successful bidder.
[5]This fee applies to Strict Foreclosures. If the court orders a Foreclosure by Sale, the fee will be $1,950.
[6]This fee includes the attorney's fee, the notary's fee and the trustee's commission (or statutory fee).
[7]This fee includes reimbursement for any fee for the attorney's certificate of title.
[8]A fee of $3,400 will be permitted for judicial foreclosures in locations other than Honolulu County
[9]This fee increases to $1,400 for any case in which the attorney provides services for "proceedings subsequent" that involve registered land.
[10]In New York, the non-judicial foreclosure process is to be used only in connection with cooperative share loans. The fee includes all steps in the foreclosure process, including the transfer of the stock and the lease for an occupied cooperative unit. A fee of $2,400 will be permitted for judicial foreclosures in the City of New York and on Long Island (Nassau and Suffolk Counties).
[11]In addition to the allowable foreclosure fee, Fannie Mae will pay a notary fee up to the greater of $250 or one percent (1%) of the bid amount on the mortgage being foreclosed
[12]The allowable fee for foreclosures in Florida, where judgment is obtained as a result of an uncontested trial, is established at $3,000

86a                                                                                          86a

# EXHIBIT "C"

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

MARY E. GLOVER, individually
and on behalf of other similarly
situated former and current
homeowners in Pennsylvania,

        Plaintiffs

vs.

UDREN LAW OFFICES, P.C.,
a New Jersey debt collector,

        Defendant

CIVIL DIVISION

NO. GD-11-018015

MEMORANDUM AND ORDER OF COURT

HONORABLE R. STANTON WETTICK, JR.

Counsel for Plaintiffs:

Michael P. Malakoff, Esquire
Olivia Ryan, Esquire
Suite 200 Frick Building
437 Grant Street
Pittsburgh, PA 15219

Counsel for Defendant:

Jonathan J. Bart, Esquire
Suite 910
Two Penn Center Plaza
Philadelphia, PA 19102

NO. GD-11-018015

## MEMORANDUM AND ORDER OF COURT

WETTICK, J.

Plaintiff has filed a nine-count class action Complaint. In Counts I-IV, plaintiff raises claims under the Loan Interest Protection Act ("Act 6" or "LIPA"), 41 P.S. § 101 *et seq.* In Counts V-IX, plaintiff raises claims under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("Consumer Protection Law"), 73 P.S. § 201-1 *et seq.*

Defendant's preliminary objections seeking dismissal of each count of the nine-count Complaint are the subject of this Memorandum and Order of Court.

On August 2, 2002, plaintiff entered into a mortgage transaction with Washington Mutual Bank ("WaMu"). On August 18, 2005, plaintiff's mortgage was in default and she was told she owed $551.08 (Complaint Ex. C). On December 1, 2005, plaintiff and Bank entered into a forbearance agreement. The agreement stated that on "April 1, 2006, we will reevaluate your application for assistance. If you do not have evidence of full time employment at that time, we will have to deny your application" (Complaint Ex. D). On March 14, 2006, WaMu denied a loan workout.[1]

On April 10, 2006 defendant, as counsel for WaMu, filed a Complaint in Mortgage Foreclosure. The foreclosure complaint (Complaint Ex. F) in paragraph 6 asked for "Court Costs (anticipated, excluding Sheriff's Sale costs)" of $280.00 and "Attorneys Fees (anticipated and actual to 5% of principal)" in the amount of $1,250.00.

---

[1] Plaintiff complains that this denial was premature.

On June 7, 2006 WaMu "flip-flopped" (Complaint ¶ 21) and offered plaintiff a Loan Modification Agreement under which, beginning August 1, 2006, plaintiff would begin to again make payments but in an increased amount (Complaint Exs. H and I).

In paragraphs 22 - 24 of the Complaint, plaintiff alleges:

22. According to WaMu Home Loan's June 7, 2006 letter, the Loan Modification Agreement would add $2,237.73 to Ms. Glover's principal balance and $806.45 for delinquent interest and $1,431.19 for "escrow advance/set up." Exhibit H. In addition, the letter informed Ms. Glover that she owed $3,696 for "foreclosure fees & costs" (Exhibit H), an amount nearly double the $1,855 in actual and anticipated collection costs that WaMu Bank had demanded only two months earlier in its Foreclosure Complaint filed by Defendant-debt collector. (Exhibit F).

23. In its letter, WaMu Home Loans also demanded a certified or cashier's check for $3,696 and simultaneously and inconsistently demanded a certified or cashier's check "in the amount of $0.00." Exhibit H

24. Ms. Glover did not remit a check for $3,696. Neither WaMu Bank nor WaMu Home Loans thereafter notified her that such a payment was required nor exercised their rights under the Errors and Omissions Compliance Agreement of her loan, nor otherwise alert her that they did not consider her payments (in the precise monthly amounts demanded) as acceptance of the Loan Modification Agreement, because of the absence of a $3,696 check.

Plaintiff began making payments to WaMu.

The loan was transferred to Wells Fargo on December 1, 2006. On January 4, 2008, plaintiff and Wells Fargo entered into a loan modification/restructure and "it was mutually agreed that a contribution of $1,492.39 would be required, which will be applied toward the accrued delinquency" (Complaint Ex. S).

This Loan Modification Agreement states that the unpaid principal balance as of February 4, 2008 is $9,508.36 and the modified principal balance is $12,152.02. Exhibit S at 5 Part C explains how this new principal balance was arrived at:

Breakdown of Amounts due:

| | |
|---|---|
| Interest  (Plus Del Prin if Structured Finance mod) | $  784.34 |
| Escrow | $1,859.32 |
| Corp Recov/Title/Mod Fees/Atty/FC/BPO/Appraisal | $1,571.02 |
| Borrower's Payment Toward Arrearages | $1,571.02 |

. . .

Total Capitalized Amount                                    $2,643.66[2]

Plaintiff made payments in accordance with the loan modification agreement.

On June 9, 2008, plaintiff commenced a putative class action in this court alleging, *inter alia*, unfair and illegal lending and servicing practices against WaMu, Wells Fargo, and Udren.  The case was removed to the Federal District Court for the Western District of Pennsylvania at Civil Action No. 08-990.

In the current lawsuit, plaintiff raises state law claims against defendant that had been raised in the Federal Court proceedings.

## COUNTS I-IV

Plaintiff is pursuing a private cause of action under Act 6 pursuant to Section 502 of Act 6 which permits a person who has paid charges prohibited by or in excess of those allowed by law to recover the amount of the excess charges in a lawsuit against the person who collected such excess charges.[3]  This Section reads as follows:

---

[2]In other words, $1,859.32 (Escrow) plus $1,571.02 (some unknown part of which is "Atty") equals $2,643.66, when added to the prior unpaid principal balance equals the new unpaid principal balance of $12,152.02.

[3]Section 503 of Act 6 provides for a borrower or debtor who prevails to recover costs and expenses, including reasonable attorney's fees.

## § 502. Usury and excess charges recoverable

A person who has paid a rate of interest for the loan or use of money at a rate in excess of that provided for by this act or otherwise by law or has paid charges prohibited or in excess of those allowed by this act or otherwise by law may recover triple the amount of such excess interest or charges in a lawsuit against the person who has collected such excess interest or charges.

Under the structure of Act 6, a person may recover damages under Section 502 only upon a showing that the defendant charged fees in violation of other provisions of Act 6 or otherwise by law.[4] Section 406 is the provision in Act 6 upon which plaintiff relies to support her claims under Section 502. This provision reads as follows:

## § 406. Attorney's fees payable

With regard to residential mortgages, no *residential mortgage lender* shall contract for or receive attorney's fees from a residential mortgage debtor except as follows:

(1) Reasonable fees for services included in actual settlement costs.

(2) Upon commencement of foreclosure or other legal action with respect to a residential mortgage, attorney's fees which are reasonable and actually incurred by the residential mortgage lender may be charged to the residential mortgage debtor.

(3) Prior to commencement of foreclosure or other legal action attorneys' fees which are reasonable and actually not in excess of fifty dollars ($50) provided that no attorneys' fees may be charged for legal expenses incurred prior to or during the thirty-day notice period provided in section 403 of this act. (Emphasis added.)

Section 406 regulates only the fees that a residential mortgage lender may contract for or receive. A residential mortgage lender is defined in Section 101 of Act 6

---

[4]In Counts I-IV, plaintiff is not claiming that she paid fees prohibited by or in excess of those allowed by any other law.

- 4 -

as "any person who lends money or extends or grants credit and obtains a residential mortgage to assure payment of the debt." Defendant never lent money to plaintiff or obtained a residential mortgage from plaintiff. Thus, defendant is not a residential mortgage lender; defendant is, instead, a debt collector governed by Pennsylvania's Fair Credit Extension Uniformity Act, 73 P.S. § 2270.1 *et seq.*[5]

Since plaintiff relies solely on Section 406, since Section 406 applies only to residential mortgage lenders, and since defendant is not a residential mortgage lender, I am dismissing plaintiff's claims raised in Counts I-IV for failure to plead any violations of Act 6 that would allow recovery under Section 502.

I reach this result because I found no merit to the following argument raised by plaintiff: Section 502 creates private causes of action to *persons* which is defined to include any legal entity, and is not limited to residential mortgage lenders. Section 406 should be construed as having the same breadth as Section 502.

This argument ignores the most basic rule of statutory construction that words shall be given their ordinary meaning.

Furthermore, the Legislature knew the difference between the term *residential mortgage lender* which it used in Section 406 and the term *person* which it used in Section 502 because it defined both terms in Section 101. It would not have done so if the word *residential mortgage lender* used in Section 406 was intended to have the same meaning as the word *person* used in Section 502.

For reasons described in plaintiff's complaint, this same issue was previously addressed in the Federal District Court for the Western District of Pennsylvania in

---

[5]In this litigation, plaintiff does not allege that defendant violated any provisions of the Fair Credit Extension Uniformity Act.

*Glover v. Udren, Udren Law Offices, P.C.; Wells Fargo Home Mortgage; and Goldman Sachs Mortgage Co.,* Civil Action No. 08-990 (W.D. Pa. 2011). In a Report and Recommendation authored by United States Magistrate Judge Robert C. Mitchell (2011 WL 1485707), he ruled that plaintiff could pursue claims against Udren Law Offices, P.C. under Section 502 where plaintiff's claims were based on alleged violations of Section 406.[6]

In the Federal Court proceedings, Udren raised the same argument that it is raising in these proceedings. Plaintiff's claims are based on alleged violations of Section 406. However, Section 406 regulates only residential mortgage lenders. It does not regulate debt collectors.

Because of the expansive language of Section 502 providing for recovery of excessive charges against any *person* who has collected excess charges, Magistrate Judge Mitchell rejected Udren's argument. He stated: "If the legislature intended to limit recovery under Section 502 against only residential mortgage lenders, as Udren suggests, it would not have used the word 'person', a term specifically defined by the statute as 'not . . . limited to residential mortgage lenders.'" *Id.* at *8.

The difficulty with this reasoning is that Udren is not saying that Section 502 applies only to residential lenders. Udren is saying that Section 406 cannot be the vehicle for a Section 502 claim against Udren because Section 406 does not govern debt collectors. Udren is correct. In Section 406, the Legislature prohibited only

---

[6]For reasons that are irrelevant to this litigation, plaintiff is not claiming that I am required to follow or to give any weight to the Recommendation of Magistrate Judge Mitchell.

residential mortgage lenders from receiving any attorney's fees from a residential mortgage debtor except as provided for in subsections (1), (2), and (3) of Section 406.[7]

## COUNTS V-IX

While each of these five counts is based on alleged violations of the Consumer Protection Law, none of these alleged violations is based on violations of Pennsylvania's Fair Credit Extension Uniformity Act (73 P.S. § 2270.4).[8]

The activities of defendant are described in the following paragraphs of Plaintiff's Complaint:

> 13. Shortly thereafter, on a precise date now unknown, but between March 14, 2006 and April 10, 2006, Bill Murray, Esquire, a then partner or associate of Defendant-debt collector, contacted Ms. Glover by telephone and advised her that she had to pay $1,700 for about eleven (11) missed monthly payments and, in addition, pay attorney's fees and costs of about $1,697.28. See Exhibit E (Ms. Glover's handwritten notes were taken during Attorney Murray's call and reflects the substance of his telephone conversation). Defendant-debt collector

---

[7]The current version of Act 6 was enacted on January 30, 1974, P.L. 30, No. 6, effective immediately. This 1974 version of Section 406 (which has never been amended) applied only to residential mortgage lenders, and the 1974 version of Section 502 (which has never been amended) used the term *person*. Thus, it cannot be argued that Section 502 is later legislation that should be read as expanding Section 406.

Furthermore, even if Section 502 had been later legislation, any later legislation addressing Section 502 would not have altered the meaning of Section 406 if the Legislature chose only to amend Section 502. I have included this footnote because Magistrate Judge Mitchell appears to characterize Section 502 as a subsequent amendment intended to expand both Section 502 and Section 406.

[8]Section 4 of Pennsylvania's Fair Credit Extension Uniformity Act, 73 P.S. § 2270.1 *et seq.*, provides that a debt collector's violation of the Federal Fair Debt Collection Practices Act (15 U.S.C. § 1692 *et seq.*) constitutes a violation of the Pennsylvania Consumer Protection Law. Section 2270.4(b) regulates the practices of debt collectors. Section 2270.3(3)(ii) provides that the term *debt collector* includes an attorney whenever the attorney attempts to collect a debt "except in connection with the filing or service of pleadings or discovery or the prosecution of a lawsuit to reduce a debt to judgment."

and WaMu Home Loans demanded an immediate aggregate payment of $3,397.28. See Exhibit E.[9]

14. Defendant-debt collector filed a Foreclosure Complaint on April 10, 2006 in the Court of Common Pleas of Allegheny County, Pennsylvania at case number GD-05-8510. Exhibit F (Complaint) and Exhibit F-1 (Docket Entries).

. . .

18. The Foreclosure Complaint did not provide any supporting facts about how the claimed costs and attorney's fees were calculated. There were no documents showing the times when the attorney's fees were incurred, the attorney(s) involved, or their applicable hourly rates. Although the Foreclosure Complaint alleged that the attorney's fees were capped at 5% of the principal (which in this case would have totaled $485.18 (.05 x $9,703.57)), the Complaint nonetheless claimed $1,250 in actual and "anticipated" attorney's fees. Exhibit F.

. . .

32. As a result of the Loan Modification Agreement that Wells Fargo and Ms. Glover entered into on January 4, 2008, WaMu Bank no longer had any interest in her indebtedness. Yet Defendant-debt collector did not promptly withdraw its Foreclosure Complaint and/or reduce the debt claim to evidence the substantial amount claimed that Ms. Glover had repaid.

33. Although Defendant-debt collector had knowledge of the loan modification as early as March 3, 2008, it allowed the Foreclosure Complaint to remain active for twenty-two months after the debt had been (or at least substantially) paid. See Exhibit T (Foreclosure Filed History). After repeated requests, the complaint was belatedly withdrawn on November 25, 2009. See Exhibit F-1.

. . .

35. Defendant-debt collector has collected unlawful charges from Ms. Glover, including unincurred attorney's fees based on a flat-rate without court authorization, prior to a time when any fees should have been collected, in violation of the contract and state law.

. . .

---

[9]None of the claims raised by plaintiff in Counts V-IX is based on this paragraph.

46. Defendant-debt collector Udren used standardized billing practices in the foreclosure complaints that it caused to be filed for Washington Mutual in Pennsylvania that included demands for attorney fees (actual and anticipated) and costs (actual and anticipated).

Plaintiff's only claims are against the defendant law firm based on the conduct described above. In considering plaintiff's claims under the Consumer Protection Law based on alleged attorney misconduct, an issue arises as to under which circumstances does the Consumer Protection Law apply to the misconduct of a law firm.

In *Beyers v. Richmond*, 937 A.2d 1082 (Pa. 2007), the Pennsylvania Supreme Court considered whether the Consumer Protection Law applies to attorney misconduct.

Two Justices joined in an Opinion authored by Justice Fitzgerald in which he found merit to the case law of other states and Federal District Courts which "rejected the notion that it [state consumer protection laws] applied to attorney conduct in the context of the practice of law . . . ." *Id.* at 1089.

A Concurring Opinion of Chief Justice Cappy (to which Justice Baer joined) also concluded that Pennsylvania's Consumer Protection Law does not apply to attorneys practicing law:

> I agree with the majority, to the extent that it holds that as a matter of statutory construction, the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa.C.S. §§ 201-1 *et seq.*, does not apply to attorneys practicing law. *See* 1 Pa.C.S. § 1501 *et seq.* I disassociate myself from the remainder of the opinion. Because the issue of the UTPCPL's applicability is resolved on statutory grounds, any discussion of the constitutional grounds for the majority's holding is unnecessary. *See P.J.S. v. Pennsylvania State Ethics Com'n*, 555 Pa. 149, 723 A.2d 174, 176 (1999) ("[A] court should not reach the constitutional issue if the case can properly be decided on non-constitutional grounds.").

Also, the Dissenting Opinion of Justice Saylor distinguished between core functions of legal representation and an attorney's ancillary activities. This Dissenting Opinion cited with approval *Daniels v. Baritz*, 2003 WL 21027238, at *6 (E.D. Pa. 2003), which distinguished "between a lawyer's actions 'arising out of the actual practice of law' and his debt-collection practices, and holding that a claim that the latter activities violated the UTPCPL survived preliminary objections."

In *Yelin v. Swartz*, 790 F.Supp.2d 331 (E.D. Pa. 2011), the Court concluded that *Beyers* does not support a finding that the Pennsylvania Supreme Court intended to prohibit categorically the application of the Consumer Protection Law to attorneys. To the contrary, "in determining whether a plaintiff has stated a claim under the UTPCPL, the proper focus is on the act described in the complaint. If the complaint does not allege that the defendant committed misconduct during the course of practicing law, the mere fact that the defendant happens to be an attorney will not bar a UTPCPL claim (footnote omitted)." *Id.* at 338.

Finally, where a claim brought against a law firm attempting to collect a debt on behalf of a creditor is based on unfair or deceptive acts or practices, in Section 2270.3(3)(ii), the Legislature has drawn a line that excludes alleged unfair practices arising out of the filing of pleadings and the prosecution of a lawsuit to reduce a debt to judgment.

Since the Pennsylvania Fair Credit Extension Uniformity Act provides that violations of this Act constitute violations of the Consumer Protection Law, the Legislature would have intended that any legislation regulating unfair collection practices would exempt from coverage activities of a law firm in the prosecution of a lawsuit to reduce a debt to judgment. In other words, the Legislature would not have

intended for legislation that is not specifically directed to debt collectors to provide a remedy for conduct that is explicitly excluded from legislation that is directed to debt collectors.

I now consider defendant's preliminary objections to Counts V-IX.[10]

## COUNT V

Plaintiff describes this count as follows:

> Defendant-Debt Collector Violated the Unfair Trade Practices and Consumer Protection Law By Charging And Collecting Flat-Rate Or Percentage-Based Attorney's Fees Instead Of Hourly-Based Fees. (Incorporating Count I.)

The only factual allegations supporting this count are set forth in paragraph 77 where plaintiff avers that defendant-debt collector employed deceptive practices, in violation of the Consumer Protection Law "by filing Foreclosure Complaints that charge attorney's fees that were not based on hourly rates reflecting work actually performed, but that were flat-rate-based or percentage-based, in violation of both the mortgage contract and Act 6."[11]

The filing of foreclosure complaints constitutes attorneys practicing law. Furthermore, under the definition of *debt collector* in the Fair Credit Extension Uniformity Act, there is the exclusion for the filing of pleadings and prosecution of a lawsuit to reduce a debt to judgment.

For these reasons, I am dismissing Count V.

---

[10]Each count incorporates counts based on Act 6 which I have already dismissed.

[11]In paragraph 78, plaintiff alleges that homeowners paid attorney's fees requested. However, there is no claim that any attorney's fees were paid by the borrower to defendant.

## COUNT VI

Plaintiff describes this count as follows:

Defendant-Debt Collector Violated the Unfair Trade Practices and Consumer Protection Law By Charging And Collecting Fees and Costs That Were Not Actually Incurred. (Incorporating Count II.)

This count is based on allegations in paragraph 81 that "Defendant-debt collector employed deceptive practices, in violation of the UTPCPL, 73 P.S. § 201-3, by filing Foreclosure Complaints that charge attorney's fees that were not actually incurred, in violation of both the mortgage contract and Act 6."[12]

I am dismissing this count for the same reason that I dismissed Count V.

## COUNT VII

Plaintiff describes this count as follows:

Defendant-Debt Collector Violated the Unfair Trade Practices and Consumer Protection Law By Charging Attorney's Fees Prior To Or During The 30-Day Statutory Notice Period And By Charging And Collecting Attorney's Fees In Excess Of $50 Prior To Filing A Foreclosure Complaint. (Incorporating Count III.)

Plaintiff's claims are based upon factual allegations in paragraph 85 that "Defendant-debt collector employed deceptive practices, in violation of the UTPCPL, 73 P.S. § 201-3, by filing Foreclosure Complaints that charge attorney's fees incurred prior to or during the 30-day notice period provided for in the LIPA, 41 P.S. § 403, in violation of 41 P.S. § 406(3)"; and allegations in paragraph 86 that "Defendant-debt collector

---

[12]Plaintiff alleges in paragraph 82 that the homeowners paid attorney's fees. What plaintiff does not allege is that attorney's fees were paid directly to defendant as opposed to payment to defendant's client.

employed deceptive practices, in violation of the UTPCPL, 73 P.S. § 201-3, by filing Foreclosure Complaints that charge attorney's fees in excess of $50 incurred prior to filing the foreclosure complaint in violation of the LIPA, 41 P.S. § 406(3)."[13]

Since this count is also based on the contents of a complaint which defendant filed on behalf of its client, I am dismissing this count for the same reasons that I dismissed Counts V and VI. Furthermore, this count is based on allegations that defendant violated Section 406. I have ruled that Section 406 does not regulate a debt collector.

## COUNT VIII

Plaintiff describes this count as follows:

> Defendant-Debt Collector Violated the Unfair Trade Practices and Consumer Protection Law By Charging And Collecting Attorney's Fees Prior To Entry Of A Court Judgment And, In Instances Where A Court Entered Judgment Awarding Attorney's Fees, By Charging And Collecting Additional Attorney's Fees and Costs Prior To A Sheriff's Sale. (Incorporating Count IV).

This count is based upon allegations in paragraph 90 that "Defendant-debt collector employed deceptive practices, in violation of the UTPCPL, 73 P.S. § 201-3, by filing Foreclosure Complaints that charge foreclosure-related unliquidated attorney's fees prior to the entry of a court judgment in violation of the LIPA, 41 P.S. § 406(2)" and allegations in paragraph 91 that "In instances where a court entered judgment awarding foreclosure-related attorney's fees, Defendant-debt collector employed deceptive practices, in violation of the UTPCPL, 73 P.S. § 201-3, by filing Foreclosure Complaints

---

[13]While plaintiff alleges in paragraph 87 that the homeowners paid attorney's fees requested in whole or in part, there are no allegations that payments were made to defendant, rather than to defendant's client.

that charge additional foreclosure-related attorney's fees and costs prior to a Sheriff's sale in violation of LIPA, 41 P.S. § 406(2)."[14]

This count is also based upon the contents of a complaint which defendant filed on behalf of its client. Thus, for the reasons set forth in Counts V-VII, I am dismissing this count. Furthermore, the count is based solely on violations of Act 6 ("LIPA"). I have ruled that Act 6 does not regulate debt collectors.

## COUNT IX

Plaintiff describes this count as follows:

The Defendant-Debt Collector's UTPCPL Deceptive Practices Described in Counts V, VI, VII, and VIII Violate Act 6.

Count IX is based on the allegations of paragraph 95 that "Defendant-debt collector employed deceptive practices, in violation of the UTPCPL, 73 P.S. § 201-3, by filing Foreclosure Complaints that charge prohibited foreclosure-related attorney's fees as described in Counts V, VI, VII, and VII [sic] above."

Since this count is also based on the contents of the foreclosure complaint filed by defendant on behalf of its client. I am dismissing this count for the same reasons that I have dismissed Counts V-VIII.

Furthermore, this count is based on alleged violations of Act 6. I have ruled that Section 406 of Act 6 does not regulate debt collectors.

For these reasons, I enter the following Order of Court:

---

[14]While paragraph 92 alleges that the homeowners paid attorney's fees requested in whole or part, there is no allegation that they made payments to defendant.

- 14 -

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
CIVIL DIVISION

MARY E. GLOVER, individually
and on behalf of other similarly
situated former and current
homeowners in Pennsylvania,

            Plaintiffs

    vs.

UDREN LAW OFFICES, P.C.,
a New Jersey debt collector,

           Defendant

NO. GD-11-018015

## ORDER OF COURT

On this __13__ day of June, 2012, it is hereby ORDERED that defendant's preliminary objections to plaintiff's complaint are granted and each count within plaintiff's complaint is dismissed with prejudice.

BY THE COURT:

_____
WETTICK, J.

# EXHIBIT "D"



# NOTICES

## Adjustment to Definition of "Base Figure" in the Loan Interest and Protection Law

**[41 Pa.B. 6684]**
**[Saturday, December 10, 2011]**

The Department of Banking (Department), as required by the definition of "base figure" in section 101 of the act of January 30, 1974 (P. L. 13, No. 6) (41 P. S. § 101), known as the Loan Interest and Protection Law, is publishing the following notice regarding the inflation-adjusted base figure for the calendar year 2012. The Department has determined that the current base figure

of $221,540 adjusted for annual inflation using the "Consumer Price Index—All Urban Consumers: U.S. All Items 1982-84 = 100" published by the United States Department of Labor Bureau of Labor Statistics results in a base figure of $230,110. This new base figure will be effective January 1, 2012, for the calendar year 2012.

GLENN E. MOYER,
Secretary

**[Pa.B. Doc. No. 11-2111. Filed for public inspection December 9, 2011, 9:00 a.m.]**

No part of the information on this site may be reproduced for profit or sold for profit.

This material has been drawn directly from the official *Pennsylvania Bulletin* full text database. Due to the limitations of HTML or differences in display capabilities of different browsers, this version may differ slightly from the official printed version.



# NOTICES

## DEPARTMENT OF BANKING AND SECURITIES

### Adjustment to Definition of "Base Figure" in the Loan Interest and Protection Law

**[42 Pa.B. 6899]**
**[Saturday, November 3, 2012]**

The Department of Banking and Securities (Department), as required by the definition of "base figure" in section 101 of the act of January 30, 1974 (P.L. 13, No. 6) (41 P.S. § 101), known as the Loan Interest and Protection Law, is publishing the following notice regarding the inflation-adjusted base figure for the calendar year 2013. The Department has determined that the current base figure of $230,110 adjusted for annual inflation using the "Consumer Price Index—All Urban Consumers: U.S. All Items 1982-84 = 100" published by the United States Department of Labor Bureau of Labor Statistics results in a base figure of $234,692. This new base figure will be effective January 1, 2013, for the calendar year 2013.

GLENN E. MOYER,
Secretary

**[Pa.B. Doc. No. 12-2143. Filed for public inspection November 2, 2012, 9:00 a.m.]**

No part of the information on this site may be reproduced for profit or sold for profit.

This material has been drawn directly from the official *Pennsylvania Bulletin* full text database. Due to the limitations of HTML or differences in display capabilities of different browsers, this version may differ slightly from the official printed version.

The Pennsylvania BULLETIN   BULLETIN TOC • PREV • NEXT • NEXT BULLETIN • SEARCH • HOME

webmaster@PaBulletin.com

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

---

DALE KAYMARK, individually and on behalf :
of other similarly situated current and former :
homeowners in Pennsylvania, :
                                         :      No.: 2:13-cv-00419-CRE
         Plaintiff, :
                                           :
v. :
                                           :      Electronically Filed
BANK OF AMERICA, N.A. and UDREN :
LAW OFFICES, P.C., :
                                           :
        Defendants. :
                                           :

---

### DEFENDANT BANK OF AMERICA, N.A.'S
### MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Bank of America, N.A. moves the Court to dismiss, with prejudice, all the purported claims asserted against Bank of America, N.A. in Plaintiff's Amended Complaint, specifically Plaintiff's purported claims under the Pennsylvania Fair Credit Extension Uniformity Act (Count I), Plaintiff's purported claims under the Pennsylvania Unfair Trade Practices and Consumer Protection Law (Count III), and Plaintiffs' purported common law claims for breach of contract (Count IV). Plaintiff has failed to state any claim against Bank of America, N.A. upon which relief can be granted.

The grounds for this Motion are set forth in more detail in the Memorandum of Law in Support of Defendant Bank of America, N.A.'s Motion to Dismiss Plaintiff's Amended Complaint, which was filed simultaneously with this Motion and is incorporated herein.

Wherefore, Defendant Bank of America, N.A. requests that the Court dismiss all of Plaintiff's claims against Bank of America, N.A. (specifically Counts I, III, and IV of the Amended Complaint), with prejudice, for failure to state a claim upon which relief can be granted. A proposed order is submitted herewith.

Respectfully submitted,

Dated: June 3, 2013

/s/ Thomas L. Allen
Thomas L. Allen (SBN 33243)
  tallen@reedsmith.com
Nellie E. Hestin (SBN 311788)
  nhestin@reedsmith.com
REED SMITH LLP
Reed Smith Centre
225 Fifth Avenue
Pittsburgh, PA  15222-2716
Telephone: +1 412 288 3131
Facsimile: +1 412 288 3063

Andrew J. Soven (PA I.D. 76766)
  asoven@reedsmith.com
Marc A. Goldich (PA I.D. 93055)
  mgoldich@reedsmith.com
REED SMITH LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103-7301
Telephone: +1 215 851 8100
Facsimile:+1 215 851 1420

*Counsel for Defendant Bank of America, N.A.*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel or parties of record electronically. I hereby certify that I have mailed by U.S. Postal Service the document to any non-CM/ECF participants.


REED SMITH LLP


By: */s/ Thomas L. Allen*                        
     Thomas L. Allen

Dated:  June 3, 2013

# EXHIBIT A

You can use your browser **BACK** button to return to previous page.

[New Case Number]  [Sheriff Service History]  [Notification History]  [Docket Report]  [Account Information]
[Home]

## MG-12-001699       Bank of America N.A. vs Kaymark

| | | | |
|---|---|---|---|
| *Filing Date:* | **09/13/2012** | *Case Type:* | **Mortgage Foreclosure** |
| *Filing Time:* | | *Court Type:* | **Mortgage Foreclosure** |
| *Related Cases:* | **--** | *Current Status:* | **Praecipe to Withdraw** |
| *Judge:* | **James Joseph M** | *Jury Requested:* | **No** |
| *Amount In Dispute:* | **$ 230839.92** | | |

# HELD FOR CONCILIATION

[Property Information]

**\*Click on PartyID hyperlink to see Alternative name for the party.**

## Parties

### -- Litigants --

| ID | LName | FName | MI | Type | Address | Initial Service Completion | Attorney |
|---|---|---|---|---|---|---|---|
| @1927391 | **Bank of America N.A.** | --- | --- | **Plaintiff** | **16001 North Dallas Parkway Addison TX 75006** | -- | **Flehinger Elana B.,** |
| @1197259 | **Kaymark** | **Dale** | **A** | **Defendant** | **425 Richmont Dr. Imperial PA 15126 -9315** | **10/5/2012 14:45** | -- |

### -- Attorney --

| ID | LName | FName | MI | Type | Address | Phone |
|---|---|---|---|---|---|---|
| 209197 | **Flehinger** | **Elana** | **B.** | **Plaintiff's Attorney** | **Udren Law Office P.C. 111 Woodcrest Road Suite 200 Cherry Hill NJ 08003** | **(856) 6695400** |
| 309091 | **Bellino** | **Paige** | --- | **Attorney** | **No Default Address Available** | **(856) 6695400** |
| 206228 | **Gaunce** | **Nicholas** | **Morgan** | **Attorney** | **No Default Address Available** | -- |
| 11048 | **Malakoff** | **Michael** | **P** | **Attorney** | **No Default Address Available** | **(412) 2818400** |
| PROSE | **Pro Se** | --- | --- | **Attorney** | **No Default Address Available** | -- |

### -- Non Litigants --

| ID | LName | FName | MI | Type | Address | Phone |
|---|---|---|---|---|---|---|
| JJAMES | **James** | **Joseph** | **M** | **Judge** | **No Default Address Available** | **(412)3505598** |

**\*Click on DocketType hyperlink to see Judgments for that Docket.**
**Document numbers in the DOCUMENT column may not be consecutive.**

| | Docket Entries | | | |
|---|---|---|---|---|
| **Filing Date** | **Docket Type** | **Docket Text** | **Filing Party** | **Document** |
| 01/18/2013 | Praecipe to Withdraw | Plaintiff's Preliminary Objections to Defendant's Affirmative Defenses Without Prejudice | Bank of America N.A. | Document 14 |
| 01/17/2013 | Exhibits | | Kaymark Dale A | Document 13 |
| 01/17/2013 | Brief in Opposition | to pltf's P.O.'s | Kaymark Dale A | Document 12 |
| 01/15/2013 | Motion & Order | Dated 01/15/2013 Lauren Darbouse, Esq. and Land Denha Law offices are permitted to withdraw from representation of the Deft. McCarthy, J. | Kaymark Dale A | Document 11 |
| 12/19/2012 | Order of Court - Held for Conciliation | Dated 12/17/12. Ordered Held for Conciliation. James, J. eodie copies mailed 12/19/12. | James Joseph M | Document 10 |
| 12/14/2012 | Conciliation Requested (MG) | | Kaymark Dale A | Document 9 |
| 12/11/2012 | Preliminary Objections | To Deft's. Affirmative Defense. 1-24-13, 11:15, Motions. | Bank of America N.A. | Document 8 |
| 12/07/2012 | Affidavit of Non-Military Service | | Bank of America N.A. | Document 7 |
| 11/09/2012 | Preliminary Objections | to defendant's affirmative defenses | Bank of America N.A. | Document 6 |
| 10/25/2012 | Preliminary Objections | | Bank of America N.A. | Document 5 |
| 10/15/2012 | Answer | Filed by Lauren D. Darbouze, Esq. | Kaymark Dale A | Document 4 |
| 10/08/2012 | Sheriff Return | Dale A Kaymark was served with Complaint on 10/5/2012 by Served - Defendant(s) Personally Served. | Bank of America N.A. | Sheriff Return |
| 09/14/2012 | | by Elana B. Flehinger Esq. | | Document 2 |

| | Entry of Appearance and Answer | | | Bank of America N.A. | |
| --- | --- | --- | --- | --- | --- |
| 09/13/2012 | Complaint | | | Bank of America N.A. | Document 1 |

| | | Services | | | | | | Complete Service History |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Desc | Name | Service Address | Person Served | Served By | Service Date | Service Time | Status | |
| Complaint | Dale A Kaymark | 108 Economy Grade Road Imperial, PA 15108 Coraopolis Boro | Dale A Kaymark | Jules Caye | 10/5/2012 | 14:45 | Served - Defendant(s) Personally Served | |

---

## If you don't have Adobe Acrobat Reader to view documents, you can get it here.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DALE KAYMARK, individually and on | ) | Civil Action No. 13-CV-0419 |
| behalf of other similarly situated and former | ) | |
| homeowners in Pennsylvania, | ) | United States District Judge |
|     Plaintiffs, | ) | Cathy Bissoon |
| | ) | United States Magistrate Judge |
|     v. | ) | Cynthia Reed Eddy |
| | ) | |
| BANK OF AMERICA, N.A., and | ) | |
| UDREN LAW OFFICES, P.C., | ) | |
|     Defendants. | ) | |

## REPORT AND RECOMMENDATION

### I.    RECOMMENDATION

Plaintiff Dale Kaymark defaulted on a mortgage held by Bank of America, N.A. ("BOA"). On September 13, 2012, Udren Law Offices, P.C. ("Udren"), acting on BOA's behalf, filed a Foreclosure Complaint in the Court of Common Pleas of Allegheny County, Pennsylvania. Represented by counsel, Plaintiff is contesting the foreclosure, and adversary proceedings are currently pending in state court.

On March 31, 2013, Plaintiff filed a putative class action complaint seeking declaratory and monetary relief in the Court of Common Pleas of Allegheny County, Pennsylvania, alleging BOA and Udren violated several complimentary state and federal fair debt collection laws, and that BOA breached its mortgage contract. Defendants filed a Notice of Removal (ECF No. 1) in this Court, invoking two bases of federal court jurisdiction: federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1441, and diversity jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1453(b), and 28 U.S.C. §§ 1332 and 1441.

Defendants filed separate motions to dismiss the removed complaint, which became moot when Plaintiff filed an Amended Complaint (ECF No. 23) on May 20, 2013. The Amended

Complaint, filed on Plaintiff's own behalf and that of the putative class, states four counts: Count I, against BOA only, for violating the Pennsylvania Fair Credit Extension Uniformity Act ("FCEUA"), 73 P.S. §2270.4(b)(5) and §2270.4(b)(6); Count II, against Udren only, for violating the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692e(2)(A), e(5) and e(10) and §1692f; Count III, against BOA and Udren, for violating the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. §201-2(4); and Count IV, against BOA only, for common law breach of contract (the Mortgage).

Udren and BOA each filed a Motion to Dismiss the Amended Complaint (ECF Nos. 24 and 26, respectively), which are ripe for recommendation. For the foregoing reasons, after careful consideration of the record before the Court, the motions and responses, and the briefs in support and in opposition, the Court recommends that the motions to dismiss be granted, and that the case be dismissed with prejudice.

## II.      REPORT

### A.      Facts Averred in Amended Complaint (ECF No. 23)

The well-plead facts averred in the Amended Complaint, accepted as true with all reasonable inferences taken in the light most favorable to Plaintiff, the non-moving party, set forth the following.[1] Plaintiff is a resident and citizen of Pennsylvania. BOA, the holder of Mr. Kaymark's Mortgage, is a national bank having its principal place of business in California. The

---

[1] Defendants make much of the fact that Plaintiff abandoned what they deem to have been "the crux" of his initial state court complaint, a claim brought pursuant to the Pennsylvania Loan Interest and Protection Law (also known as "Act 6"), 41 Pa. Stat. § 403, when he realized he did not meet the jurisdictional threshold for such a claim. Defendants see this as a sign of weakness of the current four counts that made the final cut to the Amended Complaint. Defendants attempt to diminish the cogency of the current, "weaker," claims made in the Amended Complaint by comparing them to the "stronger" claim Plaintiff abandoned, but this is of no more than historical interest adding no assistance in the Court's determination of whether the operative Amended Complaint sets forth claims with sufficient specificity to withstand *Twombley/Iqbal* scrutiny and survive the motions to dismiss.

2

Udren law firm is a Pennsylvania professional corporation with its principal office in Philadelphia.

In December 2006, Mr. Kaymark refinanced his home in Coraopolis, Pennsylvania, executing a Note for $245,600.00 and granting BOA a Mortgage. Amended Complaint, (ECF No. 23), at ¶ 4. On or about August 1, 2011, BOA sent Plaintiff a document that purported to be an "Act 91 Notice" required by the Housing Finance Agency Law ("Act 91"), 35 P.S. §1680.403c, which requires mortgage holders considering foreclosure to send homeowners a notice that includes, among other things, an accurate, itemized breakdown of the total amount past due as of the date of the notice, informs the homeowner he is entitled to thirty-three (33) days to have a face-to-face meeting with a consumer credit counseling agency, and advises the homeowner he can apply for financial assistance under the state-funded Homeowner's Emergency Mortgage Assistance Program. Amended Complaint, (ECF No. 23), at ¶¶ 7-9, and Exhibit A thereto (ECF No. 23-1). Plaintiff alleges BOA's Notice failed to satisfy Act 91 "in two important respects. First, BOA's Notice misrepresented the outstanding amount due and owing [and did not] provide an accurate default amount due as of the date of mailing . . . ." *Id.* at ¶¶ 10-11. "Second, BOA's Notice misrepresented the amount of time Mr. Kaymark had to meet with a consumer credit counseling agency" as "thirty (30) days . . . [as] opposed to the thirty-three (33) days he was entitled to by the statute. *See* Act 91, §1680.403c." *Id.* at ¶ 12.

Udren's involvement began on September 13, 2012, when it filed a Verified Foreclosure Complaint for BOA against Kaymark in state court. *Id.* at ¶ 15; Foreclosure Complaint, Exhibit B to Amended Complaint, (ECF No. 23-2). Plaintiff challenges the accuracy of the Foreclosure Complaint as follows:

16. The Foreclosure Complaint, ¶6, stated that as of the pre-foreclosure date of July 12, 2012, a total of $230,839.92, divided into several categories, was due and owing.

| | |
|---|---|
| Unpaid Principal Balance | $213,224.26 |
| Accumulated Interest (07/01/2011-07/12/2012) | $13,452.47 |
| Accumulated Late Charges | $177.74 |
| Escrow Deficit/(Reserve) | $1,935.45 |
| **Title Report** | **$325.00** |
| **Attorney Fees** | **$1,650.00** |
| **Property Inspection** | **$75.00** |
| GRAND TOTAL | $230,839.92 |

The bolded amounts are the complained about foreclosure fees and costs. Furthermore, the attorneys' fees of $1,650.00 and the foreclosure costs, as demanded, were not due or owing as of July 12, 2012.

17. In addition, the Foreclosure Complaint failed to provide any loan contract documentation that the demanded fixed expenses and fees were authorized by any agreement between the parties or were incurred, despite the Rule that any such documents relied upon must be attached. See Pa.R.Civ.P. 1019(i). No such documentation exists. In addition, it is believed, and therefore averred, that BOA never incurred charges for the claimed professional services as of July 12, 2012.

18. With respect to attorneys' fees, the Foreclosure Complaint demanded a flat amount of $1,650.00, $325.00 for a title report, and $75.00 for a property inspection. Not only are these sums not alleged to reflect work Udren performed, but there is no indication that BOA ever paid them and, if it did, when. In accord with the loan contracts, only reasonable fees, actually incurred may be recovered.

19. For these reasons, Mr. Kaymark's current account balance (payoff amount) was falsely inflated upon the filing of the Foreclosure Complaint. Currently, it reflects paid (or liened) and unpaid foreclosure-related fees and legal expenses. The lien wrongly caused a diminution in the value of Mr. Kaymark's property. Mr. Kaymark has suffered deprivation of property equal to the charges improperly liened against, and encumbering, his property.

Amended Complaint, (ECF No. 23), at ¶ 16-19.

Plaintiff attaches the Mortgage to his Amended Complaint, Exhibit C, (ECF No. 23-3),

and quotes selections from two of its provisions regarding BOA's manner and priority of posting

and applying payments to the Mortgage balance, and avers that the Act 91 Notice changed the manner of applying payments in derogation of the terms of the Mortgage. *Id.* at ¶¶ 20-21.

Part III of the Amended Complaint makes "class allegations" on behalf of a putative class of homeowners regarding the requisite numerosity, predominance and commonality, typicality, superiority and adequacy of representation to satisfy Rule 23(a), Fed.R.Civ.P. 23(a). *Id.* at ¶¶ 22-27. The class would consist of Pennsylvania homeowners who: received an Act 91 Notice that failed to accurately contain "an itemized breakdown of the total amount past due" and incorrectly informed the delinquent homeowner that he had a thirty (30) day time period to arrange a meeting with a consumer credit agency; were "charged and/or liened foreclosure fees and costs in excess of fifty dollars during a time proceeding [sic] the filing of the foreclosure action;" and "were charged and/or liened foreclosure fees and costs in fixed amounts not authorized." *Id.* at ¶22.

Each count of the Amended Complaint is predicated on the same common nucleus of facts -- that BOA and Udren were not authorized to state in the pre-foreclosure Notice of delinquency, or include in the Foreclosure Complaint, an amount that included fixed and as-yet-to-be-incurred attorneys' fees (in the amount of $1,650.00), cost of a title report (in the amount of $325.00), and cost of a property inspection (in the amount of $75.00).

### Count 1, against BOA only, for violating the Pennsylvania Fair Credit Extension Uniformity Act ("FCEUA"), 73 P.S. §2270.4(b)(5) and §2270.4(b)(6)

Count 1 asserts that BOA's Act 91 Notice was defective and violated the Pennsylvania FCEUA by using "false, deceptive or misleading representation or means in connection with the collection of [a] debt," and "unfair or unconscionable means to collect or attempt to collect [a] debt." *Id.* at ¶ 29. Specifically, Plaintiff alleges that: (a) the Act 91 Notice "was misleading and attempted to collect an amount beyond that required to cure the default, thereby overstating the

amount owed . . . [which] constitutes a false representation of the character, amount, or legal status of a debt in violation of the FCEUA, §2270.4(b)(5)(ii), as well as a false representation or deceptive means to attempt to collect a debt in violation of the FCEUA, §2270.4(b)(5)(x)"; (b) the Act 91 Notice improperly "threatened legal action if Mr. Kaymark did not cure his default within thirty (30) days, as opposed to the thirty-three (33) days he was statutorily entitled to . . . , [which] violated the FCEUA, §2270.4(b)(5)(v), and constituted a 'false representation or deceptive means to attempt to collect a debt' in violation of the FCUEA, §2270.4(b)(5)(x)"; (c, d) that the Foreclosure Complaint sought "attorneys' fees and legal costs" that were not authorized by the "loan contracts" because the fees and costs were "liened against [Plaintiff's] property before such charges were incurred and before the foreclosure action was commenced"; and (e) that "BOA unilaterally changed how it allocated Homeowners' monthly payments in its Act 91 Notice and thereby misrepresented the actual terms of its mortgages." *Id.* at ¶ 30(a-e).[2]

### Count 2, against Udren only, for violating the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692e(2)(A), e(5) and e(10) and §1692f

Count 2 is brought pursuant to the FDCPA, 15 U.S.C. § 1692 *et seq*., against Udren as a debt collector. Specifically, the Amended Complaint alleges:

> 35. The loan contracts governing the debt at issue prohibit the debt collector from collecting either unreasonable flat fees (which, by their nature, are not fees for specific services) or fees for services never incurred. The Foreclosure Complaint at issue never establishes any loan contract that authorizes fixed fee demands and never avers that such fees were actually incurred or paid for. Consequently, it is averred that BOA never incurred

---

[2] Plaintiff has made no effort to flesh out his assertion that BOA breached his Mortgage and violated Act 91 and the FCEUA by purporting to "change" the way Plaintiff's payments would be allocated as between interest, principal, late charges, and other fees. Plaintiff does not explain how the allocation provisions in the Mortgage and the Act 91 Notice differ. Plaintiff merely quotes both provisions and concludes that BOA "unilaterally alter[ed] its own Mortgage." *Id.* at ¶¶ 20-21. Plaintiff's conclusory assertion that the Act 91 Notice somehow unilaterally "changed" the terms of and breached the Mortgage is entitled to no weight pursuant to *Iqbal* and *Twombly*. Plaintiff has failed to allege any facts showing that the Act 91 Notice actually changed the allocation method described in the Mortgage, and the Court deems this sub-claim of his FCEUA and breach of contract claims to have been abandoned.

charges for the alleged professional services claimed, and that such charges did not reflect reasonable charges for services actually performed.

36. The non-contractual, and therefore unlawful, attorneys' fees and legal costs in the Foreclosure Complaint caused Udren to violate the FDCPA, §1692e because the inflated amount falsely represented the "character, amount or legal status" of Mr. Kaymark's debt, thereby rendering the complaint a "false, deceptive or misleading representation." FDCPA, §1692e(2)(A). The inclusion of such fees also violated the FDCPA, §1692e(10), which prohibits "the use of any false representation or deceptive means to collect or attempt to collect any debt," and the FDCPA, §1692e(5), which prohibits "the threat to take any action that cannot legally be taken."

37. Similarly, Udren's attempt to collect unlawful attorneys' fees and legal costs violated the FDCPA, §1692f because the attempted collection "of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt" constitutes an "unfair or unconscionable means" to collect a debt. See FDCPA, §1692f(1).

*Id.* at ¶¶ 35-37.

**Count 3, against BOA and Udren, for violating the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. §201-2(4)**

Count 3 alleges that both Defendants misrepresented the characteristics of their services and engaged in "fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding," in violation of the UTPCPL, 73 P.S. §201-2(4), by charging Plaintiff and similarly situated homeowners attorneys' fees and legal costs that were not authorized by their loan contracts. *Id.* at ¶ 41. Additionally, Plaintiff claims BOA "unilaterally changed how it allocated homeowners' monthly payments in its Act 91 Notice and thereby misrepresented the actual terms of its mortgages." *Id.* at ¶ 42. Plaintiff claims that he and the other homeowners

suffered an ascertainable loss by either paying the misrepresented and overcharged amounts in whole or in part, or, where Homeowners did not make an actual monetary payment, Homeowners suffered an ascertainable loss of property when the unauthorized charges were liened against their homes, thereby decreasing the value of their property. The fact of the Homeowners' payments, in part for the unauthorized charges added to their debt, established reliance on Defendants' overcharges and misrepresentations.

*Id*. at ¶ 43.

### Count 4, against BOA only, for common law breach of contract

Count 4 asserts that BOA "changed how it allocated Homeowners' monthly payments" (*see* note 2, *supra*) and breached its contractual obligations to Mr. Kaymark and the class by charging and/or collecting legal fees and costs in violation of the terms of the standardized mortgages it entered into . . ." by charging flat attorneys' fees for work that had not yet been performed and costs that had not yet been incurred. *Id*. at ¶ 45-46, 48. Moreover, Plaintiff avers that the "fees enumerated in the Foreclosure Complaint were never established to be specific charges actually incurred for services actually performed. Yet those fees were charged to and liened against his property. . . [and] amounted to charging fees for services not performed, in contrast to the mortgage's explicit language requiring that any fees be for services actually performed." *Id*. at ¶ 47.

Plaintiff requests the Court declare that the conduct complained of violates the various state and federal debt collection laws, declare BOA to have breached the Mortgage contract, and to award monetary and exemplary damages, attorneys' fees and costs.

### B.     The Motions to Dismiss

Udren filed a Motion to Dismiss the Amended Complaint (ECF No. 24) against it at Counts 2 (FDCPA) and 3 (UTPCPL), for failure to state a claim under Fed.R.Civ.P. 12(b)(6). BOA filed a Motion to Dismiss the Amended Complaint (ECF No. 26) against it at Counts 1 (FCEUA), 3 (UTPCPL), and 4 (breach of contract) for failure to state a claim under Fed.R.Civ.P. 12(b)(6). For the reasons set forth below, this Court finds that the motions to dismiss have merit and should be granted, and that all claims should be dismissed.

### C.    Rule 12(b)(6) Standards

In light of the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a complaint may be dismissed pursuant to Rule 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Phillips v. Co. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). While *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957) allowed dismissal of a claim only if "no set of facts" could support it, under *Twombly*, and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), a claim for relief under Rule 12(b)(6) now "requires more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678.

In *Iqbal*, the Supreme Court held that a claim is facially plausible when its factual content allows the court to draw a reasonable inference that the defendants are liable for the misconduct alleged. *Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009) (citing *Iqbal*, 556 U.S. at 678). The plausibility standard in *Iqbal* "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. While well-pleaded factual content is accepted as true for purposes of whether the complaint states a plausible claim for relief, legal conclusions couched as factual allegations or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to an assumption of truth. *Iqbal*, 566 U.S. at 678. "Where the well-pleaded facts do not permit the court to infer more than a mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'" *Iqbal*, 566 U.S. at 679 (quoting Fed.R.Civ.P. 8(a)(2)). In order to satisfy the requirement of Fed.R.Civ.P. 8(a)(2) that a plaintiff include a "short and plain statement of the claim showing that the pleader is entitled to relief," a plaintiff must aver sufficient factual allegations which "nudge" its claims "across the line from conceivable to plausible." *Id.*

As the Court of Appeals for the Third Circuit explained in *Fowler*, 578 F.3d at 210–11:

> . . . The Supreme Court's opinion in *Iqbal* extends the reach of *Twombly*, instructing that all civil complaints must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S.Ct. at 1949.
>
> Therefore, after *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. *Id*. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id*. at 1950. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Phillips*, 515 F.3d at 234–35. As the Supreme Court instructed in *Iqbal*, ... [the] "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

*See also Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 674, 679); *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011), *cert. denied*, ––– U.S., –––– 132 S.Ct. 1861 (2012); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

In considering a Rule 12(b)(6) motion, a court accepts all of the plaintiff's allegations as true and construes all inferences in the light most favorable to the non-moving party. *Umland v. Planco Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008) (citing *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006)). However, a court will not accept bald assertions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *See In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 215 (3d Cir. 2002); *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 n. 8 (3d Cir. 1997). A court is not required to consider legal conclusions; rather, it should determine whether the plaintiff should be permitted to offer evidence in support of the allegations. *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir. 2000).

Therefore, a plaintiff must put forth sufficient facts that, when taken as true, suggest the required elements of a particular legal theory. *See Wilkerson v. New Media Tech. Charter Sch., Inc.*, 522 F.3d 315 (3d Cir. 2008) (citing *Phillips*, 515 F.3d at 224). This standard does not impose a heightened burden on the claimant above that already required by Rule 8, but instead calls for fair notice of the factual basis of a claim while raising a "reasonable expectation that discovery will reveal evidence of the necessary element." *Weaver v. UPMC*, 2008 WL 2942139, *3 (W.D.Pa. 2008) (citing *Phillips*, 515 F.3d at 234; and *Twombly*, 550 U.S. at 555).

In deciding a motion to dismiss, the Court should consider the allegations in the complaint, exhibits attached to the complaint and matters of public record. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993), *cert. denied*, 510 U.S. 1042 (1994). The Court may also consider "undisputedly authentic" documents where the plaintiff's claims are based on the documents and the defendant has attached a copy of the document to the motion to dismiss. *Id. See also Benner v. Bank of America, N.A.*, 917 F.Supp.2d 338, 345 n.6 (E.D.Pa. 2013) ("In deciding a motion to dismiss, a court may consider documents that are attached to or submitted with the complaint, and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.") (internal quotations omitted) (quoting *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) and 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed. 2004)). The Court need not assume that the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 263 (3d Cir. 1998), nor credit a complaint's "bald assertions" or "legal conclusions." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997).

### III.   LEGAL ANALYSIS

### A.  The Pennsylvania Claims

Because these claims share essential common elements, the Court will address the state claims together. To recap, Count 1 alleges BOA violated the Pennsylvania Fair Credit Extension Uniformity Act ("FCEUA"), 73 P.S. §2270.4(b)(5) and §2270.4(b)(6); Count 3 alleges both BOA and Udren violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. §201-2(4), and Count 4 alleges BOA breached its mortgage contract. Each of the Pennsylvania claims requires a plaintiff to aver, *inter alia*, that Defendants' conduct caused ascertainable loss or damages resulting from the conduct. Plaintiff's own averments have affirmatively pled himself out of the state causes of action as they show he did not, in fact, sustain any actual loss or damage.

### 1.  Counts 1 and 3 - the Statutory Claims

The Pennsylvania FCEUA, 73 Pa. Stat. § 2270.1 *et seq*., is enforced by the remedial provision of the Pennsylvania UTPCPL, 73 Pa. Stat. § 201–9.2. Section 2270.4(a) of the FCEUA states that it "shall constitute an unfair or deceptive debt collection act or practice under this act if a debt collector violates any of the provisions of the Fair Debt Collection Practices Act. . . ."

> As recently explained by a colleague in the Eastern District of Pennsylvania,
>
> a violation of the FCEUA "shall constitute a violation of the . . . ["UTPCPL"]." *Id*. § 2270.5(a). Since the FCEUA does not provide individuals with the right to institute private causes of action for violations, individual plaintiffs must use 73 Pa. Stat. § 201–9.2, the remedial provision of the UTPCPL, to obtain relief. Therefore, the law governing UTPCPL claims also governs Plaintiff's FCEUA claim in this case.

*Benner v. Bank of America, N.A.*, 917 F.Supp.2d 338, 359 (E.D.Pa. 2013).

> The elements of a private UTPCPL claim are as follows:

In order to maintain a private right of action under the UTPCPL, a plaintiff must show that he 1) purchased or leased goods or services primarily for a personal, family, or household purpose; 2) suffered an ascertainable loss of money or property; and 3) the loss occurred as a result of the use or employment by a person of a method, act, or practice declared unlawful by the UTPCPL. 73 P.S. § 201–9.2(a). The plaintiff must offer evidence of one of the statutorily delineated "unfair methods of competition" found at 73 P.S. § 201–2(4), or evidence which fits the "catch-all provision" found at 73 P.S. § 201–2(4)(xxi).

*Baynes v. George E. Mason Funeral Home, Inc.,* 2011 WL 2181469, *4 (W.D.Pa. 2011)

Thus, key elements of any UTPCPL claim are that Plaintiff suffered an *ascertainable loss* and that the loss occurred *as a result of* (i.e., *in reliance* upon) the defendant's conduct, as the *Benner* decision spells out:

"[T]he UTPCPL is to be liberally construed to effectuate its objective of protecting the consumers of this Commonwealth from fraud and unfair or deceptive business practices." *Ash v. Cont'l Ins. Co.*, 593 Pa. 523, 932 A.2d 877, 881 (2007). In a private UTPCPL action, a plaintiff must prove that he "suffer[ed] [an] ascertainable loss of money or property, real or personal, as a result" of defendant's actions. 73 Pa. Stat. § 201–9.2; *see also Weinberg v. Sun Co.*, 565 Pa. 612, 777 A.2d 442, 446 (2001). While the Pennsylvania Supreme Court mandates a liberal construction of the UTPCPL, lower court cases and the plain language of the statute *indicate an actual loss of money or property* must have occurred to state a cognizable UTPCPL claim.

*Benner*, at 359-60 (emphasis added) (numerous additional citations omitted).

In *Benner*, Defendant BOA sent an Act 91 Notice to Mr. Benner informing him of its intention to initiate foreclosure proceedings, which listed specific amounts Plaintiff was required to pay to cure his default, including a fee of $262.50 for property inspections, as provided for by the mortgage contract. The Plaintiff claimed that it was an unfair and deceptive practice for BOA to charge for the property inspections because they were unreasonable and unnecessary. However, Benner never actually paid this fee, nor was his home foreclosed upon. Nevertheless, he filed a complaint against BOA under the FDCPA, FCEUA and the UTPCPL, among other causes of action, claiming that the imposition of property inspection fees was "an increase in his

mortgage debt and corresponding loss of home equity" and thus an "ascertainable loss" under the statute. *Id*. at 360, n.16. Rejecting that argument, the *Benner* Court held:

> In this case, Plaintiff has not identified an "ascertainable loss of money or property" that he suffered to establish a UTPCPL claim. Defendant charged Plaintiff $262.50 for property inspections. According to the Amended Complaint, Plaintiff has not paid the $262.50 fee. This fee is an outstanding liability, but does not constitute a "loss of money or property." Without actually paying for the allegedly improper inspection fees, Plaintiff's FCEUA claim, as brought under the UTPCPL, in Count III of the Amended Complaint fails because of his inability to show an "ascertainable loss of money or property" required by the statute.

*Id*. at 360.

Similarly, in *Salvati v. Deutsche Bank Nat. Trust Co., N.A.,* 2013 WL 1314777 (W.D.Pa. 2013), District Judge Schwab rejected the Plaintiff-homeowner's argument that inclusion of yet-to-be-incurred, and therefore unauthorized, attorneys' fees and other costs in an Act 91 Notice and a Foreclosure Complaint caused ascertainable loss, even though Plaintiff admitted he had not actually paid any of the fees or other costs. Plaintiff claimed that, because the Notice and Foreclosure Complaint contained unauthorized fees and costs, his property had been liened in an inflated amount and its value had been correspondingly diminished in like amount. The Court held, however, that because Plaintiff made no payments of foreclosure fees or legal expenses, he "did not suffer an 'ascertainable loss' . . . [and] is unable to sustain a claim under the UTPCPL." *Id*., 2013 WL 1314777 at *12 and *5-*6. *See also Stewart v. Xrimz, LLC*, 2011 WL 2713411, *3 (M.D.Pa. 2011) ("the Court will dismiss Stewart's UTPCPL claim because he has not pled justifiable reliance on MBK's conduct. . . . Because the loss must occur 'as a result' of unlawful conduct under the UTPCPL, 'a private plaintiff pursuing a claim under the statute must prove justifiable reliance' on the unlawful conduct, not merely that the wrongful conduct caused plaintiff's injuries. *Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 221 (3d Cir. 2008)") (also citing

*Yocca v. Pittsburgh Steelers Sports, Inc.*, 578 Pa. 479, 854 A.2d 425 (2004) (UTPCPL claim requires plaintiff to show he (1) 'justifiably relied on [a] defendant's wrongful conduct or representation' and (2) 'suffered harm as a result of that reliance'"). "The Courts of this Commonwealth have consistently held that, to establish a private right of action under the UTPCPL, a plaintiff must demonstrate that he/she detrimentally relied upon the deceptive practice of the defendant and that the plaintiff suffered harm as a result of this reliance." *Kondratick v. Beneficial Consumer Discount Co.,* 2005 WL 2314042, *10 (E.D.Pa. 2005) (quoting *Toy v. Metro. Life Ins. Co.,* 863 A.2d 1, 9 (Pa.Super. 2004), *aff'd* 593 Pa. 20, 928 A.2d 186 (2007)); *Weinberg v. Sun Co., Inc.*, 565 Pa. 612, 777 A.2d 442, 446 (2001) (UTPCPL, 73 P.S. § 201-4 "clearly requires, in a private action, that a plaintiff suffer an ascertainable loss as a result of the defendant's prohibited action.").

The "ascertainable loss" Plaintiff advances in his Amended Complaint is that the pre-foreclosure Notice and the Foreclosure Complaint unreasonably demanded flat or fixed attorneys' fees of $1,650.00, $325.00 for a title report, and $75.00 for a property inspection, which did not reflect work Udren performed, so that "Mr. Kaymark's current account balance (payoff amount) was falsely inflated . . . [because] it reflects paid (or liened) and unpaid foreclosure-related fees and legal expenses. The lien wrongly caused a diminution in the value of Mr. Kaymark's property . . . equal to the charges improperly liened against, and encumbering, his property." Amended Complaint, (ECF No. 23), at ¶¶ 18-19. As discussed above, any "diminution in value" of Plaintiff's residential property is vague and speculative, and is not an "ascertainable loss" resulting from the flat fees and fixed costs included in Defendants' Notice and Foreclosure Complaint, and Plaintiff offers no direct authority to the contrary.[3]

---

[3] Because Plaintiff cannot prove essential elements of his Pennsylvania fair debt collection and fraud claims, the Court need not address Defendants' arguments that the flat fees and fixed costs are reasonable

Moroever, as to Udren, the FCEUA, "Pennsylvania's analogue" to the FDCPA, makes it a violation of the FCEUA for a debt collector to violate any provision of the FDCPA. 73 P.S. § 2270.4(a). However, the FCEUA explicitly states that the term "debt collector" includes, "[a]n attorney, whenever such attorney attempts to collect a debt, . . . *except in connection with the filing or service of pleadings or discovery or the prosecution of a lawsuit* to reduce a debt to judgment." 73 P.S. § 2270.3 (emphasis added). Udren is exempt from the operation of the FCEUA as all of its conduct took place in connection with the filing or service of pleadings or discovery or the prosecution of a lawsuit to reduce a debt to judgment.

For the foregoing reasons, Counts 1 and 3 of the Amended Complaint do not state viable claims and should be dismissed with prejudice, as Plaintiff cannot amend his complaint to supply the missing but necessary elements.

## 2. Count 4 - Breach of Contract

To state a breach of contract claim under Pennsylvania law, a plaintiff must allege "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." *Omicron Systems, Inc. v. Weiner*, 860 A.2d 554, 564 (Pa.Super. 2004) (brackets and internal quotation marks omitted).

"To prove damages, a plaintiff must give a factfinder evidence from which damages may be calculated to a 'reasonable certainty." *ATACS Corp. v. Trans World Commc'ns, Inc*., 155 F.3d 659, 668 (3d Cir. 1998)). "At a minimum, reasonable certainty embraces a rough calculation that is not 'too speculative, vague or contingent' upon some unknown factor." *ATACS Corp.*, 155 F.3d at 669 (quoting *Spang & Co. v. United States Steel Corp*., 545 A.2d 861, 866 (Pa. 1988)). While mathematical certainty is not required, the plaintiff must introduce sufficient facts upon

---

because they are provided for in the Mortgage and the Note securing the Mortgage, and that they do not violate any fair debt collection laws. However, the Court notes these arguments appear to have substantial merit.

which the jury can determine the amount of damages "without conjecture." *Delahanty v. First Pa. Bank, N.A.*, 318 Pa.Super. 90, 464 A.2d 1243, 1257 (Pa.Super. 1983). The Pennsylvania Superior Court, in *Pashak v. Barish*, 450 A.2d 67, 69 (Pa.Super. 1982) observed that "the test of whether damages are remote or speculative has nothing to do with the difficulty in calculating the amount, but deals with the more basic question of whether there are identifiable damages. . . . Thus, damages are speculative only if the uncertainty concerns the fact of damages rather than the amount." (quotations omitted). *See also Helpin v. Tr. of Univ. of Pennsylvania*, 10 A.3d 267, 270 (Pa. 2010) ("Where one party to a contract without any legal justification, breaches the contract, the other party is entitled to recover, unless the contract provided otherwise, whatever damages he suffered, provided (1) they were such as would naturally and ordinarily result from the breach, or (2) they were reasonably foreseeable and within the contemplation of the parties at the time they made the contract, and (3) they can be proved with reasonable certainty.")

Plaintiff has not explained how inclusion of "unauthorized" attorneys' fees and other fixed costs in either an Act 91 Notice or the Foreclosure Complaint caused him any actual damages that could be reasonably determined, without conjecture. On the contrary, given that Plaintiff has never paid such fees or costs, is vigorously challenging the foreclosure and those fees and costs, with counsel, and may never have to pay them if he is successful in state court, it is difficult to imagine that he has sustained any actual damages from the alleged breach of the terms of the Mortgage. Assuming, without deciding, that there was a breach of the Mortgage contract, Plaintiff has not suffered any ascertainable loss, nor has he suffered any damages that can be proven with any reasonable certainty.[4] *See Salvati*, 2013 WL 1314777 at *10 (because he

---

[4] Because Plaintiff cannot prove the essential damage element of his Pennsylvania common law breach of contract claim, the Court need not address Defendant's arguments that there was no breach because the attorneys' fees and other fixed costs itemized in the Foreclosure Complaint were authorized by the

"did not pay any monetary fees, his breach of contract claim . . . fails as Salvati would be unable to satisfy the damages element of a breach of contract claim"); *Johnson v. State Farm Life Ins. Co.,* 2011 WL 3204735, *4 (W.D.Pa. 2011) ("generally a breach of contract claim cannot be sustained where the proceeds of the policy have been paid since the plaintiff would not have suffered any damages").

### B. The Federal Claim

### 1. FDCPA Substantive Standards

The FDCPA was enacted to "eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692e. Accordingly, "the Act provides consumers with a private cause of action against debt collectors who fail to comply with the Act." 15 U.S.C. § 1692k. More broadly, the FDCPA was enacted in order to eliminate abusive debt collection practices, which contribute to the number of personal bankruptcies, marital instability, loss of employment, and invasions of privacy. *Caprio v. Healthcare Revenue Recovery Group, LLC*, 709 F.3d 142, 148 (3d Cir. 2013) (citing 15 U.S.C. § 1692(a), (e) and *Lesher v. Law Offices of Mitchell N. Kay, PC*, 650 F.3d 993, 996 (3d Cir. 2011), *cert. denied*, —– U.S. ——, 132 S.Ct. 1143 (2012) (additional citation omitted)).

"The FDCPA establishes a general prohibition against the use of 'false, deceptive, or misleading representation or means in connection with the collection of any debt.'" *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993) (quoting 15 U.S.C. § 1692e) (relied upon in

---

Mortgage and the Note securing the Mortgage. However, the Court notes this argument appears to have substantial merit.

*Lesher*). "The sixteen subsections of § 1692e set forth a non-exhaustive list of practices falling within this ban." *Id.*

A "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business, the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." *Id.* at § 1692a(6). Unlike with the UTPCPL, which explicitly exempts attorneys pursuing foreclosure litigation from its reach, a debt collector for FDCPA purposes may include attorneys regularly involved in the debt collection process, including litigation conduct. Lawyers so engaged must conform to the requirements of the FDCPA – for instance, the lawyer may not falsely represent "the character, amount, or legal status of any debt," section 1692e(2)(A), and may not use various "unfair or unconscionable means to collect or attempt to collect" a consumer debt, section 1692f. *See Heintz v. Jenkins*, 514 U.S. 291, 292-93 (1995).

In *Caprio*, the Court of Appeals for the Third Circuit summarized the "least sophisticated debtor" standard for analyzing FDCPA claims as follows:

> "'The basic purpose of the least-sophisticated [debtor] standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd. This standard is consistent with the norms that courts have traditionally applied in consumer-protection law.'" *Lesher*, 650 F.3d at 997 (quoting *Brown [v. Card Service Center*, 464 F.3d 450, 453 (3rd Cir. 2006)] "As the [Sixth Circuit] explained in [*Smith v. Computer Credit, Inc.*, 167 F.3d 1052 (6th Cir. 1999) ], the 'least sophisticated debtor' standard is 'lower than simply examining whether particular language would deceive or mislead a reasonable debtor.'" *Wilson [v. Quadramed Corp*., 225 F.3d 350, 354 (3rd Cir. 2000)] (quoting *Smith*, 167 F.3d at 1054). In other words, "[t]his standard is less demanding than one that inquires whether a particular communication would mislead or deceive a reasonable debtor." *Campuzano–Burgos v. Midland Mgmt., Inc.*, 550 F.3d 294, 298–99 (3d Cir. 2008) (citing *Brown*, 464 F.3d at 455). Nevertheless, "the standard does not go so far as to provide solace to the willfully blind or non-observant." *Id.* at 299. The debtor is still held to a quotient of reasonableness, a basic level of understanding, and a willingness to read with care, and the debt collector accordingly cannot be held liable for bizarre or idiosyncratic interpretations. *See, e.g., Wilson*, 225

F.3d at 354–55. For example, even the "least sophisticated debtor" is expected to read any notice in its entirety. *See, e.g., Lesher,* 650 F.3d at 997.

709 F.3d at 149.

"Importantly, whether the least sophisticated debtor would be misled by a particular communication is a question of law that may be resolved in a Rule 12(b)(6) motion." *Smith v. Lyons, Doughty & Veldhuius, P.C.,* 2008 WL 2885887, at *3 (D.N.J. 2008) (citing *Wilson*, 225 F.3d at 353 n. 2). *See also Galuska v. Collectors Training Inst. of Ill., Inc.,* 2008 WL 2050809, at *3 (M.D.Pa. 2008) ("Whether a communication is misleading under the FDCPA presents a question of law for the court; disputed facts must be resolved by a jury.").

Plaintiff claims at Count 2 that Udren violated the following provisions of the FDCPA:

Section 1692e. False or misleading representations

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

\* \* \* \*

(2) The false representation of—

(A) the character, amount, or legal status of any debt; . . .

\* \* \* \*

(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

\* \* \* \*

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. § 1692e(2)(A), e(5) and e(10).

Additionally, Count 2 asserts violation of section 1962f, which provides that a debt collector "may not use unfair or unconscionable means to collect or attempt to collect any debt."

15 U.S.C. § 1692f. Specifically, Plaintiff claims that Udren's conduct was an unfair and unconscionable "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

### 2. The Foreclosure Complaint is Neither False, Misleading nor Deceptive

Each claimed FDCPA violation stems from the $1,650.00 in flat attorneys' fees and $400.00 in other fixed costs itemized in the Foreclosure Complaint as part of the total debt on the Mortgage of $230,839.92 due and owing. "The loan contracts . . . prohibit the debt collector from collecting either unreasonable flat fees (which, by their nature, are not fees for specific services) or fees for services . . . incurred." Amended Complaint, (ECF No. 23), at ¶ 35. According to Kaymark, the Foreclosure Complaint misleadingly failed to reference a loan contract authorizing a fixed fee or to allege that the fees claimed had been incurred or paid . . . [and] the fees charged were neither reasonable nor incurred." *Id.* "The non-contractual and therefore unlawful, foreclosure-related attorney's fees and costs . . . caused Udren to violate the FDCPA § 1692 because the inflated amount falsely represented the 'character, amount or legal status of Mr. Kaymark's debt.'" *Id.* at ¶36 (quoting section 1692e(2)(5)). This rendered "the [foreclosure] complaint a 'false, deceptive or misleading representation' in violation of 1692e(2)(A)." *Id.*

Kaymark further contends that including the as-yet-to-be-incurred, flat fees and other fixed costs in the Foreclosure Complaint involved the "use of false representation or deceptive means to collect a debt or debts," in violation of section 1692e(10), and violated section 1692e(5) in that it amounted to "the use of [a] false representation or deceptive means to collect or attempt to collect any debt," and was a "threat to take [an] action that [could] not legally be

taken." *Id*. Finally, Plaintiff claims Udren's attempt to collect unlawful attorneys' fees and costs transgressed section 1692f because an attempt to collect "any such amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt" constitutes an "unfair or unconscionable means" to collect a debt under Section 1692f. *Id.* at ¶ 37.

All of Plaintiff's arguments collapse upon consideration of the loan documents (the Mortgage and the Note securing it) authorizing reasonable attorneys' fees and other costs for foreclosure proceedings; the maximum amount of attorneys' fees that are authorized by the Federal National Mortgage Association ("Fannie Mae") for legal work related to foreclosure on a Fannie Mae Mortgage (such as Plaintiff's Mortgage), which, in Pennsylvania, was $1650.00, *see* Udren Brief in Support of Motion to Dismiss, Exhibit B, (ECF No. 25-2); and the fact that nowhere do the loan documents or any state or federal law prohibit listing attorneys' fees and other fixed costs in a foreclosure complaint even if they have not actually been incurred at the time of the filing of the complaint, but are reasonably expected to be incurred.

The Court finds that the least sophisticated debtor would not have been misled or deceived by the fixed fees and costs itemized in the Foreclosure Complaint, but would have understood them to be items included in the total amount claimed due and owing if BOA is successful in its lawsuit. Both the Mortgage, attached to Amended Complaint as Exhibit C, (ECF No. 23-3) and the Note, attached to Udren Brief in Support of Motion to Dismiss as Exhibit A, (ECF No. 25-1), permit BOA to charge reasonable attorneys' fees and other costs of enforcing Plaintiff's obligations, although the instruments did not specify the amount of such fees. Plaintiff does not dispute that BOA would be entitled to collect such fees and costs at the successful conclusion of the foreclosure proceeding, nor that the fees and costs are not permitted by the loan

instruments. Plaintiff's Response in Opposition to Defendants' Motion to Dismiss, (ECF No. 31) at 37-38 of 46. Instead, he makes the rather hypertechnical argument that the "contract only provides for reasonable incurred charges for services performed," and therefore the Foreclosure Complaint was misleading because it itemized fees and costs that were yet-to-be-incurred on work that was yet-to-be-performed. Plaintiff's Response in Opposition to Defendants' Motion to Dismiss, (ECF No. 31) at 35 of 46.

"The language of [section 1692e] creates a straightforward, objective standard." *Glover v. Fed. Deposit Ins., Corp.*, 698 F.3d 139, 149 (3d Cir. 2012). Read in a straightforward, objective manner, the loan instruments do not prohibit an estimate of reasonable attorneys' fees and other costs that may be included in a Foreclosure Complaint by a lender attempting to enforce his rights under the instruments. *See McLaughlin v. Phelan Hallinan & Schmeig, LLP*, 2013 WL 941730, *3-*4 (W.D.Pa. 2013) (Lancaster, C.J.; Plaintiff "does not dispute the underlying debt, but rather [the defendant law firm's] practice of charging fees and costs that had not yet been incurred . . . [but the Court has] already held that estimates are proper, especially in a situation where the attorney is charging a flat fee for its services. Indeed, some courts have held that failing to itemize the various charges that comprise the total amount of debt could be construed as falsely stating the amount of the debt." (citing, *inter alia, Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562, 565–66 (7th Cir. 2004)).

Plaintiff does not seriously challenge the reasonableness of the attorneys' fees and costs if they are incurred and awarded at the conclusion of the foreclosure proceedings, only that it is misleading and deceptive to inform him of those fees and costs *at the inception of the proceeding* in the Foreclosure Complaint. The Court finds that inclusion in the Foreclosure Complaint of the itemized fixed fees and costs would not have misled or deceived the least sophisticated debtor as

23

to the character, amount, or legal status of his mortgage and total debt, or of any services rendered or compensation which may be lawfully received by the debt collector for the collection of the debt.

**Materiality**

Although the Court of Appeals for the Third Circuit has not yet adopted the position, many Circuit Courts of Appeals have recognized a materiality component to FDCPA claims that arise from communications made in the course of a debt collector's litigation. For example, in *Gabriele v. American Home Mortg. Servicing, Inc.*, 503 F.App'x 89 (2d Cir. 2012), a mortgagor brought an FDCPA action alleging that a law firm's misstatements in affidavits and motions filed during its representation of mortgagee in a state-court foreclosure proceeding was misleading and deceptive. Reading a materiality requirement into the FDCPA's prohibition of false, deceptive, or misleading practices in the collection of a debt, the Court of Appeals for the Second Circuit held that the Plaintiff was unable to state an FDCPA claim because the "affidavits and motions were not misleading or deceptive as to the nature or legal status of Gabriele's debt, nor would they have prevented the least sophisticated consumer from responding to or disputing the action. Within the context of an adversary proceeding in state court between two represented parties, these allegations simply do not state plausible claims under the FDCPA." *Id*. at 94. In the context of state-court adversary proceedings, "several other circuit courts, as well as a number of district courts in this Circuit, read a materiality requirement into the FDCPA's prohibition of false, deceptive, or misleading practices in the collection of a debt." *Id*. (collecting cases from 4th, 6th, 7th and 9th Circuit Courts of Appeals).[5] This materiality consideration in the context of state court proceedings has gotten some traction within the district

---

[5] *Warren v. Sessoms & Rogers, P.A.*, 676 F.3d 365, 374 (4th Cir. 2012); *Miller v. Javitch, Block & Rathbone*, 561 F.3d 588, 596 (6th Cir. 2009); *Hahn v. Triumph P'ships LLC*, 557 F.3d 755, 758 (7th Cir. 2009); *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1034 (9th Cir. 2010).

courts in the Third Circuit. *See, e.g., Donatelli v. Warmbrodt,* 2011 WL 2580442, *8 (W.D.Pa. 2011) (McVerry, J.; "Donatelli has not provided this Court with authority for the proposition that the inclusion of a calculation of state statutory interest in a demand for relief in state court would be confusing to a state court, or that it would it be actionable under the FDCPA in any event. Whether the state court plaintiffs are entitled to this or any other rate of interest is an issue to be resolved in the state court.").

This emerging materiality analysis in FDCPA cases arising from communications made during state court litigation is compelling. Applied in this case, it is apparent that Plaintiff did not alter his position or rely in any way on Defendants' itemization of fixed attorneys' fees and other costs in the Foreclosure Complaint. On the contrary, the record shows Plaintiff retained a lawyer in the foreclosure proceeding and is vigorously contesting BOA's claims made therein, and that it has yet to be determined whether he is obligated to pay any of the total BOA alleges is due and owing, including said fees and costs.

This Court need not predict whether the Court of Appeals for the Third Circuit will join the growing body of Circuit Courts of Appeals that have adopted this position regarding the materiality of communications made during state court litigation, because it has concluded that the complained of statements were not false, misleading or deceptive. The materiality analysis does, however, inform the Court's determination and buttress its finding that Plaintiff, the debtor defendant in the state court foreclosure action, was neither mislead nor deceived by the itemization of fixed fees and other costs in the Foreclosure Complaint, even if he is among the least sophisticated consumers of debt. Indeed, the Foreclosure Complaint contains large block letter warnings to the foreclosure defendant advising him that he has the right to defend the claims and be represented by counsel, such as "YOU HAVE BEEN SUED IN COURT. . . .

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE." Foreclosure Complaint, Exhibit B to Amended Complaint, (ECF No. 23-2), at 3-4 of 19. Such warnings, made in the opening document in a state adversary proceeding, offer additional support for the finding that Mr. Kaymark could not have been misled or deceived by the itemization of fixed fees and costs in the Foreclosure Complaint.

Accordingly, the FDCPA claims in Count 2 against Udren should be dismissed with prejudice, as amendment would be futile.[6]

### IV.    CONCLUSION

For the reasons set forth above, it is recommended that the Motions to Dismiss filed by Udren and BOA (ECF Nos. 24, 26) be granted, and the Amended Complaint be dismissed, with prejudice.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72(D)(2) of the Local Rules for Magistrate Judges, any Objections to this Report and Recommendation are to be filed no later than December 31, 2013. Responses to Objections are due on or before January 17, 2013. Failure to file Objections will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

December 11, 2013

Respectfully Submitted,

s/ Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

cc:    All counsel of record

---

[6] Because Plaintiff cannot prove that he was misled or deceived by any falsehood in the foreclosure Complaint, the Court need not address Defendant's argument that a debt collector is insulated from liability where the debtor fails to avail himself of the Validation Procedures built into the FDCPA. However, the Court notes this argument appears to have substantial merit.

# UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DALE A. KAYMARK, individually and on behalf of other similarly situated current and former homeowners in Pennsylvania,

                            Plaintiffs,

              v.

BANK OF AMERICA, N.A. and UDREN LAW OFFICES, P.C.

                            Defendants.

Civil Action #2:13-cv-00419-CB-CRE

## <u>OBJECTIONS TO THE MAGISTRATE'S REPORT AND RECOMMENDATION</u>

MICHAEL P. MALAKOFF, P.C.
Michael P. Malakoff, Esquire
Pennsylvania Attorney I.D. #11048
Ralph N. Feldman, Esquire
Pennsylvania Attorney I.D. #207507
Jonathan R. Burns, Esquire
Pennsylvania Attorney I.D. #315206
Suite 200, The Frick Building
Pittsburgh, PA 15219
Telephone: (412) 281-4217
Facsimile:  (412) 281-3262
malakoff@mpmalakoff.com
*Attorneys for Named Plaintiff, Dale A. Kaymark, individually and on behalf of other similarly situated former and current homeowners in Pennsylvania*

## TABLE OF CONTENTS

| | | |
|---|---|---|
| **I.** | **INTRODUCTION** | **1** |
| **II.** | **STANDARD OF REVIEW** | **7** |
| **III.** | **STATEMENT OF FACTS** | **7** |
| **IV.** | **OBJECTIONS** | **10** |
| *A.* | ***The FDCPA Claims*** | ***10*** |

*i.*     *Pennsylvania State Law Requires a System Debt Collectors Must Use to Pursue Their Fee Post-Foreclosure; a System Echoed By the FNMA Servicing Agreement* .......... 11

    *a)*    FNMA Servicing Guide Require Debt Collectors to Follow State Law .......... 12

*ii.*     *The Reasonableness of an Unliquidated, Reasonable Fee Cannot be Determined by BOA or its Counsel at the Beginning of a Foreclosure Proceeding, but Only by the Court at the End* .......... 14

*iii.*    *Falsely Representing that Attorneys' Fees Were Incurred When They Have Not Been Violates the FDCPA* .......... 17

*iv.*    *Demanding Liquidated or Sum Certain Fees in the Body of a Foreclosure Complaint is Not Legal* .......... 20

*v.*     *BOA's Fee Demands Were Material* .......... 23

*vi.*    *Mr. Kaymark has Pled Additional FCEUA Claims (Against BOA), Arising Out of BOA's Misleading Act 91 Notice That Were Not Addressed in the R&R* .......... 25

*vii.*   *Adoption of the Magistrate's R&R Would be the Death Knell to Consumer Protection Laws in Pennsylvania* .......... 26

*B.*    ***State Law Claims*** .......... **28**

*i.*     *The Magistrate's Findings that Each State Law Count Fails for Want of Allegation of an Ascertainable Loss Constitutes Legal Error* .......... 28

*ii.*     *Mr. Kaymark has Plead an Ascertainable Loss that is Neither Vague Nor Speculative and can be "Reasonably Determined, Without Conjecture" and Established with "Reasonable Certainty"* .......... 28

*iii.*    *Mr. Kaymark's Claims Based on the Wrongful, Inflation of a Lien Constitutes an Ascertainable Loss And Are Viable* .......... 36

**V.    CONCLUSION** ................................................................................................... **39**

## TABLE OF AUTHORITIES

**Cases**

Andrews v. S. Coast Legal Servs., Inc., 582 F. Supp.2d 82 (D. Mass. 2008) ............................. 22

Ashcroft v. Iqbal, 556 U.S. 662 (2009) ............................................................ 7, 19, 39

Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) ........................................... 19, 39

Belmont v. MB Inv. Partners, Inc., 708 F.3d 470 (3d Cir. 2013) .................................. 30

Beneficial Consumer Discount Company v. Vukman, 77 A.3d 547 (Pa. 2013) .................. 25, 31

Benner v. Bank of America, N.A., 917 F.Supp.2d 338 (E.D.Pa. 2013) ................................ 32, 36

Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC, 40 A.3d 145 (Pa.Super. 2012) ............................................................................................. 30

Bird v. Pressler & Pressler, L.L.P., No. 12–3007, 2013 WL 2316601 (E.D.N.Y. May 28, 2013) .......................................................................................... 22

Bradley v. Franklin, No. 13-12276, 2014 WL 23738 (11th Cir. Jan. 2, 2014) ............................ 5

Burns v. Pennsylvania Dep't of Correction, 544 F.3d 279 (3d Cir. 2008) .................................. 37

Case of the State Tax on Foreign-Held Bonds, 82 U.S. 300 (1872) ............................................ 37

Connecticut v. Doehr, 501 U.S. 1 (1991) ....................................................... 6, 36

Corvello v. Wells Fargo Bank, N.A., 728 F.3d 878 (9th Cir. 2013) ..................................... 14, 20

Cresci Const. Services, Inc. v. Martin, 64 A.3d 254 (Pa.Super. 2013) .......................................... 9

D'Agostino v. Maldonada, 78 A.3d 527 (N.J. 2013) ....................................................... 31, 35, 36

Daniels v. Davis Davis Attorneys, P.C., No. AR-10-006276, 2011 WL 601699 (C.P.Allegheny Feb. 18, 2011) ................................................................. 5, 9, 15, 27

DeArmitt v. New York Live Ins. Co., 73 A.3d 578 (Pa.Super. 2013) .......................................... 35

Delaware v. New York, 507 U.S. 490 (1993) .......................................................... 37

Durso v. Samsung Electronics America, Inc., No. 12-5352, 2013 WL 5947005 (D.N.J. Nov. 6, 2013) .......................................................................................... 3

Ernst v. Hoskins, 100 Pa. 551 (1882) ....................................................... 33, 38

Fowler v. Equitable, 141 U.S. 384 (1891) ....................................................... 33

Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009) ............................................. 7

Glover v. FDIC, et al., 698 F.3d 129 (3d Cir. 2012)...................................................... 27

Grimes v. Enterprise Leasing Co. of Philadelphia, LLC, 66 A.3d 330 (Pa.Super. 2013) ............................................................................................................ passim

Haas v. Pittsburgh Nat. Bank, 526 F.2d 1083 (3d Cir. 1975).................................... 3, 26

Hahn v. Triumph Partnerships LLC, 557 F.3d 755 (7th Cir. 2009) ........................ 23, 24

Hall v. Leone Halpin & Konopinski, LLP, No. 06-343, 2008 WL 608609 (N.D.Ind. Feb. 28, 2008) ............................................................................................... 21

Hallmark v. Cohen & Slamowitz, LLP, 293 F.R.D. 410 (W.D.N.Y. 2013)................................ 22

Huyer v. Wells Fargo & Co., No. 08-507, 2013 WL 5754885 (S.D.Iowa Oct. 23, 2013) ............................................................................................................ 3

In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305 (3d Cir. 2008)....................................... 31

In re Insurance Brokerage Antitrust Litigation, 618 F.3d 300 (3d Cir. 2010)................................ 7

In re U.S. Foodservice Inc. Pricing Litigation, 729 F.3d 108 (2nd Cir. 2013) ............................. 30

Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 559 U.S. 573, (2010)..................... 25

Jessamey v. Norfolk Fin. Corp., 2006 Mass.App. Div. 82, 2006 WL 1211029 (Mass.App.Div. Apr. 28, 2006) ......................................................................... 22

Kelter v. American Bankers' Fin. Co., 160 A. 127 (Pa. 1931)....................................... 38

Manufacturers and Trades Trust Co. v. Luzerne County Tax Claim Bureau, 56 A.3d 36 (Pa.Commw. 2012) ........................................................................................ 37

Mell v. GNC Corp., No. 10-945, 2010 WL 4668966 (W.D.Pa. Nov. 9, 2010)............................ 7

Messner v. Northshore University Healthsystem, 669 F.3d 802 (7th Cir. 2012) ................... 9, 31

Michaels Bldg. Co v. Ameritrust Co., N.A., 848 F.2d 674 (6th Cir. 1988)................................. 30

NECA-IBEW Health & Welfare Fund v. Goldman, 693 F.3d 145 (2nd Cir. 2012) ............... 3, 26

New-Howard v. JPMorgan Chase Bank, N.A., No. 11-2855, 2013 WL 6096232 (E.D.Pa. Nov. 20, 2013).................................................................................... 30

Petro-Tech Inc. v. Western Co. of North America, 824 F.2d 1349 (3d Cir. 1987) ..................... 30

Pettway v. Harmon Law Offices, P.C., 03-10932, 2005 WL 2365331 (D.Mass. Sept. 27, 2005) ........................................................................................... 12, 17, 18, 19

Pierce v. Calvary SPV I, LLC, No. 13-588, 2013 WL 6773632 (W.D.Pa. Dec. 20, 2013) ......................................................................................................... passim

Salvati v. Deutsche Bank  Nat. Trust Co., et al., No. 12-0971, 2013 WL 1314777 (W.D.Pa. Mar. 28, 2013), appeal pending No. 13-1972 (3d. Cir. 2013) ........................... 31, 36

Saunders v. Resnick, 16 A.2d 676 (Pa.Super. 1940) ................................................. 33

Scott v. Lloyd, 34 U.S. 418 (1834) ........................................................................ 33

Shula v. Lawent, 359 F.3d 489 (7th Cir. 2004) ................................................... 21, 23

Simon v. FIA Card Servicers, N.A., 732 F.3d 259 (3d Cir. 2013) .............................. 25

Som v. Daniels Law Offices, P.C., 573 F. Supp. 2d 349 (D. Mass. 2008) ...................... 14, 17, 19

Spencer v. Hendersen-Webb, Inc., 81 F.Supp.2d 582 (D.Md. 1999) .............................. 12, 17, 19

Stolicker v. Muller, Muller, Richmond, Harms, Myers, & Sgroi, P.C., No. 04-733, 2005 WL 2180481 (W.D.Mich. Sept.9, 2005) ........................................... 14, 15, 16

Toth v. Northwest Savings Bank, No. GD-12-008014, pp.7-15 (C.P.Allegheny June 25, 2013) ........................................................................................................ 30

Wal-Mart Stores, Inc. v. Dukes, 131 S.Ct. 2541 (2011) ........................................... 9, 31

West Penn Allegheny Health System, Inc. v. UPMC, 627 F.3d 85 (3d Cir. 2010) ..................... 19

Wigod v. Wells Fargo Bank, N.A., 673 F.3d 547 (7th Cir. 2012) ........................................ 14, 20

**Statutes**

Consumer Fraud Act, N.J.S.A. §56:8-1, et seq. ........................................................... 31

Fair Credit Extension Uniformity Act, 73 P.S. §2270.1, et seq. ........................................... passim

Fair Debt Collection Practices Act, 15 U.S.C. §1692, et seq. ............................................. passim

Homeowner Assistance Settlement Act, 35 P.S. §1681.1, et seq. ............................................... 26

Housing Finance Agency Law, 35 P.S. §1680.403, et seq. ................................................. passim

Loan Interest and Protection Law, 41 P.S. §101, et seq. ................................................... 3, 14, 26

Unfair Trade Practices and Consumer Protection Law, 73 P.S. §201-1, et seq. ................... passim

**Rules**

Fed.R.Civ.P. 12 ................................................................................................ 7, 19

Fed.R.Civ.P. 72 .................................................................................................... 7

Fed.R.Civ.P. 8 ..................................................................................................... 39

Pa.R.Civ.P. Rule 1037 ........................................................................................ 11

**Other Authorities**

42 Pa.B. 5447 (Aug. 18, 2012) ........................................................................... 25

Fannie Mae, *June 2011 Servicing Guide Update, Announcement SVC-2011-10* (Jun. 10, 2011), https://www.fanniemae.com/content/announcement/svc1110.pdf............................ 4

Fannie Mae, *New Foreclosure and Bankruptcy Attorney Network and Attorneys' Fees and Costs, Announcement 08-19* (Aug. 6, 2008), https://www.fanniemae.com/content/announcement/0819.pdf ............................................. 4, 12

And now comes the Plaintiff, Dale A. Kaymark, individually and on behalf of other similarly situated current and former homeowners in Pennsylvania ("Mr. Kaymark"), and makes this his Objections to the Magistrate's Report and Recommendation ("R&R") recommending that Defendants' Motions to Dismiss be granted with prejudice without leave to amend. See Document 41.

## I.   **INTRODUCTION**

This action was brought by Mr. Kaymark to challenge, *inter alia*, the Defendants' systematic practice of demanding yet to be incurred foreclosure-related attorneys' fees and costs as due and owing in foreclosure complaints filed against homeowners; a practice that caused homeowner's direct economic damage and loss when said unincurred charges inflated liens against the homeowner's home, reducing their equity by the precise amount of the wrongful fees and costs.  In the current R&R, the Magistrate recommends that all of Mr. Kaymark's claims be dismissed, reasoning that the unincurred charges (demanded as due and owing) would be expected, as a matter of law, to be eventually incurred (R&R, p. 22), and that any ascertainable loss or damage suffered due to an inflated lien were vague, speculative or dependent on conjecture (R&R, p. 15).

In endorsing Defendants' conduct, respectfully, the Magistrate has made serious errors with respect to Mr. Kaymark's Mortgage, federal law and state law.  The Magistrate errs in finding that a debt collector remains compliant with the Fair Debt Collection Practices Act ("FDCPA") and the Mortgage so long as the charges it asserts to be due and owing are "reasonably expected to be" due and owing in the future.  She also errs in finding that a loss of equity, corresponding precisely to the value of improper fees inflating the lien against property, is too vague or speculative to constitute an ascertainable loss or contractual damages.

Instead of applying the objective Mortgage provisions and state law (Unfair Trade Practices and Consumer Protection Law ("UTPCPL")), the Magistrate radically altered these standards and developed her own, unique legal and contractual standards; standards not adopted by any other court.  See R&R, p. 22, wherein the Magistrate concluded that "Nowhere do the loan documents or any state or federal law prohibit listing attorneys' fees and other fixed costs in a foreclosure complaint even if they have not actually been incurred at the time of the filing of the complaint, but are **reasonably expected to be incurred**," (Emphasis added[1]).

There is no "reasonably expected to be incurred" standard that exists under Mr. Kaymark's Mortgage or Pennsylvania law.  Pennsylvania law and Mr. Kaymark's Mortgage do not allow a debt collector to charge whatever amount they unilaterally estimate may be incurred throughout the litigation.

Obviously, neither Defendants nor the Magistrate are clairvoyant.  Defendants cannot conclude what **future** foreclosure-related attorneys' fees and costs would be **sixty days** prior to the commencement of the foreclosure action or even during the litigation.  More importantly, it cannot be determined, as a matter of law, that a fee is "reasonably expected to be incurred."  This is a factual matter requiring evidence going beyond the facts averred in the Complaint.

Such estimated charges are not authorized under the Mortgage.  The Mortgage does not authorize estimated attorneys' fees to be demanded at the outset of a foreclosure action, but only authorizes fees that were actually incurred for services that were actually performed.  Amended Complaint, Exhibit C (the Mortgage), ¶¶9(c), 14 and 22.  The fact that the $1,650 in fees (and other expenses) might be later incurred does not justify charges being levied as already earned at the inception of the litigation.

---

[1] The fees were not merely listed but asserted to be due and owing from sixty days prior to the foreclosure action.

The Mortgage's language tracks the language found in the Loan Interest and Protection Law ("Act 6"), 41 P.S. §406(2),[2] which also establishes the parameters under which a residential mortgage lender may recover incurred and reasonable fees and costs associated with enforcing its security interest. Those foreclosure fees are strictly limited. "Upon commencement of foreclosure or other legal action with respect to a residential mortgage, attorney's fees **which are reasonable and actually incurred** by the residential mortgage lender may be charged to the residential mortgage debtor," (Emphasis added). Act 6, §406(2). In addition, Mr. Kaymark has pled that his Mortgage does not authorize estimated charges or those based on a flat, percentage or another liquidated basis, but **only hourly based fees that have been incurred and that are reasonable**. The assertion that fees were established and could be charged before the foreclosure action was commenced is inconsistent with the Mortgage, as well. See Pierce v. Calvary SPV I, LLC, No. 13-588, 2013 WL 6773632 (W.D.Pa. Dec. 20, 2013) (Bissoon, J.).

The District Court for the Western District of Pennsylvania has interpreted what it means for a fee to be **incurred** under the FDCPA. See Pierce, *3. Representing in the body of a foreclosure complaint that a fee has been incurred when, in fact, it has not is a violation of the FDCPA. See infra. Moreover, Fannie Mae ("FNMA") itself has issued guidelines that state when it is reasonable for attorneys' fees to be charged, and what fee amount is reasonable. See Fannie Mae, *New Foreclosure and Bankruptcy Attorney Network and Attorneys' Fees and Costs*,

---

[2] Prior to September 8, 2008, Act 6 covered homeowners who financed amounts up to fifty thousand dollars. Thereafter, the amount was increased to $217,000. Mr. Kaymark has no personal Act 6 claim; however, as the named plaintiff, he can represent homeowners who have such claims. See Haas v. Pittsburgh Nat. Bank, 526 F.2d 1083 (3d Cir. 1975) and NECA-IBEW Health & Welfare Fund v. Goldman, 693 F.3d 145 (2nd Cir. 2012). Because Act 6 does not apply to Mr. Kaymark individually but for the FNMA guidelines (discussed *infra*), BOA could have contracted for liquidated percentage fees under state law if it had provided for them in the Mortgage, but it did not. Also see Huyer v. Wells Fargo & Co., No. 08-507, 2013 WL 5754885, *12 (S.D.Iowa Oct. 23, 2013) and Durso v. Samsung Electronics America, Inc., No. 12-5352, 2013 WL 5947005 (D.N.J. Nov. 6, 2013).

*Announcement 08-19* (Aug. 6, 2008), https://www.fanniemae.com/content/announcement/0819.pdf.[3]   The FNMA fee guidelines allows only for a **maximum** fee award of $1,650 (inclusive of fees, costs and expenses) for the **entire** foreclosure process.  FNMA explicitly states, like Pennsylvania law, that these fees may not be charged until they are **incurred**.

Hence, under the FDCPA, the non-contractual, and therefore unlawful, foreclosure-related attorneys' fees and costs demanded by Udren in the Foreclosure Complaint violated the FDCPA because the inflated amount falsely represented the "character, amount or legal status" of Mr. Kaymark's debt, thereby rendering the complaint a "false, deceptive or misleading representation." FDCPA, §1692e(2)(A). The inclusion of such fees also violated §1692e(10), which explicitly prohibits "the use of any false representation or deceptive means to collect or attempt to collect any debt," and §1692e(5), which prohibits "the threat to take any action that cannot legally be taken."

The Mortgage explicitly states that "Lender shall be entitled to collect all expenses **incurred** in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence of the extent permitted by Applicable Law," [emphasis added] and those **incurred** fees must be reasonable.  See Mortgage, ¶¶22 and 7.   In other words, the Magistrate's assertion that "nowhere do the loan documents, or any state or federal law prohibit" [R&R, p. 22] a current demand for fees and costs which have not yet been incurred is actually explicitly prohibited under each.

---

[3] Announcement 08-19 was incorporated into the FNMA Servicing Guide though Announcement SVC-2011-10.  The FNMA servicing guide is essentially a contract between FNMA and the servicer and it does not have the force of law except with respect to the contracting parties.  It is chiefly useful here in establishing industry standards, which in turn provide some guidance in determining the reasonableness of particular practices.

All known appellate courts (and most district courts) have held that demanding estimated future fees as currently owed directly violates the FDCPA. See Pierce, supra; Daniels v. Davis Davis Attorneys, P.C., No. AR-10-006276, 2011 WL 601699, *9 (C.P.Allegheny Feb. 18, 2011); and, Bradley v. Franklin, No. 13-12276, 2014 WL 23738 (11th Cir. Jan. 2, 2014). Curiously, the Magistrate's R&R does not acknowledge this substantial body of case law, but, without any known support aside from Defendants' filings, concluded that Mr. Kaymark's arguments are hypertechnical. R&R, p. 23.

In this regard, it is of great importance to be clear about what Mr. Kaymark's claim is about. Mr. Kaymark, facing the loss of his home was presented, in a formal foreclosure complaint, with a demand for payment including over $2,000 for fees that were allegedly incurred two months prior to the action. The fees could not have been incurred two months prior to the action and were not incurred at the time the initial Complaint was filed. Yet, paying this $2,000 fee was demanded as necessary to save his home. However, paying these fees, under law and contract, was not necessary to save his home. By law and contract he was only required to pay reasonable fees already incurred for services performed. For a distressed homeowner trying to save his home, every dollar counts. A bill inflated by a couple of thousand dollars is not a hyper-technicality. That the bill might later be justified is of little conciliation. At the time of the foreclosure filing it was not, with the result that any problem curing default at the early stage, before real costs were actually incurred, was needlessly exacerbated.[4]

As to the state law claims, (which, according to the Magistrate, all turn on the issue of the existence of an ascertainable loss or the existence of actual damages), the Magistrate errs in

---

[4] In this context, the demand for 4,599.98 to bring the loan out of default (and avoid foreclosure altogether) when only $2,306.94 was actually necessary is equally egregious (and non-hypertechnical). Amended Complaint, ¶11.

finding something vague or speculative about the ascertainable loss suffered when the encumbrance on real property increases. In the Magistrate's view, the detriment suffered when the encumbrance on property expands does not represent an actual loss or damage, but this is inconsistent with the entire edifice of the law of property and secured transactions. Significantly, lenders view their mortgage portfolios as assets.

Mr. Kaymark has not simply speculated that buyers might find the house less valuable with an inflated lien or based his assertion of damage or loss on any intangible elements like emotional distress. Rather, he has grounded his assertion of loss on simple math. If the amount required to clear the lien on his property is increased by a dollar, then Mr. Kaymark's interest in his home declines by a dollar. If he sells his home, his net proceeds will be a dollar less, and if he tries to use it for security on a loan, the amount he can borrow will decline by one dollar. If this one dollar increase was as the result of a violation of law (state or federal) and/or the Mortgage, then as a result of this violation, Mr. Kaymark has suffered an ascertainable loss and actual damage of at least one dollar. It matters not if the loss is by a **temporary lien**. See Connecticut v. Doehr, 501 U.S. 1, 11-12 (1991) (recognizing that a temporary lien also constitutes a loss of property). That no cash changed hands, is irrelevant. A clearly ascertainable economic loss has still occurred, and that is all that is required to satisfy the ascertainable loss elements of the UTPCPL and the Fair Credit Extension Uniformity Act ("FCEUA") (and, the damage requirement needed to recover under a breach of the Mortgage).

The Magistrate's findings, if adopted, will have severe consequences to financially distressed homeowners. The imposition of inflated charges will deprive homeowners (because of their limited finances) of the opportunity to cure defaults and save their homes. In essence, it

will allow lenders, servicers and debt collectors to hold up and extort a homeowner as a precondition to save their homes.

## II.   <u>STANDARD OF REVIEW</u>

The Magistrate heavily relies on and quotes <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 211 (3d Cir. 2009) citing <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009) as representing the Fed.R.Civ.P. 12(b) pleading standard in the Third Circuit. She overlooked, however, that the dictum in <u>Fowler</u> was subsequently rejected by the Third Circuit in <u>In re Insurance Brokerage Antitrust Litigation</u>, 618 F.3d 300, 319, fn. 17-18 (3d Cir. 2010). <u>See</u> <u>Mell v. GNC Corp.</u>, No. 10-945, 2010 WL 4668966, *3 fn. 2 (W.D.Pa. Nov. 9, 2010) (Standish, J.). The scope of review is *de novo*. <u>See</u> Fed.R.Civ.P. 72. None of the post-<u>Fowler</u> decisions relied on by the Magistrate made this mistake and, therefore, none of those decisions cite <u>Fowler</u>. R&R, p. 10.

## III.   <u>STATEMENT OF FACTS</u>

The relevant facts have been ably summarized by the Magistrate and, will be briefly summarized here. In December 2006, Mr. Kaymark refinanced his Pennsylvania home, executing a Note for $245,600 and granting BOA a Mortgage. Amended Complaint, ¶4. The loan contracts permit only reasonable fees, **incurred** for services performed. Amended Complaint, Exhibit C ¶¶9(c), 14 and 22. On or about August 1, 2011, BOA sent Mr. Kaymark an *Act 91 Notice* that failed to satisfy Act 91 in two distinct respects. BOA's Notice misrepresented the outstanding amount due and owing and did not provide an accurate default amount due as of the date of mailing (charging for three months' worth of payments instead of the two he was behind), and BOA's Notice misrepresented the amount of time Mr. Kaymark had to meet with a consumer credit counseling agency as thirty days instead of the thirty-three days

he was entitled to by the statute. <u>See</u> the Housing Finance Agency Law ("Act 91"), 35 P.S. §1680.403c. <u>Also see</u> Amended Complaint, ¶¶ 10-12.

Udren, on behalf of BOA, then filed a verified Foreclosure Complaint against Mr. Kaymark in state court. <u>Id.</u>, ¶15 and Exhibit B thereto. The Foreclosure Complaint demanded amounts without differentiating which were the liquidated and which were the unliquidated amounts.

> The following **amounts are due** on the said Mortgage or modification agreement **as of the date stated below**
> …
> Title Report                              $325.00
> Attorney Fees                          $1,650.00
> Property Inspection                 $75.00
> GRAND TOTAL                      $230,839.92
>  **The above figures are calculated as of 07/12/2012**   (Emphasis added)

With regard to the title report, attorneys' fees and property inspection, Mr. Kaymark pled that these charges were not performed or incurred by BOA as of July 12, 2012. Though the charges were alleged to be incurred, the amount demanded to clear the lien on Mr. Kaymark's property was nevertheless elevated to $2,050, reducing Mr. Kaymark's equity in his property by the same, i.e., $2,050.

Mr. Kaymark pled that these facts (i.e., being charged for unincurred *per se* unreasonable, flat or liquidated foreclosure-related attorneys' fees and costs, which significantly inflated the lien on his property) give rise to the following causes of action. Mr. Kaymark's counts include:

1.  Breach of Mortgage with respect to BOA: As the contract supports only **incurred** fees for services performed, BOA breached the Mortgage causing Mr. Kaymark to suffer an ascertainable loss and actual, economic damages. <u>See</u> Amended Complaint, Count IV.

2.  Violations of the UTPCPL with respect to Udren and BOA: The attempt to collect the inflated fees and costs, not currently due or owing, constitutes deceptive conduct causing Mr. Kaymark to suffer an ascertainable loss; a decline in equity in his property; and, actual damages. See Amended Complaint, Count III.

3.  FDCPA violations by Udren (and FCEUA violations by BOA): Representing the said inflated fees and costs as due and owing when such charges were, when demanded, prohibited by both the Mortgage and law, was a violation of the FDCPA (and, as to BOA, of the FCEUA).[5] With respect to the FCEUA, the inflation of the lien on Mr. Kaymark's property caused an ascertainable economic loss equal to the decline in Mr. Kaymark's net interest in the property. See Amended Complaint, Counts I and II.[6]  [The FDCPA and the FCEUA are virtually the same in that the FCEUA incorporates the FDCPA.  See §2270.4(a).  These statutes are somewhat different because the FCEUA excludes litigation but includes other debt collection.  See FCEUA, §2270.3.  The FCEUA also has a two year statute of limitations.  Id., §2270.5(b). While the FDCPA has a one year statute of limitations.  See FDCPA, §1692k.]

In addition, the pled false communications (false debt collection representations) sent to Mr. Kaymark indicate the following.

1.  A verified statement that as of July 12, 2012, $1,650 in foreclosure-related attorneys' fees were owed even though the foreclosure action was not commenced until September 13, 2012. Amended Complaint, ¶16.

---

[5] The foreclosure fees and costs must be incurred and the amount charged must be reasonable. See Pierce, supra; Daniels, supra; and, Cresci Const. Services, Inc. v. Martin, 64 A.3d 254 (Pa.Super. 2013).  Here there are also violations of the Mortgage, FCEUA, UTPCPL and FDCPA.

[6] Of the liability issues, only the existence of an ascertainable loss is before this Court, not the precise value of actual damages or for recovery.  See Messner v. Northshore University Healthsystem, 669 F.3d 802, 815, 819 (7th Cir. 2012) quoting Wal-Mart Stores, Inc. v. Dukes, 131 S.Ct. 2541, 2558 (2011).

2.   As of July 12, 2012, a statement that $325 was due for a title report and $75.00 was due for a property inspection even though the foreclosure action was not commenced and even though those charges were not incurred or due and owing.  Amended Complaint, ¶16.

3.   A statement that, as of June 2011, $4,599.98 was due and owing even though only two monthly payments (totaling $2,306.94) were actually due.  Amended Complaint, ¶11.  [This claim was not acknowledged or discussed in the R&R.]

4.   A statement that a foreclosure action could be commenced within thirty days of the date of the Act 91 Notice even though state law dictates that thirty-three days be provided.  Amended Complaint, ¶¶ 9 and 12-14.  [This claim was acknowledged, but not discussed in the R&R.]

5.   A statement that BOA was altering the way that the Mortgage dictates payments be allocated.  Amended Complaint, ¶21.

Thus, with respect to four of the five alleged types of false communications acknowledged in the R&R, only three of them were analyzed in the R&R.

IV.   **OBJECTIONS**

*A.   The FDCPA Claims*

The Magistrate has recommended the dismissal of Mr. Kaymark's FDCPA claim largely on the ground that there was nothing improper about demanding unincurred fees as presently due and owing in the body of a foreclosure complaint so long as the fees would be reasonably expected to be incurred eventually.  This is inconsistent with state law, BOA's own servicing contract (which harmonizes with the envisioned state system) and the dominant interpretation of the FDCPA.

i. *Pennsylvania State Law Requires a System Debt Collectors Must Use to Pursue Their Fee Post-Foreclosure; a System Echoed By the FNMA Servicing Agreement*

In finding the Defendants' fee practices to be lawful, the Magistrate glosses over the standard procedure implemented by the state courts to ensure that only liquidated damages can be determined without a judicial determination. Where liquidated damages are not provided for under contract, a judicial determination is required before damages are established. Here, there is no provision for liquidated or fixed attorneys' fees.

Under Pa.R.Civ.P. Rule 1037(b)(1), a clerk may enter a default judgment for only liquidated (incurred) amounts. That Rule provides:

> [D]amages for the amount to which the plaintiff is entitled if it is a **sum certain** or which can be made certain by computation, but if it is not, the damages shall be assessed at a trial at which the issues shall be limited to the amount of the damages. (Emphasis added)

If the plaintiff's claim is for an amount other than a sum certain, or an amount that by computation can be made certain, judgment by default may not be entered by the clerk of the court. Rather, judgment must be entered by the court, which shall take such evidence as is necessary to determine the damages.

With respect to rules allowing a clerk to enter judgment by default when the claim is for a sum certain, the term sum certain contemplates a situation where the amount due cannot be disputed and has been held to have a meaning similar to a liquidated amount. Judicial action of the court is required where the damages recoverable are unliquidated, indefinite, and uncertain. Debt collectors that contract for unliquidated fees, but charge liquidated ones, are falsely asserting those fees as liquidated to deceptively obtain an award and avoid a judicial determination.

Here, the Amended Complaint states that Defendants have systemically applied a fixed fee to homeowners' foreclosure complaints, regardless of the amount actually due or work

incurred at the time of filing. In other words, they are requesting a sum certain, but that sum certain has been arrived at by a defendant, not the court. Virtually all district courts have recognized that defendants blindly adding fees systematically to each debtor's account violates the FDCPA as they create a windfall for defendants in unearned fees. Spencer v. Hendersen-Webb, Inc., 81 F.Supp.2d 582, 592 (D.Md. 1999) ("procedures were woefully inadequate in preventing collection of unjustified fees. Indeed, the company's computer program added a 15 percent fee to *every* account without regard to the agreement or document underlying the debt.").

A fee collecting system that allows for defendant to collect a fixed fee without a showing of proof that that fee was actually incurred and earned would shift the burden of proof that attorney fees were reasonable and incurred and requires debtors to show the attorneys' fees and costs charged were not earned. See Pettway v. Harmon Law Offices, P.C., 03-10932, 2005 WL 2365331, *12 fn. 2 (D.Mass. Sept. 27, 2005) (where the court noted one of the more troubling aspects of this type of fee system was that Plaintiff "was reimbursed for the unaccrued fees and costs **only after this lawsuit was filed**"(emphasis added)). This is simply not the system state law contemplated.

a) FNMA Servicing Guide Require Debt Collectors to Follow State Law

The FNMA Servicing Guide authorizes a $1,650 **maximum** for foreclosure-related attorneys' fee, costs and expenses. See Udren's Brief in Support of its Motion for Summary Judgment (Document 25), pp. 3-4, 6-7 and 15 fn. 8. Also see its Reply in Support of its Motion for Summary Judgment (Document 34), p. 2. In 2008, Fannie Mae issues a servicing announcement stating that these fees shall cover, "all legal actions necessary to complete the standard foreclosure in Pennsylvania, including motions to postpone or relist a sale and motions to reassess damages." See Servicing Announcement 08-19, p. 3 fn. 10. This fee is to be "**prorated** to reasonably relate to the amount of **work actually performed**," (Emphasis added).

Id., p. 5. That same guide recognizes that "requirements governing attorneys' fees, include[s] the requirements that fees charged to borrowers be permitted under the terms of the note, security instrument, and **applicable laws**," (emphasis added). Id. Thus, even if the issue in contention was whether or not a $1,650 demand for attorneys' fee being reasonable was the issue, the FNMA servicing guide, and state law, would still require the fees charged be for work performed.

Although the FNMA fee schedule allows for a **maximum** fee of $1,650 for the entire foreclosure process (inclusive of fees, costs and expenses), that does not establish that a $1,650 charged at inception of the process is reasonable, or that the fee represents charges incurred for services performed. Amended Complaint, ¶16. At best, it indicates that the fee is unreasonable at the outset of a foreclosure action because it is the maximum amount authorized to be charged. Respectfully, the contention that the FNMA maximum fee is *per se* reasonable in all cases is without merit. This is the maximum fee permitted for any **completed case**. Anything above it is unreasonable, but this in no way implies that this fee will always be reasonable, reasonable at the outset of the same or (as here) two months before the foreclosure action was actually commenced.

Nevertheless, the Magistrate has found that charging the maximum $1,650 before it is incurred is reasonable. No one disputes that the FNMA servicing guide themselves say that, in some circumstances, $1,650 is a reasonable fee. However, under the servicing guide, $1,650 is not a reasonable fee at the outset of a case.

Furthermore, the announcement states, "All attorneys must submit their statements for all fees and expenses directly to the servicer." Id., p. 5. Therefore, it is the servicer in the first instance that must submit the fees. Under the FNMA servicing guide, an attorney cannot

unilaterally charge any fees to a homeowner, but rather they must bill the servicer.  If the servicer and debt collector have an agreement in which the servicer pays the debt collector a flat $1,650 fee per case, so be it.  However, that flat-fee cannot be systemically pushed on each individual homeowner.  Thus, in contrast to the Magistrate's R&R, the FNMA servicing guide require homeowners to only be liable for their individual fees and costs, which are capped at $1,650 and which fees must be authorized by the Mortgage.  See Wigod v. Wells Fargo Bank, N.A., 673 F.3d 547 (7th Cir. 2012) and Corvello v. Wells Fargo Bank, N.A., 728 F.3d 878 (9th Cir. 2013) (finding that the failure to follow federal guidelines constitutes an UTPCPL violation).  Act 6/Act 91 violations can also be addressed under the UTPCPL. See Act 6, §§502 and 502.

> ii.   *The Reasonableness of an Unliquidated, Reasonable Fee Cannot be Determined by BOA or its Counsel at the Beginning of a Foreclosure Proceeding, but Only by the Court at the End*

In Pierce, the plaintiff alleged that the agreement with the defendant did not permit collection of liquidated attorney fees fixed upon a percentage of the debt or that defendants could state in the complaint a liquidated demand for attorney fees.  This is precisely what Mr. Kaymark alleged here.

Peirce held that **the demand for liquidated attorney's fees, when the underlying agreement does not provide for such fees, is a violation of the FDCPA** citing Stolicker v. Muller, Muller, Richmond, Harms, Myers, & Sgroi, P.C., No. 04-733, 2005 WL 2180481, *4 (W.D.Mich. Sept.9, 2005) ("The inclusion of a liquidated sum as attorney fees with the principal debt owed altered the terms of the [underlying] contract... and violated the FDCPA."); Som v. Daniels Law Offices, P.C., 573 F. Supp. 2d 349, 357-358 (D. Mass. 2008) (finding a violation of the FDCPA when debt collectors sought a percentage-based attorney's fee that was not authorized by the language of the contract).  Id., *3.

Where homeowners have contractual rights to pay only reasonable, incurred fees for services performed, it is without merit to object to being levied a fixed fee with no specific bearing on the charges incurred or performed. See Daniels, supra, citing Stolicker.

The fixed-fee defenses advanced and rejected in Pierce; Daniels and Stolicker, are identical to Udren's. The presence of a contract that reasonable and incurred attorneys' fees can be collected somehow **unilaterally bestows on a defendant the legal right to determine the amount of its own fees** is not authorized by the Mortgage and is prohibited by Pennsylvania law.

In Stolicker the central issue was whether the Muller law firm violated the FDCPA by filing a complaint and affidavit in support of a default judgment which included a request for liquidated attorneys' fees. The court recognized that the FDCPA would provide little protection to a debtor if, in agreeing to pay "reasonable collection costs," a debtor was held to have agreed to pay whatever percentage fee a debt collection service happened to charge. Id. The court stated:

> [Defendant's] argument misconstrues the issue in this case. The issue is not whether the requested attorney fee is in fact reasonable…The central issue in this case, which [Defendant] repeatedly overlooks, is whether the request of a liquidated amount as an attorney fee is false or misleading when the contract authorizing the fee permits only a "reasonable attorney fee."

Id., *5. Going on, Stolicker recognized that:

> A "reasonable attorney fee" cannot be a "sum certain" because, under State law, the trial court must determine the reasonableness of the attorney fee amount based on evidence provided to the court. See In re Howarth's Estate, 310 N.W.2d 255, 257 (Mich.App. 1981) (holding that to establish a claim for attorney fees "the better rule is to require introduction of evidence."); Zeeland Farm Services, Inc. v. JBL Enterprises, 555 N.W.2d 733, 736 (Mich.App. 1996) (noting that while a contract may include a provision requiring the breaching party to pay the other side's

attorney fees, recovery is limited to reasonable attorney fees and the party requesting the fee must introduce evidence of reasonableness).

Id.  Finally, the <u>Stolicker</u> held that:

> **Claiming that a "reasonable attorney fee" is a "sum certain," as Muller did in this case, is a false representation.** Although the Muller law firm fails to appreciate the falsity of its statement, it is clear to the Court that a "reasonable attorney fee" cannot be a "sum certain." A reasonable attorney fee requires a judicial evaluation of the evidence regarding the fee.  A sum certain, is just that, a liquidated amount that requires nothing further. Cases discussing whether a reasonable attorney fee is a sum certain in the context of the federal rules of civil procedure are instructive and establish that a "reasonable attorney fee" is not a "sum certain."  (Emphasis added)

Id.  <u>See also</u> <u>Kojetin v. C U Recovery, Inc.</u>, No. 97-2273, 1999 WL 1847329, *2 fn. 3 (D.Minn. March 29, 1999) ("The FDCPA would provide little protection to a debtor... if, in agreeing to pay 'reasonable collection costs,' a debtor was held to have agreed to pay whatever percentage fee a debt collection service happened to charge a lender."), <u>aff'd</u>, 212 F.3d 1318 (8th Cir. 2000).

Here, the Amended Complaint pled Defendants have systemically applied a fixed fee to homeowners' foreclosure complaints, regardless of the amount actually due or work incurred at the time of filing.  These fixed fees are clearly in violation of the mortgage, state law, and the FDCPA.  A system that allows for defendant to collect a fixed fee without a showing of proof that that fee was actually incurred or earned would shift the burden in showing that their fee was reasonable and earned.

*iii.* *Falsely Representing that Attorneys' Fees Were Incurred When They Have Not Been Violates the FDCPA*

The Magistrate found that Mr. Kaymark's FDCPA positions are hypertechnical and, in that process, she disregards Mr. Kaymark's argument both factually and legally. She states that:

> Plaintiff does not dispute that BOA would be entitled to collect such fees and costs at the successful conclusion of the foreclosure proceeding, nor that the fees and costs are not permitted by the loan instruments... Instead, he makes the rather hypertechnical argument that the contract only provides for reasonable incurred charges for services performed.

R&R, pp. 22-23. In fact, Mr. Kaymark does not dispute the amount of the fees that BOA could be entitled to at all so long as those fees were actually incurred and reasonable, in accordance with the Mortgage. The Magistrate stopped her analysis short of the real issue in her R&R. Not only did the plain reading of the contract state that only reasonable charges for work incurred was allowed, all known courts considering cases like this have held that debt collectors violated the FDCPA. See Pierce, supra; Som, supra; Pettway, supra (citing Fields v. Wilber Law Firm, P.C., 383 F.3d 562, 565 (7th Cir.2004) (attorney violated FDCPA by stating the amount of a debt as an estimate of future liability rather than as a statement of the current amount of the debt)); see also Spencer, 591 (violation of FDCPA to collect attorney's fees that have not yet been incurred). What Mr. Kaymark pled gives rise to his misrepresentation and overcharge claims, include:

1. the fees and costs demanded as due and owing as of July, 2012, were not;

2. the fees and costs demanded were demanded as due and owning, but were not;

3. the fees and costs that the Mortgage contract authorized could be charged must be unliquidated, reasonable and incurred, but the fees and costs demanded were not;

4. the fee and costs demanded were a liquidated, fixed fee and, thus, were false; and,

5. the Mortgage only authorizes incurred fees.

Including attorneys' fees in the debt, and representing those fees were due prior to the date they were incurred, is a false representation of the character as well as the legal status of the debts in violation of section 1692e(2)(A).   McDermott v. Marcus, Errico, Emmer & Brooks, P.C., 911 F. Supp. 2d 1, 68 (D. Mass. 2012) amended in part, 09-10159, 2013 WL 4539071 (D. Mass. Aug. 26, 2013).

In Gathuru v. Credit Control Servs., Inc., 623 F. Supp.2d 113, 120-121 (D. Mass. 2009), the court held that determining a fee authorized by the agreement does not end the analysis as to whether an FDCPA violation has occurred, especially where the fee has yet to be incurred, holding:

> Where a fee was expressly authorized by the Agreement, and therefore did not violate the FDCPA, is not the end of the analysis. Plaintiff also alleges that defendant violated the FDCPA by attempting to collect a fee that had not yet been incurred. In other words, plaintiff argues in substance that even if the fee was *authorized,* it had not yet been *incurred* at the time the collection letters were sent. The Court agrees that the undisputed facts establish a FDCPA violation… [Defendant] had no right at that point to collect the fee.

Id.  In Pettway, the defendant represented a debt due included a lump sum assessment of legal fees and costs totaling $3,654.93. This figure included only $933.93 in actual expenses.   The bulk of the increase in the bill was explained by the addition of the balance of the flat fee and the costs, most of which had yet to be incurred.  Id., *6.

Nonetheless, Pettway held that the claims could continue past motions to dismiss even though defendant had included (in a footnote) that stated:

> The quoted legal fees and costs are estimated through the date you have requested. If you contact this office immediately prior to the time you intend to mail or deliver the funds, we will provide you with the actual legal fees and costs at that time.

Pettway, *2. Here, no such disclaimer was made. It is unknown, given cases like Som, Pettway, Fields, Spencer, McDermott and Gathuru, why the false statements, as pled, failed to violate the FDCPA here. A consumer could look to the body of the foreclosure complaint, see the amount demanded as due, and reasonably believe that was the amount earned. If the request for fees and costs were made only in the request for relief, a sophisticated consumer could know it had a responsibility to determine if they were incurred upon entry of judgment.

Finally, the reasonableness of fees is not a question of law that can be determined as a matter a law under Fed.R.Civ.P. 12(b), but are questions of pure fact. See Pettway, *12 fn. 2 (plaintiff argues fees are unreasonable "but recognized that this argument entails issues of fact incapable of resolution as a matter of law"). In fact, whether or not a demand for attorneys' fees included fees that are incurred or not is similarly a "quintessential jury issue." Id. Also see Som, 349 (fee on legal work they had not yet performed could not be resolved at motion to dismiss stage, because of factual dispute as to whether they combined future attorney fees with already-incurred fees). These are **factual** assertions that at this stage must be accepted as true. Neither Iqbal, 684 nor Twombly, supra require further factual support for well pled (i.e., purely factual) assertions. When there are well-pleaded factual allegations, a court (or a magistrate) must assume their veracity and then determine whether they "plausibly give rise to an entitlement to relief." Iqbal, 679; accord, West Penn Allegheny Health System, Inc. v. UPMC, 627 F.3d 85, 98 (3d Cir. 2010), citing Twombly, 569.

   *iv. Demanding Liquidated or Sum Certain Fees in the Body of a Foreclosure Complaint is Not Legal*

  Respectfully, the Magistrate also errs in her R&R by failing to correctly identify the pled

FDCPA violations.  The Magistrate states that:

> Plaintiff does not seriously challenge the reasonableness of the attorneys' fees and costs if they are incurred and awarded at the conclusion of the foreclosure proceedings, **only that it is misleading and deceptive to inform him of those fees and costs at the inception of the proceeding** in the Foreclosure Complaint… [I]temized fixed fees and costs would not have misled or deceived the least sophisticated debtor… which may be lawfully received.  (Emphasis added[7])

R&R, pp. 23-24.  In fact, Mr. Kaymark does not challenge the potential future reasonableness of

the fees, but only challenges the fee as unincurred and, therefore, in breach of the Mortgage and

in violation of the UTPCPL.  See <u>Wigod</u>, <u>supra</u> and <u>Corvello</u>, <u>supra</u>.

  The Magistrate then changes her analysis from what Udren said to what it did not say.

The body of the Foreclosure Complaint, ¶6, *inter alia*, demands:

> The following amounts are due on the said Mortgage or modification agreement **as of the date stated below**
> …
> Title Report      $325.00
> Attorney Fees     $1,650.00
> Property Inspection   $75.00
> GRAND TOTAL    $230,839.92
> The above figures are calculated as of 07/12/2012 (Emphasis added)

Hence, as of July 12, 2012, a full two **months** before the Foreclosure Complaint was filed, Udren

was demanding the full $1,650 in attorneys' fee charge was due.  It was **not** stating that this

amount was an estimate or that it was the maximum per se reasonable fee under the FNMA

servicing guide.  It simply stated that it was an amount due as of July 12, 2012.  Surely, a

---

[7] The Complaint did not purport to inform Mr. Kaymark of what charges would be at the conclusion, but to demand from Mr. Kaymark charges that had, purportedly, accrued as of sixty days prior to commencement.

homeowner would never know whether to challenge this amount as incurred post-foreclosure, as it would never have been made aware that this amount was an estimate.

Mr. Kaymark has not argued that it is misleading or deceptive to inform him at the inception of what the fees and costs had been incurred. To the contrary, Mr. Kaymark has argued that the foreclosing lender does not have the authority to represent those fees and costs as due and owing at all under his Mortgage. The difference is quite significant. While, in some other circumstances, it may be allowable to place estimated attorneys' fees and costs in the request for relief, it is certainly not allowable to represent that those fees are due and owing in the body of a foreclosure complaint under the FDCPA.[8]

Another FDCPA violation here was representing an amount owing as of July 12, 2012, could not have been owed unless and until judgment was entered. In Shula v. Lawent, 359 F.3d 489, 492-493 (7th Cir. 2004), it was held that an FDCPA plaintiff can show a §1692f(1) violation where the money demanded was **incidental** to a claimed debt, but where fees and costs are represented to be a part of the debt owed. As the Shula stated:

> Had it not been for the suit against Shula to collect the debt he owed the doctor, no claim for costs would have arisen. And of course there was no agreement by Shula to pay the costs and of course no debt arose by operation of law, since, as we said earlier, that **would have required the entry of a judicial order commanding him to pay the costs**. Therefore section 1692f(1) was violated as well. (Emphasis added)

---

[8] It may be proper to ask for a sum certain for attorneys' fees and costs, in the request for relief. That sum would later be reviewed by the court, and proven to be for actual work incurred. See e.g., Hall v. Leone Halpin & Konopinski, LLP, No. 06-343, 2008 WL 608609 (N.D.Ind. Feb. 28, 2008) (making a demand in the state court complaint for fees in an amount certain or otherwise asking the state court for relief that is not categorically barred is okay -- just part of the normal judicial process). However, here, this was not such a request for relief, could not be mistaken for such a request given its placement in the Foreclosure Complaint, but was instead a plain misrepresentation of the amount currently owing.

_Id.,_ 493.  Because the fees and costs demanded here are **incidental** to the principle debt, and not the debt itself, they are in an altogether different category than debts like unpaid principal balances and incurred or accrued interest.  See Andrews v. S. Coast Legal Servs., Inc., 582 F. Supp.2d 82, 87-88 (D. Mass. 2008) ("[h]ad it not been for the suit against [Andrews] to collect the debt [she] owed, no claim would have arisen").  Allegations that there is no mortgage contract that authorizes unincurred fees and costs, and they were not authorized by statute, state a claim for violation of the FDCPA.  Id.  See also Jessamey v. Norfolk Fin. Corp., 2006 Mass.App. Div. 82, 2006 WL 1211029, *3 (Mass.App.Div. Apr. 28, 2006) (claim for attempting to collect unauthorized fees and costs sufficient where "[t]he the complaint suggest that [defendant], acting on behalf of [its principle], was not merely seeking to enforce an execution as permitted by statute, but was improperly attempting to use [the property] as leverage to compel [plaintiff] to pay unlawful fees to which [defendant] was not entitled").

Where, as here, the mortgage explicitly authorizes foreclosure fees and costs that are reasonable and incurred, but the amounts represented as due include the opposite, there is an FDCPA violation.  Mixing unliquidated fees and costs with the principle debt and/or accrued interest distorts the true amount due, and can easily mislead the least sophisticated consumer. See Hallmark v. Cohen & Slamowitz, LLP, 293 F.R.D. 410 (W.D.N.Y. 2013) (inclusion of fee, to which Defendants may not have been entitled, would serve to mislead the "least sophisticated consumer" as to the true amount of the debt); Bird v. Pressler & Pressler, L.L.P., No. 12–3007, 2013 WL 2316601, *3 (E.D.N.Y. May 28, 2013) (impermissible attempted recovery of fees, if correctly pleaded, states a claim under §1692e(2)(B)). [9]

---

[9] In footnote 6 of the R&R, it appears the Magistrate has misunderstood the debt validation process and its protections.  Debt validation is a separate and unique claim under the FDCPA. See FDCPA, §1692g.  Mr. Kaymark has brought no such claim here.  Hence, any protections

*v.    BOA's Fee Demands Were Material*

Respectfully, the Magistrate also misunderstands Mr. Kaymark's position when discussing, *in dicta*, materiality.   R&R, pp. 24-26.   Here, the Defendant-debt collector has represented the amount due and owing included attorneys' fees which were false because those fees were not incurred.  This is a very different situation from those materiality cases cited by the Magistrate.  While the Magistrate hones in on the fact that these estimated fees may, in the end, become reasonable, has nothing to do with whether the doctrine materiality would apply.

Being that the demanded fees are represented to be due as of July 12, 2012, when they are not, the demand is false and violates the FDCPA.  This case is not a case of a debt collector placing a debt that is actually due in the wrong place on its form.  Here, the debt collector has placed an amount **that is not due at all** on its form (i.e., the Foreclosure Complaint) at the time it was requested.  That representation is an FDCPA violation.  Shula, supra.

Thus, the Magistrate's reliance on cases like Hahn v. Triumph Partnerships LLC, 557 F.3d 755, 757 (7th Cir. 2009) are misplaced.   R&R, p. 24.   In Hahn, a debt collector communication was attacked for the way that it allocated interest with respect to various owners of the loan.  While the itemization was questioned, the overall sum demanded was not.  Judge Easterbrook correctly found that such a minor technical flaw was not material.  "A dollar due is a dollar due. Applying an incorrect rate of interest would lead to a real injury; reporting interest in

---

Udren seeks are for a claim that simply does not exist in this case.  Moreover, the purpose of a debt validation notice is to allow consumers an opportunity to postpone litigation until the debt is verified.  This cannot be accomplished if a collection suit has been brought simultaneously with the debt validation notice.  Hence, even if Mr. Kaymark had brought a §1692g claim, which he did not, the foreclosure suit would have negated any reason to contest the debt validation notice.  Simply put, debt validation has no bearing on this case, today or in the future.  Furthermore, the initial communication at issue here was a foreclosure complaint, and congress has exempted formal pleading from the ambit of §1692g entirely.  These arguments are set forth in more detail in Mr. Kaymark's Substituted Section of the Opposition to Defendants' Motions to Dismiss, which are incorporated.  See Document 32-1, pp. 1-4.

one line item rather than another (or in two line items) harms no one and, for the reasons we have given, may well assist some people." <u>Hahn</u>, 757. Mr. Kaymark does not dispute this holding, but it has no application here. Indeed, a dollar due is a dollar due, but what is at issue here is that Udren has demanded an amount due that is not in fact due. This is categorically different from the technical violations cited in the materiality cases cited by the Magistrate. The amount of the debt demanded, where it varies from what is actually owed, is the very archetype of a material debt collection violation.

Where there has been a representation that an amount is currently due, when it is not yet incurred, that creates a situation where FDCPA statutory damages may be claimed. <u>See</u> <u>Pierce</u>, *8 fn. 4 (while defendants point to <u>Salvati v. Deutsche Bank Nat. Trust Co., et al.</u>, No. 12-0971, 2013 WL 1314777 (W.D.Pa. Mar. 28, 2013), <u>appeal pending</u> No. 13-1972 (3d. Cir. 2013) for the notion that a plaintiff must allege actual damages to prevail in an FDCPA claim, that case did not discuss the availability of actual damages in the form of emotional distress or statutory damages). In <u>Pierce</u>, the court noted that:

> Defendants argue that Plaintiff has failed to state a claim because, having succeeded in the underlying collection suit, Plaintiff has not suffered any actual damages. The Court disagrees. The FDCPA provides for the award of "actual damages, attorney's fees and costs, as well as statutory damages up to $1,000." <u>F.T.C. v. Check Investors, Inc.</u>, 502 F.3d 159, 166 (3d Cir.2007) (citing 15 U.S.C. § 1692k(a)).
> …
> **The FDCPA does not make actual damages a prerequisite to the recovery of statutory damages**… Plaintiff here also seeks to recoup attorneys' fees expended in the underlying litigation. Therefore, the Court will not dismiss Plaintiff's FDCPA claims. (Emphasis added)

<u>Id.</u>, *4. In other words, as held by the Third Circuit and other courts, even if the fee incurred somehow came out to be $1,650 for every single homeowner, representing that that fee was due

and owing in the body of the foreclosure complaint, as opposed to the request for relief, is a violation of the FDCPA which calls for, at a minimum, statutory damages.

Finally, Udren makes much of the fact that Mr. Kaymark was represented in the foreclosure proceedings, and the Magistrate seems persuaded by this. However, the United States Supreme Court was not. Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 559 U.S. 573, (2010). Jerman makes it clear that this has no bearing on the viability of an FDCPA cause of action. There is no safe harbor in the FDCPA for debt collectors to overcharge consumers represented by counsel. See Simon v. FIA Card Servicers, N.A., 732 F.3d 259, 271 (3d Cir. 2013).

### vi. Mr. Kaymark has Pled Additional FCEUA Claims (Against BOA), Arising Out of BOA's Misleading Act 91 Notice That Were Not Addressed in the R&R

Mr. Kaymark has pled that BOA's purported Act 91 Notice demanded an inflated sum to cure the present default [Amended Complaint, Count I], and advised Mr. Kaymark that he had only thirty days to seek the assistance of credit counselors (as opposed to the thirty-three days required by law) [Amended Complaint, Count I and Act 91, §1680.403c]. The provisions of Act 91 are no mere technicalities, but were carefully crafted to insure distressed homeowners had the clear and correct information required to potentially save their home. The Pennsylvania Supreme Court, accordingly, strictly interprets the Act 91 notice concluding that any deviation from the required statutory content may constitute a significant defect under Act 91. See Beneficial Consumer Discount Company v. Vukman, 77 A.3d 547 (Pa. 2013). Just like the Pennsylvania Supreme Court in Beneficial, the agency in charge of enforcing Act 91, the PHFA, recognized that the notice requirements of Act 91 must be **strictly enforced**. See 42 Pa.B. 5447 (Aug. 18, 2012), which provides:

> Mortgagees must send all notices required by law. Act 70 makes it
> very clear that **there are serious consequences when the
> mortgagee or mortgage servicer does not send an Act 91 notice
> to homeowners or sends a defective notice** (that is, one that does
> not meet the requirements of the form notice published by the
> Agency; one that does not contain all of the information required
> by the form of the notice; or one that contains confusing,
> additional, conflicting or inappropriate information).   (Emphasis
> added)

The Act 91 defect claim here was acknowledged by the Magistrate, but not addressed by her.
R&R, p. 3 (recognizing that Act 91 requires a thirty-three day notice to the homeowner of their
meeting rights).  The Magistrate acknowledged that the Act 91 Notice sent to Mr. Kaymark only
provided him a thirty day notice.

As described above, both defects implicate the FDCPA prohibition against false,
misleading, or confusing communication pursuant to the collection of a debt, and therefore are
*per se* violations of the FCEUA. These claims were dismissed *sub silentio* by the Magistrate
without any reasoning (or even mention).   This *sub silentio* recommendation should be
rejected.[10]

> vii.   *Adoption of the Magistrate's R&R Would be the Death Knell to Consumer
> Protection Laws in Pennsylvania*

If, as found by the Magistrate, federal consumer laws fail to protect homeowners against
overcharges, as long as the charges are reasonably expected to eventually be justified, then
homeowners will be less able to cure their defaults and save their home before legitimate fees
mount.   This would likely increase the extortion that now exists in the foreclosure industry.   As

---

[10] Outside of the FCEUA counts arising out of the Act 91 notice's status as a communication
pursuant to the collection of a debt, Mr. Kaymark's Mortgage (as discussed above in relation to
Act 6) falls outside of the ambit of Act 91, and Mr. Kaymark accordingly has no personal claims
arising under Act 91 itself.  However, class members with mortgages covered under Act 91 may
have additional causes of action arising more directly under Act 91, or more precisely Act 70,
which amended Act 91.  As the named plaintiff, Mr. Kaymark can represent homeowners who
have such claims.  See Haas, *supra* and NECA-IBEW, *supra*.

recognized by <u>Daniels</u>, few homeowners are in a position to object to such overcharges.  Thus, in

<u>Daniels</u>, Judge Wettick found:

> The Davis law firm also contends that courts should not permit claims under the FDCPA to be based on pleadings governing counsel fees because at the end of the day courts will determine the amount of counsel fees that are owed.
> While this will be true when the cardholder is represented by counsel, in most cases the cardholder is not represented by counsel and the inclusion in the complaint of a specific amount not expressly authorized in the cardholder agreement will frequently inure to the benefit of the assignee of the issuer of the credit card. (Footnote omitted)

Judge Wettick continued his analysis.

> Upon receipt of a complaint, some defendants will pay the full amount that is sought.  In this instance, the assignee of the credit card issuer would have collected money to which it is not entitled because of the inclusion within the complaint of an amount that is not specifically authorized by the agreement.
> Receipt of the complaint may trigger negotiations over the amount of money that the assignee of the credit card issuer will accept in order to resolve the claim.  Bargaining that includes significant counsel fees (not expressly provided for in the agreement) will differ from bargaining where a claim does not include attorney fees.
> More than 80% of credit card litigation is resolved through a default judgment.  If the complaint improperly includes claims for counsel fees that are not provided for in the credit card agreement, the amount of the default judgment will very likely include these claims for counsel fees.

Without regulating charges, this constitutes a license to extort.  <u>See</u> <u>Glover v. FDIC, et al.</u>, 698 F.3d 129, 142-143 (3d Cir. 2012).  Yet, the Magistrate's R&R found that such homeowners are entitled to no consumer protections even under their mortgages.

### B. State Law Claims

     *i.    The Magistrate's Findings that Each State Law Count Fails for Want of Allegation of an Ascertainable Loss Constitutes Legal Error*

Mr. Kaymark's Complaint advances three counts well-grounded in state law: a Fair Credit Extension Uniformity Act ("FCEUA") count; a breach of contract count restricted to BOA (Counts I and IV); and, an Unfair Trade Practices and Consumer Protection Law ("UTPCPL") count against both BOA and Udren. The Magistrate recommends the dismissal of all three with prejudice. She reasons that all three counts fail to establish either of two closely related elements: an allegation of ascertainable loss and contractual damages (which are used interchangeably in the R&R). Respectfully, these findings are erroneous. Mr. Kaymark has plead that the encumbrance or lien on his property was inflated by specific unincurred amounts, resulting in a corresponding, precisely quantifiable, diminishment in his interest in property.

    *ii.    Mr. Kaymark has Plead an Ascertainable Loss that is Neither Vague Nor Speculative and can be "Reasonably Determined, Without Conjecture" and Established with "Reasonable Certainty"*

The Magistrate based her R&R for dismissal of all counts on a supposed absence of any allegation of an UTPCPL ascertainable loss or damages because cash payment of the unincurred flat fees and charges was not made. Thus, the Magistrate completely adopted Defendants' Motions to Dismiss against Mr. Kaymark, while simultaneously overlooking contrary case law brought to her attention by Mr. Kaymark.

For example, in Grimes v. Enterprise Leasing Co. of Philadelphia, LLC, 66 A.3d 330, 336 (Pa.Super. 2013) the plaintiff asserted UTPCPL claims based on disputed rental car charges that had been charged to her by the defendant – **but which she had not paid**. The Superior Court reversed the trial court's grant of the defendant's motion for judgment on the pleadings, rejecting the defendant's defense that the plaintiff had failed to plead an ascertainable loss and

held, "In what appears to be a classic case of "tail wagging the dog," the trial court granted Enterprise's motion for judgment on the pleadings **on the basis Grimes had no ascertainable loss, where Enterprise had stipulated that it will not seek to collect any money from Grimes**," (Emphasis added). <u>Grimes</u>, 339.    The court then rejected the view of the magistrate in interpreting the UTPCPL:

> Herein, Grimes alleges the same loss as the plaintiff in Jarzyna [v. Home Properties, L.P., 763 F.Supp.2d 742 (E.D. Pa. 2005)]. Grimes alleges that she has incurred costs and fees associated with asserting her rights and preventing Enterprise from collecting its debt. . . . In our view, this is sufficient to allege an "ascertainable loss" under the UTPCPL. **Grimes was not required under the UTPCPL to sit idly by and wait for Enterprise to collect $840.42 from her in order to assert her rights and attempt to stop Enterprise's alleged deceptive trade practices**. (Emphasis added)

<u>Id</u>.    Yet, Mr. Kaymark's Amended Complaint forthrightly grounds his pleading of an ascertainable loss or damages on a loss in property value associated with an inflated extra value. Amended Complaint, ¶19.  That an increase in the amount required to clear a lien encumbering property constitutes a clearly ascertainable economic loss was supported in Mr. Kaymark's opposition to the current motion with substantial case law.  This body of well-reasoned case law was not distinguished or even acknowledged in the current R&R.  The Magistrate's reasoning, with respect to whether a quantifiable decrease in equity resulting from inflation of the encumbrance on a property, is an ascertainable loss that supports both Mr. Kaymark's UTPCPL and Mortgage claims, but was ignored.  Instead, the Magistrate found:

> The lien [alleged by Plaintiff to be improperly inflated] wrongly caused a diminution in the value of Mr. Kaymark's property . . . equal to the charges improperly liened against, and encumbering, his property." Amended Complaint, (ECF No. 23), at ¶¶ 18-19. As discussed above, **any "diminution in value" of Plaintiff's residential property is vague and speculative**, and is not an "ascertainable loss" resulting from the flat fees and fixed costs

included in Defendants' Notice and Foreclosure Complaint, and Plaintiff offers no direct authority to the contrary.

R&R, p. 15.[11]  Again, there was no analysis by the Magistrate.  Despite the case law, she then concluded that:

> Plaintiff has not explained how inclusion of "unauthorized" attorneys' fees and other fixed costs in … the Foreclosure Complaint **caused him any actual damages that could be reasonably determined, without conjecture**. On the contrary, given that Plaintiff has never paid such fees or costs, is vigorously challenging the foreclosure and those fees and costs, with counsel, and may never have to pay them if he is successful in state court, **it is difficult to imagine that he has sustained any actual damages from the alleged breach of the terms of the Mortgage**. Assuming, without deciding, that there was a breach of the Mortgage contract, Plaintiff has not suffered any ascertainable loss, nor has he suffered any damages that can be proven with any reasonable certainty.  (Emphasis added; Citations omitted)

Id., p. 17.  The short and direct explanation is that a payment in kind is no different than a payment in cash.  To conflate the threshold requirement of ascertainable loss (or, in the contract case, the existence of damages) with the proof of actual damages required at the remedy phase, is

---

[11] The "discussed above" referred to in this quote does not discuss why inflation of the amount needed to clear a lien on property constitutes a vague or speculative loss.  The case law cited by the Magistrate above merely recited the standard case law establishing (in part superseded) the rule that a UTPCPL claim must be supported by allegation of an ascertainable loss caused by a plaintiff's justifiable reliance on a defendant's fraudulent acts.  While ascertainable loss is admittedly required, the justifiable reliance prong is not applicable here, nor did the Magistrate apply it in any way.  This common law fraud pleading requirement, aside from being irrelevant to whether inflation of a lien causes only a vague or speculative loss, is not applicable to counts under the FCEUA or counts under the deceptive acts provision of the UTPCPL, which have an ascertainable loss requirement, but no justifiable reliance requirement. Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC, 40 A.3d 145 (Pa.Super. 2012); Grimes, supra; and, Trunzo, supra.  Also see Toth v. Northwest Savings Bank, No. GD-12-008014, pp.7-15 (C.P.Allegheny June 25, 2013) ; Belmont v. MB Inv. Partners, Inc., 708 F.3d 470, 498-500 (3d Cir. 2013); and, New-Howard v. JPMorgan Chase Bank, N.A., No. 11-2855, 2013 WL 6096232 (E.D.Pa. Nov. 20, 2013).  Furthermore, in post-contract fraud/deception cases, such as this one, the concept of justifiable reliance is inapplicable.  Michaels Bldg. Co v. Ameritrust Co., N.A., 848 F.2d 674 (6th Cir. 1988); Petro-Tech Inc. v. Western Co. of North America, 824 F.2d 1349 (3d Cir. 1987); and In re U.S. Foodservice Inc. Pricing Litigation, 729 F.3d 108, 123 (2nd Cir. 2013).

erroneous.  See D'Agostino v. Maldonada, 78 A.3d 527, 537, 541-542 (N.J. 2013).[12]    At this

stage, all that must be demonstrated is that Mr. Kaymark pled the existence of an ascertainable

loss (or the existence of contractual damages).  Proof of the precise amount is not necessary, just

that it is greater than zero.      Questions of remedies under the UTPCPL are not currently before

this Court.  Nor are questions of precise valuation of damages at issue.  See Messner, 815, 819

quoting Wal-Mart, 2558.  Compare Messner, 818 citing In re Hydrogen Peroxide Antitrust Litig.,

552 F.3d 305, 311-312 (3d Cir. 2008).  Under the nearly identical New Jersey statute (Consumer

Fraud Act), the New Jersey Supreme Court has determined that either "an out-of-pocket loss or

**the loss of value of his or her interest in property**" [emphasis added] is sufficient to establish

an ascertainable loss and, specifically, that a decline in equity satisfies the requirement.

D'Agostino, 541.

    The Magistrate relied on Salvati v. Deutsche Bank  Nat. Trust Co., et al., No. 12-0971,

2013 WL 1314777 (W.D.Pa. Mar. 28, 2013), appeal pending No. 13-1972 (3d. Cir. 2013),

wherein Judge Schwab determined that failure to plead a cash payment is fatal to UTPCPL

claim. The Salvati court, as here, refused to consider the central lien issue; whether inflation of

the encumbrance on real property can constitute an ascertainable loss, actual damage or both.

Rather, in Salvati, ignoring the succinct reasoning of the magistrate (Kelly, M.J.), the court

concluded that the magistrate's recommendation was premised on a pleading of a cash payment,

a pleading error that turned out to be erroneous, and declined to accept the magistrate's

recommendation in its totality.  The Salvati court pointedly did not address Salvati's arguments

with regard to whether the inflation of the lien constituted an ascertainable loss.  The failure to

consider this argument and others are currently the subject of an appeal pending before the Third

---

[12] Frequently, the Pennsylvania Supreme Court looks to New Jersey.  See Beneficial, 77 A.3d
547.

Circuit.  See Salvati v. Deutsche Bank, et al., No. 13-1972 (3d. Cir. 2013).  A district judge in this district has already found Salvati to be erroneous with respect to a damage requirement under the FDCPA.  See Pierce, supra.  The Magistrate here, unfortunately, did not.

The Magistrate also relies on Benner v. Bank of America, N.A., 917 F.Supp.2d 338, 359 (E.D.Pa. 2013), which rejected the argument that a diminution of home equity due to improperly inflated mortgage debt represented an ascertainable loss.  Benner reasoned that since the property was not sold, no actual loss was realized.  But, this fails to account for the increase in encumbrance in property the inflation of the lien represents.

The equity in real property does not become valuable only when it is cashed in through sale.  Equity in property provides real economic value above and beyond potential future sale proceeds.  A homeowner with $10,000 in equity in his home can secure funds for immediate use that might not be secured otherwise.  A homeowner with $20,000 in equity can cash out through a loan and perhaps buy a car, but if this $20,000 in equity is suddenly consumed by a wrongful inflation of the lien, then the homeowner's purchasing power is diminished much as it would be if $20,000 were illegally removed from her bank account.  While the illegal lien persists, the homeowner suffers a distinct negative change in economic position just as a car owner with a Denver boot on his car suffers a negative change in position even if he does not try to sell his car with the boot on it.  The so encumbered car owner suffers a loss of the full use of his property; a clear economic loss.  It is the same as to an encumbered homeowner.  She loses the full use of the benefits attendant to owning her property.

The Magistrate's central damage contention (although not properly before this Court) is that a loss by lien resulting from inflation of the value required to clear a lien encumbering real property is "vague and speculative" and cannot "be reasonably determined, without conjecture."

R&R, p. 17.  But there is nothing vague and speculative about such a property loss, nor does it require any conjecture to determine its amount.

If a creditor charges a homeowner one dollar in hypothetically wrongful fees, and the homeowner pays in cash, the homeowner suffers an ascertainable loss of one dollar.  If the creditor agrees to accept an apple worth one dollar as payment, the homeowner has still suffered an ascertainable loss and damage loss of one dollar.  This is because payment in goods, or (as in this case) partial ownership of property, can establish a loss just as effectively as payment in cash.  Accordingly, excess interest is broadly defined to prevent disguised interest where the lender contracts or receives any extra **value** for the loan or use of money exceeding the authorized interest or charge in a loan transaction.  See Scott v. Lloyd, 34 U.S. 418, 457-459 (1834) (Marshall, C.J.) (slaves); Fowler v. Equitable, 141 U.S. 384, 401-402 (1891) (horse).  BOA's inflated lien constitutes **extra value** or disguised interest.  See Ernst v. Hoskins, 100 Pa. 551, 557-560 (1882) (land purchase at exorbitant prices); Saunders v. Resnick, 16 A.2d 676, 677-678 (Pa.Super. 1940).  BOA demanded and received disguised value (interest) creating extra value for BOA, at Mr. Kaymark's expense and loss, in excess of that authorized by Mr. Kaymark's Mortgage, state law and federal law and a corresponding loss for Mr. Kaymark.

This loss is not difficult to quantify.  Without regard to any determination of the property's preexisting value, a property worth a thousand dollars after accounting for the original lien will be worth $999.00 after the lien.  If, as a result of the hypothetically wrongful one dollar charge made by a mortgage creditor, the creditor inflates the amount required to clear the lien on the subject property, the homeowner loses one dollar in the net value of his home, and has suffered an ascertainable loss valued at one dollar.  There is nothing vague here; one dollar of improper charges added to the amount to clear the lien on a property causes a loss ascertainable

to be one dollar. If the property is sold, the proceeds will be one dollar less in order to clear the inflated lien. If the property is used as security for a loan, it will provide one dollar less security than it otherwise would have in the absence of the lien's inflation.

The Magistrate appears to have adopted the position that Mr. Kaymark's pled loss is dependent on some future events (i.e., whether the fees will eventually be paid in cash or whether the fees will eventually be earned or incurred) that requires speculation or conjecture. But such future events are not relevant to the loss pled. While it is true that the lien might later be reduced, or that the actual incurred charges might someday swell to the size of the lien, this does not negate that for a period of time Mr. Kaymark suffered a definite deprivation of property.

And, in any event, it would be no different if cash were at issue. A cash payment can be refunded, or a contractor that bills (and is paid) prematurely for work not yet performed might eventually perform enough work to justify the charge. But, this does negate damage or loss. If a fee-for-service contractor billed for work that was not actually completed for six months, there are still contractual damages. The counterparty was denied enjoyment of his money for six months. Though he received the principal he is still out the value attendant to the use of his money, which can easily be quantified through some interest collection, a collection which could be applied equally in the case that the deprivation was not in cash but in property. Thus, a transient loss is no less clearly ascertainable.

If the Magistrate's apparent view was adopted, it would be impossible to ever recover on breach of contract since any defendant might cure a breach of contract through future acts all the while benefiting from its delayed performance. Here, Defendants could inflate the value of their lien portfolio with impunity until the fees are actually (if ever) earned, receiving, effectively, a free loan. For this reason, such breach of contract (and other claims) must be determined by the

date of the breach or violation.  DeArmitt v. New York Live Ins. Co., 73 A.3d 578, 592 (Pa.Super. 2013).  D'Agostino, 545 ("the existence of ascertainable loss resulting from a defendant's CFA violation should be determined on the basis of the plaintiffs' position following the defendant's unlawful commercial practice").

If Mr. Kaymark prevails in the foreclosure action, and it is determined that the foreclosure was improper *ab initio*, he will never be required to render a cash payment for the disputed fees.  But this does not negate the fact that for a definite period of time, Mr. Kaymark suffered a diminution of the value of his property and was constrained in his ability to fully and meaningfully enjoy his property.  For instance, he could not use his property during the intervening time to provide security corresponding to the correct value of his equity, and he could not sell his property without money being diverted to clear the improper lien.

And if Udren eventually performed work and BOA eventually incurs the fee, justifying the liquidated fees and charges demanded from the outset does not negate the fact that Mr. Kaymark suffered a diminution of his interest in his property for a definite period before the fees and costs became collectable under the Mortgage and state laws.  Thus, whatever the future holds, Mr. Kaymark suffered an ascertainable loss (namely a decline in the net value of his property corresponding to the amount of the improper fees). If a creditor had free rein to charge anything **at any time**, consumer protection laws would be worth very little.

Nonetheless, the Magistrate again ignores Mr. Kaymark's case law and reasons that:

> [G]iven that Plaintiff has never paid such fees or costs, is vigorously challenging the foreclosure and those fees and costs, with counsel, and may never have to pay them if he is successful in state court, it is difficult to imagine that he has sustained any actual damages from the alleged breach of the terms of the Mortgage.

R&R, p. 17. The Magistrate appears to be endorsing the Defendants' defense that, since it cannot be known whether a cash payment will ever be made, whether there will be damages is dependent on conjecture. But, this begs Mr. Kaymark's argument. Since payment in kind has already been extracted, no conjecture about cash payment is necessary. Currently, the amount required to clear the lien on Mr. Kaymark's property has been inflated by specific charges and fees. This has reduced the net value of Mr. Kaymark's property in a precise way.[13]

      *iii.*    *Mr. Kaymark's Claims Based on the Wrongful, Inflation of a Lien Constitutes an Ascertainable Loss And Are Viable*

Other than reliance on <u>Salvati</u> and <u>Benner</u>, which do not meaningfully address the legal sufficiency of the lien inflation theory, and a conclusory assertion that the loss pled by Mr. Kaymark was vague, or dependent on conjecture or speculation, the Magistrate fails to address any of Mr. Kaymark's legal arguments supporting his lien inflation theory, finding summarily that none of it provides any direct authority. Where an issue is one of first impression there will be no direct authority. If no direct authority constitutes a defense, there would be little need for courts like the United States Supreme Court. Here, aside from direct authority (<u>Grimes</u>, <u>supra</u> and <u>D'Agostino</u>, <u>supra</u>) and the United States Supreme Court decision that a temporary lien can constitute a property loss (<u>Connecticut</u>, <u>supra</u>), Mr. Kaymark, as highlighted herein, has provided substantial authority that firmly establishes the fundamental legal principle that an increase or decrease in interest in real property is routinely cognizable at law, and that a loss of interest in real property is clearly consistent with the UTPCPL's ascertainable loss requirement, and the requirement for damages under the law of contract.

---

[13] Perhaps the actual value of Kaymark's property is subject to uncertainty, but the way that the inflated lien influences the net value is nevertheless certain. Whatever the property value was initially, it is X dollars less as a result of the inflated lien.

First, it is undisputed that an increase in debt and encumbrance constitutes a detrimental change in position for the debtor and a property interest of the creditor. Manufacturers and Trades Trust Co. v. Luzerne County Tax Claim Bureau, 56 A.3d 36 (Pa.Commw. 2012) (a lien on property is a property interest of the creditor). The pled damages consist of diminution of Mr. Kaymark's property interest by a lien, along with a corresponding enhancement in the position of BOA. See, e.g., Delaware v. New York, 507 U.S. 490, 499 (1993) ("the property interest in any debt belongs to the creditor"); Case of the State Tax on Foreign-Held Bonds, 82 U.S. 300, 320 (1872) ("[D]ebts owing by corporations, like debts owing by individuals, are not property of the debtors in any sense; they are obligations of the debtors, and only possess value in the hands of the creditors. With them they are property, and in their hands they may be taxed. To call debts property of the debtors is simply to misuse terms."); Burns v. Pennsylvania Dep't of Correction, 544 F.3d 279, 286-287, 289-290 (3d Cir. 2008) (the mere threat of seizure of property was a property interest implicating due process, and noted that "the most basic of economic principles teaches that property subject to seizure-even if the probability and timing of such a seizure is unknown-possesses a lesser present day economic value than property not so encumbered" and that "[i]n the context of real property, a simple example of the relationship between an asset's value or utility and the threat of expropriation can be seen in the divergent market values of an estate held in fee simple versus an estate held subject to an encumbrance"). This case law was overlooked by the Magistrate.

The UTPCPL provides remedies to address deceptive or fraudulent practices resulting in an ascertainable loss. UTPCPL, §201-9.2(a). The existence of an ascertainable loss is determined by substance, not labels. An overcharge or overpayment need not consist of money, but can consist of property. Just as excess interest (value) can constitute an overcharge, an

excessive property interest in indebtedness (i.e., an excessive or unjustified lien) can also constitute an overcharge. The Pennsylvania Supreme Court has recognized that transferred property interests can constitute an overcharge or usury. See, e.g., Kelter v. American Bankers' Fin. Co., 160 A. 127, 131 (Pa. 1931) (construction contract assignment); Ernst, 553 (land purchase at exorbitant prices).

If a property loss is sufficient to establish an overpayment or detrimental change in position in other contexts established by Pennsylvania law, it should be deemed sufficient in the context of the UTPCPL, particularly in light of the Supreme Court's admonition to construe the provisions of the UTPCPL liberally. There is no reason to believe that detrimental change in position attendant to a property loss is any less ascertainable in the UTPCPL context than it is in the myriad other contexts in which allegation of a loss of property is sufficient to satisfy the damage element. Such a detrimental change in position, resulting from property loss, is easily quantified and is not categorically different from a detrimental change in position resulting from a cash payment.

A construction of the UTPCPL that failed to consider that property loss constitutes a judicial rewrite of the ascertainable loss element of a UTPCPL claim because the UTPCPL includes a specific remedy provision addressing **loss of property** only:

> Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money **or property**, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act, may bring a private action. (Emphasis added)

UTPCPL, §201-9.2(a). No more is required.

The Superior Court in Grimes addressed this issue and held that "as a result, because Grimes alleged that Enterprise was attempting to collect $840.42 from her through her insurer or

credit card company, and she has incurred costs and fees to prevent the same, we conclude Grimes properly pled a claim under the UTPCPL." <u>Grimes</u>, 339.

As to the contractual damages issue, BOA argues and the Magistrate agreed, that any breach of contract claim pled by Mr. Kaymark is foreclosed by the fact that no fees were actually paid in cash, leaving Mr. Kaymark unable to satisfy the damages element of a breach of contract claim relying on Fed.R.Civ.P. 8. As with the loss requirement under the UTPCPL, no payment of cash is necessary. <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007) and <u>Iqbal</u>, <u>supra</u> only require that a plaintiff plead facts that plausibly give rise to an entitlement to relief. Under a contractual damages perspective, these cases require only that a plaintiff plead a negative change in position as a result of the breach. Mr. Kaymark pled that the illegal charges were made part of the Mortgage debt, and increased the amount of the lien on the underlying property. Amended Complaint, ¶19.

## V.   **CONCLUSION**

Respectfully, for the reasons stated above, the Magistrate's Report and Recommendation should not be adopted by this Honorable Court.

MICHAEL P. MALAKOFF, P.C.
*/s/Michael P. Malakoff*
Michael P. Malakoff, Esquire
Pennsylvania Attorney I.D. #11048
Ralph N. Feldman, Esquire
Pennsylvania Attorney I.D. #207507
Jonathan R. Burns, Esquire
Pennsylvania Attorney I.D. #315206
Suite 200, The Frick Building
Pittsburgh, PA 15219
Telephone: (412) 281-4217
Facsimile: (412) 281-3262
malakoff@mpmalakoff.com
*Attorneys for Named Plaintiff, Dale A. Kaymark, individually and on behalf of other similarly situated former and current homeowners in Pennsylvania*

## CERTIFICATE OF SERVICE

I hereby certify that on the **21st** day of **January**, **2014**, a true and correct copy of the foregoing **Objections to the Magistrate's Report and Recommendation** was served upon the following parties of interest via the Court's Electronic Filing System:

Andrew J. Soven, Esquire
Marc A. Goldich, Esquire
REED SMITH, LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103

Thomas L. Allen, Esquire
Nellie E. Hestin, Esquire
REED SMITH, LLP
225 Fifth Avenue
Pittsburgh, PA 15222

Jonathan J. Bart, Esquire
WILENTZ GOLDMAN & SPITZER, PA
Two Penn Center, Suite 910
Philadelphia, PA 19102

*/s/Michael P. Malakoff*
Michael P. Malakoff, Esquire

**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

---------------------------------------------------------------

|  |  |  |
|---|---|---|
| DALE KAYMARK, Individually and on behalf of other similarly situated current and former homeowners in Pennsylvania, | : : : | |
| Plaintiff, | : : : | NO. 2:13:cv-00419-CRE |
| v. | : : | |
| BANK OF AMERICA, N.A. and UDREN LAW OFFICES, P.C., | : : : | |
| Defendants. | : : | |

---------------------------------------------------------------

**RESPONSE OF DEFENDANT UDREN LAW OFFICES, P.C. TO PLAINTIFF'S
OBJECTIONS TO THE MAGISTRATE'S REPORT AND RECOMMENDATION**

Defendant Udren Law Offices, P.C. ("Udren"), by its undersigned counsel, hereby

responds to the Objections filed by Plaintiff Dale A. Kaymark ("Kaymark") to the Report and

Recommendation of the Honorable Cynthia Reed Eddy, U.S.M.J. dated December 11, 2013 (the

"R&R").

## I.     PRELIMINARY STATEMENT

This case is a manifestation of what has been characterized as a "cottage industry"

which has sprung up to capitalize on the attorney fee provisions of the Fair Debt

Collection Act. *Federal Home Loan Mortgage Corp. v. Lamar*, 503 F.3d 504, 513 (6th

Cir. 2007). *Also see, Jerman v. Carlisle, McNellie, Rini, Kramer & Urich, L.P.A.*,

55905573, 617 (2010) (Kennedy, J., dissenting). Faced with a mortgage foreclosure suit

as to which there is no defense on the merits, in order to create leverage, a foreclosure

defendant in this case has manufactured an FDCPA claim based upon an alleged "error"

in the foreclosure complaint. In so doing, he ignored an FDCPA Validation Notice

giving him the right to dispute the computation of the debt, as well as ignore the fact that by entering an appearance of counsel and contesting the foreclosure, he has done <u>exactly</u> what the FDCPA intends - - put the consumer on the same level of expertise as the lender and allow him to defend himself.

In this case, Udren, on behalf of its client, Bank of America, N.A. ("BOA"), filed a foreclosure complaint which Kaymark frankly admits is meritorious.[1]  That foreclosure complaint was served with an FDCPA Validation Notice, giving Kaymark the opportunity to dispute the amount of his debt and obtain verification thereof.  *See*, Exhibit "B" to Amended Complaint at p. 5.  Absent such a dispute, the Validation Notice provided, consistent with the express language of the FDCPA, that Udren (in its role as debt collector) would assume (and have the right to assume) that the debt was valid.  15 U.S.C. §1692g(a)(3).

Seeking leverage for his foreclosure defense, and despite being represented not by one (1), but two (2) sets of attorneys[2], Kaymark ignored the Validation Notice, proffered no dispute which might easily have been resolved and filed a putative class action complaint alleging that the foreclosure complaint violated Pennsylvania's Loan Interest and Protection Law ("LIPL").  After a motion to dismiss was filed correctly pointing out that Kaymark's mortgage exceeded the maximum face amount to fall within LIPL, the current amended complaint was filed with a completely different theory.  As to Udren, Kaymark asserts that the allegation in the foreclosure complaint that the "figures" setting forth his mortgage obligations stated to be "calculated as of 07/12/2012", somehow is

---

[1] *See*, Amended Complaint, ¶¶5-6 (admitting payment default and inability to cure).
[2] The Law Firm of Michael P. Malakoff, P.C. and the Law Office of Lance Denha (foreclosure action).

#7319055.1(148845.009)

false and misleading as to the least sophisticated consumer because as of that date, attorneys fees were not yet incurred.[3]  Whether or not the least sophisticated consumer might could be confused by this (and certainly the answer is "no" as properly determined in the R&R), Kaymark was not confused.  He obtained counsel and entered a defense to the claim.  As noted in the R&R, Kaymark is represented by counsel and contesting the foreclosure.  *See*, R&R, p. 1.  And, as demonstrated in the foreclosure complaint and answer (Exhibits "A" and "B" hereto), Kaymark has denied the allegations pertaining to the computation of the debt.  *See*, Complaint, ¶6 and Answer, ¶3.  As this Court will notice immediately, that Answer denies the allegations of Paragraph 6 of the Complaint, containing the allegations of default, including the attorneys fees.  Therefore, there can be no question that at a minimum, <u>Kaymark</u> understood the purpose of the Complaint and was not confused or misled about the allegations.  Rather, he knew to retain counsel and defend his interests.  The purpose of the FDCPA is not to create a damages cause of action for any inaccuracy in a pleading, however immaterial.  Rather, it is designed to prevent confusion and compulsion.

The very purpose of a pleading under Pennsylvania's fact pleading system is to "define the issues [and] <u>every</u> act or performance essential to that end must be set forth in the Complaint," in order to "give the defendant notice of what the plaintiff's claim is and the ground upon which it rests, <u>thus allowing the defendant to prepare a defense</u>." *Santiago v. Penn Nat'l Mut. Cas. Ins. Co.,* 418 Pa. Super. 178, 185, 613 A.2d 1235, 1238 (1992); *Sevin v. Kelshaw,* 417 Pa.Super. 1, 7, 611 A.2d 1232, 1235 (1992).  Kaymark

---

[3] Kaymark does not dispute that the attorneys fees sought in the Complaint were the fees allowed under Fannie Mae regulations.  *See*, Exhibit "C" hereto.

#7319055.1(148845.009)

understood the allegations and claims in the foreclosure complaint, for he obtained

counsel; answered the complaint and that action remains in litigation. Following the

dictates of the Pennsylvania Fact Pleading System, Udren drafted and filed a Complaint

which sets forth the events of default under the mortgage and the amount to be sought by

way of an *in rem* judgment after trial. Now, after amending his initial Complaint based

on a facially invalid theory, Kaymark seeks to play "gotcha" with respect to an allegation

in the Foreclosure Complaint that the amounts due under the mortgage (clearly referring

to the mortgage interest, which specifically is identified by date) were calculated as of a

date prior to the filing of the Complaint. He asserts that this somehow "confused" him,

although he cannot articulate how this would be confusing to the least sophisticated

consumer who follows the instructions in the Complaint to obtain a lawyer and file an

answer setting forth his or her defenses. Indeed, Kaymark took just that route, as he

obtained counsel and filed an Answer. *See*, Report and Recommendation at p. 1. The

claims set forth in the Amended Complaint are wholly without merit and the R&R

properly recommended dismissal.

## II.     STANDARDS FOR THE CONSIDERATION OF THESE OBJECTIONS

Where objections to a Magistrate Judge's Report and Recommendation are filed,

the Court must perform a *de novo* review of the contested portions of the Report.

*Supinski v. United Parcel Services,* 2009 U.S. Dist. LEXIS 3143 (M.D.Pa. 2009) (at *6),

*citing, Sample v. Diecks*, 885 F.2d 1099, 1106 fn.3 (3d Cir. 1989); 28 U.S.C.

§636(b)(1)(C). Although the review is *de novo*, the Court is permitted to rely upon the

Magistrate Judge's proposed findings and recommendations to the extent it, in the

#7319055.1(148845.009)

exercise of sound discretion, deems proper. *Id*. In this regard, Local Rule 72(D)(2) requires "written objections which shall specifically identify the portions of the proposed recommendations or report to which objection is made and the basis for such objection." As to those portions of a Report and Recommendation to which no specific objection has been posed, the Court need only satisfy itself that there is no "plain error" on the face of the record. *Markel Am. Ins. Co. v. Leonor Veras,* 2014 U.S. Dist. LEXIS 17957 (D.P.R. 2014) (at *3).

### III.    FACTUAL BACKGROUND

The inquiry begins with the mortgage itself which is appended as Exhibit "C" to Kaymark's Complaint. That mortgage is in the original principal amount of $245,600.00. *See*, Exhibit "C" to Complaint at p. 3. The mortgage specifically provides that in the event of default, the Lender may charge Borrower fees for services performed in connection with Borrower's default, including but not limited to attorneys fees, property inspections and valuation fees. Mortgage, ¶14. Kaymark, by his own admission, defaulted under the mortgage. *See*, Amended Complaint, ¶¶5-6 ("Kaymark was unable to maintain his monthly mortgage payments, "and" Mr. Kaymark has since been unable to replace his lost income and catch-up on his arrearages.").

Based on this default, on September 13, 2012, Udren on behalf of BOA filed a Foreclosure Complaint in the Court of Common Pleas of Allegheny County. *See*, Amended Complaint, ¶15. A copy of the foreclosure complaint, of which this Court may take judicial notice, is attached as Exhibit "A." The Foreclosure Complaint sought an *in rem* judgment of $230,839.92, consisting of the unpaid principal balance, accumulated

-5-

interest relating to Kaymark's non-payment of his mortgage for one year, late charges, escrow deficiency and attorneys fee of $1,650.00, title report fees of $325.00 and property inspection fees of $75.00. *See*, Amended Complaint, ¶16 and Exhibit "A" hereto. While paragraph 17 of the Amended Complaint alleges that the Foreclosure Complaint somehow violated the Pennsylvania Rules of Civil Procedure because of "the rule that any documents relied upon must be attached." Pa.R.Civ.P. 1019(i) (Complaint, ¶17), that is a conclusion of law which is not entitled to deference. It also is wrong. Rule 1019(i) of the Pennsylvania Rules of Civil Procedure provides that where a **claim** is based on a writing, the writing must be attached to the Complaint. The writing relied upon is the mortgage, which <u>was</u> attached. A party does not have to plead or attach all his evidence to satisfy this rule. *See, Maleski by Taylor v. DP Realty Trust*, 653 A.2d 54, 65 (Pa. Cmwlth. 1994) ("Pennsylvania Rules do not require the pleading of evidence"); *Demsi Uniform and Linen Supply, Inc. v. Gracie Baseball LP*, 2011 Pa. Dist. & Cnty. Dec. LEXIS 594 (CCP. Lackawanna Co. 2011) (at *19) (same).[4]

Similarly, Plaintiff alleges that the "loan contracts" prohibit flat rate attorneys fee demands in mortgage foreclosure complaints or demands for fees for services never rendered.[5] This too is a conclusion of law since the Note and Mortgage both authorize the charging of reasonable fees and costs in enforcing the Note. There is no law

---

[4] Pennsylvania Rule of Civil Procedure 1147 sets forth the requirements for the contents of a complaint in mortgage foreclosure. The Rule provides that the plaintiff must identify the parties to and date of the mortgage, a statement of the place of record of the mortgage and assignments; a description of the land subject to the mortgage. There is no requirement that <u>any</u> other document be attached to the complaint.

[5] This is nothing more than an attempt to re-word plaintiff's original allegation that this violated the LIPL. Since the LIPL does not apply to this mortgage, plaintiff now simply alleged that flat fees are prohibited by the "loan contracts." Not surprisingly, there is no citation to the provision of the "loan contracts" containing such a prohibition. To the contrary, the Mortgage <u>specifically</u> permits BOA to recover attorneys fees and costs and Kaymark acknowledges, as he must, that the foreclosure complaint merely sought to recover Fannie Mae-set attorneys fees for a foreclosure case.

-6-

<u>anywhere</u> that flat fees, especially those mandated by Fannie Mae, are illegal or unreasonable.

Nonetheless, Kaymark alleges that the mere allegation of *in rem* damages including title report fees, attorneys fees, and property inspection fees are "unreasonable" or prohibited by "the loan contracts governing the debt at issue" (Amended Complaint, ¶35) and thus "inflated" Kaymark's account balance in the Foreclosure Complaint. Amended Complaint, ¶36. Those were the <u>only</u> factual allegations as against Udren.[6] Thus, the sole legal basis for a case alleged to affect a "numerous" class exceeding 5000 homeowners is that Udren alleged in a Foreclosure Complaint that its client was owed attorneys fees, property inspection fees and title insurance fees, all of which are specifically authorized charges under the mortgage. The foreclosure action has been contested and remains pending in the Court of Common Pleas of Allegheny County. Plaintiff's theory is that he may assert class action allegations against an attorney whose sole action complained of is the filing of a legal pleading which is admitted to be meritorious. Moreover, Kaymark does not and cannot deny that he holds a Fannie Mae mortgage and that the attorney fee component of the amount sought in the complaint is exactly what Fannie Mae sets as the allowable attorney fee (Exhibit "C" to motion to dismiss and reprinted here as Exhibit "C."). Thus, Kaymark's arguments boil down to the assertions that (1) flat fees set by Fannie Mae are illegal under Pennsylvania law, (2) that a straightforward foreclosure complaint informing a debtor of the Lender's claims and informing him to obtain a lawyer somehow is confusing to the least sophisticated

---

[6] In that Kaymark does not set forth specifically how they violate the "loan contracts," it is submitted that the Magistrate's decision should be reviewed under the "clear error" standard.

#7319055.1(148845.009)

consumer, (3) that he may sue a debt collector simply for alleged errors in a pleading without disputing the debt as required by 15 U.S.C. §1692g and (4) that the filing of a complaint constitutes some form of "lien" amounting to an ascertainable loss despite the absence of payment.  These theories are frivolous on their face.  Yet that is all that was presented to the Magistrate as the basis for this claim.  The well-reasoned Opinion of Judge Eddy was correct in all aspects and should be confirmed.  Because BOA has addressed Kaymark's his theories regarding ascertainable loss, Udren incorporates those responses and will focus here on the FDCPA claims and attorney considerations for a claim under the Unfair Trade Practices Act.

IV.     **ARGUMENT**

> A.     **The Foreclosure Lawsuit May Not Constitute The Basis For An FDCPA Claim Under The Facts Alleged In The Complaint**

As a general matter, a lawsuit, standing alone, is not grounds for a federal action under the FDCPA.  *Gonzalez v. Erskine,* 2008 U.S. Dist. LEXIS 109928 (S.D.Fla. 2008) (at *3 (and cases cited therein).  It is proper for a collection law firm to file a Complaint and the Defendant has the right to challenge the claim or seek details about the claim through formal pleadings or discovery.  *Id.*  Indeed, there is a substantial body of law, emanating from the Federal Trade Commission 1989 commentary stating that "a debt collector's institution of a formal legal action against a consumer (including the filing of a Complaint or service of legal papers by an attorney in connection with a lawsuit to collect a debt) . . . is not a communication in connection with the collection of any debt", (53 F.R. 50097, 50100, 50101, 50108) and holding that allegations in the Complaint simply are not communications which can support an FDCPA claim.  *See, McKnight v.*

*Benitez*, 176 F.Supp. 2d 1301, 1305-06 (M.D. Fla. 2001) (and cases cited therein). While admittedly, there have been decisions basing liability on allegations of damages in legal complaints, they appear all to have arisen in the revolving credit context and involve claims that a law firm unilaterally demanded fees on a percentage basis where the credit agreement permitted "reasonable fees." *See*, discussion at p. 8, *infra*. No cases have been cited by Kaymark arising out of a mortgage foreclosure. Accordingly, no FDCPA claim should be based upon the mere filing of a Foreclosure Complaint, standing alone.

In a recent decision, the Second Circuit took on directly the issue of whether FDCPA claims may be based upon alleged errors in foreclosure complaints. *See, Gabriele v. American Home Mortgage Servicing, Inc.,* 2012 U.S. App. LEXIS 24478 (2d Cir. November 22, 2012). In *Gabriele*, the Plaintiff brought an FDCPA claim based upon the lender's attorney's pleadings and procedures in a state court foreclosure action. While noting that statements made and actions taken in furtherance of a legal action are not in and of themselves exempt from liability under the FDCPA, the Court held that alleged misstatements in a Foreclosure Complaint and premature attempts to obtain a default judgment did not constitute a violation of the FDCPA. The Court noted, in particular, as is the case with this claim, the foreclosure Defendant (Plaintiff in the FDCPA suit) was represented by counsel and thus, filings, even if false, would not have misled the least sophisticated consumer, **"particularly represented by counsel."** As the Second Circuit stated, "within the context of an adversary proceeding in state court between two represented parties, these allegations simply do not state plausible claims under the FDCPA." In so ruling, the Second Circuit went further and noted that the

-9-

purpose of the FDCPA was not to provide an alternate remedy when the debt collector

has asserted its client's claim in a legal proceeding, in which the debtor has all of the

protections afforded to it under that statutory scheme.  As declared by the Second Circuit:

> As we have recognized in past decisions, the protective
> purposes of the FDCPA typically are not implicated "when
> a debtor is instead protected by the court system and its
> officers." *Simmons v. Roundup Funding LLC,* 622 F.3d 93,
> 96 (2d Cir. 2010) (holding that inflated proof of claim in
> bankruptcy court cannot form basis of FDCPA action).  In
> Connecticut, the state foreclosure process is highly
> regulated and court controlled.  *Derisme v. Hunt Leibert
> Jacobson, P.C.,* 2012 U.S. Dist. LEXIS 101922 (D.Conn.
> July 23, 2012).  When that is the case, the state court's
> authority to discipline will usually be sufficient to protect
> putative debtors like Gabriele from legitimately abusive or
> harassing litigation conduct.

*Id.* at *14 fn.1.  *Accord:  Pellachia v. One West Bank, FSB*, 2013 U.S. Dist. LEXIS

(D.Conn. 2013) (at *14) ("Because litigants in state court already enjoy myriad

procedural and substantive protections from fraudulent and deceptive practices, resort to

the FDCPA is unnecessary."); *Derisme v. Hunt Leibert Jacobson, P.C.*, 2013 U.S. Dist.

LEXIS 38967 (D.Conn. 2013) (at *5) (citing *Garbriele* for the proposition that "the filing

of a state foreclosure action did not constitute the kind of abusive debt collection

practices proscribed by the FDCPA."); *Cocco v. Bank of Amer. Home Loans*, 2012 U.S.

Dist. LEXIS 173663 (N.D.N.Y. 2012) ("Plaintiffs' interest in the property can be (or

should have been) protected through any foreclosure proceeding").

    As is the case in Connecticut, Pennsylvania's foreclosure practice is tightly

controlled and subject to specific rules under the Pennsylvania Rules of Civil Procedure.

*See*, Pa.R.C.P. 1141-1150; *Delaware Trust Company v. Amrit Lal*, 1997 U.S. Dist.

LEXIS 6212 (E.D.Pa. 1997) (at *10) ("in Pennsylvania mortgage foreclosure is governed by the Rules of Civil Procedure, the requirements of which must be strictly followed."); *First Fed. Savings & Loan Association v. Porter,* 408 Pa. 236, 183 A.2d 318, 324 (1962) (same). Kaymark was and is represented in the underlying and pending foreclosure action by competent counsel and has all of the protections of the Pennsylvania Rules of Civil Procedure and the Court's control over attorney conduct. The purpose of a lawsuit is not "unfair or unconscionable"; rather, it is designed to allow a court to resolve a contested issue. *Beeler-Lopez v. Dodeka*, 711 F.Supp. 2d 679, 682 (E.D.Tex. 2010).

The <u>only</u> two cases involving pleadings cited by Kaymark in support of his position involve percentage fees unilaterally sought by attorneys in credit card litigation where the credit card agreement merely calls for reasonable fees. *See, Pierce v. Calvary SPVI, LLC*, 2013 U.S. Dist. LEXIS 178572 (W.D.Pa. 2013) (credit card case in which consumer alleged that card agreement did not allow for collection of attorneys fees or percentage fees the consumer was charged); *Som v. Daniels Law Offices, P.C.,* 573 F.Supp.2d 349 (D.Mass. 2008) (percentage fee may not be authorized where credit card agreement authorized actual costs only). The other cases cited by Kaymark do not arise out of legal pleadings. *See*, *Pettway v. Harmon Law Offices, P.C.,* 2005 U.S. Dist. LEXIS 21341 (D. Mass. 2005) (involved reinstatement and payoff letters - - not litigation pleadings - - in which attorneys fees were improperly lumped with other charges; *Fields v. Wilbur Law Firm, P.C.,* 383 F.2d 562 (7th Cir. 2004) (dunning letters lumping debt and attorneys fees violates FDCPA - - specifically authorized debt collector to specify a fee without obtaining court determination as to the reasonableness); *Spencer v. Henderson-*

-11-

*Webb, Inc.,* 81 F.Supp. 2d 582 (D.Md. 1999) (dunning letter charging for attorney fees when no attorney worked on cases violates FDCPA).

Not a <u>single</u> case is cited by Kaymark addressing the issue here, whether the a foreclosure complaint which seeks recovery of the <u>actual</u> fees permitted by Fannie Mae violates the FDCPA. Udren did <u>not</u> unilaterally determine the fees charged, as in the two cases cited by Kaymark. Rather, they were set by Fannie Mae pursuant to regulation. There is no law supporting Kaymark's argument that a foreclosure complaint may not seek the <u>actual</u> fees dictated by Fannie Mae regulations. Accordingly, no claim lies under the FDCPA based solely on the allegations of the intent to collect actual legal fees in a Complaint in a foreclosure action

**B.      Even If Allegations In A Foreclosure Complaint Are A Sufficient Basis To State An FDCPA Claim, It Is Not Stated In This Case:**

Another way of analyzing whether FDCPA claims are stated by allegations in a Foreclosure Complaint seeking recovery of attorneys fees and costs specifically permitted in the loan documents may be ascertained by a review of the necessary elements of the FDCPA claims alleged in the Amended Complaint. Those claims include alleged violations of 15 U.S.C. §1692e(2)(a), e(5) and e(10), as well as 15 U.S.C. §1692f(1). *See*, Amended Complaint, ¶¶36-37. As Kaymark acknowledges in paragraph 37 of the Amended Complaint, a claim under Section f(1) requires credible allegations that the defendant had no legal right, either under Pennsylvania law or the loan documents to seek recovery of legal fees, inspection costs and title costs. As noted above, the Mortgage <u>expressly</u> provides for the recovery of actual attorneys fees, inspection fees and costs. Mortgage, ¶14. There can be no dispute of that. Additionally, Kaymark simply invents

-12-

the motion that the use of flat attorneys fees set by regulation somehow is unreasonable. There is no law <u>whatsoever</u> to support this contention and the cases cited by plaintiff involve demands for percentage fees not "flat fees".  Moreover, this proposition is absurd on its face.  There is no conceivable circumstance under which an attorney charging an hourly fee would or could charge less than $1,650.00 were it charging by the hour for a highly contested foreclosure action and a percentage fee, as seen in the few cases cited by Kaymark amount to 15% or more, which would equate to over $40,000 in this case. Moreover, the $1,650.00 is a fee set by government regulation - - not Udren.[7]

Though no Third Circuit Court of Appeals decision has yet ruled on this specific issue, at least three other circuits have found that in order to be actionable under Section 1692e, an allegedly false or misleading statement must have been material.  *See, Hahn v. Triumph Partnerships LLC,* 557 F.3d 755, 757-58 (7th Cir. 2009); *Miller v. Javitch, Block & Rathbone,* 561 F.3d 588, 596 (6th Cir. 2009); and *Donohue v. Quick Collect, Inc.,* 592 F.3d 1027, 1033-34 (9th Cir. 2010).  This analysis has been adopted by several district courts in Pennsylvania.  *See, Kromelbein v. Envision Payment Solutions,* 2013 U.S. Dist. LEXIS 107762 (M.D. Pa. 2013) (at *24-25) ("Although the Third Circuit has not yet addressed the matter, several courts in this circuit have read a materiality requirement into §1692 [citing cases]"); *Rogozinski v. NCO Financial Systems, Inc.,* 2012 U.S. Dist. LEXIS 153894 (E.D.Pa. 2012); *Lorandeau v. Capital Collection Services*, 2011 U.S.

---

[7] The mortgage is a Fannie Mae-Freddie Mac Mortgage.  *See*, Exhibit "C" hereto showing the current Fannie Mae allowable attorney and trustee foreclosure fee schedule, which indicates that for Pennsylvania, the judicial foreclosure fee is a flat $1,650.00.  It is frankly outrageous for Kaymark to contend that a statutorily administered flat fee is either illegal or violative of the contract which permits recovery of reasonable attorneys fees.  Kaymark's  theory would necessarily be that all Fannie Mae mortgage foreclosures involve the imposition of unreasonable fees.  This is on its face frivolous.

-13-

Dist. LEXIS 101994 (E.D.Pa. 2011) (at \*8). Under this doctrine, an immaterial statement which is false in some technical sense will not mislead the unsophisticated consumer and does not violate the FDCPA. *Rogozinski, supra* (at \*16). Under this body of law, statements are materially false and misleading only if they influence a consumer's decision or ability to pay or challenge a debt. *Walsh v. Law Offices of Howard Lee Schiff, P.C.,* 2012 U.S. Dist. LEXIS 136408 (D.Conn.2012) (at \*12-13); *Also see, Okyere v. Palisades Collection LLC*, 2013 U.S. Dist. LEXIS 40840 (S.D.N.Y.2013) (at \*27).

Here, there is nothing alleged in the Complaint to plausibly suggest that the date of the calculation for attorneys fees and costs in a foreclosure complaint had any material effect on Kaymark's ability to challenge the debt or the process used to collect it. He would have done nothing differently had the complaint excluded attorneys fees from the date of calculation reference. Kaymark and the least sophisticated consumer would take the complaint to a lawyer and answer the complaint. In fact, Kaymark did participate in the state court process and has contested the foreclosure from the start. Accordingly, the date of the calculation of attorneys fees and costs in the foreclosure complaint was in no way "material" to any action taken or not taken by Kaymark in the underlying foreclosure case. Under the long line of cases that has now developed under Section 1692e, the alleged pleading "defect" (i.e., alleging that damages were calculated before the attorneys fees and costs were incurred) therefore is not material and no claim under Section 1692e is therefore viable.

The only other section of the FDCPA identified in the Complaint, 1692f(1) requires that in order to state a claim, a plaintiff must allege that the specific fees

-14-

demanded in the Complaint were not permitted under the loan documents or applicable law. 15 U.S.C. §1692f(1); *Shami v. National Enterprise Systems*, 2012 U.S. Dist. LEXIS 182349 (D.Nev. 2012) (at *7). Thus, in *Owens v. Howe,* 2004 U.S. Dist. LEXIS 22728 (N.D.Ind. 2004) the defendant attorney filed a complaint on behalf of his client seeking $10,601.71 in principal, pre-judgment interest of $2,643.51 in interest and $2,125.00 in attorneys fees. The plaintiff filed an FDCPA claim under Subsection 1692f(1), arguing that the defendant failed to attach to his state court complaint any agreement specifically entitling him to an award of fees and that the amount of fees sought was not specifically authorized by the agreement. The Court rejected both claims, stating as follows:

> The problem with this first argument is that it attempts to engraft Indiana procedural rules, *see* Ind. T.R. 9.2(A), onto the requirements of the FDCPA. As we followed the argument, Owens contends that Indiana procedure requires that the financing agreement be attached to the state court complaint, and when it was omitted, the Act was violated because there was no "agreement" expressly authorizing fees, Section 1692f(1), and without an agreement, any claim for them violated Section 1692e(2)(A). This argument overlooks, however, that reasonable attorneys fees were in fact "expressly authorized by the [financing] agreement," Section 1692f(1) and were therefore a legitimate element of LCC Receivables' claim. Since reasonable attorneys fees were "expressly authorized", Howe did not falsely represent their legal status
>
> . . .
>
> Owens further argues, however, that even if Howe had attached the agreement to the state-court complaint, he still violated the act by claiming entitlement to $2,125.00 in attorneys fees, a specific amount not "expressly authorized by the agreement", Section 1692f(1) as opposed to an amount to be determined by the state court, and that this misrepresented the "amount" or "legal status" of the debt in violation of 15 U.S.C. §1692e(2)(A).

-15-

> In *Fields* [v. *Wilber Law Firm, P.C]*., 383 F.3d 562, 565
> (7th Cir. 2004), the Seventh Circuit rejected the notion that
> debt collectors must seek court approval for a specific
> amount of attorneys fees before including them in an
> account balance. While the Court there was speaking in the
> context of a collection letter, the same reasoning applies to
> Howe's state court complaint. **In short, debt collectors
> are not obligated to go to court to fix the amount of fees
> every time they seek to enforce a contractual provision
> for them. (Id.). Similarly here, to follow Owen's
> reasoning, a debt collector could never recite a specific
> amount for fees in a complaint until he obtained both a
> judgment and specific court approval of them. As in
> *Fields*, the Act does not require such an extraordinary
> result. All that is required to comply with Section
> 1692e(2)(A) and 1692f(1) is that there be some basic
> itemization of the various charges that comprise the
> total amount of debt, *id*. at 566, and since that is what
> Howe did here, his complaint did not violate the Act on
> that basis. If, however, what Owens is arguing is that
> since the financing agreement did not specify attorneys
> fees in the exact amount being sought, and because
> Howe is now seeking that specific amount, he violated
> the Act, that too, is unpersuasive. All that is required is
> that the debt collector state his fees in his
> communication to the debtor; the act does not require
> that the underlying agreement anticipate and specify a
> specific fee. *Id*. at \*44-45.**

*Owens*, is directly on point in this case. The underlying note and mortgage both permit BOA to charge reasonable attorneys fees, costs and expenses of enforcing the note. *See*, Exhibit "C" to Amended Complaint (Mortgage t ¶14). The admitted default of Kaymark under his mortgage required BOA to engage counsel to obtain or perform property and title inspection/searches and draft a complaint, which caused BOA to incur liability for attorneys fees. The attorneys fees charged not only are *per se* reasonable, as they are set by Fannie Mae and not Udren, but as discussed above, the mere request for fees in a complaint doe not state a claim under Section 1692f(1). Accordingly, all of the

-16-

substantive FDCPA claims are without merit, even were the court to conclude that a mere pleading in a foreclosure case is a sufficient basis upon which a plaintiff may ground an FDCPA complaint.

### C.   A Debt Collector Incurs No Liability When It Complies With the Statutory Validation Notice

The FDCPA sets forth a detailed procedure for disputing the validity of a debt. *Bleich v. Revenue Maximization Group, Inc.,* 233 F.Supp. 2d 496, 500 (E.D.N.Y. 2002). The consumer is given the immediate opportunity to dispute the debt and upon the making of a request for debt verification, all collection efforts must cease. *Id., citing,* 15 U.S.C. §1692g(a). The debt validation procedure must be clearly communicated to the consumer and courts are loathe to allow debt collectors to vary from or contradict the statutory notification. Indeed, the failure to communicate clearly of the validation procedure forms the basis of many FDCPA lawsuits. *Id.* at 500, and cases cited therein. In this case, Plaintiff acknowledges that he received a Validation Notice with his Complaint. *See,* Exhibit "B" to Complaint at p. 4. There is no allegation that he thereafter invoked the statutory procedure to dispute the debt. Where, as here, a Validation Notice is sent and received, the debt collector can incur no liability as a matter of law where it has complied with the debt validation procedure set forth in the FDCPA. *McLaughlin v. Phelan Hallinan & Schmieg,* 2011 U.S. Dist. LEXIS 41175 (W.D.Pa. 2011) (at *9), *clarified,* 2011 U.S. Dist. LEXIS 146280 (W.D.Pa. 2011) (at *2-3) (unless Plaintiff follows the statutory procedure, he cannot base an FDCPA claim upon a challenge to the validity and amount of the debt.). As noted by the Court in *Bleich,* supra:

-17-

> [There is no question that Revenue's letter to plaintiff
> contained a proper Validation Notice. There is also no
> question that plaintiff chose to ignore the debt validation
> procedure in favor of filing an immediate lawsuit. Had
> plaintiff exercised her rights under the FDCPA to obtain
> debt verification, it is entirely likely that litigation would
> have been avoided. Indeed, this is likely the reason
> Congress chose to include the debt validation procedure in
> the Act. The specific procedure for debt validation must
> have been intended to avoid FDCPA litigation based solely
> on the debts validity as communicated . . . by the creditor. .
> . .
>
> Revenue's collection letter was in full accord with the
> requirements of the FDCPA and therefore cannot constitute
> a false or misleading action in violation of the statute. . . .
> Revenue can incur no liability where it has complied with
> the debt validation procedures set forth in the FDCPA - -
> even if the actual debt is not in arrears. *Id*. at 500-501
> (emphasis added).

*Accord., McLaughlin, supra; Jang v. A.M. Miller & Associates*, 122 F.3d 480, 483-84 (7th

Cir. 1997) (where the required debt validation notice is sent, no FDCPA "false and

misleading collection letter" cause of action is stated); *Taylor v. Midland Credit Mgmt.,*

2008 U.S. Dist. LEXIS 14328 (at *8) (W.D.MI. 2008) ("where a debt collector has

included appropriate language regarding the FDCPA debt validation procedure, the

allegation that the debt is invalid, standing alone, cannot form the basis of a lawsuit

alleging fraudulent or deceptive practices in connection with the collection of a debt.");

*Becker v. Genesis Financial Services,* 2007 U.S. Dist. LEXIS 86152 (at *19) (E.D. Wash.

2007) (following *Bleich* and holding where a proper FDCPA debt validation letter is sent,

the allegation that the debt is invalid standing alone cannot form the basis for a lawsuit).

In *Lindberg v. Transwoprdl Systems, Inc.,* 846 F.Supp. 175, 179 (D.Conn. 1994), the

Court held as follows:

> "[u]nder Section 1692g, the debtor bears the responsibility
> to notify the debt collector of facts which the debt collector
> would not otherwise be aware . . . the plaintiff has nowhere
> alleged that defendant failed to comply with the
> requirements of Section 1692g. Indeed, the record
> demonstrates the contrary. . . . Furthermore, the plaintiff
> has not offered any explanation as to why he did not
> dispute his debt and demand verification in the manner
> envisioned by Section 1692g or why defendant should not
> have assumed that the debt was valid by dint of the
> plaintiff's failure to respond in a timely fashion to its first
> communication. . . . On this record, the court can only
> wonder why the plaintiff has chosen to impose the
> significant burden of litigation on both the defendant and
> this court, instead of following the cost-effective procedure
> provided by the FDCPA specifically designed to facilitate
> the exchange of information between debt collectors and
> debtors.".

*Id.*

As was the case in *McLaughlin, Bleich, Becker, Lindbergh* and the other cases cited above, Kaymark was given the opportunity to contest the statement of the debt set forth in the Validation Notice and fails to allege that he has done so. Having failed to avail himself of the statutory procedure for resolving disputes at the Validation Notice stage, Kaymark is barred from commencing suit under the FDCPA for alleged errors concerning the debt in the Complaint.

For all three of these reasons, the FDCPA claim asserted against Udren is wholly without merit and should be dismissed.

## V. KAYMARK'S UPTCPL CLAIMS FAIL TO STATE ANY VIABLE CAUSE OF ACTION

Count III of the Complaint alleges claims arising under the UTPCPL against both Udren and BOA. The claims against Udren are based solely upon the filing of pleadings

#7319055.1(148845.009)

in a state court lawsuit.  Under the Pennsylvania Supreme Court's ruling in *Beyers v. Richmond, supra*, 937 A.2d at 1091, disciplinary enforcement pursuant to the Pennsylvania Rules of Professional Conduct constitutes the exclusive remedy for alleged attorney misconduct relating to the practice of law.  As stated by Chief Justice Cappy in his concurrence in *Beyers*, "[a]s a matter of statutory construction, the Unfair Trade Practices Act and Consumer Protection Law ("UTPCPL"), 73 P.S. §§201-1 *et seq., does not apply to attorneys practicing law.*"  *Id*. at 1093.  Judge Wettick, in his Opinion dismissing a similar claim brought by Kaymark's counsel in this case in *Glover v. Udren*, CCP., CCP., Allegheny Co., No: GD-11-018015 (Exhibit "C" hereto) held that in addition to the *Beyers* reasoning, a claim under the UTPCPL against an attorney based upon legal pleadings also is barred because Pennsylvania's Fair Credit Extension Uniformity Act, 73 P.S. §2270.1 *et seq*., a violation of which is a *per se* violation of the UTPCPL, specifically exempts the acts of an attorney in filing of pleadings or prosecution of a lawsuit from its coverage.  Accordingly, such activity must be intended to be excluded from the UPTCPL as well.  *See*, Exhibit "C" at pp. 7-11.

Even to the extent that an UTPCPL action could be predicated on a mere legal pleading, which it cannot, it is still incumbent under the private action provisions of the UTPCPL that a plaintiff establish reliance, causation and damages.  *Weinberg v. Sun Co. Inc.,* 565 Pa. 612, 615-18, 777 A.2d 442, 446 (2001) ("Nothing in the legislative history suggests that the legislature ever intended statutory language directed against consumer fraud to do away with the traditional common law elements of reliance and causation.");  *Williams v. Empire Funding Corp*., 227 F.R.D. 362, 369-70 (E.D.Pa. 2005) ("Even if an

-20-

entity violated a Consumer Protection Law such as the Pennsylvania Debt Collection Regulations, such a violation does not automatically entitle an individual to bring a private action under the UTPCPL.").  To bring a private cause of action under the UTPCPL, a Plaintiff must show that he justifiably relied on the Defendant's wrongful conduct or representation and that he suffered harm as a result.  *Yocca v. Pittsburgh Steelers Sports, Inc.,* 578 Pa. 479, 854 A.2d 425, 438 (2004).  Thus, irrespective of the underlying basis for the UTPCPL claim, a private plaintiff must allege that he suffered an ascertainable loss <u>as a result</u> of the defendant's prohibited action; this causation element requiring justifiable reliance by the Plaintiff.  *Schwartz v. Rockey*, 593 Pa. 536, 557, 932 A.2d 885, 898 (2007).  *Also see, Cave v. Saxon Mortgage Servicing*, 2012 U.S. Dist. LEXIS 176381 (E.D.Pa. 2012) (at *25) (mortgage servicer not liable under the UTPCPL because Complaint "fails to adequately allege justifiable reliance and ascertainable loss as required to state a claim under the UTPCPL.").

The Complaint does not even <u>attempt</u> to allege these essential elements of a private UTPCPL claim.  Kaymark never relied on the allegations in the Foreclosure Complaint.  To the contrary, he hired counsel and contested the foreclosure.  *See, Kimmel v. Phelan Hallinan & Schmieg, supra,* 847 F.Supp. 2d at 771.  *Walter v. Palisades Collection, LLC, supra*, 480 F.Supp. 2d at 806 (both holding that there is no satisfaction of the "reliance" element when a party engages counsel to challenge the assertion that a debt is owed).  Kaymark does not allege that he paid a dime to Udren - - indeed the foreclosure case still is pending.  Absent payment, the "damage" element of a UTPCPL claim is not satisfied.  *See Salvati v. Deutsche Bank, supra* 2013 U.S. Dist. LEXIS 46991

at *33-34 (no satisfaction of "ascertainable loss" claim against law firm in virtually identical case where plaintiff made no payment to law firm). The claims under the UTPCPL are therefore without merit and should be dismissed.

**VI.    <u>CONCLUSION</u>**

For the reasons set forth herein, it is respectfully submitted that Defendant Udren Law Offices, P.C.'s Motion to Dismiss the Complaint be granted in its entirety.


                                          Respectfully submitted,

                                          WILENTZ, GOLDMAN & SPITZER, P.A.

Date:  February 24, 2014          BY:   /s/ Jonathan J. Bart
                                          Daniel S. Bernheim 3d, Esquire
                                          Jonathan J. Bart, Esquire

                                          Wilentz Goldman & Spitzer
                                          Two Penn Center, Suite 910
                                          Philadelphia, PA 19102
                                          215-636-4466
                                          jbart@wilentz.com

#7319055.1(148845.009)

208a                                                                      208a

## CERTIFICATE OF SERVICE

I, JONATHAN J. BART, certify that on February 24, 2014, I caused a true and correct copy of the foregoing Response of Defendant Udren Law Offices, P.C. to Plaintiff's Objections to the Magistrate's Report and Recommendation to be served in accordance with the electronic notification system upon the following:

**Emily S. Gomez, Esquire**
**Law Office of Emily Gomez, LLC**
**239 Fourth Avenue**
**Suite 1602**
**Pittsburgh, PA 15222**

**Michael P. Malakoff, Esquire**
**437 Grant Street**
**Suite 200, The Frick Bldg.**
**Pittsburgh, PA 15219**

**Thomas L. Allen, Esquire**
**Nellie E. Hestin, Esquire**
**Reed Smith**
**Reed Smith Centre**
**225 Fifth Avenue, Suite 1200**
**Pittsburgh, PA 15222**

**Andrew J. Soven, Esquire**
**Marc A. Goldich, Esquire**
**Reed Smith**
**1650 Market Street**
**2500 One Liberty Place**
**Philadelphia, PA 19103**

WILENTZ GOLDMAN & SPITZER, P.A.

By: /s/ Jonathan J. Bart
　　　Jonathan J. Bart, Esquire
　　　Attorney for Defendant,
　　　Udren Law Offices, P.C.

# EXHIBIT "A"

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**

**CIVIL DIVISION**

COVER SHEET (ONLY for cases involving mortgage foreclosure)

| | |
|---|---|
| Plaintiff(s)<br><br>Bank of America, N.A. | |
| | Case Number : |
| Vs<br>Defendant(s)<br><br>Dale A. Kaymark | Type of pleading :<br><br>Complaint in Mortgage Foreclosure |
| | Code and Classification : |
| | Filed on behalf of |
| If Case involves real estate please enter the<br>Property Information. | Bank of America, N.A. |
| **Certificate of Location**<br>I hereby certify that the location of the real estate is:<br><br>Findlay Township<br>City, Boro or Township | |
| | (Name of the filing party) |
| Parcel ID: 9910 -X- 269 Tiebreaker: | ☑ Counsel of Record |
| | ☐ Individual, If Pro Se |
| Address :<br>108 Economy Grade Road, Imperial, PA 15106 a/k/a<br>108 Economy Grade Road, Corapolis, PA 15108 | Name, Address and Telephone Number : |
| **YOU MUST CHECK ONE SELECTION IN EACH BOX**<br>☑ OWNER OCCUPIED RESIDENTIAL<br>☐ NON-OWNER OCCUPIED RESIDENTIAL<br>☐ COMMERCIAL<br>☐ OTHER (explain ) | Udren Law Offices, P.C.<br>Woodcrest Corporate Center<br>111 Woodcrest Road<br>Cherry Hill, NJ 08003<br>(856)669-5400 |
| | Attorney's State ID : 209197 |
| ☑ FOUR UNITS OR LESS<br>☐ OVER FOUR UNITS | Attorney's Firm ID : |
| IF RESIDENTIAL: Name address and telephone number of representative of lending institution with authority to discuss this action.<br>Daniel Skidell    15001 North Dallas Parkway, Addison, TX 75006    818-251-7532<br>By _____<br>Elana B. Flehinger, Esq. | |

[cover_img]

Exhibit B

UDREN LAW OFFICES, P.C.                                **ATTORNEY FOR PLAINTIFF**
BY: MARK J. UDREN, ESQUIRE - ID #04302
STUART WINNEG, ESQUIRE - ID#45362
LORRAINE GAZZARA DOYLE, ESQUIRE - ID#34576
SHERRI J. BRAUNSTEIN, ESQUIRE - ID#90675
SALVATORE CAROLLO, ESQUIRE - ID#311050
PAIGE M. BELLINO, ESQUIRE - ID#309091
HARRY B. REESE, ESQUIRE - ID#310501
KASSIA FIALKOFF, ESQUIRE - ID#310530
ELIZABETH L. WASSALL, ESQUIRE - ID#77788
AGNES MOMBRUN, ESQUIRE - ID#309356
ELANA B. FLEHINGER, ESQUIRE - ID#209197
KATHERINE E. KNOWLTON, ESQUIRE - ID#311713
WOODCREST CORPORATE CENTER
111 WOODCREST ROAD, SUITE 200
CHERRY HILL, NJ 08003-3620
856-669-5400 pleadings@udren.com

| | |
|---|---|
| Bank of America, N.A.<br>C/O Bank of America, N.A., as successor<br>by merger to BAC Home Loans<br>, LP<br>16001 North Dallas Parkway<br>Addison, TX 75006 | COURT OF COMMON PLEAS<br>CIVIL DIVISION<br>ALLEGHENY County |
| | |
|       Plaintiff | NO. |
|    v. | |
| DALE A. KAYMARK<br>108 ECONOMY GRADE ROAD, IMPERIAL,<br>PA 15108 A/K/A 108 ECONOMY GRADE<br>ROAD<br>CORAOPOLIS, PA 15108 | |
|       Defendant(s) | |

### COMPLAINT IN MORTGAGE FORECLOSURE

YOU HAVE BEEN SUED IN COURT.  If you wish to defend against the claims set forth in the

# URGENT NOTICE

Under a new Pilot Project of the Court of Common
Pleas of Allegheny County:

## You may be able to get help with your Mortgage.

## Call the "Save Your Home" Hotline at
## 1-866-298-8020

You will be put in touch with a non-profit housing
counselor FREE OF CHARGE to help you try to
work out arrangements with your mortgage company.

The housing counselor will schedule a conference
under the Court's supervision to determine whether a
work out can be arranged.

To get this help you must call the Hotline and go to a
housing counselor. They will tell you what to do next.

Call the Hotline immediately. Call 1-866-298-8020.

Make this call to save your home!
### THIS PROJECT IS FREE

Exhibit B

following pages, you must take action within twenty (20) days after this Complaint and Notice are served, by entering a written appearance personally or by attorney and filing in writing with the Court your defenses or objections to the claims set forth against you.  You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the Court without further notice for any money claimed in the Complaint or for any other claim or relief requested by the Plaintiff.  You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE.  IF YOU DO NOT HAVE A LAWYER GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.  IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

LAWYERS REFERRAL SERVICE
**Allegheny County Bar Association**
**11th Floor Koppers Building**
**436 Seventh Avenue**
**Pittsburgh, PA 15219**
**(412) 261-5555**

### AVISO

Le han demandado a usted en la corte.  Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion.  Hace falta ascentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona.  Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion.  Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda.  Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

LLEVE ESTA DEMANDA A UN ABOGADO IMMEDIATAMENTE, SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

**Allegheny County Bar Association**
**11th Floor Koppers Building**
**436 Seventh Avenue**
**Pittsburgh, PA 15219**
**(412) 261-5555**

## NOTICE

The amount of your debt is as stated in the attached document. The name of the creditor to whom the debt is owed is as named in the attached document. Unless you notify us within 30 days after receipt of this Notice and the attached document that the validity of the stated debt, or any portion of it, is disputed, we will assume that the debt is valid. If you do notify us in writing of a dispute within the 30 day period, we will obtain verification of the debt or a copy of a judgment against you, and mail it to you. If you do not dispute the debt, it is not an admission of liability on your part. Also, upon your written request within the 30 day period, we will provide you with the name and address of the original creditor if different from the current creditor.

If you notify us in writing within the 30 day period as stated above, we will cease collection of your debt, or any disputed portion of it, until we obtain the information that is required and mail it to you. Once we have mailed to you the required information, we will then continue the collection of your debt.

This law firm is deemed to be a debt collector and this Notice and the attached document is an attempt to collect a debt, and any information obtained will be used for that purpose.

> UDREN LAW OFFICES, P.C.
> /s/ Mark J. Udren, Esquire
> Woodcrest Corporate Center
> 111 Woodcrest Road, Suite 200
> Cherry Hill, NJ 08003-3620
> (856) 669-5400

Exhibit B

1. Plaintiff is **Bank of America, N.A.**. Plaintiff is the legal holder of the Mortgage that is the subject of this Action. Plaintiff is either the current mortgagee of record, is the legal holder of the Mortgage by virtue of being successor in interest to the current mortgagee of record, or is the legal holder of the Mortgage by virtue of Assignment of Mortgage. If Plaintiff is the legal holder of the Mortgage by virtue of Assignment of Mortgage, it is by the following Assignments of Mortgage, all of which have either been recorded or Plaintiff is in the process of formalizing the actual Assignment of Mortgage in Plaintiff's favor:

Assignor: **N/A**
Assignee: **N/A**
Date of Assignment: **N/A**
Recorded Date: **N/A**
Book/Instrument #: **N/A**
Page: **N/A**

2. Upon information and belief Defendant(s) and/or their predecessor:

   **Dale A. Kaymark**

   (hereinafter "Defendants"), are the owners of property located at **108 Economy Grade Road, Imperial, PA 15108 a/k/a 108 Economy Grade Road, (Findlay Township), Coraopolis, PA 15108 ,** by virtue of Deed dated **12/15/2006** and recorded **12/21/2006** in Official Records Book **13095** at Page **91** of the Public Records of **Allegheny** County, Pennsylvania (hereinafter the "Property").

3. On **12/26/2006** , Defendant(s) and/or their predecessor:

   **DALE A. KAYMARK**

   promised to pay to the order of **Bank of America, N.A.** , the principal sum of $ **245,600.00** payable with interest thereon provided in the Note.

4. By Mortgage dated **12/26/2006** , Defendant(s) and/or their predecessor:

Exhibit B

### DALE A. KAYMARK

to secure the Note, mortgaged to **Bank of America, N.A.,** the Property which is the subject of this action.  The Mortgage was recorded on **01/10/2007** in Official Records Book **33222** at Page **221.** Said Mortgage is incorporated herein by referenced in accordance with Pa.R.C.P 1019(g).  A legal description of the mortgage premises is attached hereto and made a part hereof.

5.  Said mortgage is in default in that the payment due **08/01/2011,** and all subsequent payments have not been made, and by its terms, upon breach and failure to cure said breach after notice, all sums secured by said Mortgage, together with the other charges authorized by said Mortgage and itemized below, shall be immediately due.

6.  After demand, the Defendant(s) continues to fail or refused to comply with the terms of the Mortgage as follows:

    (a)  By failing or refusing to pay the installments of principal and interest when due in the amounts indicated below;

    (b)  By failing or refusing to pay other charges, if any, indicated below.

The following amounts are due on the said Mortgage or modification agreement as of the date stated below

| | |
|---|---:|
| Unpaid Principal Balance | $213,224.26 |
| Accumulated Interest (07/01/2011–07/12/2012) | $13,452.47 |
| Accumulated Late Charges | $177.74 |
| Escrow Deficit/(Reserve) | $1,935.45 |
| Title Report | $325.00 |
| Attorney Fees | $1,650.00 |
| Property Inspection | $75.00 |
| Grand Total | $230,839.92 |

The above figures are calculated as of **07/12/2012:**

The interest rate is subject to adjustment if more fully described as such in the note and mortgage. The interest rate on the subject note is at **6.12500 %.** The per diem interest accruing on this debt is **$35.6830** and that sum should be added each day after the above date.

Exhibit B

The late charge is subject to adjustment if more fully described as such in the note and mortgage. The late charge rate on the subject note should be added in accordance to the terms of the note and mortgage charged monthly at **$88.87**.

7.     Breach letters have been sent to Defendant(s) in accordance with the requirements of the subject mortgage and/or The Pennsylvania Act 6 of 1974 of the Commonwealth of Pennsylvania and, if applicable, Act 91 of 1983. Copies of the breach letters are attached hereto as Exhibit "A"

WHEREFORE, the Plaintiff demands judgment, in rem,  against the Defendant(s) herein in the

sum of **$230,839.92** plus ongoing interest, costs and attorneys fees and for sale of the Mortgaged

premises.

UDREN LAW OFFICES, P.C.

BY:

Elana B. Flehinger, Esq
PA ID 209197

Exhibit B

ALL that certain lot or piece of ground situate in the Township of Findlay, County of Allegheny and Commonwealth of Pennsylvania, being bounded and described more particularly as follows:

BEGINNING at a point in the center line of the Clinton and Economy Grade Road, at the line of land now or formerly of Joseph Kachik, et ux; thence along said Kachik line North 39° 40' East, a distance of 252.44 feet to a point; thence by a line through property now or formerly of Edward L. Boggs, et ux, of which the herein described parcel was a part, North 4° East a distance of 171.64 feet to a point on the line of land now or formerly of E. K. Hicks, et ux; thence along said Hicks line of North 64° 37' West, a distance of 234.75 feet to a point; thence continuing along said Hicks line North 10° 56' West, a distance of 56.65 feet to a point; thence still alongthe same South 73° 07' West, a distance of 158.30 feet to a point in the center line of the Clinton and Economy Grade Road; thence along the center line of said Road the following three courses and distances, South 12° 55' East, 272 feet; South 25° 39' East, 134 feet and South 42° 28' East, 121.93 feet to the point at the place of beginning.

TAX IDENTIFICATION NO.: 9910-x-269

(KAYMARK20061204.PFD/KAYMARK20061204/12)

**Bank of America**

Home Loans
PO Box 9048
Temecula, CA 92589-9048

2252815184

**Send Payments to:**
P.O. Box 15222
Wilmington, DE 19886-5222

**Send Correspondence to:**
PO Box 5170, MS SV3148
Simi Valley, CA 93065

20110801-7

Dale A Kaymark
108 Economy Grade Rd
Imperial, PA 15108-8950

Exhibit A

BLOPA1 12876 12/23/2010



Exhibit B

**Bank of America**

**Home Loans**
P.O. Box 660694
Dallas, TX 75266-0694

Send Payments to:
P.O. Box 15222
Wilmington, DE 19886-5222

August 1, 2011

**Account No.:** 871351979
**Property Address:**
108 Economy Grade Rd
Imperial, PA  15108-8950

Dale A Kaymark
108 Economy Grade Rd
Imperial, PA  15108-8950

**Current Servicer:**
Bank of America, N.A.

# ACT 91 NOTICE
# TAKE ACTION TO SAVE
# YOUR HOME FROM
# FORECLOSURE

This is an official notice that the mortgage on your home is in default, and the lender intends to foreclose. Specific information about the nature of the default is provided in the attached pages.

The HOMEOWNER'S EMERGENCY MORTGAGE ASSISTANCE PROGRAM (HEMAP) may be able to help to save your home. This Notice explains how the program works.

To see if HEMAP can help, you must MEET WITH A CONSUMER CREDIT COUNSELING AGENCY WITHIN 30 DAYS OF THE DATE OF THIS NOTICE.  Take this Notice with you when you meet with the Counseling Agency

The names, addresses and phone numbers of Consumer Credit Counseling Agencies serving your County are listed at the end of this Notice.  If you have any questions, you may call the Pennsylvania Housing Finance Agency toll free at 1-800-342-2397.  (Persons with impaired hearing can call 1-717-780-1869)

This Notice contains important legal information.  If you have any questions, representatives at the Consumer Credit Counseling Agency may be able to help explain it.  You may also want to contact an attorney in your area.  The local bar association may be able to help you find a lawyer.

LA NOTIFICACIÓN EN ADJUNTO ES DE SUMA IMPORTANCIA, PUES AFECTA SU DERECHO A CONTINUAR VIVIENDO EN SU CASA.  SI NO COMPRENDE EL CONTENIDO DE ESTA NOTIFICACIÓN OBTENGA UNA TRADUCCIÓN INMEDIATAMENTE LLAMANDO ESTA AGENCIA (PENNSYLVANIA HOUSING FINANCE AGENCY) SIN CARGOS AL NÚMERO MENCIONADO ARRIBA.  PUEDE SER ELEGIBLE PARA UN PRÉSTAMO POR EL PROGRAMA LLAMADO "HOMEOWNER'S EMERGENCY MORTGAGE ASSISTANCE PROGRAM" EL CUAL PUEDE SALVAR SU CASA DE LA PERDIDA DEL DERECHO A REDIMIR SU HIPOTECA.

**HOMEOWNER'S NAME(S):**                    Dale A Kaymark
**PROPERTY ADDRESS:**                       108 Economy Grade Rd
                                            Imperial, PA  15108-8950
**LOAN ACCT. NO.:**                         871351979
**ORIGINAL LENDER:**
**CURRENT LENDER/SERVICER:**                Bank of America, N.A.

## HOMEOWNER'S EMERGENCY MORTGAGE ASSISTANCE PROGRAM

YOU MAY BE ELIGIBLE FOR FINANCIAL ASSISTANCE WHICH CAN SAVE YOUR HOME FROM FORECLOSURE AND HELP YOU MAKE FUTURE MORTGAGE PAYMENTS.

This communication is from Bank of America, N.A., the servicer of your home loan.

Please write your account number on all checks and correspondence.
We may charge you a fee (of up to $40.00) for any payment returned or rejected by your financial institution, subject to applicable law.

BLOPA1 12670 12/25/2010

**Payment Instructions:**

- Make your check payable to Bank of America, N.A.
- Don't send cash
- Please include coupon with your payment

For all full month payment periods, interest is calculated on a monthly basis. Accordingly, interest for all full months, excluding February, is calculated as 30/360 of annual interest, irrespective of the actual number of days in the month. For partial-months, interest is calculated daily on the basis of a 365 day year.

Account Number: 871351979-4
Dale A Kaymark
108 Economy Grade Rd
Imperial, PA  15108-8950

BLOPA1

Bank of America, N.A.
PO BOX 15222
Wilmington, DE  19886-5222
1-800-669-6654

Balance Due for charges listed above: $7,084.46 as of August 1, 2011.
Please update e-mail information on the reverse side of this coupon.

| | |
|---|---|
| Additional Principal | |
| Additional Escrow | |
| Check Total | |

8713519794000007084 46000708446

⑆586990058⑈871351979⑈

Exhibit B

IF YOU COMPLY WITH THE PROVISIONS OF THE HOMEOWNER'S EMERGENCY MORTGAGE ASSISTANCE ACT OF 1983 (THE "ACT"), YOU MAY BE ELIGIBLE FOR EMERGENCY MORTGAGE ASSISTANCE:

IF YOUR DEFAULT HAS BEEN CAUSED BY CIRCUMSTANCES BEYOND YOUR CONTROL,

IF YOU HAVE A REASONABLE PROSPECT OF BEING ABLE TO PAY YOUR MORTGAGE PAYMENTS, AND

IF YOU MEET OTHER ELIGIBILITY REQUIREMENTS ESTABLISHED BY THE PENNSYLVANIA HOUSING FINANCE AGENCY.

**TEMPORARY STAY OF FORECLOSURE** - Under the Act, you are entitled to a temporary stay of foreclosure on your mortgage for Thirty (30) days from the date of this Notice. During that time you must arrange and attend a "face-to-face" meeting with one of the consumer credit counseling agencies listed at the end of this Notice. **THIS MEETING MUST OCCUR WITHIN THE NEXT THIRTY (30) DAYS. IF YOU DO NOT APPLY FOR EMERGENCY MORTGAGE ASSISTANCE, YOU MUST BRING YOUR MORTGAGE UP TO DATE. THE PART OF THIS NOTICE CALLED "HOW TO CURE YOUR MORTGAGE DEFAULT" EXPLAINS HOW TO BRING YOUR MORTGAGE UP TO DATE**.

**CONSUMER CREDIT COUNSELING AGENCIES** - If you meet with one of the consumer credit counseling agencies listed at the end of this notice, the lender may NOT take action against you for Thirty (30) days after the date of this meeting. The names, addresses and telephone numbers of designated consumer credit counseling agencies for the county in which the property is located are set forth at the end of this Notice. It is only necessary to schedule one face-to-face meeting. Advise your lender immediately of your intentions.

**APPLICATION FOR MORTGAGE ASSISTANCE** - Your mortgage is in default for the reasons set forth later in this Notice (see following pages for specific information about the nature of your default.) If you have tried and are unable to resolve this problem with the lender, you have the right to apply for financial assistance from the Homeowner's Emergency Mortgage Assistance Program. To do so, you must fill out, sign and file a completed Homeowner's Emergency Assistance Program Application with one of the designated consumer credit counseling agencies listed at the end of this Notice. Only consumer credit counseling agencies have applications for the program and they will assist you in submitting a complete application to the Pennsylvania Housing Finance Agency. Your application MUST be filed or postmarked within Thirty (30) days of your face-to-face meeting.

YOU **MUST** FILE YOUR APPLICATION PROMPTLY. IF YOU FAIL TO DO SO OR IF YOU DO NOT FOLLOW THE OTHER TIME PERIODS SET FORTH IN THIS LETTER, FORECLOSURE MAY PROCEED AGAINST YOUR HOME IMMEDIATELY AND YOUR APPLICATION FOR MORTGAGE ASSISTANCE WILL BE DENIED.

**AGENCY ACTION** - Available funds for emergency mortgage assistance are very limited. They will be disbursed by the Agency under the eligibility criteria established by the Act. The Pennsylvania Housing Finance Agency has sixty (60) days to make a decision after it receives your application. During that time, no foreclosure proceedings will be pursued against you if you have met the time requirements set forth above. You will be notified directly by the Pennsylvania Housing Finance Agency of its decision on your application.

NOTE: IF YOU ARE CURRENTLY PROTECTED BY THE FILING OF A PETITION IN BANKRUPTCY, THE FOLLOWING PART OF THIS NOTICE IS FOR INFORMATION PURPOSES ONLY AND SHOULD NOT BE CONSIDERED AS AN ATTEMPT TO COLLECT THE DEBT.

**(If you have filed bankruptcy you can still apply for Emergency Mortgage Assistance.)**

NOTICE OF INTENT TO FORECLOSE YOUR HOME LOAN IS IN A STATE OF DEFAULT DUE TO THE REASONS MENTIONED IN THIS NOTICE. YOU MUST TAKE ACTION TO SAVE YOUR HOME FROM FORECLOSURE.

**NATURE OF THE DEFAULT** - The MORTGAGE debt held by the above lender on your property located at:

108 Economy Grade Rd Imperial, PA  15108-8950

IS SERIOUSLY IN DEFAULT because

YOU HAVE NOT MADE MONTHLY MORTGAGE PAYMENTS for the following months and the following amounts are now past due:

| Monthly Charges: | 06/01/2011 | | $2,306.74 |
| | 07/01/2011 | | $4,599.98 |
| Late Charges: | 06/01/2011 | | $177.74 |
| Other Charges: | Uncollected Late Charges: | | $0.00 |
| | Uncollected Costs: | | $0.00 |
| | Partial Payment Balance: | | ($0.00) |
| | | TOTAL DUE: | $7,084.46 |

YOU HAVE FAILED TO TAKE THE FOLLOWING ACTION (Do not use if not applicable)

**HOW TO CURE THE DEFAULT** - You may cure the default within THIRTY (30) DAYS of the date of this notice BY PAYING THE TOTAL AMOUNT PAST DUE TO THE LENDER, WHICH IS $7,084.46 PLUS ANY MORTGAGE PAYMENTS AND LATE CHARGES WHICH BECOME DUE DURING THE THIRTY (30) DAY PERIOD.

This communication is from Bank of America, N.A., the servicer of your home loan.

E-mail use: Providing your e-mail address below will allow us to send you information on your account.
Account Number: 871351979
Date A Kaymark E-mail address:

How we post your payments: All accepted payments of principal and interest will be applied to the longest outstanding installment due, unless otherwise expressly prohibited or limited by law. If you submit an amount in addition to your scheduled monthly amount, we will apply your payments as follows: (i) to outstanding monthly payments of principal and interest, (ii) escrow deficiencies, (iii) late charges and other amounts you owe in connection with your loan and (iv) to reduce the outstanding principal balance of your loan. Please specify if you want an additional amount applied to future payments, rather than principal reduction.

Postdated checks: Postdated checks will be processed on the date received unless a loan counselor agrees to honor the date written on the check as a condition of a repayment plan.

222a

Exhibit B

222a

Payments must be made either by cashier's check, certified check or money order made payable and sent to:

Bank of America, N.A. at P.O. Box 15222, Wilmington, DE 19886-5222.

You can cure any other default by taking the following action within THIRTY (30) DAYS of the date of this letter. (Do not use if not applicable)

**IF YOU DO NOT CURE THE DEFAULT** - If you do not cure the default within THIRTY (30) DAYS of the date of this Notice, the lender intends to exercise its rights to accelerate the mortgage debt. This means that the entire outstanding balance of this debt will be considered due immediately and you may lose the chance to pay the mortgage in monthly installments. If full payment of the total amount past due is not made within THIRTY (30) DAYS, the lender also intends to instruct its attorneys to start legal action to foreclose upon your mortgaged property.

**IF THE MORTGAGE IS FORECLOSED UPON** - The mortgaged property will be sold by the Sheriff to pay off the mortgage debt. If the lender refers your case to its attorneys, but you cure the delinquency before the lender begins legal proceedings against you, you will still be required to pay the reasonable attorney's fees that were actually incurred, up to $50.00. However, if legal proceedings are started against you, you will have to pay all reasonable attorney's fees actually incurred by the lender even if they exceed $50.00. Any attorney's fees will be added to the amount you owe the lender, which may also include other reasonable costs. **If you cure the default within the THIRTY (30) DAY period, you will not be required to pay attorney's fees. YOU HAVE THE RIGHT TO REINSTATE AFTER ACCELERATION AND THE RIGHT TO ASSERT IN THE FORECLOSURE PROCEEDING THE NON-EXISTENCE OF A DEFAULT OR ANY OTHER DEFENSE YOU MAY HAVE TO ACCELERATION AND FORECLOSURE.**

**OTHER LENDER REMEDIES** - The lender may also sue you personally for the unpaid principal balance and all other sums due under the mortgage.

**RIGHT TO CURE THE DEFAULT PRIOR TO SHERIFF'S SALE** - If you have not cured the default within the THIRTY (30) DAY period and foreclosure proceedings have begun, you still have the right to cure the default and prevent the sale at any time up to one hour before the Sheriff's Sale. You may do so by paying the total amount then past due, plus any late or other charges then due, reasonable attorney's fees and costs connected with the foreclosure sale and any other costs connected with the Sheriff's Sale as specified in writing by the lender and by performing any other requirements under the mortgage. Curing your default in the manner set forth in this notice will restore your mortgage to the same position as if you had never defaulted

**EARLIEST POSSIBLE SHERIFF'S SALE DATE** - It is estimated that the earliest date that such a Sheriff's Sale of the mortgage property could be held would be approximately six (6) months from the date of this Notice. A notice of the actual date of the Sheriff's Sale will be sent to you before the sale. Of course, the amount needed to cure the default will increase the longer you wait. You may find out at any time exactly what the required payment or action will be by contacting the lender.

**HOW TO CONTACT THE LENDER:**

| Name of Lender: | *Bank of America, N.A.* |
|---|---|
| Address: | *P. O. Box 660694 Dallas, TX 75266-0694* |
| Phone Number: | *1-800-669-6654* |
| Fax Number: | *1-817-230-6811* |
| Contact Person: | *MS TX2-977-01-13* |
| | *Attention: Loan Counselor* |

**We are currently developing a process to ensure secure email communications for your Home Retention inquiries. In the interim, please contact us at the telephone number or address provided.**

**EFFECT OF SHERIFF'S SALE** - You should realize that a Sheriff's Sale will end your ownership of the mortgaged property and your right to occupy it. If you continue to live in the property after the Sheriff's sale, a lawsuit to remove you and your furnishings and other belongings could be started by the lender at any time.

**ASSUMPTION OF MORTGAGE** - You may sell or transfer your home to a buyer or transferee who will assume the mortgage debt, provided that all the outstanding payments, charges and attorney's fees and costs are paid prior to or at the sale and that the other requirements of the mortgage are satisfied.

**YOU MAY ALSO HAVE THE RIGHT:**

TO SELL THE PROPERTY TO OBTAIN MONEY TO PAY OFF THE MORTGAGE DEBT OR TO BORROW MONEY FROM ANOTHER LENDING INSTITUTION TO PAY OFF THIS DEBT.

TO HAVE THIS DEFAULT CURED BY ANY THIRD PARTY ACTING ON YOUR BEHALF.

TO HAVE THE MORTGAGE RESTORED TO THE SAME POSITION AS IF NO DEFAULT HAD OCCURRED, IF YOU CURE THE DEFAULT. (HOWEVER, YOU DO NOT HAVE THIS RIGHT TO CURE YOUR DEFAULT MORE THAN THREE TIMES IN ANY CALENDAR YEAR.)

TO ASSERT THE NONEXISTENCE OF A DEFAULT IN ANY FORECLOSURE PROCEEDING OR ANY OTHER LAWSUIT INSTITUTED UNDER THE MORTGAGE DOCUMENTS.

TO ASSERT ANY OTHER DEFENSE YOU BELIEVE YOU MAY HAVE TO SUCH ACTION BY THE LENDER.

TO SEEK PROTECTION UNDER THE FEDERAL BANKRUPTCY LAW.

Your loan is in default. Pursuant to your loan documents, Bank of America, N.A. may, enter upon and conduct an inspection of your property. The purposes of such an inspection are to (i) observe the physical condition of your property, (ii) verify that the property is occupied and/or (iii) determine the identity of the occupant. If you do not cure the default prior to the inspection, other actions to protect the mortgagee's interest in the property (including, but not limited to, winterization, securing the property, and valuation services) may be taken. The costs of the above-described inspections and property preservation efforts will be charged to your account as provided in your security instrument.



Exhibit B

223a                                                                                                      223a

If you are unable to cure the default on or before August 31, 2011, Bank of America, N.A. wants you to be aware of various options that may be available to you through Bank of America, N.A. to prevent a foreclosure sale of your property.  For example:

- Repayment Plan: It is possible that you may be eligible for some form of payment assistance through Bank of America, N.A..  Our basic plan requires that Bank of America, N.A. receive, up front, at least ½ of the amount necessary to bring the account current, and that the balance of the overdue amount be paid, along with the regular monthly payment, over a defined period of time. Other repayment plans also are available.

- Loan Modification: Or, it is possible that the regular monthly payments can be lowered through a modification of the loan by reducing the interest rate and then adding the delinquent payments to the current loan balance. This foreclosure alternative, however, is limited to certain loan types.

- Sale of Your Property: Or, if you are willing to sell your home in order to avoid foreclosure, it is possible that the sale of your home can be approved through Bank of America, N.A. even if your home is worth less than what is owed on it.

- Deed-in-Lieu: Or, if your property is free from other liens or encumbrances, and if the default is due to a serious financial hardship which is beyond your control, you may be eligible to deed your property directly to the Noteholder and avoid the foreclosure sale.

If you are interested in discussing any of these foreclosure alternatives with Bank of America, N.A., you must contact us immediately. If you request assistance, Bank of America, N.A. will need to evaluate whether that assistance will be extended to you. In the meantime, Bank of America, N.A. will pursue all of its rights and remedies under the loan documents and as permitted by law, unless it agrees otherwise in writing. Failure to bring your loan current or to enter into a written agreement by August 31, 2011 as outlined above will result in the acceleration of your debt.

If your loan is currently being evaluated for a loan modification, forbearance or other loan assistance solution, this notice will not cancel or delay that evaluation process. However, it is important that you promptly respond to all requests made in connection with your evaluation for a loan assistance solution, including all requests for you to contact us and any documentation required. If you do not comply with these requests in a timely manner, it may cause your loan to enter the foreclosure process as indicated in this notice. If your loan is not eligible for a loan assistance program, please note this letter will continue to serve as notice of our right to initiate foreclosure.

Time is of the essence. If you have any questions concerning this notice, please contact Loan Counseling Center immediately at 1-800-669-6654.

This communication is from Bank of America, N.A., the servicer of your home loan.

Exhibit B

224a                                                    224a

Case 2:13-cv-00419-CRE Document 23-2 Filed 05/20/13 Page 15 of 19

**Attachment: Itemization of Charges and Fees**

| Monthly Charges: | 06/01/2011 | - | 06/30/2011 | @ | $2,306.74 | $2,306.74 |
|---|---|---|---|---|---|---|
| | 07/01/2011 | - | 08/31/2011 | @ | $2,299.99 | $4,599.98 |
| Late Charges: | 06/01/2011 | - | 07/31/2011 | @ | $88.87 | $177.74 |
| Other Charges: | Uncollected Late Charges: | | | | | $0.00 |
| | Partial Payment Balance: | | | | | ($0.00) |
| | | | | **TOTAL DUE:** | | **$7,084.46** |



This communication is from Bank of America, N.A., the servicer of your home loan.

225a

225a

Exhibit B

CONSUMER CREDIT COUNSELING AGENCIES SERVING YOUR COUNTY

**ALLEGHENY COUNTY**

Action Housing, Inc
425 6th Avenue
Suite 950
Pittsburgh, PA 15219
412.281.2102
800.792.2801

CCCS of Western PA
River Park Commons
2403 Sidney Street, Suite 400
Pittsburgh, PA 15203
888.511.2227
888.511.2227

Community Action Southwest
58 East Greene Street
Waynesburg, PA 15370
724.852.2893

Fair Housing Partnership of Greater
Pittsburgh, Inc.
2840 Liberty Avenue
Suite 205
Pittsburgh, PA 15222
412.391.2535

Garfield Jubilee Associates
5138 Penn Avenue
Pittsburgh, PA 15224
412.665.5200

Mon Valley Unemployment Committee
1800 West Street
3rd Floor
Homestead, PA 15120
412.462.9962

Nazareth Housing Services
301 Bellevue Road
Pittsburgh, PA 15229
412.931.6996

NeighborWorks of Western Pennsylvania
710 5th Avenue
Suite 1000
Pittsburgh, PA 15219
412.281.9773

Pennsylvania Housing Finance Agency
2775 Swallow Hill Road
Bldg 200
Pittsburgh, PA 15220
412.429.2842

The Pittsburgh Community Reinvestment
Group (PCRG)
1901 Centre Avenue
Suite 200
Pittsburgh, PA 15219
412.391.6732

Urban League Of Pittsburgh
610 Wood Street
Pittsburgh, PA 15222
412.227.4802

This communication is from Bank of America, N.A., the servicer of your home loan.

Options are Available to Help You

# Avoid Foreclosure

### Call the number on the enclosed notice to learn more.

When you call, please have your income and expense information available
so we can discuss which option(s) could work for you.

### Options to consider if your goal is to stay in your home

| Program | Description |
|---|---|
| Home Affordable Modification Program (HAMP) | A federal government program that allows you to repay the loan on newly agreed upon terms, which may include lowering the interest rate, placing past due amounts at the end of the loan, and/or extending the term of the loan. You may be eligible for this program if you meet the following requirements:<br><br>• The home is your primary residence and you currently live in it.<br>• The amount you owe on the first mortgage is equal to or less than $729,750 for a single-family home, $934,200 for a 2 unit property, $1,129,250 for a 3 unit property or $1,403,400 for a 4 unit property<br>• You have experienced a hardship that has impacted your income.  For example, a significant increase in your mortgage payment OR reduction in your income OR other hardship.<br>• Your mortgage was obtained before Jan. 1, 2009.<br>• Your payment on your first mortgage (including principal, interest, taxes, insurance and homeowner's association dues, if applicable) is more than 31% of your current gross income. To calculate this, divide your first mortgage payment by your gross income (income before taxes). |
| Loan Reinstatement | If you can bring your loan payments up to date, we will accept the funds needed to bring the loan up to date until the day of your foreclosure sale. |
| Repayment Plan | A temporary agreement which allows for the repayment of the unpaid, past due amount along with regular mortgage payments. This may include principal, interest, fees, and/or costs assessed to your loan. |
| Temporary Forbearance Agreement | An agreement whereby we agree not to proceed with foreclosure and/or collection of payments for a period of time, to allow you to re-establish your ability to make the required payments. |
| Loan Modification (non-HAMP) | Repay the loan on newly agreed upon terms, which may include lowering the interest rate, placing amounts past due at the end of the loan, and/or extending the term of the loan. |
| Partial Claim (FHA loans Only) | If you have a Federal Housing Administration (FHA) loan and your payments are past due but you are now able to make your regular monthly mortgage payment, this program is designed to bring your loan up to date by creating a second mortgage/lien on your property for the amount that is past due. |

### Options to consider if you cannot or do not wish to stay in your home

| Program | Description |
|---|---|
| Home Affordable Foreclosure Alternatives Program (HAFA) | Designed to help borrowers who are eligible for the Home Affordable Modification Program (HAMP) but were unsuccessful in securing a permanent modification through the program. HAFA provides the option of a short sale and, if unsuccessful, a deed in lieu of foreclosure. A short sale is a transaction in which you sell your property for less than the total amount owed on the loan (subject to agreement by your servicer/lender/investor), resulting in the release of our lien on your home and avoidance of foreclosure. A deed in lieu of foreclosure is a transaction in which you agree to voluntarily transfer ownership of your property to us in order to avoid foreclosure. |
| Short Sale/ Preforeclosure Sale (non-HAFA) | Offered to borrowers who are not eligible for HAMP or other home retention alternatives. With a short sale, you sell your property for less than the total amount owed on the loan (subject to agreement by your servicer/lender/investor), resulting in the release of our lien on your home and avoidance of foreclosure. |
| Deed in Lieu of Foreclosure (non-HAFA) | Offered to borrowers not eligible for HAMP or other home retention alternatives,  and who were not able to sell the property through a short sale. With a deed in lieu of foreclosure, you agree to voluntarily transfer ownership of your property to us in order to avoid foreclosure. |



## We are here to help you. Please call us today.

225281  **Exhibit B**

Hay Opciones Disponibles Para Ayudarle a

# Evitar la Ejecución Hipotecaria

**Llame al número que aparece en la notificación adjunta para obtener más información**

Cuando llame, tenga la información de sus ingresos y gastos disponibles para que podamos discutir cuál opción(es) pueden funcionar para usted.

### Opciones a considerar si su objetivo es permanecer en su casa

| Programa | Descripción |
|---|---|
| Home Affordable Modification Program (HAMP) | Un programa del gobierno federal que le permite pagar el préstamo bajo los nuevos términos acordados, que pueden incluir la reducción de la tasa de interés, agregando la cantidad adeudada al final del préstamo, y / o extender el plazo del préstamo. Usted puede ser elegible para este programa si cumple con los siguientes requisitos:<br><br>• La casa es su residencia principal y actualmente vive en ella.<br>• La cantidad adeudada en la primera hipoteca debe ser igual o menos que $729,750 dólares para una vivienda unifamiliar, $934,200 dólares para una propiedad de 2 unidades, $1,129,250 dólares para una propiedad de 3 unidades o $1,403,400 para una propiedad de 4 unidades<br>• Ha experimentado una dificultad que ha afectado sus ingresos.  Por ejemplo, un aumento significativo en su pago hipotecario O reducción de sus ingresos U otras dificultades.<br>• Obtuvo su hipoteca antes del 01 de enero 2009.<br>• Su pago de la primera hipoteca (incluyendo principal, interés, impuestos, seguro y cuotas de asociación de propietarios, si se aplica) debe ser más del 31% de sus ingresos brutos actuales. Para calcular esto, divida su pago hipotecario por sus ingresos brutos (ingresos antes de impuestos). |
| Restablecimiento del Préstamo | Si usted puede traer sus pagos del préstamo hipotecario al día, se le aceptarán los fondos necesarios para que el préstamo este al día hasta la fecha de la venta judicial. |
| Plan de Pago | Un acuerdo temporal que permite el pago de la cantidad adeudada, cantidad del pago atrasado junto con los pagos regulares de la hipoteca. Esto puede incluir principal, interés, honorarios y/o costos aplicados a su préstamo. |
| Acuerdo Temporal de Tolerancia | Un acuerdo por el cual nos comprometemos a no proceder con la ejecución hipotecaria y/o colección de pagos por un período de tiempo, para permitirle que restablezca su habilidad de hacer los pagos requeridos. |
| Modificación de Préstamo (no por medio de HAMP) | Pagar el préstamo bajo los nuevos términos acordados, que puede incluir la reducción de la tasa de interés, agregando la cantidad adeudada al final del préstamo, y/o extender el plazo del préstamo. |
| Reclamo Parcial (solamente prestamos de la FHA) | Si usted tiene un préstamo de la Administración Federal de Vivienda (FHA) y sus pagos están vencidos, pero ahora puede hacer sus pagos regulares mensuales de la hipoteca, este programa está diseñado para que su préstamo este al día mediante la creación de una segunda hipoteca / gravamen sobre su propiedad por la cantidad adeudada. |

### Opciones a considerar si no puede o no desea quedarse en su casa

| Programa | Descripción |
|---|---|
| Home Affordable Foreclosure Alternatives Program (HAFA) | Diseñado para ayudar a los prestatarios que son elegibles para el Programa de Home Affordable Modification (HAMP), pero no tuvieron éxito en obtener una modificación permanente a través del programa. HAFA ofrece la posibilidad de una venta corta y, si no tiene éxito, una entrega de escritura para evitar juicio hipotecario.  Una venta corta es una transacción en la que usted vende su propiedad por menos de la cantidad adeudada en el préstamo (sujeto a previo acuerdo de su administrador / prestamista / inversionista), resultando en la liberación de nuestro derecho de retención sobre su propiedad y evitar la ejecución hipotecaria.  Una entrega de escritura para evitar juicio hipotecario es una transacción en la que usted está de acuerdo de transferir voluntariamente las escrituras de su propiedad a nosotros con el fin de evitar la ejecución hipotecaria. |
| Venta Corta/ Venta antes de Ejecución Hipotecaria (no por medio de HAFA) | Se ofrece a los prestatarios que no son elegibles para HAMP u otras alternativas de retención de hogar.  Con una venta corta, usted vende su propiedad por menos de la cantidad total adeudada en el préstamo (sujeto a un acuerdo por su administrador / prestamista / inversionista), resultando en la liberación de nuestro derecho de retención sobre su propiedad y evitando la ejecución hipotecaria. |
| Entrega de Escritura Para Evitar Juicio Hipotecario (no por medio de HAFA) | Se ofrece a los prestatarios que no son elegibles para HAMP u otras alternativas de retención de hogar, y que no pudieron vender la propiedad a través de una venta corta.  Con una entrega de escritura para evitar juicio hipotecario, usted está de acuerdo a transferir voluntariamente las escrituras de su propiedad a nosotros para evitar la ejecución hipotecaria. |

**Estamos aquí para ayudarle. Por favor llámenos hoy.**

**UDREN LAW OFFICES, P.C.**
**WOODCREST CORPORATE CENTER**
**111 WOODCREST ROAD, SUITE 200**
**CHERRY HILL, NJ 08003-3620**
**856-669-5400 pleadings@udren.com**

**ATTORNEY FOR PLAINTIFF**

| | |
|---|---|
| **Bank of America, N.A.**<br>Plaintiff<br><br>v.<br><br>**DALE A. KAYMARK**<br>**108 ECONOMY GRADE ROAD, IMPERIAL,**<br>**PA 15108 A/K/A 108 ECONOMY GRADE**<br>**ROAD**<br>**CORAOPOLIS, PA 15108**<br><br>Defendant(s) | **COURT OF COMMON PLEAS**<br>**CIVIL DIVISION**<br>**ALLEGHENY County**<br><br>NO. |

**V E R I F I C A T I O N**

_Matthew E Cottman_, hereby states that he/she is _Assistant Vice President_ of Bank of America, N.A., Plaintiff in this matter, that he/she is authorized to make this Verification, and verify that the statements made in the foregoing Civil Action in Mortgage Foreclosure are true and correct to the best of his/her knowledge, information and belief.

The undersigned understands that this statement is made subject to the penalties of 18 Pa. C.S. Section 4904 relating to unsworn falsification to authorities.

Date: _August 28, 2012_

Name: _Matthew E Cottman_
Title: _Assistant Vice President_
Company: _Bank of America NA_

**MJU #: 12050577 CASE #: 12050577-1**

Exhibit B
229a

# EXHIBIT "B"

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY

COMMONWEALTH OF PENNSYLVANIA

CIVIL DIVISION

BANK OF AMERICA, NA,
C/O Bank of America N.A.,
As successor by Merger to BAC
Home Loans, LP,

     Plaintiff,

v.

DALE A. KAYMARK,

     Defendant.

No. MG-12-001699

Mortgage Foreclosure

### DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES

Filed on Behalf of Defendant:
DALE A. KAYMARK

Counsel of Record for this Party:
LAUREN D. DARBOUZE, ESQUIRE
PA I.D. #93971

Law Office of Lance Denha
651 Holiday Drive, Suite 300
Pittsburgh, PA 15220
(412)849-6831

lidate Check

DPS\$JCONN01

10-15-2012  10:00:59

MG-12-001699

A.    Failure to provide the proper statutory notice before filing suit. This prevents Plaintiff from proceeding with the foreclosure action unless and until every condition precedent is satisfied.

B.    The Complaint and all actions by the Plaintiff fail to comply with the Fair Debt Collections Practices Act, 15 U.D.S. §1692 *et seq.* A promissory note secured by a residential mortgage is subject to the Act.

C.    The Plaintiff failed to provide the good faith estimate disclosure and within 3 business days after receipt of the loan application. Therefore, the Plaintiff should be barred from asserting this action.

### THIRD SEPARATE AND DISTINCT AFFIRMATIVE DEFENSE
### (UNCLEAN HANDS)

13.    Plaintiff's action against Defendant is barred by the doctrine of *in pari delicto* and under this principle of unclean hands, the Plaintiff is not entitled to the relief requested.

14.    The Plaintiff or agents has failed to accept payments as remitted by the Defendant and did not fairly consummate or administer the purported transaction.

### FOURTH SEPARATE AND DISTINCT AFFIRMATIVE DEFENSE
### (STANDING)

15.    The Plaintiff is attempting to foreclose on the Note, allegedly tendered, and sell Defendant's property without having proved that Plaintiff is the owner of both the Note and the Mortgage.

16.    Both, the Note and the Mortgage may have been re-assigned or transferred between the date of its alleged execution and delivery, and the institution of the instant action by the Plaintiff, without proper notice.

### FIFTH SEPARATE AND DISTINCT AFFIRMATIVE DEFENSE
### (RESPA VIOLATIONS)

4

17. The transaction between the Plaintiff and the Defendant was a "federally related mortgage loan" as that defined in the Real Estate Settlement and Procedures Act ("RESPA"), 12 U.S.C. §2602(1).

18. The Plaintiff's closing, funding and origination of this transaction are "settlement services" as that term is defined in RESPA, 12 U.S.C. §2601(3).

19. The Plaintiff's closing agent and Title Company, did not provide services for which Defendant was charged fees.

20. The Plaintiff's payment of fees to the mortgage broker, mortgage brokerage company, closing agent and title company or the requirement that the Defendant utilize them and pay such fees to them violates RESPA's prohibition against providers of settlement services from paying referral fees and kickbacks. 12 U.S.C. §2607.

21. The Plaintiff's violation of RESPA is a violation that subjects the Plaintiff to a civil penalty of three times the amount of any charge paid for settlement services. 12 U.S.C. §2607(d)(2).

## SIXTH SEPARATE AND DISTINCT AFFIRMATIVE DEFENSE
## (FDCPA VIOLATIONS)

22. The Defendant is a consumer within the meaning of the Pennsylvania Fair Debt Collection Practices Act ("FDCPA"). 18 Pa.C.S.Ann. §7311.

23. Plaintiff has conducted trade or commerce with Defendant within the meaning of FDCPA.

24. The deceptive and unfair acts and practices of Plaintiff were the cause of Defendant's damages.

25. Said practices further constitute unfair and deceptive acts and practices within the intent and meaning of the Federal Trade Commission Act and pursuant to the standards of unfairness and deception set forth and interpreted by the Federal Trade Commission and federal courts.

5

26. In the conduct of Plaintiff's trade or commerce, Plaintiff has engaged in unconscionable acts or practices, and unfair or deceptive acts or practices unlawful within the meaning of FDCPA, *inter alia*:

  A. Utilizing aggressive lending practices by refinancing a stable fixed rate mortgage into a monthly negative amortization loan product.

  B. Failing to provide the Defendant with the best loan possible considering the Defendant's qualifications, credit score and loan programs available.

  C. Not adhering to its underwriting standards, allowed the origination of "no documentation or reduced documentation" Subprime Loans and failed to ensure that borrowers had sufficient capacity to repay such mortgage loans.

  D. Not adhering to underwriting standards for "no documentation or reduced documentation loans" to Subprime borrowers by waiving standards, irrespective of the borrowers' ability to document income and assets.

  E. Failing to adhere to underwriting standards in regard to the borrower's capacity to repay engendered fraud as such "no documentation or reduced documentation" Subprime Loans were approved for borrowers who were not qualified and could not afford such loans.

  F. Fostering a culture of loan approvals regardless of the borrowers' capacity to pay while compensating its underwriters with bonuses. The underwriters, therefore, had incentives to approve as many loans as possible, ignoring risk.

  G. Lacking procedures or rigid guidelines on how "no documentation or reduced documentation" Subprime Loans were to be approved. It was the underwriters' responsibility to make the loan work, regardless of whether or not the loan fit the professed underwriting standards.

  H. Issuing Subprime Loans to borrowers when they knew or should have known that the borrowers would not be able to repay the loan once the initial ARM period expired.

  I. Failing to comply with its Subprime Technical Manual which sets forth that underwriters should determine for every loan application whether the loan makes sense.

  J. In other instances, the culture created and/or permitted by Plaintiff encouraged managers to approve Subprime Loan applications that were initially denied by underwriters who suspected fraud.

6

234a    234a

## SEVENTH SEPARATE AND DISTINCT AFFIRMATIVE DEFENSE
### (MISREPRESENATION)

27. The Defendant was advised that the loan was based upon a fixed rate otherwise the Defendant would not have refinanced.

28. The Plaintiff deceived the Defendant with an interest rate that appeared to be fixed rather than a "teaser".

## EIGHTH SEPARATE AND DISTINCT AFFIRMATIVE DEFENSE
### (MISTAKE)

29. Unilateral mistake allows the Defendant to void a contract when the party, at the time of making a contract, was mistaken as to a basic assumption of the contract that has a material effect of the parties' performances which is adverse to the mistaken party. Restatement (Second) Of Contracts §153(1981).

## NINTH SEPARATE AND DISTINCTIVE AFFIRMATIVE DEFENSE
### (BREACH OF GOOD FAITH)

30. The implied covenant of good faith and fair dealing requires that each party act consistently with, and take no actions to frustrate the contract's purpose. Restatement (Second) Of Contracts §205(1981).

31. Plaintiff has a duty to act in good faith and equitably with its contracting party.

32. The Plaintiff failed to act in good faith and with fair dealing by, inter alia:

A. Offering subprime loans, such as the subject transaction, to inexperienced borrowers, such as the Defendant, that offered rates and terms that were not as favorable a loan to other more sophisticated borrowers.

B. Misrepresenting the terms of the loan documents at closing and failing to leave a true copy of loan documents in Defendant's possession, ensuring Defendant could not review them.

C. Misrepresenting the existence of escrow accounts by stating provision would be made for payment of property taxes and insurance when in fact, this was not the case in order to replace the amount of monthly payment allocated for taxes and insurance with the payment of a higher cost loan.

7

235a                                                                235a

D. Closing without final figures or documents in place whereby inaccurate payoff information is used, title is not checked, accurate appraisals are not completed or are exaggerated and closing statements are not finalized.

## TENTH SEPARATE AND DISTINCTIVE AFFIRMATIVE DEFENSE
### (FAILURE TO JOIN INDISPENSIBLE PARTY)

33. Plaintiff has failed to join and indispensible party.

34. More specifically, upon information and belief, insurance premiums for LPMI (Lender Principal Mortgage Insurance) or similar insurance that was not disclosed at closing but rolled into the costs, charges and interest at closing; and the insurer is an indispensable party that has failed to be joined in this action.

35. The purported outstanding balance asserted by Plaintiff is not an accurate reflection of the total amount owed by Defendant, when set off by insurance pay-offs and settlements.

## RESERVATION OF ADDITIONAL AFFIRMATIVE DEFENSES

36. The Defendant reserves the right to amend the Affirmative Defenses based upon any pending discovery or other matters discovered during the course of the proceedings.

**WHEREFORE**, based upon one or more of the affirmative defenses set forth above, Defendant is entitled to a release and satisfaction of the note and mortgage and dismissal of the foreclosure claim with prejudice; attorneys fees pursuant to the alleged mortgage and note, and for whatever other relief the Court deems just and proper.

Respectfully Submitted:

Lauren D. Darbouze, Esquire
Counsel for Defendant
651 Holiday Drive, Suite 300
Pittsburgh, PA 15220
(412)849-6831

8

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY

COMMONWEALTH OF PENNSYLVANIA

CIVIL DIVISION

BANK OF AMERICA, NA,
C/O Bank of America N.A.,
As successor by Merger to BAC
Home Loans, LP,

      Plaintiff,

v.

DALE A. KAYMARK,

      Defendant.

No. MG-12-001699

Mortgage Foreclosure

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was sent via first class mail postage pre-paid this 10th day of October2012 to Elana B. Flehinger, Udren Law Office, P.C., 111 Woodcrest Road, Suite 200, Cherry Hill, NJ, 08003.

LAW OFFICES OF LANCE DENHA

BY: _____
LAUREN D. DARBOUZE, ESQUIRE
PA BAR NO. 93971
651 Holiday Drive, Suite 300
Pittsburgh, PA 15220
(412)849-6831

9

237a               237a

# EXHIBIT "C"



## Allowable Attorney and Trustee Foreclosure Fees

This list contains the maximum attorney's or trustee's fees that Fannie Mae allows for legal work related to foreclosures of whole mortgage loans, participation pool mortgage loans, and MBS mortgage loans serviced under special servicing options.

| State | Non-Judicial Foreclosure | Judicial Foreclosure |
|---|---|---|
| Alabama | $900 | On Approval[2] |
| Alaska | $1,200 | On Approval[2] |
| Arizona | $925 | On Approval[2] |
| Arkansas | $1,050 | On Approval[2] |
| California | $1,000[3] | On Approval[2] |
| Colorado | $1,225 | On Approval[2] |
| Connecticut | N/A | $1,700[4,5] |
| Delaware | N/A | $1,350 |
| District of Columbia | $600[1,6] | On Approval[2] |
| Florida | N/A | $2,250[12] |
| Georgia | $900 | On Approval[2] |
| Guam | $1,200 | On Approval[2] |
| Hawaii | $1,100 | $2,400[8] |
| Idaho | $1,050 | On Approval[2] |
| Illinois | N/A | $1,750 |
| Indiana | N/A | $1,500 |
| Iowa | $850 | $1,300 |
| Kansas | N/A | $1,250 |
| Kentucky | N/A | $1,700 |
| Louisiana | N/A | $1,350 |
| Maine | N/A | $1,750 |
| Maryland | $2,100 | On Approval |
| Massachusetts | N/A | $2,000[4] |
| Michigan | $1,000 | On Approval |
| Minnesota | $1,025[9] | On Approval |
| Mississippi | $900[1] | On Approval[2] |
| Missouri | $950 | On Approval |
| Montana | $1,000 | On Approval[2] |
| Nebraska | $900 | On Approval[2] |
| Nevada | $1,100 | On Approval |
| New Hampshire | $1,150 | On Approval[2] |
| New Jersey | N/A | $2,425 |
| New Mexico | N/A | $1,500 |
| New York | $800[10] | $2,000[4,10] |
| North Carolina | $1,150 | On Approval |
| North Dakota | N/A | $1,250 |

239a    239a

| State | Non-Judicial Foreclosure | Judicial Foreclosure |
|---|---|---|
| Ohio | N/A | $1,700 |
| Oklahoma | N/A | $1,450 |
| Oregon | $1,000 | $2,050 |
| Pennsylvania | N/A | $1,650 |
| Puerto Rico | N/A | $1,500[4,11] |
| Rhode Island | $1,300 | On Approval[2] |
| South Carolina | N/A | $1,650 |
| South Dakota | N/A | $1,250 |
| Tennessee | $900 | On Approval |
| Texas | $900 | On Approval |
| Utah | $925 | On Approval |
| Vermont | N/A | $1,700 |
| Virgin Islands | N/A | $1,800 |
| Virginia | $925 | On Approval |
| Washington | $1000 | On Approval |
| West Virginia | $1,000[1,6] | On Approval[2] |
| Wisconsin | N/A | $1,500 |
| Wyoming | $1,000 | On Approval[2] |

Notes:
[1] This fee covers the combined attorney's and notary's fees.
[2] Because this is not the preferred method of foreclosure, the servicer must obtain approval of its use from Fannie Mae's Regional Counsel prior to initiation by sending a request to nonroutine_litigation@fanniemae.com. Fannie Mae will provide procedural instructions and applicable fees at the time it grants approval.
[3] This fee applies to completed foreclosures. If the mortgage loan is reinstated after recordation of the Notice of Default (but before mailing of the Notice of Sale), the maximum fee is $500 or the maximum allowed by statute, whichever is less. If the mortgage loan is reinstated after mailing of the Notice of Sale but before the Trustee's Sale, the maximum fee is $750 or the maximum allowed by statute, whichever is less.
[4] An additional $200 will be permitted when the property is sold to a third party and the attorney must perform additional work to complete the transfer of title to the successful bidder.
[5] This fee applies to Strict Foreclosures. If the court orders a Foreclosure by Sale, the fee will be $1,950.
[6] This fee includes the attorney's fee, the notary's fee and the trustee's commission (or statutory fee).
[7] This fee includes reimbursement for any fee for the attorney's certificate of title.
[8] A fee of $3,400 will be permitted for judicial foreclosures in locations other than Honolulu County
[9] This fee increases to $1,400 for any case in which the attorney provides services for "proceedings subsequent" that involve registered land.
[10] In New York, the non-judicial foreclosure process is to be used only in connection with cooperative share loans. The fee includes all steps in the foreclosure process, including the transfer of the stock and the lease for an occupied cooperative unit. A fee of $2,400 will be permitted for judicial foreclosures in the City of New York and on Long Island (Nassau and Suffolk Counties).
[11] In addition to the allowable foreclosure fee, Fannie Mae will pay a notary fee up to the greater of $250 or one percent (1%) of the bid amount on the mortgage being foreclosed
[12] The allowable fee for foreclosures in Florida, where judgment is obtained as a result of an uncontested trial, is established at $3,000

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA

DALE KAYMARK, individually and on behalf
of other similarly situated current and former
homeowners in Pennsylvania,

                     Plaintiff,

v.

BANK OF AMERICA, N.A. and UDREN
LAW OFFICES, P.C.,

                     Defendants.

No.: 2:13-cv-00419-CB-CRE

Electronically Filed

## DEFENDANT BANK OF AMERICA, N.A.'S RESPONSE TO PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE'S REPORT AND RECOMMENDATION

# TABLE OF CONTENTS

Page

Argument ........................................................................................................................2

I.   The R&R Correctly Concluded That, Because Plaintiff Paid No Money To BOA For The Challenged Foreclosure-Related Legal Expenses, All Of His Claims Should Be Dismissed. ........................................................................................2

    A.  The R&R Correctly Concluded That Plaintiff Has Failed To Allege The Ascertainable Loss That Is Required To State A Claim Under The UTPCPL/FCEUA. ....................................................................................3

    B.  Plaintiff's UTPCPL/FCEUA Claims Also Fail Because Plaintiff Has Not Alleged That He Justifiably Relied On Any Conduct By BOA. ...................6

    C.  Plaintiff's "Additional FCEUA Claims" Against BOA Arising Out Of The Purportedly Misleading Act 91 Notice Fail As A Matter Of Law ...............9

    D.  The R&R Correctly Concluded That Plaintiff's Breach of Contract Claim Fails Because He Has Not Alleged Any Damages As A Result Of BOA's Purported Breach. .................................................................................10

II.  Plaintiff Has Not Alleged Facts Sufficient To Show That  BOA Breached Plaintiff's Mortgage By Charging Fees That Defendants Did Not Actually Incur. ..........11

Conclusion .....................................................................................................................15

                        

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Belmont v. MB Inv. Partners, Inc.*,
  708 F.3d 470 (3d Cir. 2013) .................................................................... 7, 8

*Benner v. Bank of Am., N.A.*,
  917 F. Supp. 2d 338 (E.D. Pa. 2013) ........................................................ 10

*Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC*,
  40 A.3d 145 (Pa. Super. 2012) ................................................................... 6

*Case of State Tax on Foreign-held Bonds*,
  82 U.S. 300 (1872) ..................................................................................... 4

*Crystian v. Mellon Bank, N.A.*,
  210 B.R. 956 (Bankr. W.D. Pa. 1997) ....................................................... 13

*D'Agostino v. Maldonado*,
  78 A.3d 527 (N.J. 2013) ............................................................................. 4

*Delaware v. New York*,
  507 U.S. 490 (1993) ................................................................................... 4

*Grimes v. Enter. Leasing Co. of Philadelphia*,
  − A.3d −, 2014 WL 349263 (Pa. Jan 30, 2014) ........................................ 5

*Grimes v. Enter. Leasing Co. of Philadelphia*,
  66 A.3d 330 (Pa. Super. 2013) ......................................................... 4, 5, 8

*Hunt v. U.S. Tobacco Co.*,
  538 F.3d 217 (3d Cir. 2008) .................................................................. 6, 8

*In re Davids*,
  2012 WL 6597770 (Bankr. W.D. Pa. Dec 18, 2012) ................................. 7

*In re Estate of Landis*,
  2014 WL 169842 (Pa. Super. Jan. 15, 2014) ............................................. 4

*In re Howell*,
  226 B.R. 279 (Bankr. M.D. Fla. 1998) .................................................... 14

*Keller v. GC Servs., L.P.*,
  2013 WL 3213338 (E.D. Pa. June 26, 2013) ............................................. 8

*Kemezis v. Matthews*,
  394 F. App'x 956 (3d Cir. 2010) ................................................................ 7

*Knight v. Springfield Hyundai*,
  2013 WL 6224622 (Pa. Super. Dec. 2, 2013) ........................................... 7

*Levy v. Senate of Pennsylvania*,
  65 A.3d 361 (Pa. 2013) .............................................................................. 7

*Lynch v. Capital One Bank (USA), N.A.*,
  2013 WL 2915734 (E.D. Pa. June 14, 2013) ............................................. 7

*Manufacturers & Trades Trust Co. v. Luzerne County Tax Claim Bureau*,
  56 A.3d 36 (Pa. Commw. 2012) ................................................................. 4

*New-Howard v. JPMorgan Chase Bank, N.A.,*
    2013 WL 6096232 (E.D. Pa. Nov. 20, 2013) .......................... 7

*Salvati v. Deutsche Bank Nat'l Trust Co., N.A.,*
    2013 WL 1314777 (W.D. Pa. Mar. 28, 2013) .......................... 3

*Schwartz v. OneWest Bank, FSB,*
    2013 WL 6037078 (E.D. Pa. Nov. 13, 2013) .......................... 7

*Sicherman v. Nationwide Life Ins. Co.,*
    2012 WL 1122737 (E.D. Pa. Apr. 4, 2012) .......................... 3, 11

*Smith v. State Farm Mut. Auto. Ins. Co.,*
    506 F. App'x 133 (3d Cir. 2012) .......................... 6

*Taggart v. Wells Fargo Home Mortg., Inc.,*
    2013 WL 3009730 (E.D. Pa. June 18, 2013) .......................... 8

*Weinberg v. Sun Co., Inc.,*
    777 A.2d 442 (Pa. 2001) .......................... 3, 8

## Statutes

35 Pa. Stat. § 1680.403c .......................... 9

73 Pa. Stat. § 201-2(4) .......................... 2, 5

73 Pa. Stat. § 201-9.2 .......................... 2

73 Pa. Stat. § 2270.1 .......................... 2

73 Pa. Stat. § 2270.2 .......................... 9

## Other

PA Eth. Op. 01-200, 2001 WL 1744775
    (Pa. Bar. Ass'n. Comm. Leg. Eth. Prof. Resp. June 28, 2001) .......................... 14

**DEFENDANT BANK OF AMERICA, N.A.'s RESPONSE TO PLAINTIFF'S**
**OBJECTIONS TO THE MAGISTRATE'S REPORT AND RECOMMENDATION**

On December 11, 2013, Magistrate Judge Eddy issued a Report and Recommendation ("R&R") (Doc. 41) in favor of granting the motions to dismiss filed by Bank of America, N.A. ("BOA") and Udren Law Offices, P.C. ("Udren"). In this case Plaintiff Dale Kaymark asserts claims against BOA and Udren arising out of the unpaid and uncollected attorneys' fees and other legal expenses allegedly assessed in connection with a foreclosure action that was commenced against Plaintiff after he defaulted on his home mortgage loan. The R&R correctly concludes as a matter of law that Plaintiff has failed to state any viable claim against BOA under the Pennsylvania Fair Credit Extension Uniformity Act ("FCEUA"), the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), or for breach of contract under his mortgage with BOA. As Magistrate Judge Eddy explained fully in the R&R, Plaintiff's failure to plead that he sustained any actual loss or damage as a result of BOA's purported conduct is fatal to his FCEUA, UTPCPL and breach of contract claims.

In his Objections to the Magistrate's Report and Recommendation ("Objections") (Doc. 44), Plaintiff goes to great lengths to advance the argument that the allegedly improper charges were "liened" against his property, constituting ascertainable loss. As Magistrate Judge Eddy observed, this exact same argument has been repeatedly rejected, and Plaintiff has provided no authority for his theory that imposing an alleged lien would constitute actionable conduct under the UTPCPL or further, would cause an "ascertainable loss of money or property" under the UTPCPL or FCEUA. Indeed, even if liens were imposed on Plaintiff's property, including the alleged illegal fees, the only way Plaintiff could potentially suffer any "ascertainable loss" from that conduct would be if he sold his property, paid off the alleged illegal fees, and realized less

from the property sale than he would have had the fees not been imposed. None of these events has occurred.

Moreover, the R&R correctly concluded that, given that Plaintiff has never paid the purportedly improper fees or costs, is vigorously challenging the foreclosure and those fees and costs with counsel in state court, and may never even have to pay such fees, Plaintiff cannot and has not pled any actual damages from BOA's alleged breach of the mortgage contract. In any event, the fees and costs itemized in the foreclosure complaint were authorized by the terms of the mortgage. Accordingly, BOA did not breach the mortgage contract, and Plaintiff's claims fail for that reason as well.

Because Plaintiff paid no money to BOA for the challenged foreclosure-related legal expenses and suffered no actual or ascertainable loss as a result of BOA's alleged conduct, each of Plaintiff's claims against BOA fails as a matter of law. As recommended by Magistrate Judge Eddy, the Court should dismiss Plaintiff's Complaint in its entirety with prejudice.

## ARGUMENT

**I.      The R&R Correctly Concluded that, Because Plaintiff Paid No Money To BOA For The Challenged Foreclosure-Related Legal Expenses, All Of His Claims Should Be Dismissed.**

In Counts I, III, and IV of the Amended Complaint, Plaintiff purports to state claims against BOA under the FCEUA, 73 Pa. Stat. § 2270.1 *et seq.*, the UTPCPL, 73 Pa. Stat. § 201-2(4),[1] and for breach of the Mortgage contract. As acknowledged by both the Magistrate Judge and Plaintiff, the FCEUA does not contain a private cause of action and can only be enforced through the UTPCPL. Doc. 41 at 12. In a private action under the UTPCPL (73 P.S. § 201-9.2),

---

[1]      In Count III of the Amended Complaint, Plaintiff originally alleged that BOA violated two sections of the UTPCPL, 201-2(4)(v) and 201-2(4)(xxi). After BOA moved to dismiss the claims under both sections, Plaintiff abandoned his 201-2(4)(v) claim and, in his Objections, only addresses the "catch-all" provision found in 201-2(4)(xxi). *See* Doc. 44 at 30, n. 11.

relief is available only if the plaintiff has suffered "an ascertainable loss as a result of the defendant's prohibited action." *Weinberg v. Sun Co., Inc.*, 777 A.2d 442, 446 (Pa. 2001); *see also* Doc. 41 at 13 ("key elements of any UTPCPL claim are that Plaintiff suffered an *ascertainable loss* and that the loss occurred *as a result of* (i.e., *in reliance* upon) the defendant's conduct") (emphasis in original).  Moreover, to state a claim for breach of contract, a plaintiff must allege damages which resulted from the purported breach.  Doc. 41 at 16; *see also Sicherman v. Nationwide Life Ins. Co.*, No. 11-7227, 2012 WL 1122737, at *6 (E.D. Pa. Apr. 4, 2012) (granting motion to dismiss because plaintiff failed to plead the resultant damages required for her breach of contract claim).  Due to Plaintiff's failure to adequately plead any ascertainable loss or contractual damages, the Magistrate correctly recommended the dismissal of all three claims against BOA with prejudice.  Plaintiff's Objections add nothing new and merely serve to reiterate the faulty argument of Plaintiff's counsel that an alleged increase in the amount of a lien constitutes the requisite damages for his claims.

### A. The R&R Correctly Concluded That Plaintiff Has Failed To Allege The Ascertainable Loss That Is Required To State A Claim Under The UTPCPL/FCEUA.

Plaintiff admits that he is not basing his claim on any actual payment of the challenged fees and costs.  The sole loss being claimed by Plaintiff in this case is the purported diminution in value of his property as a result of the lien which was allegedly inflated by the assessment of "unincurred" foreclosure fees.  However, Plaintiff's theory that he suffered an ascertainable loss in the form of an increased encumbrance on his property is wholly unsupported by law.  Moreover, such a speculative, unrealized loss cannot sustain his claim.  Doc. 41 at 15.  As acknowledged in the R&R, Plaintiff's lien argument was expressly rejected by Judge Schwab in *Salvati v. Deutsche Bank Nat'l Trust Co., N.A.*, No. 12-cv-0971, 2013 WL 1314777, at *6 (W.D.

Pa. Mar. 28, 2013).  Doc. 41 at 14.

To date, Plaintiff has provided no on-point Pennsylvania authority to bolster his lien theory and, instead, has cited cases about taxes, escheat, and § 1983.  Doc. 31 at 25; Doc. 44 at 37.  Plaintiff cites to *Manufacturers & Trades Trust Co. v. Luzerne County Tax Claim Bureau*, 56 A.3d 36 (Pa. Commw. 2012).  However, that case involved a bank lienholder's attempt to vacate a judicial tax sale because notices were not sent to the bank's proper address as required by the Tax Sale Law.  Here, there has been no sale of the subject property.  Plaintiff's citation to cases involving disputes amongst states over the right to escheat abandoned intangible property and disputes over taxes on foreign-held bonds is equally puzzling.  Doc. 44 at 37 (citing *Delaware v. New York*, 507 U.S. 490, 499 (1993); *Case of State Tax on Foreign-held Bonds*, 82 U.S. 300 (1872)).[2]  These cases have no relevance here and do not in any way support Plaintiff's argument that a request to be paid or an assessment of charges listed in a foreclosure complaint amounts to an encumbrance or "detrimental change in position" constituting ascertainable loss for purposes of the UTPCPL/FCEUA.

In his Objections, Plaintiff yet again hangs his hat on the Superior Court decision in *Grimes v. Enterprise Leasing Co. of Philadelphia*, 66 A.3d 330 (Pa. Super. 2013).[3]  But, the

---

[2]  Plaintiff's citation to the decision in *D'Agostino v. Maldonado*, 78 A.3d 527 (N.J. 2013), which considered claims arising under New Jersey's Consumer Fraud Act, is equally unavailing.  There, the plaintiffs were victims of a scam which resulted in the complete loss of their title in their home.  *Id.* at 542 ("Plaintiffs sustained an 'ascertainable loss' as a result of defendant's unconscionable commercial practice – the transaction that deprived them of title to their residence.").  Here, Plaintiff suffered no such loss.

Similarly, Plaintiff's reliance upon *In re Estate of Landis*, No. 990 EDA 2013, 2014 WL 169842 (Pa. Super. Jan. 15, 2014), is misplaced.  *See* Doc. 48.  Whether a lien is a constitutionally protected property interest and whether the destruction of a lien is a taking under the Fifth Amendment has no relevance to the question of whether a request for payment is an ascertainable loss for purposes of the UTPCPL.

[3]  The parties have already fully addressed the *Grimes* decision in previous briefs filed in this case.  Doc. No. 27 at 17 n.4 (Defendant Bank of America's Brief in Support of Motion to Dismiss); Doc. No. 31 at 19-20 (Plaintiff's Response to Defendants' Motions to Dismiss); Doc. No. 35 at 5 (Defendant Bank of America's Reply Brief in Support of its Motion to Dismiss); Doc. No. 39 (Plaintiff's Notice of Supplemental Authority); and Doc. No. 40 (BOA's Response to Notice of Supplemental Authority).

Superior Court's decision in *Grimes* is distinguishable and only serves to prove BOA's point. In *Grimes*, the plaintiff's theory of loss was "that she … incurred costs and fees associated with asserting her rights and preventing [the defendant] from collecting its debt." *Id.* at 339. Thus, there, the court found that the plaintiff claimed an actual expenditure of money, which was sufficient to show ascertainable loss under the UTPCPL. In contrast here, Plaintiff does not claim to have paid any allegedly improper charges or that he incurred any costs in responding to the foreclosure complaint. Plaintiff's alleged out-of-pocket loss is zero. *Grimes* does not support the loss theory that Plaintiff is asserting here.[4]

Although Plaintiff spends the bulk of his Objections attempting to argue that his "loss" is ascertainable and not merely speculative, even he cannot avoid couching his argument in forward-looking and speculative terms. Doc. 44 at 6 ("**If** he sells his home, his net proceeds **will** be a dollar less, and **if** he tried to use it for security on a loan, the amount he can borrow **will** decline by one dollar.") (emphasis added). As determined by the Magistrate, any alleged diminution in value is vague and speculative and is not an ascertainable loss resulting from the flat fees and fixed costs included in the pre-foreclosure notice and foreclosure complaint. Doc. 41 at 15.

---

[4]     Notably, as to the issues addressed in *Grimes*, on January 31, 2014, the Supreme Court of Pennsylvania granted the *allocatur* petition of Enterprise Leasing to resolve the questions of (1) whether the Superior Court erred when it held that a private plaintiff who alleges deceptive conduct under the UTPCPL's "catch-all" provision, 73 P.S. § 201-2(4)(xxi), need not allege and prove justifiable reliance, contrary to the decisions of this Court, earlier decisions of the Superior Court, and federal decisions construing the UTPCPL; and (2) whether the Superior Court erred when it held that a plaintiff may satisfy the UTPCPL's "ascertainable loss" requirement by voluntarily hiring an attorney and allegedly incurring litigation costs to challenge allegedly wrongful conduct, even where the plaintiff paid no money to the defendant as a result of that conduct. *Grimes v. Enter. Leasing Co. of Philadelphia*, − A.3d −, 2014 WL 349263, at *1 (Pa. Jan 30, 2014).

- 5 -

**B.** **Plaintiff's UTPCPL/FCEUA Claims Also Fail Because Plaintiff Has Not Alleged That He Justifiably Relied On Any Conduct By BOA.**

Plaintiff's UTPCPL and FCEUA claims also fail because Plaintiff has not alleged that he justifiably relied on any fraudulent or deceptive act by BOA. Indeed, in recommending dismissal of the Amended Complaint, Magistrate Judge Eddy properly found that, for Plaintiff to adequately state a claim under the UTPCPL, he must also allege reliance on the allegedly deceptive and/or fraudulent conduct. Doc. 41 at 15. In a footnote to his Objections, Plaintiff, however, feebly maintains that there is no justifiable reliance requirement to the FCEUA or the catch-all provision of the UTPCPL. Doc. 44 at 30, n. 11. Contrary to Plaintiff's assertion, reliance *is* a required element of Plaintiff's claim.

Plaintiff's argument that he need not allege justifiable reliance directly contradicts Pennsylvania law as construed by the Third Circuit: that reliance is a necessary precursor to private plaintiff *standing* under the UTPCPL. *Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 222 (3d Cir. 2008) (UTPCPL demands "a showing of justifiable reliance, not simply a causal connection between the misrepresentation and the harm.").

For support, Plaintiff relies heavily on *Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC*, 40 A.3d 145 (Pa. Super. 2012), to show that some Pennsylvania courts have held that the 1996 UTPCPL amendment removed the requirement of proving all of the elements of common law fraud in a UTPCPL catch-all action. Doc. 44 at 30, n. 11. Notably, *Bennett* merely held that "misleading conduct" could constitute a violation under the UTPCPL and did not specifically opine on whether justifiable reliance is a necessary prerequisite to a catch-all UTPCPL claim. *Bennett*, 40 A.3d at 156. In any event, *Bennett* and other contradictory state Superior Court cases cited by Plaintiff are not persuasive in light of repeated holdings from the Third Circuit reaffirming that reliance is a prerequisite to a UTPCPL claim. *See Smith v. State*

- 6 -

*Farm Mut. Auto. Ins. Co.*, 506 F. App'x 133, 137 (3d Cir. 2012); *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 499 (3d Cir. 2013); *Kemezis v. Matthews*, 394 F. App'x 956, 959 (3d Cir. 2010).[5]

Indeed, as observed by the court in *In re Davids*, No. 11-10891, 2012 WL 6597770, at *8 (Bankr. W.D. Pa. Dec 18, 2012), which criticized the *Bennett* decision and held that justifiable reliance remains an essential prerequisite to a catch-all provision claim, "finding that a post-1996 amendment UTP claimant does not have to prove common law fraud under the catch-all provision is not the same as finding that justifiable reliance need not be shown." Despite the 1996 amendment, Pennsylvania state and federal courts have continued to require that UTPCPL plaintiffs allege justifiable reliance. *See, e.g.*, *Lynch v. Capital One Bank (USA), N.A.*, No. 12-992, 2013 WL 2915734, at *4-5 (E.D. Pa. June 14, 2013) (dismissing UTPCPL claim because of failure to plead both reliance and injury, where plaintiff alleged that he relied on allegedly impermissible "charges and interest" on his credit card statements, but did not allege that he had made any payments toward those fees); *see also Schwartz v. OneWest Bank, FSB*, No. 13-0113,

---

[5]     Moreover, Plaintiff's reliance upon *New-Howard v. JPMorgan Chase Bank, N.A.*, No. 11-2855, 2013 WL 6096232 (E.D. Pa. Nov. 20, 2013) is misplaced.  Doc. 44 at 30  n.11.  *New-Howard* does nothing to advance Plaintiff's argument that justifiable reliance is not required for a catch-all claim and, in fact, since the court determined that a fact finder could conclude that the plaintiff relied upon the instructions of the defendant to not make certain payments, the case stands for the opposite proposition. *New-Howard*, 2013 WL 6096232, at *7.

Further illustrating Plaintiff's penchant for citing irrelevant cases, in his Notice of Supplemental Authority (Doc. 46), Plaintiff curiously brought to this Court's attention *Levy v. Senate of Pennsylvania*, 65 A.3d 361 (Pa. 2013) and *Knight v. Springfield Hyundai*, No. 3089 EDA 2012, 2013 WL 6224622 (Pa. Super. Dec. 2, 2013).  Neither of these cases provide support for Plaintiff's claims in this action.  First, *Levy* was decided by the Pennsylvania Supreme Court more than nine months ago and can hardly be considered recent supplemental authority.  Moreover, *Levy* deals with Pennsylvania's Right-to-Know Law and the scope of the attorney-client privilege, and has nothing to do with the claims at issue here (purported violations of the FCEUA, UTPCPL, and breach of contract).  Second, *Knight* has no bearing on this case.  Plaintiff asserts that *Knight* contains "a great discussion of the UTPCPL and economic loss doctrine."  Doc. 46 at 1.  While Plaintiff has asserted a UTPCPL claim, neither BOA nor Udren has asserted a defense based on the economic loss doctrine.  Accordingly, *Knight* bears no relevance to the issues before this Court.

2013 WL 6037078, at *5-6 (E.D. Pa. Nov. 13, 2013) (dismissing catch-all claim because plaintiff did not "allege facts as to how he justifiably relied upon Defendant's alleged misrepresentations to his detriment" (citing *Hunt*, 538 F.3d at 224)); *Keller v. GC Servs., L.P.*, 2013 WL 3213338 (E.D. Pa. June 26, 2013) (dismissing catch-all claim because "completely absent from the complaint are any allegations of justifiable reliance or causation" (citing *Hunt*, 538 F.3d at 221)); *Taggart v. Wells Fargo Home Mortg., Inc.*, No. 10-cv-00843, 2013 WL 3009730, at *6-7 (E.D. Pa. June 18, 2013) (dismissing catch-all claim because plaintiff failed to allege that he justifiably relied upon any specific misrepresentations). [6]

Thus, absent reliance—as is the case here, where Plaintiff did not pay any allegedly improper fees (or, for that matter, do anything at all) as a result of receiving the pre-foreclosure notice or the foreclosure complaint that was filed against him—Plaintiff's UTPCPL claim cannot survive. The Court should follow the recommendation of Magistrate Judge Eddy to dismiss the UTPCPL and FCEUA claims with prejudice.

---

[6]     These decisions were issued after *Bennett* as well as *Belmont v. MB Investment Partners, Inc.*, 708 F.3d 470 (3d Cir. 2013) and *Grimes*, 66 A.3d 330, both of which included *dicta* opportunistically cited and relied upon by Plaintiff. In *Belmont*, the court merely observed the "division" of opinions regarding what is needed to be pled to satisfy the requirements of the UTPCPL catch-all provision. *Belmont*, 708 F.3d at 498 n.32. Notably, the court in *Belmont* relied upon and cited *Weinberg,* 777 A.2d at 446, for the proposition "that a UTPCPL plaintiff must demonstrate that he justifiably relied on the defendant's deceptive practice and that he suffered harm as a result of that reliance." *Belmont*, 708 F.3d at 499. Similarly, in *Grimes*, the Superior Court panel wrote that "[t]o bring a private cause of action under the UTPCPL, a plaintiff must show that he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance." 66 A.3d at 335. (Admittedly this statement seems contradictory to the statement made by the Superior Court panel in footnote 4 of the same opinion.) Further as to *Grimes,* Plaintiff fails to acknowledge that the court found that Grimes adequately pled an ascertainable loss because she spent money to prevent the defendant from collecting the debt. *Id.* at 339. Thus, in addition to not having any effect on a plaintiff's need to plead reliance to evidence UTPCPL standing, *Grimes* is factually distinguishable and otherwise does not support Plaintiff's contention that the imposition of a lien establishes an ascertainable loss.

- 8 -

## C.     Plaintiff's "Additional FCEUA Claims" Against BOA Arising Out Of The Purportedly Misleading Act 91 Notice Fail As A Matter Of Law.

Plaintiff claims that the R&R failed to address additional FCEUA claims that he has alleged against BOA for purportedly issuing a misleading pre-foreclosure notice (a so-called "Act 91 notice"). Doc. 44 at 25. Plaintiff is incorrect in that, notwithstanding his disagreement with its ruling, the R&R specifically addressed each of Plaintiff's FCEUA claims. Doc. 41 at 5-6; 12-16. The Pennsylvania Housing Finance Agency Law, 35 P.S. §1680.403c ("Act 91") requires that a mortgage lender send a pre-foreclosure notice to debtors prior to commencing a foreclosure action. Plaintiff claims that BOA sent him a pre-foreclosure notice that incorrectly stated the amount of Plaintiff's arrearages and requested Plaintiff to take action to avoid foreclosure within 30 days, as opposed to 33 days as allegedly required by Act 91. Plaintiff cannot state a claim based on alleged Act 91 violations because the statute does not provide a private cause of action for such alleged violations. *See* Doc. 27 at 11.

Moreover, Plaintiff freely admits that he "has no personal claims arising under Act 91." Doc. 44 at 26. This admission alone suffices for this Court to dismiss any claims based upon purported violations of Act 91.

Notwithstanding the admission by Plaintiff that he has no "personal" claims arising out of Act 91, Plaintiff nevertheless attempts to bring an Act 91 claim under the guise of the FCEUA. With regard to his contention that the Amended Complaint adequately alleges "*per se*" violations of the FCEUA, such contention is without merit. The FCEUA was enacted to regulate "unfair or deceptive acts or practices with regard to the collection of debts." 73 P.S. § 2270.2. By contrast, as previously briefed by BOA, the requirements of Act 91 do not relate in any way to debt collection. On this point, the Eastern District of Pennsylvania has specifically held that "language in Defendant's pre-foreclosure [Act 91] notices that supposedly misled [Plaintiff]

about how and when he could apply for state-funded mortgage assistance … do not relate to Defendant's attempt to collect the outstanding mortgage debt." Doc. 27 at 12 (citing *Benner v. Bank of Am., N.A.*, 917 F. Supp. 2d 338, 362 (E.D. Pa. 2013)). For that reason, the court in *Benner* found that the Act 91 violation at issue could not form the basis for a claim under the Fair Debt Collection Practices Act, the federal corollary to the FCEUA. *Id.* As such, Plaintiff may not use a purported Act 91 violation as the basis for an FCEUA claim.

Even if Plaintiff could base his FCEUA claims against BOA upon purported violations of Act 91− which he cannot − such claims still could not withstand a motion to dismiss because Plaintiff has not alleged that he suffered any harm whatsoever as a result of the alleged Act 91 violations. *See* Doc. 27 at 13-14; Doc. 35 at 4. Magistrate Judge Eddy recognized that Plaintiff's failure to allege damages arising from the purported FCEUA violations was fatal to his claims because the FCEUA does not contain a private cause of action and can only be enforced through the UTPCPL. Doc. 41 at 12 (citing *Benner*, 917 F.Supp.2d at 359). Indeed, in recommending the dismissal of Plaintiff's FCEUA claims, the R&R cited *Benner*'s holding that "'[w]ithout actually paying for the allegedly improper [] fees, Plaintiff's FCEUA claim, as brought under the UTPCPL [] fails because of his inability to show an 'ascertainable loss of money or property' required by the statute." Doc. 41 at 14 (citing *Benner*, 917 F. Supp. 2d at 360). Because Plaintiff failed to allege any damages from the purported Act 91 violations, he has not suffered an ascertainable loss as a result of these alleged violations as is required to recover under the UTPCPL and FCEUA.

**D.  The R&R Correctly Concluded That Plaintiff's Breach of Contract Claim Fails Because He Has Not Alleged Any Damages As A Result Of BOA's Purported Breach.**

The R&R correctly concluded that Plaintiff's breach of contract claim against BOA

similarly fails because Plaintiff has not adequately pled damages arising from any alleged breach of contract. Doc. 41 at 16-18. Plaintiff does not allege that he actually paid the challenged fees and costs, that he paid fees and costs before they were incurred, or that he paid fees and costs that were not ever incurred. To the contrary, Plaintiff admits he did not make any such payments at all, but instead, claims that the charges were "liened" against his property. But, as the R&R correctly concluded, such a speculative, unrealized loss cannot sustain Plaintiff's breach of contract claim. Doc. 41 at 17 (because, among other things, Plaintiff "may never have to pay [the allegedly improper fees,] it is difficult to imagine that he has sustained any actual damages from the alleged breach"); *see also Sicherman*, 2012 WL 1122737, at *6 (granting motion to dismiss because plaintiff failed to plead the resultant damages required for her breach of contract claim). Tellingly, Plaintiff provides no authority to refute the Magistrate's conclusion that he failed to satisfy the damages element of his breach of contract claim. Doc. 44 at 39. Because Plaintiff has failed to allege the damages element necessary to support a claim for breach of contract and because his Objections do nothing to contradict the R&R's conclusion, the breach of contract claim against BOA should be dismissed with prejudice.

## II.    Plaintiff Has Not Alleged Facts Sufficient To Show That BOA Breached Plaintiff's Mortgage By Charging Fees That Defendants Did Not Actually Incur.

Even if Plaintiff had adequately alleged that he sustained actual damages from the alleged breach of the mortgage – which he has not – his breach of contract claim would still fail for want of a breach. Because Plaintiff could not prove the essential damage element of his common law breach of contract claim, the Magistrate Judge did not need to address BOA's argument that the attorneys' fees and other fixed costs itemized in the foreclosure complaint were authorized by the mortgage. Notably, however, in the R&R, Magistrate Judge Eddy did opine that the argument appeared to have substantial merit. Doc. 41 at 17 n.4.

As fully briefed by BOA (Doc. 27 at 7-10), Paragraph 14 of Plaintiff's mortgage provides that BOA may charge Plaintiff "fees for services performed in connection with [Plaintiff's] default, . . . including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this [mortgage] to charge a specific fee to [Plaintiff] shall not be construed as a prohibition on the charging of such fee." Mortgage, Am. Compl. Ex. C at ¶ 14; *see also* Mortgage ¶ 9 (describing Borrower's obligation to pay amounts disbursed by Lender in event of Borrower's default). Moreover, Paragraph 22 of the mortgage provides that BOA is "entitled to collect all expenses incurred in pursuing [foreclosure], including, but not limited to, attorneys' fees and costs of title . . ." Mortgage ¶ 22.

First, despite the fact that Plaintiff's mortgage unquestionably authorizes BOA to charge to Plaintiff attorneys' fees and other expenses related to Plaintiff's default, Plaintiff claims that BOA breached the terms of his mortgage by charging Plaintiff attorneys' fees that were "unincurred" for foreclosure-related legal services that were "not performed." Am. Compl. ¶¶ 35, 47.

The foreclosure complaint's itemized list of amounts due included $1,650 for attorneys' fees, $325 for a title report, and $75 for a property inspection. *Id.* ¶ 16. Nothing in Plaintiff's Amended Complaint—beyond his bald accusations and bare conclusions, which are not entitled to any weight under *Iqbal/Twombly*—shows that the charges listed on the foreclosure complaint were for services that had not been performed or expenses that had not been incurred. By the time the foreclosure complaint was filed, legal services obviously had been performed and charges incurred.[7]

---

[7]     Moreover, by the time Plaintiff filed this case on February 11, 2013, additional services had been performed and charges incurred for the attorneys' fees and foreclosure-related charges sought by BOA in the foreclosure proceeding. *See* Doc. 27-1 (docket in foreclosure action, showing that by February 11,

Second, as to Plaintiffs' argument that flat fees are improper, in *Crystian v. Mellon Bank, N.A.*, 210 B.R. 956, 961 (Bankr. W.D. Pa. 1997), Judge Fitzgerald held that a lender was entitled to seek from a defaulted borrower a flat fee charged by its counsel for services in connection with the filing of a foreclosure action. There, the court specifically found that the flat fee was reasonable, despite the fact that due to the subsequently-filed bankruptcy, the only service performed in connection with the foreclosure was the initial filing of the foreclosure complaint. *Id.* In *Crystian*, like here, it was "clear from the terms of the Note and mortgage that [the lender] is entitled to attorney's fees and expenses incurred to protect its interest after Debtor's default or in the event that legal action is taken to collect the debt or foreclose on the property." *Id.* Plaintiff's arguments that flat fees are improper and not authorized by the mortgage carry no weight and should be rejected.

Moreover, Plaintiff's argument that the Fannie Mae guidelines or his mortgage do not allow fees based on a flat, percentage or another liquidated basis, but only hourly-based fees that have been incurred has no basis in fact or in the mortgage contract. The $1,650 attorneys' fee charge is the amount that Fannie Mae administratively specified as the amount of attorneys' fees to be charged for a judicial foreclosure in Pennsylvania during the relevant time period. *See* Doc. 27 at 9 n.2. Moreover, where Fannie Mae only allows the maximum fees at the completion of the foreclosure action or otherwise intends to limit the amount of foreclosure fees, it states as much. *See* Doc. 27-2 (Fannie Mae Fee Schedule) (*e.g.,* specifying when a "fee applies to completed foreclosures").[8] There is no such limitation for Pennsylvania. *See id.*[9]

---

2013, Plaintiff had filed an answer and raised numerous affirmative defenses to which BOA was forced to respond by filing preliminary objections).

[8] In any event, contrary to Plaintiff's argument, there is nothing in the Fannie Mae fee guidelines that states that the $1,650 fee cannot be listed until after the services are completed. *See* Doc. 44 at 4. In fact, where Fannie Mae intends the fee to apply to only completed foreclosures or intends the fee to contain other restrictions, it is accompanied by a footnote on the fee schedule. No such footnote exists for the Pennsylvania $1,650 fee.

Furthermore, there is no doubt that $1,650 was "incurred" by BOA in connection with the foreclosure. As Plaintiff acknowledges, $1,650 represents a flat fee charged by foreclosure counsel. Accordingly, once foreclosure counsel was retained in connection with borrower's foreclosure proceedings, the flat fee was "incurred" by BOA and, therefore, could be assessed against Plaintiff's account consistent with the terms of the mortgage.

Indeed, Plaintiff's entire argument mistakenly assumes that the foreclosure counsel and BOA must enter into an hourly billing arrangement because, at least according to Plaintiff, such an arrangement would be better for him. However, Fannie Mae approved $1,650 as the standard fee for Pennsylvania foreclosures because such an amount represents a reasonable amount for handling a basic residential foreclosure in Pennsylvania.[10] Flat fee arrangements are perfectly lawful in Pennsylvania. *See, e.g.,* PA Eth. Op. 01-200, 2001 WL 1744775 (Pa. Bar. Ass'n. Comm. Leg. Eth. Prof. Resp. June 28, 2001) (discussing propriety of flat fee arrangements in context of third-party payor arrangements). Contrary to Plaintiff's argument, there is no law or other requirement which provides that BOA's foreclosure counsel must bill BOA by the hour and, as the Fannie Mae guidelines show, a flat fee arrangement is standard in the foreclosure industry throughout the United States. *See In re Howell*, 226 B.R. 279, 281-82 (Bankr. M.D. Fla. 1998) (routine foreclosure cases "are much more susceptible to a standard rate or flat, fixed rate approach …. This approach also has the advantage of simplicity, efficiency and economy").

Accordingly, in Pennsylvania, the amount "reasonably incurred" under the terms of the standard Fannie Mae-approved mortgage (which was used in this case), in connection with an

---

[9] Moreover, as admitted by Plaintiff (and despite his heavy citation to same), he has no viable Act 6 claim (Doc. 44 at 3 n.2), and unlike Act 6 which is inapplicable to Plaintiff's mortgage, the mortgage contract here does not contain any contractual limitation on the amount of attorneys' fees charged prior to commencement of a foreclosure.

[10] Presumably there is a cost savings associated with billing on a flat fee basis since the administrative responsibilities associated with attorneys and paralegals recording and billing time on an hourly basis are eliminated.

uncontested residential foreclosure, is $1,650. As a result, it was legally proper for the foreclosure complaint at issue to include a $1,650 charge for counsel fees.

## CONCLUSION

Respectfully, for the reasons stated above, the Magistrate's Report and Recommendation should be adopted and this Honorable Court should dismiss Counts I, III, and IV of Plaintiff's Amended Complaint against Bank of America, N.A. with prejudice.

Respectfully submitted,

Dated: February 24, 2014

/s/ Thomas L. Allen
Thomas L. Allen (SBN 33243)
tallen@reedsmith.com
Nellie E. Hestin (SBN 311788)
nhestin@reedsmith.com
REED SMITH LLP
225 Fifth Avenue
Pittsburgh, PA 15222-2716
Telephone: +1 412 288 3131
Facsimile: +1 412 288 3063

Andrew J. Soven (SBN 76766)
asoven@reedsmith.com
Marc A. Goldich (SBN 93055)
mgoldich@reedsmith.com
REED SMITH LLP
2500 One Liberty Place, 1650 Market Street
Philadelphia, PA 19103-7301
Telephone: +1 215 851 8100
Facsimile: +1 215 851 1420

*Counsel for Defendant Bank of America, N.A.*

- 15 -

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 24, 2014, I caused the foregoing Response of Defendant Bank of America, N.A., to Plaintiffs' Objections to the Magistrate's Report and Recommendation to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel or parties of record electronically by CM/ECF.


REED SMITH LLP


By: */s/ Nellie E. Hestin*
       Nellie E. Hestin

# UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DALE A. KAYMARK, individually and on behalf of other similarly situated current and former homeowners in Pennsylvania,

                                 Plaintiffs,

                  v.

BANK OF AMERICA, N.A. and UDREN LAW OFFICES, P.C.

                               Defendants.

Civil Action #2:13-cv-00419-CRE

## REPLY TO SUPPORT OF OBJECTIONS (OPPOSITION TO BOA'S RESPONSE)

### *A. Charges for Attorneys' Fees Not Incurred for Services Performed are Illegal*

BOA's Foreclosure Complaint demanded foreclosure-related attorneys' fees and costs (hereinafter "fees") as required to satisfy its lien. These charges were not calculated on the basis of services performed or incurred, but on a flat/percentage basis. When the foreclosure action was filed, the fees did not represent fees for services actually performed and incurred. BOA recognizes that Mr. Kaymark's Complaint factually alleged that it charged fees before they were incurred. Document 51, p. 13. It does not dispute that the totality of the fees charged was $2,050 ($1,650 for attorneys' fees, $325 per title report and $75 for property inspection). Id., p. 12. Significantly, all Parties recognize that Fannie Mae's **maximum** fees for a complete foreclosure proceeding is $1,650[1] in Pennsylvania. BOA suggests that the $2,050 had not been incurred, but represented actual and estimated or anticipated fees. Document 51, p. 12 fn. 7. BOA even recognized that there were additional legal services and charges that were yet to be incurred that would be subject to the ceiling amount.

---

[1] The $1,650 fee may appear to be reasonable to some but such firms employ few lawyers and legions of paralegals that fill out form foreclosure complaints, with little to no attorney oversight, with data fed directly from Defendants database with generally no client contact. See In re Taylor, 655 F.3d 274 (3d Cir. 2011).

BOA confuses and convolutes very different issues. Here, no one disputes that BOA is entitled to recover incurred and reasonable foreclosure fees and costs awarded by a court pursuant to the Mortgage contract and Act 6, §406. Act 6, §408 does not allow the parties to waive this statutory provision in their mortgage contracts. Nothing in the FNMA Guidelines preempt, supersede or conflict with Act 6. In fact, the FNMA Guidelines, when read in their entirety, also require services to be actually performed and incurred before charged. Nonetheless, Mr. Kaymark's Mortgage, ¶¶7, 14 and 22, as in Act 6, only authorized fees as already incurred and determined and awarded by a court. Here, BOA wants the Court to assume that at the time it filed its Foreclosure Complaint it, or its counsel, had already paid or already incurred a legal obligation to pay the fixed fee amount demanded. No one could reasonably dispute that other fee setting methods (such as flat, fixed or percentage fees) not prohibited by statute are otherwise widely used, reasonable and may be agreed upon by contracting parties. Document 51, p. 14. If BOA or its counsel, as evidenced by their retainer, required BOA to pay its counsel a fixed $2,050 up front irrespective of the actual legal services performed (as an actual fee not a retainer) then the court would be called upon to determine the legality of utilizing this fee paying system under non-waivable Act 6, §406 and/or the FNMA Guidelines capping these fees at $1,650.

However, BOA's retainer agreement with its counsel is not in the record. The record consists of what has been pled alone. Curiously, Wells Fargo relies on In re Crystian, 210 B.R. 956 (Bankr. W.D. Pa. 1997). The mortgage in Crystian was not a residential property and therefore is not subject to Act 6. Id., 958. Moreover, Crystian was called upon to focus on the term "incurred." Therefore, even if this was an Act 6 mortgage, the definition of this term was not contested. The lack of a need for Crystian to decide this issue in a contested forum means

that it lacks relevance.  See Webster v. Fall, 266 U.S.  507, 511 (1925) and Soyka v. Alldredge, 481 F.2d 303, 306 (3d Cir. 1973) (a non-contested issue assumed by the court is of no legal relevance).  BOA overlooks that the Mortgage contract calls for the work to be **performed**.  See Mortgage¶14 ("Lender may charge Borrower fees for services performed [for] attorneys' fees").

### B.  Mr. Kaymark Suffered an Ascertainable Loss in the Form of a Lien

BOA's defense under the broad remedial UTPCPL provisions, is essentially that, another party's right loss of property without more does not equate to an ascertainable loss.  But, another party cannot gain a property right or interest without an equal and opposite reduction in rights or interests on the other side.  Thus, the lien increase represents a dollar-for-dollar diminution of Mr. Kaymark's ownership in his home.  The contention that such a real property loss does not constitute an ascertainable loss of property under the UTPCPL – a consumer protection statute to be liberally construed (Ash v. Continental Ins. Co., 932 A.2d 877, 881 (Pa. 2007)) – is untenable. Under the nearly identical language of New Jersey's analogous statute [Compare UTPCPL, §201-9.2 and Consumer Fraud Act, N.J.S.A. §56:8-19] it was held that: "[A]n improper debt or lien against a consumer-fraud plaintiff may constitute a loss under the Act, because the consumer is not obligated to pay an indebtedness arising out of conduct that violates the Act."  Cox v. Sears Roebuck & Co., 647 A.2d 454, 464 (N.J. 1994).[2]

A plaintiff must show an ascertainable loss of money or property under the UTPCPL. However, only loss of value must be established.  See DeArmitt v. New York Life Ins. Co., 73 A.3d 578, 593-594 (Pa.Super. 2013) ("other shortfalls").  "A lien on property is sufficient to show damages under Section 504."  Benner v. Bank of Am., N.A., 917 F.Supp.2d 338, 359 (E.D.Pa. 2013).  But, if imposition of a lien on property is sufficient to establish a loss, then so is

---

[2] See also D'Agostino v. Maldonado, 78 A.3d 527, 540-545 (N.J. 2013); Smith v. Caggiano, 421 N.E.2d 473, 476 (Mass.App. 1981).

inflation of an existing lien.  As <u>Benner</u> admits, "a lien on property is sufficient" to establish the requisite loss, then so is an inflation of a lien.[3]  Even a temporary lien constitutes an increased encumbrance and diminution of property interest that prejudice homeowners.  <u>Connecticut v. Doehr</u>, 501 U.S. 1, 11-12 (1991); <u>Arthur D. Little, Inc. v. Dooyang Corp.</u>, 147 F.3d 47, 56 (1st Cir. 1998).  <u>Compare</u> <u>In re Estate of Landis</u>, 2014 WL 169842 (Pa.Super. Jan. 15, 2014).

BOA also attempts to distinguish <u>Grimes v. Enterprise Leasing Co. of Philadelphia, LLC</u>, 66 A.3d 330 (Pa.Super. 2013), <u>appeal</u> <u>granted</u>, 2014 WL 349263 (Pa. Jan. 30, 2014).  <u>See</u> Document 51, pp. 4, 5 and 8. Grimes was forced to **incur** legal fees and costs because of defendants' unfair practices.  <u>Grimes</u>, 337, 339 ("Grimes avers that she **incurred** costs and fees associated with asserting her rights and protecting herself against Enterprise's alleged deceptive trade practices... **we conclude the element of loss has been clearly established**," (Emphasis added)).  The damages incurred by Mr. Kaymark – through the diminution of his ownership interest in his home – are more substantial than those in <u>Grimes</u>.  Significantly, Mr. Kaymark, unlike <u>Grimes</u>, presents a post-contract deception of a contracted-for bargain.

### C.  Reliance Need Not be Shown

Recent appellate authority analyzing the amendment to the catchall provision of the UTPCPL, §201-2(4)(xxi), negates the defense that reliance need be pled under the deceptive prong of the statute.  <u>Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC</u>, 40 A.3d 145, 152 fn.5, 154-155 (Pa.Super. 2012); <u>Compare</u>, <u>Grimes</u>, 337 fn.4.  This reliance issue was analyzed at length in <u>Trunzo v. CitiMortgage</u>, 876 F.Supp.2d 521 (W.D.Pa. 2012), which held

---

[3] Unfortunately, <u>Benner</u> did not reach this conclusion; instead it determined that §504 (requiring only a violation) was narrower in scope that §502.  In <u>Benner</u>'s words, "the imposition of property inspection fees was "an increase in [his] mortgage debt and corresponding loss of home equity.""  <u>Benner</u> found this argument to be founded on a fallacy and that Benner himself has no actual loss from this increase in his liabilities.  <u>Id.</u>, 360.  This is irreconcilable with the position just taken two footnotes up.  By the same reasoning, imposition of a lien also only produces a possible loss since the property might not be sold while the lien persists.  But both views cannot be right.  <u>Benner</u> was correct in its initial determination that the imposition of a lien does demonstrate a loss.

"this Court is satisfied that section 201-2(4)(xxi) does not require a litigant to plead the elements of common law fraud." Id., 543. See also Toth v. Northwest Savings Bank, No. GD-12-008014, pp.7-15 (C.P.Allegheny June 25, 2013).[4] Moreover, a violation of state law (i.e., Act 6/Act 91) can also constitute a violation of the UTPCPL, §201-9.2a. See Corvello v. Wells Fargo Bank, N.A., 728 F.3d 878 (9th Cir. 2013). Therefore, the Act 6/Act 91 violation which does not require reliance can also be remedied under the UTPCPL. See Act 6, §§502 ("otherwise by law"). A violation of the FDCPA can also constitute an UTPCPL violation. See Cave v. Saxon Mortg. Services, Inc., 2013 WL 460082, *2 fn.1 (E.D.Pa. Feb. 6, 2013). Since the FDCPA does not require a cash or in-kind payment (i.e., lien) to establish a loss, neither does the UTPCPL.

### D. Mr. Kaymark has Suffered Damages from the Lien

The amount of the inflated lien encumbering Mr. Kaymark's property constituted a contractual breach and damage. See Saunders v. Resnick, 16 A.2d 676, 678 (Pa.Super 1940); Richman v. Watkins, 103 A.2d 688, 691 (Pa. 1954). In reducing his property interest in his home through the lien increase, Mr. Kaymark has incurred a compensable loss of property. BOA's restrictive interpretation of loss defense conflicts with Marra v. Stocker, 615 A.2d 326, 329 (Pa. 1992), which held that, "Prejudice… is evident in the interest, court and sheriff costs, attorney's fees, etc., which attached upon the commencement of the mortgage foreclosure action." That is, the mere imposition of fees attendant to the foreclosure commencement, without regard to cash payment, establishes a detrimental change in property interest. Marra's "attached" is equivalent to the lien here.

---

[4] BOA relies extensively on Hunt v. U.S. Tobacco Co., 538 F.3d 217 (3d Cir. 2008); a case no longer relevant. See Belmont v. MB Inv. Partners, Inc., 708 F.3d 470, 478-500 (3d Cir. 2013) (not acknowledging Hunt). The Court in New-Howard v. JPMorgan Chase Bank, N.A., 2013 WL 6096232, **6-7 (E.D.Pa. Nov. 20, 2013) acknowledged Belmont's UTPCPL focus on the wrongdoing conduct and not the state of mind of the victim. If a state's highest court has not decided a state issue, a federal court must predict how that court would resolve the issue. See Holmes v. Kimco Realty Corp., 598 F.3d 115, 118 (3d Cir. 2010). Now that the Pennsylvania appellate courts holdings are on the same page, this Court's prediction should be much easier. See Bennett, 152.

Respectfully Submitted,
MICHAEL P. MALAKOFF, P.C.
*/s/Michael P. Malakoff*
Michael P. Malakoff, Esquire
Pennsylvania Attorney I.D. #11048
Suite 200, The Frick Building
Pittsburgh, PA 15219
Telephone: (412) 281-4217
Facsimile: (412) 281-3262
malakoff@mpmalakoff.com
*Attorneys for Named Plaintiff Dale A. Kaymark, individually and on behalf of other similarly situated former and current homeowners in Pennsylvania*

## CERTIFICATE OF SERVICE

I hereby certify that on the **4th** day of **March**, **2014**, a true and correct copy of the foregoing **Reply in Support of Objections (Opposition to BOA's Response)** was served upon the following parties of interest via the Court's Electronic Filing System:

Thomas L. Allen, Esquire
Nellie E. Hestin, Esquire
REED SMITH, LLP
225 Fifth Avenue
Pittsburgh, PA 15222

Jonathan J. Bart, Esquire
WILENTZ GOLDMAN & SPITZER, PA
Two Penn Center, Suite 910
Philadelphia, PA 19102

*/s/Michael P. Malakoff*
Michael P. Malakoff, Esquire

# UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DALE A. KAYMARK, individually and on behalf of other similarly situated current and former homeowners in Pennsylvania,

Plaintiffs,

v.

BANK OF AMERICA, N.A. and UDREN LAW OFFICES, P.C.

Defendants.

Civil Action #2:13-cv-00419-CRE

## REPLY IN SUPPORT OF OBJECTIONS (OPPOSITION TO UDREN'S RESPONSE)

Udren claims that the FDCPA has made it a victim of its own misdeeds, complaining that an industry has popped up pursuing debt collector's violations of the FDCPA. See Document 50, pp. 1-2. However, where Congress enacted the FDCPA to regulate such illicit debt collecting conduct, Udren cannot call wolf when that conduct is brought to the Court's attention. See Simon v. FIA Card Services, N.A., 732 F.3d 259, 265 fn. 3 (3d Cir. 2013) ("Congress did not otherwise limit the FDCPA's applicability to lawyers using litigation to collect debts.").

In this light, Udren attacks Mr. Kaymark's Objections and alleges that: (1) the fees demanded in the Foreclosure Complaint were consistent with the Mortgage, Fannie Mae's Regulations, and Act 6; (2) superseded FTC commentary states that the filing of a complaint by an attorney cannot form the basis of an FDCPA action; (3) Mr. Kaymark's representation by counsel during the debt collection process; (4) the Foreclosure Complaint's misrepresentations were not material; and, (5) a waiver of Mr. Kaymark's FDCPA rights constituted his failure to participate in the FDCPA's debt validation procedure. Mr. Kaymark disagrees. Udren's other arguments were not deemed relevant by the Magistrate's R&R and, therefore, were not

addressed.  Mr. Kaymark's responses to those non-issues are fully addressed in his Response to the Motions to Dismiss.  <u>See</u> Documents 31 and 32-1.

### A. Fee Demands in the Foreclosure Complaint were not Consistent with Either the Mortgage, Fannie Mae Regulations or State Law

Udren has attempted to again focus on the irrelevant question of the reasonableness of its fixed fees.   The issue is whether a fixed amount for attorneys' fees can include anticipated/estimated fees even though the contract, Fannie Mae Regulations and Act 6 only provides for reasonable, incurred charges for services performed.  Udren repeatedly argues, as a matter of law, the Fannie Mae Guidelines allows the foreclosing plaintiff to demand a fixed fee before the services are preformed and before they are incurred.  Document 50, p. 12.  What Udren does not address is that even if Fannie Mae Regulations can be read in such a way, Act 6, §406(3) only allows performed and incurred fees to be charged and the regulations in the foreclosure process do not preempt Act 6, §406(2).

Consistent with Fannie Mae Regulations and Act 6, Mr. Kaymark's Mortgage contract also requires fees to be incurred for work performed **before** they are charged to the homeowner's account.  The Mortgage explicitly states: "14.  Loan Charges.  Lender may charge Borrower fees **for services performed** in connection with Borrower's default for… attorneys' fees … 22. Acceleration Remedies.  Lender shall be entitled to collect all expenses **incurred in pursuing the remedies** provided in this Section, including but not limited to, attorneys' fees," (Emphasis added).   Thus, all fees charged up to $1,650 come with the caveat that those fees must for services performed and must be incurred.  This is what the Mortgage required and the Mortgage is not preempted.  <u>See</u> <u>American Airlines, Inc., v. Wolens</u>, 513 U.S. 219 (1995).  Although Udren repeatedly represents that its charge was reasonable, conspicuously absent is whether the

right process for determining such fees was followed. A foreclosure plaintiff cannot simply fix its own fees at the outset of a litigation.

### B. Statements Made in Foreclosure Complaints are Regulated by the FDCPA

Udren again highlights the FTC commentary arguing that the filing of a complaint by an attorney is not a communication in connection with the collection of a debt. See Document 50, pp. 8-9. This defense is based largely on outdated case law that a pleading like a foreclosure complaint cannot form the basis of an FDCPA action as a matter of law. Subsequently, the United States Supreme Court held otherwise. In Heintz v. Jenkins, 514 U.S. 219 (1995), the Supreme Court considered whether the FDCPA applies to a lawyer who regularly collect consumer debts through litigation. Therefore, what the FTC said in 1989 is superseded by Heintz (1995), as well as the amendment of the FDCPA by Congress in 1996. By taking formal pleadings out of the ambit of §1692g, Congress evidenced its intent to regulate formal pleadings under the FDCPA. See Donohue v. Quick Collect, Inc., 592 F.3d 1027, 1031-1032 (9th Cir. 2010) ("While the communication at issue in *Heintz* was a letter, not a legal pleading as here, the logic of *Heintz* controls our analysis… the Complaint furthered… an effort to collect the debt through litigation."); Glazer v. Chase Home Fin. LLC, 704 F.3d 453, 461 (6th Cir. 2013) ("mortgage foreclosure is debt collection under the FDCPA.); Sayyed v. Wolpoff & Abramson, 485 F.3d 226, 231 (4th Cir. 2007) (same). In the Third Circuit, there can be no doubt. See Simon, 732 F.3d at 265 fn. 3 (quoted supra). Also see Piper v. Portnoff Law Assocs., Ltd., 396 F.3d 227, 232 (3d Cir. 2005).[1]

---

[1] Udren misconstrues Gabriele v. Am. Home Mortgage Servicing, Inc., 503 F. App'x 89 (2nd Cir. 2012). Gabriele clearly affirms that a legal pleading can violate the FDCPA. The problem with the cause of action in Gabriele was not that it was premised on a formal pleading, but that the misrepresentations it attacked were too narrow and technical to materially mislead anyone. Id.

### C. *Representation by Counsel During the Foreclosure Litigation Has No Bearing on the FDCPA Claims Asserted*

Udren also makes much of the fact that Mr. Kaymark was represented in the foreclosure proceedings. As the recent case of Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 559 U.S. 573, (2010) makes clear that legal representation does not provide the debt collector an FDCPA defense. There is no safe harbor in the FDCPA for debt collectors to abuse consumers represented by counsel during litigation. See Simon, 732 F.3d at 271 .

### D. *Misrepresentations in the Foreclosure Complaint were Material*

The relevant Pennsylvania Rules of Civil Procedure require that the amount charged for attorneys' fees and awarded by the court resulting in a sum certain. Pa.R.Civ.P. Rule 3021. At the end of the foreclosure proceedings, after a factual showing establishing the charges that were actually incurred the court itself determines the reasonable fee award.[2] It would negate this Rule if the debt collector in the body of the foreclosure complaint can make this determination itself. Because representing that that fee was due and owing in the body of the foreclosure complaint, as opposed to the request for relief, is a violation of the FDCPA that calls for, at a minimum, statutory damages, no materiality inquiry is needed. See F.T.C. v. Check Investors, Inc., 502 F.3d 159, 166 (3d Cir.2007) (providing statutory damages for violations).

### E. *The Debt Validation Procedure Does Not Apply to Kaymark's Claims*

Udren also argues at length that Mr. Kaymark waived his right to bring any FDCPA action by failing to participate in the FDCPA's debt validation procedure. The purpose of the debt validation notice is to allow consumers that dispute a debt to prevent further debt collection activity until the debt is verified. Here, Mr. Kaymark was provided notice of a thirty day period

---

[2] Udren's reliance on Owens v. Howe, 1:04-cv-152, 2004 WL 6070565 (N.D. Ind. Nov. 8, 2004) is similarly misplaced. Document 50, pp. 15-16. It is not only that the fees had to be determined reasonable, but actually performed before the demand. Here, where the proceeding is sixty days shy of even being born, it is highly doubtful that the fees were incurred for services performed.

to contest the validity of the debt on the same day he was provided notice that he had only twenty days to respond to the Foreclosure Complaint. The purpose of debt validation process cannot be accomplished if suit has already been commenced.[3]

That is why Congress in 1996 removed legal pleadings out of the ambit of FDCPA §1692g by amendment. That is, though a formal pleading in a civil action is still a communication for the purposes of the FDCPA, it has been exempted from the class of initial communications that require a debt validation notice. Since a foreclosure complaint is no longer covered by §1692g, Mr. Kaymark's supposed non-response is a non-issue since whatever Udren's notice was, it was not a §1692g debt validation notice. No such thing exists where the initial communication constitutes a debt validation notice and a formal legal pleading. In any event, the failure to respond to a debt validation notice is not an FDCPA defense.

Respectfully Submitted,

MICHAEL P. MALAKOFF, P.C.
/s/Michael P. Malakoff
Michael P. Malakoff, Esquire
Pennsylvania Attorney I.D. #11048
Jonathan R. Burns, Esquire
Pennsylvania Attorney I.D. # 315206
Suite 200, the Frick Building
Pittsburgh, PA 15219
Telephone: (412) 281-4217
Facsimile: (412) 281-3262
malakoff@mpmalakoff.com

*Attorneys for Named Plaintiff Dale A. Kaymark, individually and on behalf of other similarly situated former and current homeowners in Pennsylvania*

---

[3] Mr. Kaymark is not bringing an action under the FDCPA, §1692g challenging the legality of the form of the debt validation notice used by Udren. Therefore, Udren's reliance on the proceedings in McLaughlin is misplaced. See McLaughlin v. Phelan Hallinan & Schmeig, No. 2:10-cv-01406-GLL, Document 94 p. 3 (W.D.Pa. Sept. 10, 2012) ("McLaughlin did not state a viable claim **under section 1692g** because he did not allege that he challenged the validity of the debt prior to filing suit,"(Emphasis added). McLaughlin's holding is limited to claims under the FDCPA, §1692g. Since there is no such §1692g claim here, McLaughlin has no bearing.

**CERTIFICATE OF SERVICE**

I hereby certify that on the **4th** day of **March**, **2014**, a true and correct copy of the foregoing **Reply in Support of Objections (Opposition to Udren's Response)** was served upon the following parties of interest via the Court's Electronic Filing System:

Thomas L. Allen, Esquire
Nellie E. Hestin, Esquire
REED SMITH, LLP
225 Fifth Avenue
Pittsburgh, PA 15222

Jonathan J. Bart, Esquire
WILENTZ GOLDMAN & SPITZER, PA
Two Penn Center, Suite 910
Philadelphia, PA 19102

*/s/Michael P. Malakoff*
Michael P. Malakoff, Esquire