## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

---

### NO. 14-1816

---

**DALE A. KAYMARK, individually and on behalf of other similarly situated current and former homeowners in Pennsylvania, Plaintiffs-Appellants,**

v.

**BANK OF AMERICA, N.A. and UDREN LAW OFFICES, P.C., Defendants-Appellees.**

---

Appeal from the Order of the United States District Court for Western District of Pennsylvania Dated March 31, 2014 (No. 12:13-cv-00419-CB-CRE)

---

### BRIEF OF APPELLEE UDREN LAW OFFICES, P.C.

---

Wilentz Goldman & Spitzer, P.A.
Daniel S. Bernheim 3d, Esquire
Jonathan J. Bart, Esquire
Identification No. 32736, 49114
Two Penn Center
Suite 910
Philadelphia, PA  19102
215-636-4466
dbernheim@wilentz.com
jbart@wilentz.com

# TABLE OF CONTENTS

**PAGE**

**COUNTER-STATEMENT OF JURISDICTION** ...............................................1

**COUNTER-STATEMENT OF ISSUES PRESENTED** .......................................2

**COUNTER-STATEMENT OF THE CASE** ......................................................3

**STATEMENT OF FACTS**...............................................................................7

**SUMMARY OF ARGUMENT** .................................................................... 12

**ARGUMENT** ............................................................................................. 14

**I.    THE FORECLOSURE LAWSUIT MAY NOT CONSTITUTE
       THE BASIS FOR AN FDCPA CLAIM UNDER THE FACTS
       ALLEGED IN THE COMPLAINT** ........................................... 14

    **A.    The Trend Of The Caselaw Is Not To Permit A Foreclosure
            Complaint To Be The Basis For An FDCPA Claim** ..................... 14

**II.   EVEN IF ALLEGATIONS IN A FORECLOSURE COMPLAINT
       ARE A SUFFICIENT BASIS TO STATE AN FDCPA CLAIM, IT
       IS NOT STATED IN THIS CASE:** ............................................ 20

**III.  TO THE EXTENT ANY ERROR WAS MADE, IT WAS NOT
       MATERIAL** ........................................................................... 23

**IV.   KAYMARK'S UPTCPL CLAIMS FAILED TO STATE ANY
       VIABLE CAUSE OF ACTION** .................................................. 29

**CONCLUSION** .......................................................................................... 33

# TABLE OF AUTHORITIES

**PAGE**

## Cases

*Albritton v. Sessoms & Rogers, P.A.,*
　2010 U.S. Dist. LEXIS 78371 (E.D.N.C. 2010) ................................................ 26

*Beeler-Lopez v. Dodeka,*
　711 F.Supp. 2d 679 (E.D.Tex. 2010) .................................................. 18

*Beyers v. Richmond,*
　937 A.2d 1082 (2007) ..................................................................... 29

*Cave v. Saxon Mortgage Servicing,*
　2012 U.S. Dist. LEXIS 176381 (E.D.Pa. 2012) ................................... 31

*Cocco v. Bank of Amer. Home Loans,*
　2012 U.S. Dist. LEXIS 173663 (N.D.N.Y. 2012) ................................. 17

*Delaware Trust Company v. Amrit Lal,*
　1997 U.S. Dist. LEXIS 6212 (E.D.Pa. 1997) ....................................... 18

*Demsi Uniform and Linen Supply, Inc. v. Gracie Baseball LP,*
　2011 Pa. Dist. & Cnty. Dec. LEXIS 594 (CCP. Lackawanna Co. 2011) ..............9

*Derisme v. Hunt Leibert Jacobson, P.C.,*
　2013 U.S. Dist. LEXIS 38967 (D.Conn. 2013) ................................... 17

*Donohue v. Quick Collect, Inc.,*
　592 F.3d 1027  (9th Cir. 2010) ......................................................... 24

*Fields v. Wilbur Law Firm, P.C.,*
　383 F.2d 562 (7th Cir. 2004) ........................................................... 19

*First Fed. Savings & Loan Association v. Porter,*
　408 Pa. 236, 183 A.2d 318 (1962) .................................................... 18

*Gabriele v. American Home Mortgage Servicing, Inc.,*
　503 Fed. Appx. 89 (2d Cir. 2012) ....................................... 15, 16, 17

## TABLE OF AUTHORITIES (cont'd)

**PAGE**

*Glover v. Udren*,
  92 A.3d 24 (Pa. Super. 2013), *rearg. den.*, 2014 Pa. Super. LEXIS 1193 (Pa.
  Super. 2014)........................................................................................................... 30

*Gonzalez v. Erskine*,
  2008 U.S. Dist. LEXIS 109928 (S.D.Fla. 2008)................................................. 14

*Grossman v. Barke*,
  868 A.2d 561 (Pa. Super. 2005) ......................................................................... 25

*Hahn v. Triumph Partnerships LLC*,
  557 F.3d 755 (7th Cir. 2009) .............................................................................. 24

*Jensen v. Pressler & Pressler, LLP*,
  2014 U.S. Dist. LEXIS 59676 (D.N.J. 2014)...................................................... 24

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, LPA*,
  559 U.S. 573 (2010) (Kennedy, J., dissenting) .................................................. 23

*Kimmel v. Phelan Hallinan & Schmieg*,
  847 F.Supp. 2d 753 (E.D. Pa. 2012).................................................................... 31

*Kromelbein v. Envision Payment Solutions*,
  2013 U.S. Dist. LEXIS 107762 (M.D. Pa. 2013)................................................ 24

*Lembach v. Bierman*,
  528 Fed. Appx. 297 (4th Cir. 2013) .................................................................... 23

*Lorandeau v. Capital Collection Services*,
  2011 U.S. Dist. LEXIS 101994 (E.D.Pa. 2011).................................................. 24

*Maleski by Taylor v. DP Realty Trust*,
  653 A.2d 54 (Pa. Cmwlth. 1994)..........................................................................9

*Miller v. Javitch, Block & Rathbone*,
  561 F.3d 588 (6th Cir. 2009) ............................................................................... 24

*Okyere v. Palisades Collection LLC*,
  2013 U.S. Dist. LEXIS 40840 (S.D.N.Y.2013) .................................................. 24

iii

## TABLE OF AUTHORITIES (cont'd)

**PAGE**

*Oppong v. First Union Mortg. Co.,*
  326 Fed. Appx. 663 (3d Cir. 2009) ................................................... 12

*Owens v. Howe,*
  2004 U.S. Dist. LEXIS 22728 (N.D.Ind. 2004) ........................................... 26, 28

*Pellachia v. One West Bank, FSB,*
  2013 U.S. Dist. LEXIS (D.Conn. 2013) ............................................. 17

*Penn v. Cumberland,*
  883 F.Supp. 2d 581 (E.D.Va. 2012) ..................................................... 26

*Pierce v. Calvary SPVI, LLC,*
  2013 U.S. Dist. LEXIS 178572 (W.D.Pa. 2013) (Bissoon, J.) ..................... 15, 19

*Rogozinski v. NCO Financial Systems, Inc.,*
  2012 U.S. Dist. LEXIS 153894 (E.D.Pa. 2012) ................................................. 24

*Salvati v. Deutsche Bank,*
  2013 U.S. Dist. LEXIS 46991 (W.D.Pa. 2013), *aff'd in part and rev'd in part on other grounds*, 2014 U.S. App. LEXIS 14412 (3d Cir. July 29, 2014) .............. 32

*Schwartz v. Rockey,*
  593 Pa. 536, 932 A.2d 885 (2007) ....................................................... 31

*Shami v. National Enterprise Systems,*
  2012 U.S. Dist. LEXIS 182349 (D.Nev. 2012) ................................................. 26

*Shetiwy v. Midland Credit Mgt.,*
  *2014 U.S. Dist. LEXIS 41665 (SDNY 2014)* ....................................... 17

*Som v. Daniels Law Offices, P.C.,*
  573 F.Supp. 2d 349 (D.Mass. 2008) ..................................................... 19

*Spencer v. Henderson-Webb, Inc.,*
  81 F.Supp. 2d 582 (D.Md. 1999) ....................................................... 20

*St. John v. CACH LLC,*
  2014 U.S. Dist. LEXIS 95875 (N.D. Ill. 2014) ................................................. 18

iv

## TABLE OF AUTHORITIES (cont'd)

**PAGE**

*Stolicker v. Muller, Muller, Richmond, Harms, Myers & Sgroli, P.C.*,
2005 U.S. Dist. LEXIS 32404 (W.D. Mich. 2005) .............................................. 19

*Walsh v. Law Offices of Howard Lee Schiff, P.C.*,
2012 U.S. Dist. LEXIS 136408 (D.Conn.2012) .................................................... 24

*Walter v. Palisades Collection, LLC*,
480 F.Supp. 2d 797 (E.D. Pa. 2007) ..................................................................... 31

*Walton v. Pereira*,
2014 U.S. Dist. LEXIS 15191 (W.D.Pa. 2014) ................................................... 19

*Weinberg v. Sun Co. Inc.*,
565 Pa. 612, 777 A.2d 442 (2001) ........................................................................ 30

*Williams v. Empire Funding Corp.*,
227 F.R.D. 362 (E.D.Pa. 2005) ............................................................................. 30

*Yocca v. Pittsburgh Steelers Sports, Inc.*,
578 Pa. 479, 854 A.2d 425 (2004) ........................................................................ 31

**Statutes**

15 U.S.C. §1692 ....................................................................................................... 24

15 U.S.C. §1692e ............................................................................................... 23, 25

15 U.S.C. §1692e(10) .......................................................................................... 2, 21

15 U.S.C. §1692e(2)(a) ........................................................................................... 20

15 U.S.C. §1692e(2)(A) ............................................................................................. 2

15 U.S.C. §1692e(5) ............................................................................................ 2, 20

15 U.S.C. §1692f(1) ........................................................................... 2, 21, 26, 28

15 U.S.C. §1692g ..................................................................................................... 13

15 U.S.C. §1692g(d) ................................................................................................ 12

# TABLE OF AUTHORITIES (cont'd)

<div align="right"><b><u>PAGE</u></b></div>

28 U.S.C. §1331 ...........................................................................................1

28 U.S.C. §1441 ...........................................................................................1

**Rules**

Pa.R.Civ.P 1147 ...........................................................................................9

Pa.R.Civ.P. 1019(i) ......................................................................................8

Pa.R.Civ.P. 1141-1150................................................................................ 18

Rule 12(b)(6)................................................................................................7

**Other Authorities**

53 F.R. 50097.............................................................................................. 14

53 F.R. 50100.............................................................................................. 14

53 F.R. 50101.............................................................................................. 14

53 F.R. 50108.............................................................................................. 14

## <u>COUNTER-STATEMENT OF JURISDICTION</u>

Appellee Udren Law Offices, P.C. ("Udren") agrees that the case was removed from the Court of Common Pleas of Allegheny County.  However, the removal under the Class Action Fairness Act of 2005, 28 U.S.C. §1441 was accomplished only by Co-Appellee Bank of America, N.A.  Udren did not remove on that ground.  However, Udren did indeed consent to removal under 28 U.S.C. §1331 as this action is a federal claim and subject to removal on that ground.

## COUNTER-STATEMENT OF ISSUES PRESENTED

1.      Did Kaymark state a claim under the Federal Fair Debt Collection Practices Act against Udren pursuant to 15 U.S.C. §§1692e(2)(A), 1692e(5), 1692e(10) or 1692f(1) for alleging in a state court foreclosure complaint that the amount sought upon judgment included $1,650.00 in attorneys fees, $325.00 for a title report and $75.00 for a property inspection in addition to principal, accumulated interest, accumulated late charges and escrow deficient for a grand total of $230,839.92?

ANSWERED IN THE NEGATIVE BELOW.

2.      Did Kaymark state a claim against Udren, an attorney, under the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §201-1 et seq. by alleging in a complaint that Kaymark owed the sums set forth in the complaint notwithstanding the fact that rather than relying on those allegations, Kaymark obtain counsel to defend such claims and never alleged any payment or other ascertainable loss?

ANSWERED IN THE NEGATIVE BELOW.

2

## COUNTER-STATEMENT OF THE CASE

This action was commenced with the filing of a Complaint (the "Original Complaint") in the Court of Common Pleas of Allegheny County on February 11, 2013, which Complaint was removed to the United States District Court for the Western District of Pennsylvania at No. 2:13-cv-00419-CB-CRE on March 31, 2013 (Docket Entry No. 1; R.10a).  In that Original Complaint, Kaymark based his claims against Udren solely on the assumption that Udren had violated Section 406 of the Pennsylvania Loan Interest Protection Act ("LIPA" or "Act 6"), 41 P.S. §406 by filing a Complaint in Mortgage Foreclosure in which attorneys fees were sought that allegedly predated the filing of the Complaint in violation of Act 6.  All of Kaymark's other claims arose from this alleged Act 6 violation, whether characterized as claims under the Fair Debt Collection Practices Act (Count II) or under the Unfair Trade Practices Act ("UTPCPL") in Count III.

On April 10, 2013, Udren moved to dismiss the Original Complaint on the grounds that it was defective on its face because the face amount of Kaymark's mortgage exceeded the maximum base line figure to be governed under Act 6. Docket Entry Nos. 13-14.  R.11a.  Accordingly, Act 6 was completely inapplicable in this case and the motion to dismiss requested a dismissal with prejudice for that and other reasons.  Rather than contest the motion, Kaymark drafted an Amended Complaint based on an entirely new theory.  Acknowledging that Act 6 did not

3

apply to his mortgage, Kaymark dropped any reference to Act 6 for the underpinnings of his FDCPA or UTPCPL claims against Udren but the facts remained in the same.   Kaymark now alleged the basis for his new theory in paragraph 35 of the Amended Complaint:

> 35.  The loan contract governing the debt at issue prohibit the debt collector from **collecting** either **unreasonable** flat fees (which, by their nature, are not fees for specific services), or fees for services never incurred.   The Foreclosure Complaint at issue never establishes any loan contract that authorizes fixed fee demands and never avers that such fees were actually incurred or paid for. Consequently, it is averred that BPA never incurred charges for the alleged professional services claimed, and that such charges did not reflect reasonable charges for services actually performed.

Amended Complaint, ¶35.  R.28a.  (Emphasis added).

Kaymark proceeded to allege that the attorneys fees sought in the Foreclosure Complaint were an "inflated amount" which violated Sections 1692e(2)(A), 1692e(10) and 1692c(5) (Amended Complaint, ¶36; R. 120a) and 1692f(1) because they were not "expressly authorized" by the loan documents (Amended Complaint, ¶37; R. 120a).  Kaymark thus sought a ruling that flat fee demands in pleadings involving foreclosure of a FNMA mortgage - - <u>fees which are administratively mandated by Fannie Mae</u> - - are <u>per se</u> unreasonable under the FDCPA and that the mere <u>allegation</u> of entitlement upon judgment to a flat fee (amounting to less than 1% of principal) and costs by an attorney in a court

4

pleading is a violation of Sections 1692e and 1692f of the FDCPA.  A new motion

to dismiss was filed by Udren (R.78a), which was referred to Magistrate Judge

Eddy.  Judge Eddy issued a Report and Recommendation on January 21, 2014

(R.114a) recommending the dismissal of the case with prejudice.  The Report and

Recommendation offered the following conclusions as to the claims asserted by

Udren:

> (1) Count 3, for violation of the Pennsylvania Unfair
> Trade Practices and Consumer Protection Law, 73 P.S.
> §201-2(4) failed to state a claim for relief against Udren
> because Kaymark did not suffer an ascertainable loss in
> reliance upon Udren's conduct and because as an
> attorney filing pleadings and prosecuting a lawsuit,
> Udren was exempt from such a claim (R&R at pp. 12-16;
> R. 125a – 129a), and (2) Count 2 for alleged violations of
> the FDCPA failed to state a claim for relief against Udren
> because the allegations of the Foreclosure Complaint
> were not false, misleading or deceptive and to the extent
> there were any inaccuracies, they were not material, and
> because the Lender was permitted to recover reasonable
> fees and there is no argument that the fees sought in the
> Foreclosure Complaint were not reasonable.  R&R at pp.
> 21-26 (R. 134a – 139a).

Report and Recommendation was adopted by the Court (Bissoon, J.) by

Memorandum Order dated March 31, 2014.  R.3a.  In that Opinion, Judge Bissoon

noted that with respect to the FDCPA claim, the inclusion of unincurred (but

authorized) fees" in a Foreclosure Complaint does not violate the FDCPA where

listing such fees in a Foreclosure Complaint is not prohibited by the loan

documents, or state or federal law, where there is no dispute that the fees are

5

reasonable nor is it disputed the fees were ultimately incurred.  Opinion at pp. 3 -5

(R. 6a-8a).  This appeal has followed.

## STATEMENT OF FACTS

Because the motion appealed from arose under Rule 12(b)(6), the allegations of the Amended Complaint, the documents appended thereto and documents referenced in the Amended Complaint, as well as documents of which this Court may take judicial notice, must be accepted as truthful.  All of those documents have been included in the Appendix  With respect to the claims against Udren, the inquiry begins with the mortgage itself which is appended as Exhibit "C" to Kaymark's Amended Complaint.  R. 60a.  That mortgage is in the original principal amount of $245,600.00 and is designated as a "Pennsylvania – Single Family – Fannie Mae/Freddie Mac Uniform Instrument."  R. 61a.  Paragraph 14 of the Mortgage provides as follows:

> Lender may charge Borrower fees for services performed in connection with Borrower's default and for the purpose of protecting Lender's interest in the Property and rights under this Security Agreement, including but not limited to attorneys fees, property inspection and valuation fees.

R. 72a.

The Note applicable to the Mortgage (R. 81a), provided, in relevant part, as follows:

> [t]he Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law.  Those expenses include, for example, reasonable attorney fees.

Note, ¶ 6(E). R. 82a.

7

Fannie Mae publishes a chart of allowable attorneys fees which, at the time of the commencement of foreclosure proceedings on the Kaymark Mortgage, was a flat fee of $1,650.00 in Pennsylvania for a completed foreclosure.  R. 85a-86a.  On September 13, 2012, Udren on behalf of BOA filed a Foreclosure Complaint in the Court of Common Pleas of Allegheny County.  *See*, Amended Complaint, ¶15 (R.20a) and Exhibit "B" thereto.  R. 41a.

As alleged in the Amended Complaint, there were no communications between the parties other than service of formal pleadings.  The Foreclosure Complaint filed by Udren on behalf of BOA sought an *in rem* judgment of $230,839.92, consisting of the unpaid principal balance, accumulated interest relating to Kaymark's non-payment of his mortgage for one year, late charges, escrow deficiency and attorneys fees of $1,650.00, title report fees of $325.00 and property inspection fees of $75.00.  *See*, Complaint, ¶16 (R.47a) and Exhibit "B" thereto.  R.47a.  While paragraph 17 of the Amended Complaint also alleged that the Foreclosure Complaint somehow violated the Pennsylvania Rules of Civil Procedure because of "the rule that any documents relied upon must be attached." Pa.R.Civ.P. 1019(i) (Complaint, ¶17), that was a conclusion of law which is not entitled to deference.  It also was wrong.  Rule 1019(i) of the Pennsylvania Rules of Civil Procedure provides that where a **claim** is based on a writing, the writing must be attached to the Complaint.  The "writing" upon which the Complaint is

8

based is the mortgage, which **is** attached.  A party does not have to plead or attach all his evidence to satisfy this rule.  *See, Maleski by Taylor v. DP Realty Trust*, 653 A.2d 54, 65 (Pa. Cmwlth. 1994) ("Pennsylvania Rules do not require the pleading of evidence"); *Demsi Uniform and Linen Supply, Inc. v. Gracie Baseball LP*, 2011 Pa. Dist. & Cnty. Dec. LEXIS 594 (CCP. Lackawanna Co. 2011) (at *19) (same).[1]  Similarly, Kaymark alleged that the "loan contracts" prohibit flat rate attorneys fee demands in mortgage foreclosure complaints or demands for fees for services never incurred.  Amended Complaint, ¶35.  R.27a.  This too is a conclusion of law since the Note and Mortgage both authorize the charging of reasonable fees and costs in enforcing the Note.  There is no law identified by Kaymark that flat fees, especially those administratively mandated by Fannie Mae, are unreasonable nor that the fee for a completed foreclosure cannot be sought in a pleading which contemplates collection of such a fee only upon judgment.

Nonetheless, Kaymark alleged in the Amended Complaint that the mere allegation of *in rem* damages including title report fees, attorneys fees, and property inspection fees are "unreasonable" or prohibited by "the loan contracts

---

[1] Pennsylvania Rule of Civil Procedure 1147 sets forth the requirements for the contents of a complaint in mortgage foreclosure.  The Rule provides that the plaintiff must identify the parties to and date of the mortgage, a statement of the place of record of the mortgage and assignments; a description of the land subject to the mortgage.  There is no requirement that <u>any</u> document be attached to the complaint.

9

governing the debt at issue" (Amended Complaint, ¶35) and thus "inflated" Kaymark's account balance in the Foreclosure Complaint.  Amended Complaint, ¶36.  Those are the <u>only</u> factual allegations as against Udren.[2]  Thus, the sole legal basis for a case alleged to affect a "numerous" class exceeding 5000 homeowners was that Udren <u>alleged</u> in a formal foreclosure complaint that upon judgment, its client would be owed attorneys fees, property inspection fees and title insurance fees for which it sought damages.  The foreclosure complaint commenced with a Notice that Kaymark had been sued in Court, that he had twenty (20) days to file an Answer with his defenses, and that he should take the Complaint to a lawyer. R. 42c-44a.  Kaymark did just that –he employed counsel, filed an Answer and has contested the foreclosure action for over two years.  R. 111a.  The foreclosure action remains pending in the Court of Common Pleas of Allegheny County.

---

[2] In his Brief, Kaymark essentially seeks to amend his Complaint post-dismissal and argues that the allegation of damages sought in the Foreclosure Complaint (R.47a) was misleading and/or unauthorized because the Complaint alleged that the debt figures were calculated as of July 12, 2012, prior to the filing of the Foreclosure Complaint.  Appellant's Brief at pp. 15-16.  This theory was not alleged in the Amended Complaint, but was properly addressed by the Court, which found that the Foreclosure Complaint was not inaccurate (indeed, by the time Kaymark received the Complaint, counsel had been retained by BOA and fees were incurred) nor was any inaccuracy material.  Even assuming that a demand for damages in a formal pleading contains an incorrect date for the calculation of attorneys fees, what difference could the date calculation allegation possibly make.  Kaymark did exactly what he would have done had the attorneys fees calculation been separated from the debt - - he engaged counsel and contested the Complaint. What could he have done differently?  The answer, clearly, is nothing.  For a full discussion of this issues, *see*, pp. 22 - 28, *infra*.

Kaymark has not alleged that he relied upon or paid any part of the sums demanded in the Foreclosure Complaint.

## SUMMARY OF ARGUMENT

Kaymark seeks to federalize the filing of formal pleadings in a state court foreclosure suit by making them the predicate for parallel FDCPA practice. While the allegations asserted by Kaymark have no factual merit, in that Udren was permitted to seek a flat fee specifically authorized by Fannie Mae and its loan documents, the massive expansion of FDCPA jurisprudence to _any_ disputed allegation in a state court pleading would threaten the way our Bar has practiced law for hundreds of years. A plaintiff must be able to allege damages in a Complaint without the spectre of an FDCPA proceeding should the defendant disagree with the allegations, however minor (and in this case, the alleged error is extraordinarily minor). A formal court complaint is not the kind of communication for which the FDCPA has been designed to protect consumers. Rather, the adversary system of jurisprudence and Court control of improper allegations is completely different from the fact pattern of debt collecting practices as contemplated by the FDCPA. Indeed, formal pleadings in a civil action are specifically exempted from the definition of an initial communication under the FDCPA. 15 U.S.C. §1692g(d); _Oppong v. First Union Mortg. Co.,_ 326 Fed. Appx. 663, 666 (3d Cir. 2009).[3] Consumers such as Kaymark are protected by the ability

---

[3] While the definition of "initial communication" under the FDCPA pertains to the triggering of the duty to send a Validation Notice to the consumer pursuant to 15

to defend the litigation and dispute the allegations. The intention of a complaint is to put a party on notice of the need to obtain counsel and interpose a defense. That is exactly what occurred here. Nothing in the Complaint confused or misled Kaymark, and accordingly, there was no material error or omission – an essential element of a Section 1692e FDCPA claim. Nothing in the Complaint alleged entitlement to a fee to which Udren's client was not entitled to receive upon judgment - - an essential element of a Section 1692f FDCPA claim. Finally, the contention that a mortgagee is not entitled to seek in a Foreclosure Complaint the flat fee allowable under Fannie Mae regulations for a completed foreclosure is frivolous. Kaymark contends that an attorney filing a foreclosure complaint must allege entitlement to only that *pro rata* percentage of the fee which has been earned to the date of the filing. Of course, this would require an attorney to seek to amend its complaint each time work was performed until judgment finally was entered. In short, Kaymark essentially seeks to make it impossible for an attorney to allege damages in a form of attorneys fees since the percentage of the fee earned to date is constantly changing. Not only does this lead to absurd result, it is directly contrary of the intent to the FDCPA, which is to enable the debtor to ascertain the true debt which will be owing upon judgment.

---

USC §1692g, query how a Complaint which indeed is the "first communication" between the parties could be exempt from this requirement unless the intent was that complaints not be subject to the FDCPA?

13

## ARGUMENT

I.    **THE FORECLOSURE LAWSUIT MAY NOT CONSTITUTE THE BASIS FOR AN FDCPA CLAIM UNDER THE FACTS ALLEGED IN THE COMPLAINT**

   A.    **The Trend Of The Caselaw Is Not To Permit A Foreclosure Complaint To Be The Basis For An FDCPA Claim**

As a general matter, a lawsuit, standing alone, is not grounds for a federal action under the FDCPA. *Gonzalez v. Erskine,* 2008 U.S. Dist. LEXIS 109928 (S.D.Fla. 2008) (at *3 and cases cited therein). It is proper for a collection law firm to file a Complaint and the Defendant has the right to challenge the claim or seek details about the claim through formal pleadings or discovery. *Id.*[4] While admittedly, there have been decisions basing liability on allegations of damages in legal complaints, they appear all to have arisen in the revolving credit context (where most complaints result in default judgments[5]) and involve claims that a law

_____

[4] Indeed, there is a substantial body of law, emanating from the Federal Trade Commission 1989 commentary stating that "a debt collector's institution of a formal legal action against a consumer (including the filing of a Complaint or service of legal papers by an attorney in connection with a lawsuit to collect a debt) . . . is not a communication in connection with the collection of any debt", (53 F.R. 50097, 50100, 50101, 50108) and holding that mere allegations in the Complaint simply are not communications which can support an FDCPA claim. *See, McKnight v. Benitez*, 176 F.Supp. 2d 1301, 1305-06 (M.D. Fla. 2001) (and cases cited therein).

[5] *See, e.g., Daniels v. Davis Davis Attorneys, P.C.,* 22 D&C 5th 380, 393(table) (CCP. Allegheny Co. 2011) (Wettick, J.), in which the Hon. R. Stanton Wettick, Jr. observed that 80% of credit card collection cases result in default judgments, yet

firm unilaterally demanded fees on a percentage basis where the credit agreement permitted only "reasonable fees" or had no provisions concerning the amount of fees at all. *See*, discussion at p. 16-18, *infra*. Significantly, no FDCPA cases have been cited by Kaymark arising out of a Complaint in Mortgage Foreclosure. Indeed, the case specifically cited for the proposition that "representing in the body of a foreclosure complaint that a fee has been incurred when, in fact, it has not is a violation of the FDCPA," (Kaymark's Brief at p. 12), *Pierce v. Calvary SPVI, LLC,* 2013 U.S. Dist. LEXIS 178572 (W.D.Pa. 2013) (Bissoon, J.), was not a foreclosure case, but rather, like all the other cases cited by Kaymark, involved a credit card debt in which the creditor unilaterally charged a 22.65% interest rate when it was alleged that it had no contractual right to do so. The same is true of every other case cited by Kaymark - - they all involve revolving credit cases where an attorney unilaterally sought a percentage fee.

The Second Circuit took on directly the issue of whether FDCPA claims may be based upon alleged errors in foreclosure complaints in *Gabriele v. American Home Mortgage Servicing, Inc.,* 503 Fed. Appx. 89 (2d Cir. 2012). In

---

the defendant law firm regularly entered judgment including a 20% percentage attorneys fee where the credit card agreement permitted only "reasonable fees." This fact scenario is starkly different from a foreclosure lawsuit where borrowers have the right to cure their default right up to the moment a sheriff's sale is completed and where here, the complaint seeks the regulatory permitted fee of $1,650 - - less than 1% of the outstanding principal sum of the debt. Moreover, the case has been defended vigorously .

*Gabriele*, the Plaintiff brought an FDCPA claim based upon the lender's attorney's pleadings and procedures in a state court foreclosure action. While noting that statements made and actions taken in furtherance of a legal action are not in and of themselves exempt from liability under the FDCPA, the Court held that alleged misstatements in a Foreclosure Complaint and premature attempts to obtain a default judgment did not constitute a violation of the FDCPA. The Court observed that the purpose of a Complaint is to put a defendant on notice of the commencement of a lawsuit and substance of the claim such that the court filings that do not "mislead a putative – debtor as to the nature and legal status of the underlying debt, or . . . impede a consumer's ability to respond to or dispute collection," do not violate the FDCPA. *Id*. at 94-95.

The Court in *Gabriele* noted, in particular, as is the case with Kaymark's claim, the foreclosure Defendant (Plaintiff in the FDCPA suit) was represented by counsel and thus, filings, even if false, would not have misled the least sophisticated consumer, **"particularly represented by counsel."** As the Second Circuit stated, "within the context of an adversary proceeding in state court between two represented parties, these allegations simply do not state plausible claims under the FDCPA." In so ruling, the Second Circuit went further and noted that the purpose of the FDCPA was not to provide an alternate remedy when the debt collector has asserted its client's claim in a foreclosure proceeding, in which

the debtor has all of the protections afforded to it under that statutory scheme.  As

declared by the Second Circuit:

> As we have recognized in past decisions, the protective
> purposes of the FDCPA typically are not implicated
> "when a debtor is instead protected by the court system
> and its officers." *Simmons v. Roundup Funding LLC,*
> 622 F.3d 93, 96 (2d Cir. 2010) (holding that inflated
> proof of claim in bankruptcy court cannot form basis of
> FDCPA action).  In Connecticut, the state foreclosure
> process is highly regulated and court controlled. *Derisme
> v. Hunt Leibert Jacobson, P.C.,* 2012 U.S. Dist. LEXIS
> 101922 (D.Conn. July 23, 2012).  When that is the case,
> the state court's authority to discipline will usually be
> sufficient to protect putative debtors like Gabriele from
> legitimately abusive or harassing litigation conduct.

*Id.* at *14 fn.1.  *Accord:  Shetiwy v. Midland Credit Mgt., 2014 U.S. Dist. LEXIS

41665 (SDNY 2014) (at *22); Pellachia v. One West Bank, FSB*, 2013 U.S. Dist.

LEXIS (D.Conn. 2013) (at *14) ("Because litigants in state court already enjoy

myriad procedural and substantive protections from fraudulent and deceptive

practices, resort to the FDCPA is unnecessary."); *Derisme v. Hunt Leibert

Jacobson, P.C.*, 2013 U.S. Dist. LEXIS 38967 (D.Conn. 2013) (at *5) (citing

*Gabriele* for the proposition that "the filing of a state foreclosure action did not

constitute the kind of abusive debt collection practices proscribed by the

FDCPA."); *Cocco v. Bank of Amer. Home Loans*, 2012 U.S. Dist. LEXIS 173663

(N.D.N.Y. 2012) ("Plaintiffs' interest in the property can be (or should have been)

protected through any foreclosure proceeding").  This line of reasoning is not

17

confined to the Second Circuit. *See, St. John v. CACH LLC*, 2014 U.S. Dist. LEXIS 95875 (N.D. Ill. 2014) (at *7) (FDCPA claim cannot be based on violation of Illinois State pleading requirements).

As is the case in Connecticut, Pennsylvania's foreclosure practice is tightly controlled and subject to specific rules under the Pennsylvania Rules of Civil Procedure. *See*, Pa.R.C.P. 1141-1150; *Delaware Trust Company v. Amrit Lal*, 1997 U.S. Dist. LEXIS 6212 (E.D.Pa. 1997) (at *10) ("In Pennsylvania, mortgage foreclosure is governed by the Rules of Civil Procedure, the requirements of which must be strictly followed."); *First Fed. Savings & Loan Association v. Porter,* 408 Pa. 236, 183 A.2d 318, 324 (1962) (same). Kaymark was and is represented in the underlying and pending foreclosure action by competent counsel and has all of the protections of the Pennsylvania Rules of Civil Procedure and the Court's control over attorney conduct attempt of a party to a lawsuit to seek is not "unfair or unconscionable"; rather, it is designed to allow a court to resolve a contested issue. *Beeler-Lopez v. Dodeka*, 711 F.Supp. 2d 679, 682 (E.D.Tex. 2010). As noted above, the <u>only</u> cases cited by Kaymark in support of his position involve percentage fees unilaterally sought by attorneys in usually defaulted credit card litigation where the credit card agreement merely calls for reasonable fees and where the lawyer-defendant went further than merely pleading entitlement to a sum but filed dispositive motions in which judgment was entered. *See, Pierce v.*

18

*Calvary SPV, I, LLC*, *supra*, 2013 U.S. Dist. LEXIS 178572 (credit card case in which consumer alleged that card agreement did not allow for collection of attorneys fees or percentage fees the consumer was charged - - judgment entered in collection case against consumer); *Walton v. Pereira*, 2014 U.S. Dist. LEXIS 15191 (W.D.Pa. 2014) (credit card case where plaintiff creditor unilaterally sought liquidated fees of approximately $1,400 on a $6,100 debt - - case went to trial and creditor sought over 20% in attorney fee); *Stolicker v. Muller, Muller, Richmond, Harms, Myers & Sgroli, P.C.*, 2005 U.S. Dist. LEXIS 32404 (W.D. Mich. 2005) (filing of complaint and affidavit in default judgment motion on case seeking 25% percentage fee payment of credit card debt[6]).  The other cases cited by Kaymark do not even arise out of legal pleadings.  *See*, *Som v. Daniels Law Offices, P.C.,* 573 F.Supp. 2d 349 (D.Mass. 2008) (dunning letter case - - percentage fee may not be authorized where credit card agreement authorized actual costs only).  *Pettway v. Harmon Law Offices, P.C.,* 2005 U.S. Dist. LEXIS 21341 (D. Mass. 2005) (involved reinstatement and payoff letters - - not litigation pleadings - - in which attorneys fees were improperly lumped with other charges); *Fields v. Wilbur Law Firm, P.C.,* 383 F.2d 562 (7th Cir. 2004) (dunning letters lumping debt and

---

[6] Kaymark's representation that this case involved a "law firm that specialized in foreclosure actions" (Kaymark's Brief at p. 16) is false.  Neither this case, nor any other cited by Kaymark, involved the small fee authorized by Fannie Mae in foreclosure cases.

attorneys fees violates FDCPA - - specifically authorized debt collector to specify a fee without obtaining court determination as to the reasonableness); *Spencer v. Henderson-Webb, Inc.,* 81 F.Supp. 2d 582 (D.Md. 1999) (dunning letter charging for attorney fees when no attorney worked on cases violates FDCPA).

Not a <u>single</u> case is cited by Kaymark addressing the issue here, whether the a foreclosure complaint which seeks recovery at the conclusion of the case of the <u>actual</u> fees permitted by Fannie Mae violates the FDCPA.  Udren did <u>not</u> unilaterally determine the fees charged, as in the two cases cited by Kaymark. Rather, they were set by Fannie Mae pursuant to regulation.  There is no law supporting Kaymark's argument that a foreclosure complaint may not seek the <u>actual</u> fees dictated by Fannie Mae regulations.  Accordingly, no claim lies under the FDCPA based solely on the allegations of the intent to collect actual legal fees in a Complaint in a foreclosure action.

## II.    EVEN IF ALLEGATIONS IN A FORECLOSURE COMPLAINT ARE A SUFFICIENT BASIS TO STATE AN FDCPA CLAIM, IT IS NOT STATED IN THIS CASE:

Another way of analyzing whether FDCPA claims are stated by allegations in a Foreclosure Complaint seeking recovery of attorneys fees and costs specifically permitted in the loan documents may be ascertained by a review of the necessary elements of the FDCPA claims alleged in the Amended Complaint. Those claims include alleged violations of 15 U.S.C. §1692e(2)(a), e(5)) and

e(10)), as well as 15 U.S.C. §1692f(1).  *See*, Amended Complaint, ¶¶36-37.  As Kaymark acknowledges in paragraph 37 of the Amended Complaint, a claim under Section f(1) requires credible allegations that the defendant had no legal right, either under Pennsylvania law or the loan documents to seek recovery of legal fees, inspection costs and title costs.  As noted above, the Mortgage expressly provides for the recovery of actual attorneys fees, inspection fees and costs.  Mortgage, ¶14.  There can be no dispute of that.  Additionally, Kaymark simply invents the motion that the use of flat attorneys fees set by regulation somehow is unreasonable.  There is no law whatsoever to support this contention and the cases cited by plaintiff all involve demands for percentage fees, not "flat fees".  Moreover, this proposition is absurd on its face.  There is no conceivable circumstance under which an attorney charging an hourly fee would or could charge less than $1,650.00 were it charging by the hour for a highly contested foreclosure action and a percentage fee, as seen in the cases cited by Kaymark amount to 20% or more, which would equate to over $40,000 in this case.  Moreover, the $1,650.00 is a fee set by government regulation - - not Udren.[7]  The "slight of hand" utilized

---

[7] The mortgage is a Fannie Mae-Freddie Mac Mortgage.  *See*, Exhibit "B" to Udren's Motion to Dismiss (R. 84a) showing the current Fannie Mae allowable attorney and trustee foreclosure fee schedule, which indicates that for Pennsylvania, the judicial foreclosure fee is a flat $1,650.00.  It is frankly outrageous for Kaymark to contend that a statutorily administered flat fee is either illegal or violative of the contract which permits recovery of reasonable attorneys

by Kaymark in its arguments is to equate a foreclosure case which is vigorously defended and involves merely an allegation in the Complaint that the foreclosing lender seeks recovery an *in rem* judgment against its collateral representing principal, interest, attorneys fees determined by regulation and costs with credit card collection cases involving **a subsequent act,** i.e., the entry of default or summary judgments, in which the plaintiff unilaterally seeks a percentage attorneys fees grossly disproportionate to the amount of work performed.  In order to accomplish this extreme extension of the rules stated in those cases, Kaymark contends that it is permissible for an attorney to seek its fees in a "prayer for relief" but not in the body of the complaint.  Not surprisingly, Kaymark does not cite to any cases specifically addressing that distinction.  The underlying foreclosure suit against Kaymark did not contain a separate "prayer for relief" - - rather, the prayer was included in the "body" of the complaint.  There is no distinction.  Any complaint is submitted to a court of competent jurisdiction and must seek recovery of damages.  To suggest that damages sought in a numbered paragraph in a complaint is somehow different than damages sought in an *ad damnum* clause is the kind of gamesmanship that our appellate courts and indeed some members of our Supreme Court justices have decried as supporting a "cottage industry" in

---

fees.  Kaymark's theory would necessarily be that all Fannie Mae mortgage foreclosures involve the imposition of unreasonable fees.  This is on its face frivolous.

prosecuting FDCPA claims. *See, Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, LPA*, 559 U.S. 573, 617 (2010) (Kennedy, J., dissenting)[8]; Simply stated, there is no law whatsoever suggesting that the mere allegation in a Foreclosure Complaint of entitlement to a fee specifically authorized by Fannie Mae and the mortgage documents somehow morphs into an FDCPA violation because it has been included in the body of a complaint rather than a prayer for relief. The location of the averment would not impact the least sophisticated consumer. As noted above, all of the cases involving pleadings cited by Kaymark involve credit card debts where an attorney actually entered or tried to enter judgments in which the attorney unilaterally set a percentage fee. That is not the case here and those cases are no precedent whatsoever for reversing the District Court's well reasoned decision.

## III. TO THE EXTENT ANY ERROR WAS MADE, IT WAS NOT MATERIAL

Though no Third Circuit Court of Appeals decision has yet ruled on this specific issue, at least four other circuits have found that in order to be actionable under Section 1692e, an allegedly false or misleading statement must have been material. *See, Lembach v. Bierman,* 528 Fed. Appx. 297 (4th Cir. 2013); *Hahn v.*

---

[8] Unlike *Jerman*, this case involves no allegation of a mistake of law, but rather, simply involves facts and the factual conclusion of whether a consumer could be misled.

*Triumph Partnerships LLC,* 557 F.3d 755, 757-58 (7th Cir. 2009); *Miller v. Javitch, Block & Rathbone,* 561 F.3d 588, 596 (6th Cir. 2009); and *Donohue v. Quick Collect, Inc.,* 592 F.3d 1027, 1033-34 (9th Cir. 2010). This analysis has been adopted by several district courts in Pennsylvania. *See, Jensen v. Pressler & Pressler, LLP,* 2014 U.S. Dist. LEXIS 59676 (D.N.J. 2014) (at *13-14); *Kromelbein v. Envision Payment Solutions,* 2013 U.S. Dist. LEXIS 107762 (M.D. Pa. 2013) (at *24-25) ("Although the Third Circuit has not yet addressed the matter, several courts in this circuit have read a materiality requirement into §1692 [citing cases]"); *Rogozinski v. NCO Financial Systems, Inc.,* 2012 U.S. Dist. LEXIS 153894 (E.D.Pa. 2012); *Lorandeau v. Capital Collection Services*, 2011 U.S. Dist. LEXIS 101994 (E.D.Pa. 2011) (at *8). Under this doctrine, an immaterial statement which is false in some technical sense will not mislead the unsophisticated consumer and does not violate the FDCPA. *Rogozinski, supra* (at *16). Under this body of law, statements are materially false and misleading only if they influence a consumer's decision or ability to pay or challenge a debt. *Walsh v. Law Offices of Howard Lee Schiff, P.C.,* 2012 U.S. Dist. LEXIS 136408 (D.Conn.2012) (at *12-13); *Also see, Okyere v. Palisades Collection LLC*, 2013 U.S. Dist. LEXIS 40840 (S.D.N.Y.2013) (at *27). The purpose of pleadings under Pennsylvania State law is to place the defendants on notice of the claims upon

which they will have to defend and a summary of the material facts which support those claims. *Grossman v. Barke*, 868 A.2d 561, 568 (Pa. Super. 2005).

Here, there is nothing alleged in the Amended Complaint to plausibly suggest that the date of the calculation for attorneys fees and costs in a foreclosure complaint[9] had any material effect on Kaymark's ability to defend the case, challenge the debt allegedly owed nor did it misrepresent the process used to seek collection of the debt. Kaymark would have done nothing differently had the complaint excluded attorneys fees from the date of calculation reference or stated that the fees were due upon judgment. Kaymark, and the least sophisticated consumer would take the complaint to a lawyer and then answer the complaint. In fact, Kaymark did participate in the state court process and has contested the foreclosure from the start. Accordingly, the date of the calculation of attorneys fees and costs in the foreclosure complaint was in no way "material" to any action taken or not taken by Kaymark in the underlying foreclosure case.

Under the long line of cases that has now developed under Section 1692e, the alleged pleading "defect" (i.e., alleging that damages were calculated before the attorneys fees and costs were incurred) therefore is not material and no claim under Section 1692e is therefore viable. *See, e.g., Albritton v. Sessoms & Rogers, P.A.,*

---

[9] Again, this theory was not alleged in the Amended Complaint.

2010 U.S. Dist. LEXIS 78371 (E.D.N.C. 2010) (decrying "[t]he absurd results that could come from plaintiff's interpretation, wherein every *de minimis* error would render a debt collector liable under the FDCPA and every debt collection defense would turn into a hunt for the slightest misspelling, mislabeling or minute technical falsity."); *Penn v. Cumberland*, 883 F.Supp. 2d 581, 592 (E.D.Va. 2012) ("[e]ven if this argument were somehow construed as false, it could not be considered materially false.  It would not mislead or deceive a "competent attorney" or "least sophisticated consumer" with respect to the debt, but instead would result, at most, in requiring them to provide the dates in question.");

The only other section of the FDCPA identified in the Complaint, 1692f(1) requires that in order to state a claim, a plaintiff must allege that the specific fees demanded in the Complaint were not permitted under the loan documents or applicable law, assuming that the demand for such fees in a Complaint may state a claim.  15 U.S.C. §1692f(1); *Shami v. National Enterprise Systems*, 2012 U.S. Dist. LEXIS 182349 (D.Nev. 2012) (at *7).  Thus, in *Owens v. Howe,* 2004 U.S. Dist. LEXIS 22728 (N.D.Ind. 2004) the defendant attorney filed a complaint on behalf of his client seeking $10,601.71 in principal, pre-judgment interest of $2,643.51 in interest and $2,125.00 in attorneys fees.  The plaintiff filed an FDCPA claim under Subsection 1692f(1), arguing that the defendant failed to attach to his state court complaint any agreement specifically entitling him to an

award of fees and that the amount of fees sought was not specifically authorized by

the agreement.  The Court rejected both claims, stating as follows:

> The problem with this first argument is that it attempts to engraft Indiana procedural rules, *see* Ind. T.R. 9.2(A), onto the requirements of the FDCPA.  As we followed the argument, Owens contends that Indiana procedure requires that the financing agreement be attached to the state court complaint, and when it was omitted, the Act was violated because there was no "agreement" expressly authorizing fees, Section 1692f(1), and without an agreement, any claim for them violated Section 1692e(2)(A).  This argument overlooks, however, that reasonable attorneys fees were in fact "expressly authorized by the [financing] agreement," Section 1692f(1) and were therefore a legitimate element of LCC Receivables' claim.  Since reasonable attorneys fees were "expressly authorized", Howe did not falsely represent their legal status
>
> . . .
>
> Owens further argues, however, that even if Howe had attached the agreement to the state-court complaint, he still violated the act by claiming entitlement to $2,125.00 in attorneys fees, a specific amount not "expressly authorized by the agreement", Section 1692f(1) as opposed to an amount to be determined by the state court, and that this misrepresented the "amount" or "legal status" of the debt in violation of 15 U.S.C. §1692e(2)(A).
>
> In *Fields* [v. *Wilber Law Firm, P.C]*., 383 F.3d 562, 565 (7th Cir. 2004), the Seventh Circuit rejected the notion that debt collectors must seek court approval for a specific amount of attorneys fees before including them in an account balance.  While the Court there was speaking in the context of a collection letter, the same reasoning applies to Howe's state court complaint.  **In short, debt collectors are not obligated to go to court to fix the amount of fees every time they seek to**

27

> **enforce a contractual provision for them.  (Id.). Similarly here, to follow Owen's reasoning, a debt collector could never recite a specific amount for fees in a complaint until he obtained both a judgment and specific court approval of them.  As in *Fields*, the Act does not require such an extraordinary result.  All that is required to comply with Section 1692e(2)(A) and 1692f(1) is that there be some basic itemization of the various charges that comprise the total amount of debt, *id*. at 566, and since that is what Howe did here, his complaint did not violate the Act on that basis.  If, however, what Owens is arguing is that since the financing agreement did not specify attorneys fees in the exact amount being sought, and because Howe is now seeking that specific amount, he violated the Act, that too, is unpersuasive.  All that is required is that the debt collector state his fees in his communication to the debtor; the act does not require that the underlying agreement anticipate and specify a specific fee. *Id*. at \*44-45.**

*Owens*, is directly on point in this case.  The underlying note and mortgage both permit BOA to charge reasonable attorneys fees, costs and expenses of enforcing the note.  *See*, Exhibit "C" to Amended Complaint (Mortgage t ¶14) (R. 72a).  The admitted default of Kaymark under his mortgage required BOA to engage counsel to obtain or  perform property and title inspection/searches and draft a complaint, which caused BOA to incur liability for attorneys fees.  The attorneys fees charged not only are *per se* reasonable, as they are set by Fannie Mae and not Udren, but as discussed above, the mere request for fees in a complaint does not state a claim under Section 1692f(1).  Indeed, Kaymark implicitly acknowledges that point, as he alleged in paragraph 35 of the Complaint

(R. 28a) that the "loan contract prohibited Udren (or BOA) from collecting . . . unreasonable flat fees or fees for services never incurred."  Kaymark does not allege that any fees were collected (thus distinguishing this from the cases he cites in which credit card balances actually were collected with unilaterally set percentage fees) nor that the fees are unreasonable as set by Fannie Mae in an amount approximately 0.6% of the loan balance.  Accordingly, all of the substantive FDCPA claims are without merit, even were the court to conclude that a mere pleading in a foreclosure case is a sufficient basis upon which a plaintiff may ground an FDCPA complaint.

## IV.    KAYMARK'S UPTCPL CLAIMS FAILED TO STATE ANY VIABLE CAUSE OF ACTION

Count III of the Amended Complaint alleged claims arising under the UTPCPL against both Udren and BOA.  The claims against Udren are based solely upon the filing of pleadings in a state court lawsuit.  Under the Pennsylvania Supreme Court's ruling in *Beyers v. Richmond,* 937 A.2d 1082, 1091 (2007), disciplinary enforcement pursuant to the Pennsylvania Rules of Professional Conduct constitutes the exclusive remedy for alleged attorney misconduct relating to the practice of law.  As stated by Chief Justice Cappy in his concurrence in *Beyers*, "[a]s a matter of statutory construction, the Unfair Trade Practices Act and Consumer Protection Law ("UTPCPL"), 73 P.S. §§201-1 *et seq.,* does not apply to attorneys practicing law." *Id*. at 1093.  Judge Wettick, in his Opinion dismissing a

29

similar claim brought by Kaymark's counsel in this case in *Glover v. Udren,* CCP.,

CCP., Allegheny Co., No: GD-11-018015 (R. 87a) held that in addition to the

*Beyers* reasoning, a claim under the UTPCPL against an attorney based upon legal

pleadings also is barred because Pennsylvania's Fair Credit Extension Uniformity

Act, 73 P.S. §2270.1 *et seq.*, a violation of which is a *per se* violation of the

UTPCPL, specifically exempts the acts of an attorney in filing of pleadings or

prosecution of a lawsuit from its coverage.  Accordingly, such activity must be

intended to be excluded from the UPTCPL as well.  *See*, Exhibit "C" at pp. 7-11

(R. 95a-99a).[10]

Even to the extent that an UTPCPL action could be predicated on a mere

legal pleading, which it cannot, it is still incumbent under the private action

provisions of the UTPCPL that a plaintiff establish reliance, causation and

damages.  *Weinberg v. Sun Co. Inc.,* 565 Pa. 612, 615-18, 777 A.2d 442, 446

(2001) ("Nothing in the legislative history suggests that the legislature ever

intended statutory language directed against consumer fraud to do away with the

traditional common law elements of reliance and causation."); *Williams v. Empire*

*Funding Corp.*, 227 F.R.D. 362, 369-70 (E.D.Pa. 2005) ("Even if an entity violated

a Consumer Protection Law such as the Pennsylvania Debt Collection Regulations,

---

[10] *Glover* was affirmed by the Pennsylvania Court.  *See, Glover v. Udren,* 92 A.3d
24 (Pa. Super. 2013), *rearg. den.,* 2014 Pa. Super. LEXIS 1193 (Pa. Super. 2014).

such a violation does not automatically entitle an individual to bring a private action under the UTPCPL.").   To bring a private cause of action under the UTPCPL, a Plaintiff must show that he justifiably relied on the Defendant's wrongful conduct or representation and that he suffered harm as a result. *Yocca v. Pittsburgh Steelers Sports, Inc.,* 578 Pa. 479, 854 A.2d 425, 438 (2004).   Thus, irrespective of the underlying basis for the UTPCPL claim, a private plaintiff must allege that he suffered an ascertainable loss <u>as a result</u> of the defendant's prohibited action; this causation element requiring justifiable reliance by the Plaintiff. *Schwartz v. Rockey*, 593 Pa. 536, 557, 932 A.2d 885, 898 (2007).   *Also see, Cave v. Saxon Mortgage Servicing*, 2012 U.S. Dist. LEXIS 176381 (E.D.Pa. 2012) (at *25) (mortgage servicer not liable under the UTPCPL because Complaint "fails to adequately allege justifiable reliance and ascertainable loss as required to state a claim under the UTPCPL.").

The Amended Complaint does not even <u>attempt</u> to allege these essential elements of a private UTPCPL claim.   Kaymark never relied on the allegations in the Foreclosure Complaint.   To the contrary, he hired counsel and contested the foreclosure. *See, Kimmel v. Phelan Hallinan & Schmieg,* 847 F.Supp. 2d 753,  771 (E.D.Pa. 2012).   *Walter v. Palisades Collection, LLC,* 480 F.Supp. 2d 797, 806 (E.D.Pa. 2007) (both holding that there is no satisfaction of the "reliance" element when a party engages counsel to challenge the assertion that a debt is owed).

31

Kaymark does not allege that he paid a dime to Udren - - indeed the foreclosure case still is pending.  Absent payment, the "damage" element of a UTPCPL claim is not satisfied.  *See Salvati v. Deutsche Bank,* 2013 U.S. Dist. LEXIS 46991 (W.D.Pa. 2013), *aff'd in part and rev'd in part on other grounds*, 2014 U.S. App. LEXIS 14412 (3d Cir. July 29, 2014) (at *33-34) (no satisfaction of "ascertainable loss" claim against law firm in virtually identical case where plaintiff made no payment to law firm).  Merely sending out a pleading containing an allegation of damages does not create any form of "lien" - - a theory recently rejected by this Court in its review of the *Salvati* decision.  *See, Salvati, supra,* 2014 U.S. App. LEXIS 14412 (at *14).  The claims under the UTPCPL are therefore without merit and should be dismissed.

## CONCLUSION

For all the reasons set forth herein, it is respectfully submitted that the Order

of the District Court dated March 31, 2014 be affirmed.

<div style="margin-left:40%">

Respectfully submitted,

WILENTZ GOLDMAN & SPITZER, P.A.

</div>

Dated:  August 4, 2014

<div style="margin-left:40%">

*/s/ Jonathan J. Bart*

Daniel S. Bernheim 3d, Esquire
Jonathan J. Bart, Esquire
Attorneys for Appellee

</div>

## CERTIFICATES

The undersigned hereby certifies that:

1.    I am admitted to the bar of the Third Circuit.

2.    This Brief complies with the type/volume limitation contained in Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure.  The brief contains  7,523 words, excluding the Cover Page, Table of Contents, Table of Authorities, and the Certifications.

3.    I caused a true and correct copy of the foregoing Brief of Appellee to be served in accordance with the United States Court of Appeals for the Third Circuit's electronic filing system upon the following:

Michael P. Malakoff, Esquire
Jonathan R. Burns, Esquire
Suite 200, the Frick Building
Pittsburgh, PA  15219

Andrew J. Soven, Esquire
Reed Smith, LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA  19103

Thomas L. Allen, Esquire
Nellie Hestin, Esquire
Reed Smith, LLP
225 Fifth Avenue
Pittsburgh, PA  15222

4.    The Brief of Appellant was filed with the Court via the Court's ECF system, and by hand delivery in accordance with Rule 25(a)(2)(B) of the Federal Rules of Appellate Procedure.

5.     The printed Brief of Appellant filed with the Court is identical to the text in the electronic version of the Brief filed with the Court.

6.     The electronic version of the Brief of Appellant filed with the Court was virus checked using Microsoft System Center Endpoint Protection on August 4, 2014, and was found to have no viruses.

WILENTZ GOLDMAN & SPITZER, P.A.

Dated:  August 4, 2014                    BY: /s/ Jonathan J. Bart
                                                          Jonathan J. Bart, Esquire