# UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

## No. 14-1816

Dale A. Kaymark, individually and on behalf of other similarly situated current and
former homeowners in Pennsylvania,
Appellant

v.

Bank of America, N.A. and Udren Law Offices, P.C.,
Appellees

---

Appeal from an Order of the Western District of Pennsylvania
entered on March 31, 2014
at Civil Action Number 2:13-cv-00419-CB-CRE

---

## BRIEF OF APPELLEE

---

Thomas L. Allen (PA I.D. 33243)
tallen@reedsmith.com
Nellie E. Hestin (PA I.D. 311788)
nhestin@reedsmith.com
**REED SMITH LLP**
225 Fifth Avenue
Pittsburgh, PA  15222
Telephone:  (412) 288.3066
Facsimile:  (412) 288.3063

Andrew J. Soven (PA I.D. 76766)
asoven@reedsmith.com
Marc A. Goldich (PA I.D. 93055)
mgoldich@reedsmith.com
**REED SMITH LLP**
2500 One Liberty Place
1650 Market Street
Philadelphia, PA  19103
Telephone:  (215) 851.8288
Facsimile:  (215) 851.1420

*Attorneys for Appellee*
*Bank of America, N.A.*

**United States Court of Appeals for the Third Circuit**

Corporate Disclosure Statement and
<u>Statement of Financial Interest</u>

Pursuant to Rule 26.1 and Third Circuit LAR 26.1, Bank of America, N.A. makes the following disclosure:

Bank of America, N.A. is a wholly owned subsidiary of BANA Holding Corp., which is a wholly owned subsidiary of BAC North America Holding Company, which is a wholly owned subsidiary of NB Holdings Corp., which is a wholly owned subsidiary of Bank of America Corporation.

No publicly held company owns 10% or more of the stock of Bank of America Corporation.

Bank of America Corporation is a publicly held corporation which is not a party to the proceeding before this Court but which has a financial interest in the outcome of the proceeding.

# TABLE OF CONTENTS

**Page**

JURISDICTIONAL STATEMENT ...........................................................................1

STATEMENT OF ISSUES PRESENTED FOR REVIEW .....................................1

STATEMENT OF RELATED CASES AND PROCEEDINGS .............................2

STATEMENT OF THE CASE................................................................................3

STATEMENT OF THE FACTS .............................................................................4

I.      Plaintiff Obtains A Loan Secured By A Mortgage And Then Defaults On The Loan, And Bank Of America Initiates Foreclosure Proceedings. ......................................................................................4

II.     Plaintiff Files A Class Action Complaint Against Bank Of America. ............5

III.    Bank Of America Files A Motion To Dismiss The Amended Complaint, Which The District Court Grants....................................7

SUMMARY OF ARGUMENT ...............................................................................8

ARGUMENT .........................................................................................................10

I.      Standard of Review..........................................................................10

II.     The District Court Correctly Dismissed Plaintiff's UTPCPL Claim Because, As The District Court Recognized, Plaintiff Did Not Allege An Ascertainable Loss Of Money Or Property, And Additionally, Plaintiff Did Not Allege Reliance. ...............................................11

      A.     The District Court Correctly Concluded That Plaintiff's Amended Complaint Does Not Allege Ascertainable Loss, As The UTPCPL Requires.......................................................13

      B.     Plaintiff's UTPCPL Claim Fails For The Additional Reason That Plaintiff Did Not Allege Reliance. ...............................20

III.    For The Same Reasons That The District Court Correctly Dismissed Plaintiff's UTPCPL Claim, It Also Correctly Dismissed His Derivative Claim Under The FCEUA. .............................................24

A.    Plaintiff's Derivative FCEUA Claim Fails For Lack Of Reliance And Ascertainable Loss. .....................................................24

B.    Plaintiff's FCEUA Claim Also Fails To The Extent Plaintiff Attempts To Base It On A Purported Act 91 Violation. ....................26

IV.    The District Court Correctly Dismissed Plaintiff's Breach of Contract Claim Because, As The District Court Recognized, Plaintiff Did Not Allege Damages, And Additionally, Plaintiff Did Not Allege An Underlying Breach. ...........................................................................29

A.    The District Court Correctly Concluded That Plaintiff's Breach Of Contract Claim Fails Because He Has Not Alleged Any Damages. ...........................................................................30

B.    Plaintiff's Breach Of Contract Claim Was Properly Dismissed For The Additional Reason That The Complaint Did Not Adequately Plead That Bank of America Breached Plaintiff's Mortgage. ...........................................................................32

1.    The Fees Charged Are Expressly Authorized By Plaintiff's Mortgage And Legally Proper Under Pennsylvania Law .........33

2.    There Is No Prohibition On Including "Unincurred" Fees In A Foreclosure Complaint And, In Any Event, Plaintiff's Allegations Make Clear That The Fees Here Were "Incurred." ..............................................................35

CONCLUSION ..................................................................38

# TABLE OF AUTHORITIES

**Page**

### Cases

*Ash v. Continental Insurance Co.*,
  932 A.2d 877 (Pa. 2007)................................................................................ 18, 19

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................... 10, 11

*ATACS Corp. v. Trans World Commc'ns, Inc.*,
  155 F.3d 659 (3d Cir. 1998) ...................................................................29

*Ayers v. Philadelphia Housing Authority*,
  908 F.2d 1184 (3d Cir. 1990) ........................................................ 27, 28

*Ballentine v. U.S.*,
  486 F.3d 806 (3d Cir. 2007) ..................................................................10

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ..................................................................... 10, 11

*Belmont v. MB Inv. Partners, Inc.*,
  708 F.3d 470 (3d Cir. 2013) .................................................... 21, 22, 23

*Benner v. Bank of Am., N.A.*,
  917 F. Supp. 2d 338 (E.D. Pa. 2013)............................................ passim

*Brightwell v. Lehman*,
  637 F.3d 187 (3d Cir. 2011) ...................................................................20

*Burns v. Pa. Dep't of Corr.*,
  544 F.3d 279 (3d Cir. 2008) ...................................................................16

*Connecticut v. Doehr*,
  501 U.S. 1 (1991) ...................................................................................32

*Cox v. Sears Roebuck & Co.*,
  647 A.2d 454 (N.J. 1994) .......................................................................16

*Crystian v. Mellon Bank, N.A.,*
  210 B.R. 956 (Bankr. W.D. Pa. 1997)....................................................35

*D'Agostino v. Maldonado*,
    78 A.3d 527 (N.J. 2013) ...................................................................16

*DeArmitt v. New York Life Insurance Co.*,
    73 A.3d 578 (Pa. Super. 2013) ..........................................................18

*Delaware v. New York*,
    507 U.S. 490 (1993) .........................................................................16

*Dique v. N.J. State Police*,
    603 F.3d 181 (3d Cir. 2010) ...............................................................7

*Earnest v. Hoskins*,
    100 Pa. 551 (1882) ...........................................................................16

*Edwards v. Wyatt*,
    330 F. App'x 342 (3d Cir. 2009) .......................................................16

*Fish v. Pa. Housing Fin. Agency*,
    931 A.2d 764 (Pa. Commw. 2007)......................................................28

*Fowler v. UPMC Shadyside*,
    578 F.3d 203 (3d Cir. 2009) ..............................................................11

*Grimes v. Enterprise Leasing Co. of Philadelphia*,
    66 A.3d 330 (Pa. Super. 2013),
    *appeal granted in part*, 84 A.3d 1058 (Pa. 2014) ..............................17

*Hunt v. U.S. Tobacco Co.*,
    538 F.3d 217 (3d Cir. 2008) ..................................................... passim

*In re Close*,
    No. 93-17145, 2003 WL 22697825 (Bankr. E.D. Pa. Oct. 29, 2003)..................25

*In re Estate of Landis*,
    85 A.3d 506 (Pa. Super. 2014) ..........................................................32

*In re Howell*,
    226 B.R. 279 (Bankr. M.D. Fla. 1998)................................................34

*Keller v. GC Servs., L.P.*,
    No. 13-1654, 2013 WL 3213338 (E.D. Pa. June 26, 2013) ................23

*Kelter v. Am. Bankers' Fin. Co.*,
    160 A. 127 (Pa. 1932)......................................................................16

*Kemezis v. Matthews*,
    394 F. App'x 956 (3d Cir. 2010) ..........................................................21

*Kimmel v. Phelan Hallinan & Schmieg*,
    847 F. Supp. 2d 753 (E.D. Pa. 2012)....................................................23

*Laborers' Int'l Union of N. Am. v. Foster Wheeler Energy Corp.*,
    26 F. 3d 375 (3d Cir. 1994) ..................................................................7

*Lentini v. Fidelity Nat'l Title Ins. Co. of N.Y.*,
    479 F. Supp. 2d 292 (D. Conn. 2007) ..................................................16

*Lorenzetti v. Jolles*,
    120 F. Supp. 2d 181 (D. Conn. 2000) ..................................................16

*Lynch v. Capital One Bank (USA), N.A.*,
    No. 12-992, 2013 WL 2915734 (E.D. Pa. June 14, 2013) ....................23

*Marra v. Stocker*,
    615 A.2d 326 (Pa. 1992).......................................................................16

*Mfrs. & Traders Trust Co. v. Luzerne County Tax Claim Bureau*,
    56 A.3d 36 (Pa. Commw. 2012) ...........................................................16

*Omicron Systems, Inc. v. Weiner*,
    860 A.2d 554 (Pa. Super. 2004) ...........................................................29

*Pugh v. Holmes*,
    405 A.2d 897 (Pa. Super. 1979) ...........................................................16

*Rubenstein v. Dovenmuehle Mortg., Inc.*,
    No. 09-721, 2009 WL 3467769 (E.D. Pa. Oct. 28, 2009)....................15

*Salvati v. Deutsche Bank Nat'l Trust Co., N.A.*,
    No. 12-cv-0971, 2013 WL 1314777 (W.D. Pa. Mar. 28, 2013), *aff'd in
    part*, --- F. App'x ---, 2014 WL 3719186 (3d Cir. July 29, 2014) .................. 2, 19

*Saunders v. Resnick*,
    16 A.2d 676 (Pa. Super. 1940) .............................................................16

*Schwartz v. OneWest Bank, FSB*,
    No. 13-0113, 2013 WL 6037078 (E.D. Pa. Nov. 13, 2013) .................23

*Schwartz v. Rockey*,
    932 A.2d 885 (Pa. 2007)................................................................ 20, 21

*Schwarzwaelder v. Fox*,
   895 A.2d 614 (Pa. Super. 2006) .................................................................. 14, 15

*Smith v. Caggiano*,
   421 N.E.2d 473 (Mass. App. 1981 ......................................................................16

*Smith v. State Farm Mut. Auto. Ins. Co.*,
   506 F. App'x 133 (3d Cir. 2012) ............................................................... 21, 23

*Spang & Co. v. U.S. Steel Corp.*,
   545 A.2d 861 (Pa. 1988)..................................................................................29

*Steinberg v. CVS Caremark Corp.*,
   899 F. Supp. 2d 331 (E.D. Pa. 2012)................................................................15

*Taggart v. Wells Fargo Home Mortg., Inc.*,
   No. 10-00843, 2013 WL 3009730 (E.D. Pa. June 18, 2013) ..............................23

*Toy v. Metro. Life Ins. Co.*,
   928 A.2d 186 (Pa. 2007)..................................................................................20

*Ware v. Rodale Press, Inc.*,
   322 F.3d 218 (3d Cir. 2003) ...................................................................... 16, 29

*Weinberg v. Sun Co.*,
   777 A.2d 442 (Pa. 2001)........................................................................... passim

*Wells Fargo Bank v. Monroe*,
   966 A.2d 1140 (Pa. Super. 2009) .....................................................................28

*Werwinski v. Ford Motor Co.*,
   286 F.3d 661 (3d Cir. 2002) ............................................................................19

*Yocca v. Pittsburgh Steelers Sports, Inc.*,
   854 A.2d 425 (Pa. 2004).......................................................................... 20, 21

## Statutes

15 U.S.C. § 1692.................................................................................................3

15 U.S.C. § 1692k...............................................................................................1

28 U.S.C. § 1291.................................................................................................1

28 U.S.C. § 1331.................................................................................................1

28 U.S.C. § 1367 ..................................................................................1

35 P.S. § 1680.403c ............................................................................28

35 P.S. § 1680.602a ............................................................................27

41 P.S. § 101, *et seq.* ...........................................................................5

73 P.S. § 201-1 — § 201-9.3 ................................................................3

73 P.S. § 201-2(4) .................................................................. 11, 12, 17

73 P.S. § 201-3 ...................................................................................11

73 P.S. § 201-9.2(a) ............................................................... 11, 13, 21

73 P.S. § 2270.2 .................................................................................27

73 P.S. § 2270.4(b).......................................................................... 3, 6, 25

73 P.S. § 2270.5(a) .............................................................................25

## Rules

Fed. R. Civ. P. 12(b)(6).........................................................................8

## Other Authorities

Black's Law Dictionary 941 (8th ed. 2004). ........................................14

PA Ethics Op. 01-200, 2001 WL 1744775 (Pa. Bar. Ass'n Comm. on
   Legal Ethics & Prof. Resp. June 28, 2001) ........................................34

## JURISDICTIONAL STATEMENT

Under 28 U.S.C. § 1331, the District Court had jurisdiction over Plaintiff's claim of violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692k. The District Court had supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

This Court has jurisdiction under 28 U.S.C. § 1291 because the District Court's order granting the motions to dismiss, entered on March 31, 2014 (App. 3a), was a final order that disposed of all claims as to all parties. Plaintiff filed a timely notice of appeal on April 3, 2014. App. 1a.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.    Whether the District Court correctly determined that Plaintiff failed to state a claim under Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL") because he failed to allege an ascertainable loss, or in the alternative, because he failed to allege reliance. [Raised, Doc. No. 27 (Mot. to Dismiss) at 16-19; ruled upon by the District Court as to ascertainable loss, App. 4a-5a; not ruled upon by the District Court as to reliance.]

2.    Whether the District Court correctly determined that Plaintiff failed to state a claim under Pennsylvania's Fair Credit Extension Uniformity Act because claims under that statute are enforced through the UTPCPL, under which Plaintiff failed to state a claim, or in the alternative, because Plaintiff cannot base such a

claim on a purported violation of Act 91. [Raised, Doc. No. 27 (Mot. to Dismiss) at 11-14; ruled upon by the District Court as to the elements of the UTPCPL, App. 4a-5a; not ruled upon by the District Court as to Act 91.]

3.    Whether the District Court correctly determined that Plaintiff failed to state a claim for breach of contract because he did not suffer any damages, or in the alternative, because he failed to allege that Bank of America breached Plaintiff's mortgage. [Raised, Doc. No. 27 (Mot. to Dismiss) at 6-10; ruled upon by the District Court as to damages, App. 5a-6a; not ruled upon by the District Court as to breach.]

## STATEMENT OF RELATED CASES AND PROCEEDINGS

This case has not been before this Court previously. The arguments raised by Plaintiff, and disputed by Bank of America, as to ascertainable loss and reliance under Pennsylvania's UTPCPL were recently briefed and submitted to this Court in *Salvati v. Deutsche Bank Nat'l Trust Co.*, No. 13-1972. On July 29, 2014, in a non-precedential opinion, the Third Circuit panel affirmed the District Court's dismissal of Salvati's UTPCPL claim but did not address whether plaintiff's "lien theory," if alleged in a complaint, would be sufficient to plead ascertainable loss under the UTPCPL. *Salvati v. Deutsche Bank Nat'l Trust Co.*, --- F. App'x ---, 2014 WL 3719186, at *4 (3d Cir. July 29, 2014).

## STATEMENT OF THE CASE

In February 2013, Plaintiff filed a complaint in the Court of Common Pleas of Allegheny County alleging claims for violation of the Pennsylvania Fair Credit Extension Uniformity Act, 73 P.S. § 2270.4(b) ("FCEUA"), the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), the Pennsylvania UTPCPL, 73 P.S. § 201-1 through § 201-9.3, and for breach of contract, in connection with a loan and mortgage. Doc. No. 1-2 (Complaint). The complaint was removed to the United States District Court for the Western District of Pennsylvania. App. 10a. Shortly thereafter, the two defendants—the law firm that initiated the foreclosure action (Udren Law Offices) and the mortgagee (Bank of America)—filed motions to dismiss. App. 11a. In response, Plaintiff filed an amended complaint, asserting the same claims for violation of Pennsylvania and federal statutes and the common law. App. 17a. Plaintiff's claims are all predicated on the same allegation: that in a foreclosure complaint filed against Plaintiff, Bank of America sought to recover foreclosure-related attorneys' fees and expenses in violation of Plaintiff's mortgage.

The defendants again moved to dismiss, and after full briefing, the Magistrate Judge issued a Report and Recommendation to grant the motions to dismiss. App. 114a. Over Plaintiff's objections (App. 140a), the District Court

adopted the Report and Recommendation and dismissed Plaintiff's amended complaint with prejudice.  App. 7a.  Plaintiff appealed.

## STATEMENT OF THE FACTS

**I.     Plaintiff Obtains A Loan Secured By A Mortgage And Then Defaults On The Loan, And Bank Of America Initiates Foreclosure Proceedings.**

Plaintiff's claims arise from a refinancing loan that he obtained from Bank of America in December 2006.  App. 18a (Amended Complaint), ¶ 4.  Plaintiff executed a note in favor of Bank of America for $245,600, and secured his loan obligation with a mortgage naming Bank of America as the mortgagee.  *Id.*; App. 60a-77a (Mortgage); App. 81a-83a (Note).   Bank of America currently holds Plaintiff's mortgage.  App. 17a, ¶ 2.

Plaintiff defaulted on his loan in June 2011.  App. 18a, ¶ 5.  On August 1, 2011, Bank of America sent Plaintiff a notice of default as required by Pennsylvania's Act 91.  *Id.*, ¶ 7; App. 32a-40a (Notice).  More than a year later, on September 13, 2012, Udren initiated a foreclosure action against Plaintiff on behalf of Bank of America in the Allegheny County Court of Common Pleas, Civil Action No. MG-12-001699 (the "Foreclosure Action").  App. 20a, ¶ 15; App. 41a-59a (Foreclosure Complaint).

Plaintiff has contested the Foreclosure Action in state court, filing an answer and raising numerous affirmative defenses on October 15, 2012.  App. 112a (Docket in Foreclosure Action).  Because many of Plaintiff's affirmative defenses

were improper under Pennsylvania law, Bank of America was forced to file preliminary objections to strike certain affirmative defenses.  App. 112a; Doc. No. 27 (Mot. to Dismiss) at 3-4.  Plaintiff's counsel then withdrew some of the affirmative defenses and filed an amended answer.  App. 112a; Doc. No. 27 (Mot. to Dismiss) at 4.  To date, Plaintiff's mortgage remains in default and the Foreclosure Action is still pending.  App. 18a, ¶ 6; App. 111a.

The crux of Plaintiff's amended complaint is the inclusion in the foreclosure complaint of $1,650 in attorneys' fees and $400 in other foreclosure expenses as amounts due on the mortgage.  App. 20a, ¶ 16; App. 47a.  It is undisputed that Plaintiff never paid any of the fees that he challenges through this lawsuit.  App. 6a.

## II.    Plaintiff Files A Class Action Complaint Against Bank Of America.

On February 11, 2013, five months after the Foreclosure Action was filed, Plaintiff filed a class action complaint against Bank of America and Udren in the Court of Common Pleas of Allegheny County.  Doc. No. 1-2.  Defendants removed the case to the U.S. District Court for the Western District of Pennsylvania.  Doc. No. 1.  The core of Plaintiff's original complaint was his claim that the attorneys' fees included in the foreclosure complaint were unlawful under the Pennsylvania Loan Interest and Protection Law, 41 P.S. §101 *et seq.* ("Act 6").  *Id.*  Bank of America moved to dismiss the original complaint, arguing among other things that

Act 6 did not apply to Plaintiff's mortgage loan.  Doc. Nos. 15, 16.  Plaintiff then filed an amended complaint, abandoning reliance on Act 6.  App. 17a-31a (Amended Complaint).  Plaintiff's new theory is that Bank of America charged attorneys' fees and other foreclosure expenses to Plaintiff in violation of Plaintiff's mortgage contract.  *Id.*  Plaintiff alleges, without any factual support, that Bank of America "never incurred" those charges and that services were "not performed" for those charges.  App. 27a-29a, ¶¶ 35, 47.

In Count I, Plaintiff seeks to hold Bank of America liable under the FCEUA as it applies to creditors.  App. 25a-26a, ¶¶ 28-32.  The FCEUA prohibits certain statutorily-defined improper debt collection practices.  Plaintiff alleges that Bank of America violated the FCEUA by sending an Act 91 notice that attempted to collect three months' payment when, at the date of mailing, Plaintiff allegedly was two months in arrears, and purportedly threatened legal action if Plaintiff did not cure his default within 30 days, instead of the 33 days allegedly required by the statute.  App. 25a, ¶¶ 30a-30b.  According to Plaintiff, the Act 91 notice constituted a "false representation of the character, amount or legal status of [Plaintiff's] debt," a "threat to take [an] action that cannot legally be taken," and a "false representation or deceptive means to collect or attempt to collect [Plaintiff's] debt" in violation of the FCEUA.  73 P.S. § 2270.4(b)(5)(ii), (v), and  (x); *see also* App. 25a, ¶¶ 30a-30b.  Plaintiff also claims that the foreclosure complaint violated

the same provisions of the FCEUA because it sought attorneys' fees and legal costs that were unreasonable, not actually incurred, and not authorized by Plaintiff's mortgage.  App. 25a-26a, ¶¶ 30c-30d, 31-32.

In Count III, Plaintiff alleges that Bank of America violated UTPCPL Subsections 201-2(4)(v)[1] and 201-2(4)(xxi) by "overcharging Homeowners for attorneys' fees and legal costs" and by charging "attorneys' fees and legal costs that were not authorized" by Plaintiff's mortgage.  App. 28a, ¶¶ 40-41.

Finally, in Count IV, Plaintiff alleges that Bank of America breached Plaintiff's mortgage by "charging and/or collecting legal fees and costs" for services that were not actually performed, "in violation of the terms" of Plaintiff's mortgage.  App. 29a, ¶¶ 45-47.

## III.    Bank Of America Files A Motion To Dismiss The Amended Complaint, Which The District Court Grants.

Bank of America filed a motion to dismiss all of Plaintiff's claims, as did Udren.  App. 78a, 107a.  The District Court agreed with Bank of America and

---

[1]    Bank of America's Motion to Dismiss addressed both UTPCPL subsections alleged in Plaintiff's amended complaint.  Doc. No. 27 at 15-16.  Plaintiff thereafter abandoned his 201-2(4)(v) claim, only addressing claims under 201-2(4)(xxi) in his opposition to the Motion to Dismiss and his objection to the Magistrate Judge's Report and Recommendation.  *See* Doc. No. 31 at 19; App. 176a n.11.  Plaintiff has not attempted to resurrect his 201-2(4)(v) claim on appeal and thus has waived it.  *See Laborers' Int'l Union of N. Am. v. Foster Wheeler Energy Corp.*, 26 F. 3d 375, 398 (3d Cir. 1994); *Dique v. N.J. State Police*, 603 F.3d 181, 188 n.10 (3d Cir. 2010) ("It is well established that arguments not raised before the District Court are waived on appeal.").

Udren, issuing an order granting the motions to dismiss in their entirety, with prejudice.  App. 7a.  The District Court rejected Plaintiff's theory that he could demonstrate an ascertainable loss based on alleged diminution in his property's value and concluded that Plaintiff therefore could not assert a plausible claim under the FCEUA or the UTPCPL.  App. 4a-5a.  The District Court ruled that for the same reason, Plaintiff could not plead damages to support his breach of contract claim.   App. 5a-6a.   Finally, in the context of dismissing Plaintiff's FDCPA claim,[2] the District Court held that Plaintiff's mortgage authorized Bank of America to charge Plaintiff attorneys' fees and other fees related to Plaintiff's default and to include such fees in a foreclosure complaint.  App. 6a-7a.  Plaintiff has appealed from the Order granting the Defendants' Rule 12(b)(6) motions and dismissing his complaint with prejudice.

## SUMMARY OF ARGUMENT

In filing this lawsuit and appeal, Plaintiff treads a path that has been trodden already—without success—by plaintiffs before him.  Plaintiff attempts to show entitlement to damages where he can plead no underlying violation and where he has not paid the allegedly illegal fees at the heart of his complaint.  No matter from which angle Plaintiff's complaint is examined, it amounts to a factual and legal

---

[2]    The FDCPA claim is alleged only against Defendant Udren Law Offices, P.C., and not against Bank of America.  App. 26a.

nullity: Plaintiff is challenging fees that his mortgage expressly authorizes. The District Court correctly dismissed all of Plaintiff's claims, and this Court should affirm.

Plaintiff's UTPCPL claim was correctly dismissed. Plaintiff's UTPCPL claim is subject to the requirement that he allege an "ascertainable loss" of money and property. Because Plaintiff admits he has not paid the purportedly improper charges that he challenges, Plaintiff has suffered no ascertainable loss. Plaintiff's novel and never adopted "lien theory" cannot make up for this fatal shortcoming in the amended complaint because neither the UTPCPL's text nor the controlling law supports Plaintiff's argument that an alleged increase in a lien amounts to "ascertainable loss." Although the District Court did not reach the issue of reliance, the dismissal of Plaintiff's UTPCPL claim can be affirmed on the alternative ground that he did not plead that he relied on any misleading representations by Bank of America. Plaintiff's FCEUA claim, which derives from his UTPCPL claim, fails for all of the reasons that the UTPCPL claim fails, and additionally fails because it cannot be predicated on a purported violation of Act 91.

The District Court also correctly dismissed Plaintiff's breach of contract claim. As with his UTPCPL claim, Plaintiff has not alleged that he paid the fees in dispute, and thus Plaintiff cannot plead that he suffered any damages. Finally, the

dismissal of Plaintiff's breach of contract claim also can be affirmed on the basis that he did not adequately plead a breach of his mortgage contract by Bank of America. As both the Magistrate Judge and the District Court indicated, Plaintiff's mortgage expressly authorized Bank of America to charge Plaintiff attorneys' fees and other fees related to his default. Plaintiff's contention that Bank of America improperly included such fees in the foreclosure complaint is meritless, and this Court should affirm.

## ARGUMENT

### I.    Standard of Review

This Court "review[s] *de novo* a district court's grant of a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)." *Ballentine v. U.S.*, 486 F.3d 806, 808 (3d Cir. 2007). A motion to dismiss should be granted unless a complaint contains sufficient factual matter, accepted as true, "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In ruling on a motion to dismiss, a court accepts as true all of the complaint's factual allegations. *Iqbal*, 556 U.S. at 678. But "[a] court need not credit a complaint's bald assertions or legal conclusions." *Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 227 (3d Cir. 2008) (internal quotation marks, citation, and alterations omitted). This is because "labels and conclusions" are insufficient to meet a plaintiff's

pleading burden.  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557) (internal quotations omitted).

In *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210 (3d Cir. 2009), this Court recognized that *Twombly* and *Iqbal* marked a change in the pleading thresholds and that plaintiffs are now "requir[ed] … to plead more than the possibility of relief to survive a motion to dismiss"—instead, plaintiffs must provide facts that move a claim "across the line from conceivable to plausible."  *Id.* at 212 (citing *Twombly*, 550 U.S. at 570).

## II. The District Court Correctly Dismissed Plaintiff's UTPCPL Claim Because, As The District Court Recognized, Plaintiff Did Not Allege An Ascertainable Loss Of Money Or Property, And Additionally, Plaintiff Did Not Allege Reliance.

Pennsylvania's consumer protection statute, the UTPCPL, forbids the use of "unfair or deceptive acts or practices in the conduct of any trade or commerce." 73 P.S. § 201-3.  To state a claim under the UTPCPL, the consumer must allege (1) conduct that fits one of the statutory definitions of "unfair or deceptive acts or practices" (*id.* §§ 201-9.2(a), 201-2(4)); (2) justifiable reliance on the wrongful conduct (*Hunt*, 538 F.3d at 221); and (3) an "ascertainable loss of money or property" (73 P.S. § 201-9.2(a)).  Plaintiff failed to allege these required elements and therefore the District Court correctly dismissed his UTPCPL claim.

Plaintiff alleged that Bank of America violated the UTPCPL by "overcharging Homeowners for attorneys' fees and legal costs" that were "not

authorized" by Plaintiff's mortgage.  App. 28a, ¶ 41.  He pointed to the statutory

definitions contained in Subsections (v)[3] and (xxi) of Section 201-2(4) as the

specific "unfair or deceptive acts or practices" in which Bank of America had

engaged.  *Id.*, ¶ 40 (citing 73 P.S. § 201-2(4)(v) (representing that goods or

services have characteristics, uses, or benefits that they do not) and 73 P.S. § 201-

2(4) (xxi) (engaging in "any other fraudulent or deceptive conduct which creates a

likelihood of confusion or of misunderstanding")).    Plaintiff alleged that

"Homeowners suffered an ascertainable loss by either paying the misrepresented

and overcharged amounts in whole or in part, or, where Homeowners did not make

an actual monetary payment, Homeowners suffered an ascertainable loss of

property when the unauthorized charges were liened against their homes."  App.

28a-29a, ¶ 43.  Plaintiff does not allege that he personally paid any excess charges

and instead proceeds under the "lien" theory.  *See, e.g.,* Br. at 5.  Despite having

not personally paid any of the purportedly unauthorized charges, as to reliance,

Plaintiff alleged that the "fact of the Homeowners' payments, in part for the

unauthorized charges added to their debt, established reliance on Defendants'

overcharges and misrepresentations."  App. 29a, ¶ 43.

The District Court concluded that, as Bank of America had argued, Plaintiff

had not stated a claim under the UTPCPL because he had not alleged ascertainable

---

[3]    Plaintiff later abandoned his Subsection (v) theory.  *See supra*, note 2.

loss.  App. 4a.  Bank of America also argued in the District Court that Plaintiff

failed to allege that he relied on Bank of America's alleged wrongful or deceptive

act.  Doc. No. 27 (Mot. to Dismiss) at 16-18; Doc. No. 35 (Reply) at 4-5; App.

250a-252a.  While Magistrate Judge Eddy agreed with this argument (App. 126a-

128a), the District Court did not address it, having concluded that Plaintiff's

UTPCPL claims failed for other (correct) reasons.  Because the record shows that

allegations of reliance were necessary but lacking from Plaintiff's amended

complaint, Plaintiff's failure to allege reliance constitutes an alternative basis upon

which this Court can affirm the dismissal of his UTPCPL claims.

### A.    The District Court Correctly Concluded That Plaintiff's Amended Complaint Does Not Allege Ascertainable Loss, As The UTPCPL Requires.

The District Court correctly concluded that because Plaintiff's only theory of

loss was a purported "diminution in value of his property," he suffered no

ascertainable loss as is required to state a claim under the UTPCPL.  App. 4a-5a.

The District Court was correct because Plaintiff's lien theory is insufficient to state

a claim under the UTPCPL and is unsupported by controlling case law.[4]

The plain language of the UTPCPL requires a plaintiff to have suffered "an

ascertainable loss of money or property" as a result of the defendant's conduct.  73

---

[4]    The District Court's conclusion that there was no ascertainable loss equally dooms Plaintiff's abandoned Subsection (v) theory, since ascertainable loss is always a requirement for a UTPCPL claim.  *Hunt*, 538 F.3d at 225.

P.S. § 201-9.2(a); *Weinberg v. Sun Co.*, 777 A.2d 442, 446 (Pa. 2001) (in action based on alleged false advertising regarding premium gasoline, plaintiff would need to allege "the amount [of gasoline] he purchased in order to establish the amount of his ascertainable loss"). Plaintiff cites no authority for the proposition that imposing a lien (even if one was imposed) causes an ascertainable loss of money or property for purposes of the UTPCPL. Black's Law Dictionary defines a lien as "[a] legal right or interest that a creditor has in another's property." Black's Law Dictionary 941 (8th ed. 2004). But another party's right or interest, without more, does not equate to an ascertainable loss. And courts construing the UTPCPL have repeatedly rejected plaintiffs' efforts to concoct an "ascertainable loss" when they have not, in fact, lost any money or property.

For example, the Pennsylvania Superior Court affirmed dismissal of a complaint alleging that plaintiffs had sold their home to a party whose purported real estate agent turned out to be not a real estate agent, but his mother-in-law. *Schwarzwaelder v. Fox*, 895 A.2d 614, 619 (Pa. Super. 2006). Although the plaintiffs argued that they could have renegotiated the agents' commissions if they had known the true facts, the court determined that allegations of a "speculative" loss do not state a claim for an "ascertainable loss" under the UTPCPL. *Id.*

Federal district courts have faithfully applied Pennsylvania law and have ruled that to state a claim under the UTPCPL, "[a] plaintiff must be able to point to

money or property that he would have had but for the defendant's fraudulent actions." *Benner v. Bank of Am., N.A.*, 917 F. Supp. 2d 338, 360 (E.D. Pa. 2013). *See, e.g.*, *Rubenstein v. Dovenmuehle Mortg., Inc.*, No. 09-721, 2009 WL 3467769, at *6 (E.D. Pa. Oct. 28, 2009) (no ascertainable loss where mortgage company failed to immediately disclose that it did not have plaintiffs' complete mortgage payment history); *Steinberg v. CVS Caremark Corp.*, 899 F. Supp. 2d 331, 335, 339-40 (E.D. Pa. 2012) (no ascertainable loss where defendant falsely informed customers that it confidentially maintained their personal information).

Practically speaking, even if, as Plaintiff claims, liens were imposed on his property, Plaintiff would not suffer any ascertainable loss until he sold his property, paid the allegedly illegal fees, and realized less from the property sale due to the fees. *Benner*, 917 F. Supp. 2d at 360 n.16 (plaintiff argued that fees led to "an increase in [his] mortgage debt and corresponding loss of home equity," but the "fallacy of this argument stems from the fact that Plaintiff has not sold his home" and therefore "has no actual loss from this increase in his liabilities. At this point, the loss is merely a possible loss, which is insufficient to establish a UTPCPL claim."). Plaintiff has not sold his home, and so at this point, his "loss" is "merely a possible loss, which is insufficient to establish a UTPCPL claim." *Id.*; *see also Schwarzwaelder*, 895 A.2d at 619 ("speculative" loss is not "ascertainable loss" under UTPCPL).

In an effort to support his lien theory, Plaintiff plays darts with legal authority, citing to anything he thinks might stick. But almost none of Plaintiff's case law is on-point. Instead, Plaintiff has cited cases about judicial sales, § 1983, escheat, landlord/tenant law, and other topics so far afield they do not warrant discussion. *See* Br. at 38-47 (citing *Earnest v. Hoskins*, 100 Pa. 551 (1882) (usury); *Saunders v. Resnick*, 16 A.2d 676 (Pa. Super. 1940) (same); *Marra v. Stocker*, 615 A.2d 326 (Pa. 1992) (Act 6); *D'Agostino v. Maldonado*, 78 A.3d 527 (N.J. 2013) (New Jersey Consumer Fraud Act); *Cox v. Sears Roebuck & Co.*, 647 A.2d 454 (N.J. 1994) (same); *Smith v. Caggiano*, 421 N.E.2d 473 (Mass. App. 1981) (Massachusetts unfair and deceptive practices claim); *Pugh v. Holmes*, 405 A.2d 897 (Pa. Super. 1979) (landlord/tenant law); *Edwards v. Wyatt*, 330 F. App'x 342 (3d Cir. 2009) (breach of contract); *Lorenzetti v. Jolles*, 120 F. Supp. 2d 181 (D. Conn. 2000) (Connecticut Unfair Trade Practices Act); *Lentini v. Fidelity Nat'l Title Ins. Co. of N.Y.*, 479 F. Supp. 2d 292 (D. Conn. 2007) (same); *Mfrs. & Traders Trust Co. v. Luzerne County Tax Claim Bureau*, 56 A.3d 36 (Pa. Commw. 2012) (petition to vacate judicial tax sale); *Delaware v. New York*, 507 U.S. 490 (1993) (escheat); *Burns v. Pa. Dep't of Corr.*, 544 F.3d 279 (3d Cir. 2008) (§ 1983); *Kelter v. Am. Bankers' Fin. Co.*, 160 A. 127 (Pa. 1932) (whether assignment of contract was sale or advancement of loan); *Ware v. Rodale Press, Inc.*, 322 F.3d 218 (3d Cir. 2003) (breach of contract)). Indeed, not a single one of

these cases involves a UTPCPL claim.

When constrained to UTPCPL law, Plaintiff's Brief has only four cases to rely upon, none of which supports Plaintiff's position. First, Plaintiff argues that the Superior Court in *Grimes v. Enterprise Leasing Co. of Philadelphia*, 66 A.3d 330 (Pa. Super. 2013), "addressed this issue" and found ascertainable loss. Br. at 43 n.18. *Grimes* is easily distinguishable and only serves to prove Bank of America's point. In *Grimes*, the plaintiff's theory of loss was "that she ... incurred costs and fees associated with asserting her rights and preventing [the defendant] from collecting its debt." *Id.* at 339. Thus, the court found that the plaintiff alleged an actual expenditure of money, which was sufficient to show ascertainable loss under the UTPCPL. In contrast here, Plaintiff does not claim to have paid any allegedly improper charges. Plaintiff's out-of-pocket loss is zero, and so *Grimes* does not support Plaintiff's loss theory.[5]

---

[5]    Moreover, as to the issues addressed in *Grimes*, on January 30, 2014, the Supreme Court of Pennsylvania granted the allocatur petition of Enterprise Leasing to resolve the questions of (1) whether the Superior Court erred when it held that a private plaintiff who alleges deceptive conduct under the UTPCPL's "catch-all" provision, 73 P.S. § 201-2(4)(xxi), need not allege and prove justifiable reliance, contrary to the decisions of this Court and earlier decisions of the Superior Court construing the UTPCPL; and (2) whether the Superior Court erred when it held that a plaintiff may satisfy the UTPCPL's "ascertainable loss" requirement by voluntarily hiring an attorney and allegedly incurring litigation costs to challenge allegedly wrongful conduct, even where the plaintiff paid no money to the defendant as a result of that conduct. 84 A.3d 1058 (Pa. 2014). Plaintiff relies on the Superior Court's decision in *Grimes* without discussing the very real possibility

Second, Plaintiff points to *DeArmitt v. New York Life Insurance Co.*, 73 A.3d 578 (Pa. Super. 2013), for the principle that only a "loss of value" must be established to show an ascertainable loss. Br. at 43. Plaintiff's citation is misleading. In context, *DeArmitt* reads: "Under circumstances where the entire transaction was based on misrepresentations as to its true cost, an assessment of ascertainable loss cannot be made simply by examining what was purchased. Ascertainable loss must be established from the factual circumstances surrounding each case. Thus, ascertainable losses can include costs and other shortfalls associated with the transaction at issue." 73 A.3d at 594. *DeArmitt* thus says nothing about establishing an ascertainable loss of property under the UTPCPL.

Third, Plaintiff relies on *Benner* to say that "[a] lien on property is sufficient to show damages under Section 504 [of Act 6]." Br. at 43. Not only is *Benner*'s discussion of Act 6 irrelevant to Plaintiff's UTPCPL claim, but as described above, *Benner* rejected a lien theory of loss under the UTPCPL, holding that a "possible loss … is insufficient to establish a UTPCPL claim." 917 F. Supp. 2d 338 at 360 n.16.

Finally, Plaintiff cites *Ash v. Continental Insurance Co.*'s instruction that the UTPCPL is to be construed "liberally," and concludes that this means his lien

that the Supreme Court of Pennsylvania will overrule the Superior Court's decision.

theory should pass muster under the UTPCPL.  Br. at 43.  Plaintiff over-reads this quote from *Ash*.  Rather, that court observed that the UTPCPL is to be "liberally construed" in that "even where the unlawful practice is directly addressed by another consumer-related statute, a plaintiff may nevertheless pursue his action under the UTPCPL."  932 A.2d 877, 881-82 (Pa. 2007).  *Ash* says nothing about what might constitute ascertainable loss.

In sum, Plaintiff's lien theory finds no legal support in the text of the UTPCPL or the case law and, indeed, has been rejected more than once.  *See Benner*, 917 F. Supp. 2d 338 at 360 n.16; *Salvati v. Deutsche Bank Nat'l Trust Co., N.A.*, No. 12-cv-0971, 2013 WL 1314777, at *6 (W.D. Pa. Mar. 28, 2013) (acknowledging plaintiff's argument that "'Mr. Salvati and some of the other homeowners were not only charged and liened, but paid some or all of the unauthorized and/or illegal foreclosure fees and costs'" and rejecting UTPCPL claim because "no money was paid and no loss ascertained"), *aff'd on other grounds*, --- F. App'x ---, 2014 WL 3719186, at *4 (3d Cir. July 29, 2014).  The District Court's dismissal of Plaintiff's UTPCPL claim was correct, and the ruling also effectuated the principle that federal courts sitting in diversity should "opt for the interpretation [of the law] that restricts liability, rather than expands it, until the Supreme Court of Pennsylvania decides differently."  *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 680 (3d Cir. 2002) (adopting interpretation that restricted,

rather than expanded, UTPCPL liability).  This Court should affirm.

**B.    Plaintiff's UTPCPL Claim Fails For The Additional Reason That Plaintiff Did Not Allege Reliance.**

In addition to his failure to allege ascertainable loss, Plaintiff also failed to allege reliance.  The District Court did not reach the reliance issue, having correctly disposed of Plaintiff's UTPCPL claim because he did not allege an ascertainable loss.  App. 4a-5a.  The record permits this Court to determine that the reliance argument is correct, and therefore it is an alternative ground upon which this Court may affirm the dismissal of the UTPCPL claim.  *Brightwell v. Lehman*, 637 F.3d 187, 191 (3d Cir. 2011) (this Court "may affirm a district court for any reason supported by the record").

The Supreme Court of Pennsylvania has held that a UTPCPL claim "clearly requires … that a plaintiff suffer an ascertainable loss *as a result of* the defendant's prohibited action."  *Weinberg*, 777 A.2d at 446 (emphasis in original).  The statute's causation requirement is met—that is, loss occurs "*as a result of*" the defendant's action—if the plaintiff relies on the defendant's misrepresentation.  *Id.*

Following the Pennsylvania Supreme Court, this Court has similarly acknowledged that because of this "causation requirement," Pennsylvania law requires that a plaintiff "pursuing a claim under the statute must prove justifiable reliance."  *Hunt*, 538 F.3d at 221 (citing *Schwartz v. Rockey*, 932 A.2d 885, 897 n.16 (Pa. 2007); *Toy v. Metro. Life Ins. Co.*, 928 A.2d 186, 202 (Pa. 2007); *Yocca*

*v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 438 (Pa. 2004)).  Reliance is not merely one of the elements of the claim, but a prerequisite to bringing suit:  "the justifiable-reliance requirement … emanates … from the private-plaintiff standing provision," Section 201-9.2(a).  *Hunt*, 538 F.3d at 225 (citing *Schwartz*, 932 A.2d at 897 & n.16; *Weinberg*, 777 A.2d at 445-46).

Since *Hunt*, this Court has only reaffirmed the requirement that to properly state a UTPCPL claim, a plaintiff must allege reliance.  *See Smith v. State Farm Mut. Auto. Ins. Co.*, 506 F. App'x 133, 137 (3d Cir. 2012) (where plaintiff "may have alleged wrongful conduct" but "did not allege actions pursued on the basis of that conduct," dismissal was appropriate "[b]ecause justifiable reliance is a necessary element for standing" under the UTPCPL); *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 499 (3d Cir. 2013) (plaintiffs did not state UTPCPL claim where "they [did] not allege[] any conduct on [defendant's] part, deceptive or otherwise, that caused them to invest …" (citing *Weinberg*, 777 A.2d at 446)); *Kemezis v. Matthews*, 394 F. App'x 956, 959 (3d Cir. 2010) (affirming dismissal of UTPCPL claim and citing *Hunt*, 538 F.3d at 223-24, for principle that plaintiffs must "prove justifiable reliance even in cases involving the post-1996 catchall provision [Subsection (xxi)]" based on the "private-plaintiff standing provision of the UTPCPL").

Plaintiff argues that he need not allege reliance to support his UTPCPL claim, relying in his Brief alternately on what he perceives to be a "state of flux" in UTPCPL law (Br. at 50) and on the concept that reliance need not be shown where the challenged conduct occurred "post-contract" (Br. at 51). Plaintiff's argument directly contradicts Pennsylvania law as construed by this Court: that reliance is a necessary precursor to private plaintiff standing under the UTPCPL. *Hunt*, 538 F.3d at 222 (UTPCPL demands "a showing of justifiable reliance, not simply a causal connection between the misrepresentation and the harm."). Indeed, this Court in *Hunt* "reject[ed] [the plaintiff's] suggestion that he enjoy[ed] a presumption of reliance, as this suggestion is inconsistent with Pennsylvania case law." *Hunt*, 538 F.3d at 227. This Court ruled that the *Hunt* plaintiff could not "enjoy a presumption of what he must prove affirmatively—that is, under the [UTPCPL], [the plaintiff] must prove justifiable reliance affirmatively." *Id.*

Moreover, Plaintiff's characterization of this Court's decision in *Belmont* is flat-out wrong. Nothing in *Belmont* suggests a "retreat" (Br. at 48) from the Court's holding in *Hunt* that a plaintiff must allege justifiable reliance to state a claim under the UTPCPL. To the contrary, this Court in *Belmont* reaffirmed the justifiable reliance requirement. Specifically, this Court held that the *Belmont* plaintiffs did not state a UTPCPL claim because they did "not allege[] any conduct on [the defendant's] part, deceptive or otherwise, *that caused them to invest*." 708

F.3d at 499 (emphasis added).  This Court went on to cite *Weinberg*, 777 A.2d at 446, for the proposition that "a UTPCPL plaintiff must demonstrate that he justifiably relied on the defendant's deceptive practice and that he suffered harm as a result of that reliance."  *Id.*  In short, *Belmont* supports Bank of America's position – not Plaintiff's.[6]

Nor can Plaintiff skirt the reliance requirement by arguing that as a "post-contract" UTPCPL plaintiff, he can satisfy the causation prerequisite of standing without pleading reliance.  Br. at 50-52.  Courts—including this Court—in numerous cases have rejected such efforts.  *See, e.g., Smith*, 506 F. App'x at 137 (dismissing UTPCPL claim of plaintiff who was already party to contract where plaintiff did not allege reliance on deceptive conduct); *Schwartz*, 2013 WL 6037078, at *5-6 (same); *Lynch*, 2013 WL 2915734, at *4 (same).  Plaintiff's

---

[6]    Not surprisingly, district court decisions in this Circuit issued after the *Belmont* decision continue to follow *Hunt*.  *See, e.g., Schwartz v. OneWest Bank, FSB*, No. 13-0113, 2013 WL 6037078, at *5-6 (E.D. Pa. Nov. 13, 2013) (dismissing UTPCPL catch-all claim for failing to allege justifiable reliance); *Keller v. GC Servs., L.P.*, No. 13-1654, 2013 WL 3213338, at *4 (E.D. Pa. June 26, 2013) (same); *Taggart v. Wells Fargo Home Mortg., Inc.*, No. 10-00843, 2013 WL 3009730, at *6-7 (E.D. Pa. June 18, 2013) (same), *aff'd*, --- F. App'x ---, 2014 WL 1613715 (3d Cir. Apr. 23, 2014); *Lynch v. Capital One Bank (USA), N.A.*, No. 12-992, 2013 WL 2915734, at *4-5 (E.D. Pa. June 14, 2013) (dismissing UTPCPL claim because of failure to plead both reliance and injury, where plaintiff alleged that he relied on allegedly impermissible "charges and interest" on his credit card statements, but did not allege that he had made any payments toward those fees); *Kimmel v. Phelan Hallinan & Schmieg*, 847 F. Supp. 2d 753, 770 (E.D. Pa. 2012) (plaintiffs' UPTCPL claim "oblige[d] them to allege justifiable reliance upon wrongful conduct or a misrepresentation").

"automatic" reliance argument (Br. at 49 n.19) is essentially the same as the "presumed" reliance argument this Court rejected in *Hunt*. This Court should reject the argument again here. Plaintiff's failure to allege that he took any action in reliance on any alleged misrepresentation or deceptive conduct by Bank of America is an alternative ground upon which this Court can affirm the district court's dismissal of the UTPCPL claim.

## III. For The Same Reasons That The District Court Correctly Dismissed Plaintiff's UTPCPL Claim, It Also Correctly Dismissed His Derivative Claim Under The FCEUA.

In Count I of his amended complaint, Plaintiff alleges that Bank of America violated the FCEUA. App. 25a-26a, ¶¶ 28-32. The District Court correctly dismissed this claim for the same reason that it dismissed Plaintiff's UTPCPL claim: Plaintiff has not paid any of the challenged fees and thus has not suffered an ascertainable loss. App 4a. Moreover, as Bank of America argued in the District Court (Doc. No. 27 (Mot. to Dismiss) at 11-12; Doc. No. 35 (Reply) at 3-4; App. 253a-254a), Plaintiff's FCEUA claim fails to the extent it is predicated on purported Act 91 violations. While the District Court did not reach this argument, it provides yet another basis on which to affirm the District Court's dismissal.

### A. Plaintiff's Derivative FCEUA Claim Fails For Lack Of Reliance And Ascertainable Loss.

The FCEUA prohibits certain improper debt collection practices. App. 25a, ¶ 29. Plaintiff alleged that Bank of America violated Section 2270.4(b) of the

FCEUA, under which "it shall constitute an unfair or deceptive debt collection act or practice … if a creditor …. use[s] any false, deceptive or misleading representation or means in connection with the collection of any debt." 73 P.S. § 2270.4(b)(5). The FCEUA, however, does not confer a private right of action. Instead, the statute provides that an FCEUA violation "shall constitute a violation of … the Unfair Trade Practices and Consumer Protection Law." 73 P.S. § 2270.5(a). Thus, the FCEUA adopts the enforcement regime of the UTPCPL. *In re Close*, No. 93-17145, 2003 WL 22697825, at *3 n.5 (Bankr. E.D. Pa. Oct. 29, 2003). Or, as a district court put it, the FCEUA is "enforced by the remedial provision of the … UTPCPL…." *Benner*, 917 F. Supp. 2d at 359. Thus, relief is available under the FCEUA only if the plaintiff can show that all of the requirements for UTPCPL relief have been met, including "an ascertainable loss as a result of the defendant's prohibited action." *Weinberg*, 777 A.2d at 446; *Benner*, 917 F. Supp. 2d at 359-60.

Plaintiff acknowledges on appeal that the District Court dismissed his FCEUA claim "because the Amended Complaint did not plead the UTPCPL reliance and an ascertainable property loss to support" it. Br. at 54. In response, he argues that it would be "almost impossible" for an FCEUA plaintiff to show "UTPCPL reliance and actual damage" because of "the nature of the FCEUA violations." *Id.* Nonetheless, he cites no authority to suggest that the strictures of

the UTPCPL do not apply to his FCEUA claim.  *Contra Benner*, 917 F. Supp. 2d at 360 (dismissing FCEUA claim where plaintiff did not allege ascertainable loss).

Thus, absent any authority to the contrary, for the same reason that the District Court correctly dismissed the UTPCPL claim, it also correctly dismissed the FCEUA claim.  This Court should affirm.

### B. Plaintiff's FCEUA Claim Also Fails To The Extent Plaintiff Attempts To Base It On A Purported Act 91 Violation.

Plaintiff's Concise Summary of the Case filed in this Court on April 10, 2014, included as an issue to be raised on appeal:  "Did BOA's Act 91 Notice violate state law?  If so, what are the legal consequences under the federal and state laws identified above?"  Plaintiff's Brief does not directly address this purported issue and instead presumes both that the notice of default Bank of America sent to Plaintiff violated Act 91, and that it was a *per se* violation of the FCEUA.  Brief at 53.  Plaintiff glosses over the flaws that ultimately doom this theory.

As a starting point, Plaintiff's Act 91 theory has been a moving target both in front of the District Court and this Court.  In response to Bank of America's motion to dismiss, Plaintiff first claimed that his FCEUA claim is not an attempt to enforce Act 91, but an attempt to enforce the FCEUA through "Act 91 through Act 6."  Doc. 31 at 15.  Contorted as it is, this theory failed because Act 6 is completely inapplicable to Plaintiff's mortgage loan, as Plaintiff conceded by abandoning his Act 6 claim from his original complaint to his amended complaint.  Next, Plaintiff

openly acknowledged in the District Court in response to the Magistrate's Report and Recommendation that he "has no personal claims arising under Act 91." App. 172a n.10. The Court can stop here and affirm dismissal of Plaintiff's claim.

Notwithstanding this admission, Plaintiff still attempts to resurrect a claim based on Act 91. But any claim based on a purported violation of Act 91 must fail at the outset because the Pennsylvania Legislature did not give consumers the right to sue for money damages for violations of Act 91. The only penalty provision in Act 91 is directed to debtors who defraud the Pennsylvania Housing Finance Agency with false applications. *See* 35 P.S. § 1680.602a. That section of Act 91 has nothing to do with a creditor's compliance with Act 91 notice requirements. In short, the Pennsylvania Legislature chose not to provide a private right of action under Act 91, and such a right of action cannot be inferred from the statutory text or its legislative history.

Nor can the alleged Act 91 violation give rise to a "*per se*" claim under the FCEUA. The FCEUA was enacted to regulate "unfair methods of competition and unfair or deceptive acts or practices with regard to the collection of debts." 73 P.S. § 2270.2. The requirements of Act 91 do not relate to debt collection. Instead, as explained by this Court in *Ayers v. Philadelphia Housing Authority*, the "Act 91 notice … is designed to give a homeowner the chance to apply for a state loan to help pay off the mortgage in situations where the homeowner cannot meet his

mortgage payments because of unemployment, before foreclosure occurs." 908
F.2d 1184, 1187 (3d Cir. 1990). Act 91 seeks to provide "access to sources of
funding for a debtor in order to prevent default." *Id.* The Act 91 notice instructs
the mortgagor concerning different means he may use to resolve his arrearages in
order to avoid foreclosure and a timetable in which such means must be
accomplished. *See Wells Fargo Bank v. Monroe*, 966 A.2d 1140, 1142 (Pa. Super.
2009) (citing 35 P.S. § 1680.403c and *Fish v. Pa. Housing Fin. Agency*, 931 A.2d
764, 767 (Pa. Commw. 2007)).

Act 91 does not, however, seek to regulate conduct implicating the
collection of debts. Accordingly, the Eastern District of Pennsylvania recently
held that "language in Defendant's pre-foreclosure [Act 91] notices that
supposedly misled [Plaintiff] about how and when he could apply for state-funded
mortgage assistance … do not relate to Defendant's attempt to collect the
outstanding mortgage debt." *Benner*, 917 F. Supp. 2d at 362. For that reason, the
court in *Benner* found that the purported Act 91 violation at issue—just as here,
specifying a 30-day period instead of a 33-day period to have a face-to-face
meeting with a consumer credit counseling agency—could not form the basis for a
claim under the Fair Debt Collection Practices Act, the federal corollary to the
FCEUA. *Id.*

Correspondingly, Plaintiff should not be permitted to use a purported Act 91 violation as the basis for an FCEUA claim, and this provides an alternative basis on which to affirm the District Court's dismissal of Plaintiff's FCEUA claim.

## IV. The District Court Correctly Dismissed Plaintiff's Breach of Contract Claim Because, As The District Court Recognized, Plaintiff Did Not Allege Damages, And Additionally, Plaintiff Did Not Allege An Underlying Breach.

To state a breach of contract claim under Pennsylvania law, a plaintiff must allege "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." *Omicron Systems, Inc. v. Weiner*, 860 A.2d 554, 564 (Pa. Super. 2004) (brackets and internal quotation marks omitted). "To prove damages, a plaintiff must give a fact finder evidence from which damages may be calculated to a 'reasonable certainty.'" *Ware*, 322 F.3d at 225-26 (quoting *ATACS Corp. v. Trans World Commc'ns, Inc.*, 155 F.3d 659, 668 (3d Cir. 1998)). "At a minimum, reasonable certainty embraces a rough calculation that is not 'too speculative, vague or contingent' upon some unknown factor." *ATACS*, 155 F.3d at 669 (quoting *Spang & Co. v. U.S. Steel Corp.*, 545 A.2d 861, 866 (Pa. 1988)). Plaintiff failed to allege these required elements and therefore the District Court correctly dismissed his breach of contract claim.

Plaintiff claims that Bank of America breached his mortgage contract by filing a foreclosure complaint on September 13, 2012, in which Bank of America alleged that certain amounts were due for attorneys' fees and other foreclosure-

related expenses as of July 12, 2012, even though these charges were purportedly not incurred as of July 12, 2012.  App. 29a, ¶ 47.

The District Court, agreeing with Bank of America, concluded that Plaintiff's breach of contract claim failed because he had not adequately pled that he suffered damages.  App. 6a.  Bank of America also argued in the District Court that Plaintiff did not adequately allege that Bank of America breached Plaintiff's mortgage, as Plaintiff claimed.  Doc. No. 27 (Mot. to Dismiss) at 7-10; Doc. No. 35 (Reply) at 2-3; App. 255a-259a.  The District Court did not address this argument, having properly concluded that Plaintiff's breach of contract claim failed on damages grounds.  App. 130a-131a n.4.  Because the record supports Bank of America's argument that Plaintiff has not pleaded a breach of his mortgage, this constitutes an alternative basis upon which this Court can affirm the dismissal of Plaintiff's breach of contract claim.

### A.    The District Court Correctly Concluded That Plaintiff's Breach Of Contract Claim Fails Because He Has Not Alleged Any Damages.

One of the fatal flaws in Plaintiff's breach of contract claim is factual:  He has not paid the allegedly improper fees.  Plaintiff does not allege that he actually paid the challenged fees and costs, that he paid fees and costs before they were incurred, or that he paid fees and costs that were not ever incurred.  As the Magistrate Judge properly found, and as the District Court adopted, Plaintiff's

inability to explain how inclusion of "unauthorized" attorneys' fees and other fixed costs caused him any actual damages that could reasonably be determined is fatal to his breach of contract claim.  App. 130a.

Aware of the hole in his amended complaint, Plaintiff sought to fix it with his "lien" theory:  namely, that although he paid no money to Bank of America, "the illegal charges were made part of the Mortgage debt, and increased the amount of the lien on the underlying property."  App. 185a (Obj. to Rep. & Rec.). Count IV was correctly dismissed by the District Court because such a speculative, unrealized loss cannot satisfy the damages element of a breach of contract claim. App. 5a-6a ("Plaintiff does not argue an actual loss, but alleges a speculative loss based on the alleged diminution in value of his property.").  Although Plaintiff continues his attempt to argue that his "loss" is not merely speculative, even he cannot avoid couching his argument in forward-looking and speculative terms.  Br. at 20 ("*If* he sells his home, his net proceeds *will* be a dollar less, and *if* he tries to use it for security on a loan, the amount he can borrow *will* decline by one dollar.") (emphasis added).

Moreover, Plaintiff provides no authority to refute the District Court's conclusion that he failed to satisfy the damages element of his breach of contract claim.  Indeed, as to his breach of contract claim, just as with his UTPCPL claim, Plaintiff has provided no on-point Pennsylvania authority and instead has cited

cases about wholly irrelevant issues and causes of action.  *See* Br. at 20 (*e.g.,* citing *In re Estate of Landis*, 85 A.3d 506 (Pa. Super. 2014) (impact of judicial sale on secured lien); *Connecticut v. Doehr*, 501 U.S. 1 (1991) (due process concerns related to prejudgment attachment of real estate)).  Rather, as the District Court properly found, "Plaintiff's claim of damages for the inclusion of the attorneys' fees and other fees, without evidence that he actually paid the fees, is not enough to demonstrate that he has suffered damages as a result of BOA's alleged breach." App. 6a.  Because Plaintiff has failed to allege the damages element necessary to support a claim for breach of contract, this Court should affirm the District Court's dismissal of Count IV.

**B.    Plaintiff's Breach Of Contract Claim Was Properly Dismissed For The Additional Reason That The Complaint Did Not Adequately Plead That Bank of America Breached Plaintiff's Mortgage.**

Even if Plaintiff had adequately pled that he sustained damages from the alleged breach of the mortgage – which he has not – his breach of contract claim would still fail for want of a breach.  The foreclosure complaint's itemized list of amounts due included $1,650 for attorneys' fees, $325 for a title report, and $75 for a property inspection.  App. 20a, ¶ 16.  These charges are expressly authorized by the mortgage and nothing in Plaintiff's amended complaint – beyond his bald accusations and bare conclusions, which are not entitled to any weight under *Iqbal/Twombly* – shows that the charges listed on the foreclosure complaint were

for services that had not been performed or expenses that had not been incurred. Indeed, by the time the foreclosure complaint was filed, legal services obviously had been performed and charges incurred. In any event, there is nothing in the mortgage prohibiting a lender from listing attorneys' fees and other fixed costs in a foreclosure complaint, even if such costs have not actually been incurred.

### 1. The Fees Charged Are Expressly Authorized By Plaintiff's Mortgage And Legally Proper Under Pennsylvania Law.

Plaintiff's mortgage provides that Bank of America may charge Plaintiff "fees for services performed in connection with [Plaintiff's] default . . . including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this [mortgage] to charge a specific fee to [Plaintiff] shall not be construed as a prohibition on the charging of such fee." App. 72a, ¶ 14; *see also* App. 69a-70a, ¶ 9 (describing Borrower's obligation to pay amounts disbursed by Lender in event of Borrower's default). Moreover, Paragraph 22 of Plaintiff's mortgage provides that Bank of America is "entitled to collect all expenses incurred in pursuing [foreclosure], including, but not limited to, attorneys' fees and costs of title . . ." App. 75a, ¶ 22. Thus, as the District Court properly recognized, Plaintiff's mortgage expressly authorizes the lender to charge attorneys' fees related to Plaintiff's default and contains no prohibition on "fixed fees." App. 6a ("Simply put, the Magistrate Judge was correct in determining that the Mortgage authorizes [Bank of America]

to charge Plaintiff attorneys' fees and other fees related to Plaintiff's default, and that the inclusion of such fees is not prohibited by law.").

Plaintiff once again "takes issue with the inclusion of the fees without the express caveat that the fees are merely an estimate, or represent the maximum allowed under the FNMA Servicing Guide [and] makes the argument that such activity is illegal (by way of conflated references to state procedural rules and federal agency regulations)."  App. 6a n.4; *see* Br. at 16 (claiming the amount should be characterized as "an estimate" or "the maximum per se reasonable fee under the FNMA servicing guide").

However, flat fee arrangements are lawful in Pennsylvania.  *See, e.g.,* PA Ethics Op. 01-200, 2001 WL 1744775 (Pa. Bar. Ass'n Comm. on Legal Ethics & Prof. Resp. June 28, 2001) (discussing propriety of flat fee arrangements in context of third-party payor arrangements).  There is no law or other requirement which provides that Bank of America's foreclosure counsel must bill Bank of America by the hour and, as the Fannie Mae guidelines show, a flat fee arrangement is standard in the foreclosure industry throughout the United States. *See In re Howell*, 226 B.R. 279, 281-82 (Bankr. M.D. Fla. 1998) (routine foreclosure cases "are much more susceptible to a standard rate or flat, fixed rate approach …. This approach also has the advantage of simplicity, efficiency, and economy").

Moreover, in *Crystian v. Mellon Bank, N.A.*, 210 B.R. 956, 961 (Bankr. W.D. Pa. 1997), Judge Fitzgerald held that a lender was entitled to seek from a defaulted borrower a flat fee charged by its counsel for services in connection with the filing of a foreclosure action.  There, the court specifically found that the flat fee was reasonable, despite the fact that due to the subsequently-filed bankruptcy, the only service performed in connection with the foreclosure was the initial filing of the foreclosure complaint.  *Id.*  In *Crystian*, like here, it was "clear from the terms of the Note and mortgage that [the lender] is entitled to attorney's fees and expenses incurred to protect its interest after Debtor's default or in the event that legal action is taken to collect the debt or foreclose on the property."  *Id.*

Plaintiff's arguments that flat fees are improper and not authorized by the mortgage carry no weight and the District Court's decision should be affirmed.

> **2.     There Is No Prohibition On Including "Unincurred" Fees In A Foreclosure Complaint And, In Any Event, Plaintiff's Allegations Make Clear That The Fees Here Were "Incurred."**

Despite the fact that Plaintiff's mortgage unquestionably authorizes Bank of America to charge to Plaintiff attorneys' fees and other expenses related to Plaintiff's default, and despite the fact that flat fees are legally proper in Pennsylvania, Plaintiff claims that Bank of America breached the terms of his mortgage by charging Plaintiff for attorneys' fees that were "unincurred" or foreclosure-related legal services that were "not performed."  App. 27a-29a, ¶¶ 35,

47.[7]  This claim is not only implausible and accordingly subject to dismissal under *Twombly*, but is also demonstrably false.  As a result, the District Court properly found that "nowhere do the loan documents or any state or federal law prohibit listing attorneys' fees and other fixed costs in a foreclosure complaint *even if they have not actually been incurred* [yet]."  App. 6a-7a (emphasis added).

All of Plaintiff's arguments collapse upon consideration of (i) the loan documents authorizing reasonable attorneys' fees and other costs for foreclosure proceedings, (ii) the maximum amount of attorneys' fees that are authorized by Fannie Mae for legal work related to foreclosure (which, in Pennsylvania, was $1650.00),[8] and (iii) the fact that nowhere do the loan documents or any state or federal law prohibit listing attorneys' fees and other fixed costs in a foreclosure

---

[7]  Notably, the District Court accurately observed that "Plaintiff does not dispute the reasonableness of the fees or that the fees were authorized under the Mortgage, nor does Plaintiff dispute that the fees were ultimately incurred."  App. 6a n.4.

[8]  Plaintiff's argument that the Fannie Mae guidelines or his mortgage do not allow fees based on a flat, percentage or another liquidated basis, but only hourly-based fees that have been incurred, has no basis in fact or in the mortgage contract.  The $1,650 attorneys' fee charge is the amount that Fannie Mae administratively specified as the amount of attorneys' fees to be charged for a judicial foreclosure in Pennsylvania during the relevant time period.  *See* App. 257a; *see also* App. 85a-86a (Fannie Mae Allowable Attorney and Trustee Foreclosure Fees).  Moreover, where Fannie Mae only allows the maximum fees at the completion of the foreclosure action or otherwise intends to limit the amount of foreclosure fees, it states as much in a footnote on the fee schedule.  *See* App. 85a-86a (*e.g.*, specifying when a "fee applies to completed foreclosures").  There is no such limitation for Pennsylvania.

complaint, even if they have not actually been incurred at the time of the filing of the complaint.

Moreover, there is no doubt that fees were "incurred" by Bank of America in connection with the foreclosure. As Plaintiff acknowledges, $1,650 represents a flat fee charged by foreclosure counsel. Accordingly, once foreclosure counsel was retained in connection with the Foreclosure Action, the flat fee was "incurred" by Bank of America and, therefore, could be assessed against Plaintiff's account consistent with the terms of the mortgage. On this point, Plaintiff has clearly and unequivocally alleged that Bank of America was forced to file a foreclosure complaint against him. App. 20a, ¶ 15. This allegation alone, in addition to Bank of America's subsequent prosecution of the Foreclosure Action, establishes that Bank of America did incur the claimed attorneys' fees and expenses and that services were indeed performed.

Rather than address these truths directly, Plaintiff's Brief merely adds pages of rhetoric about how he thinks the procedure of charging attorneys' fees should work in residential foreclosures cases, but does not confront the language of his own mortgage or the growing body of cases rejecting his legal theories. Br. at 18-24. Indeed, Plaintiff argues that, although the flat fee "may by sheer accident turn out to be reasonable on its face[,]" this Court should upend the entire mortgage industry by having each charged foreclosure fee "analyzed by the lodestar analysis

[] before it becomes liquidated, incurred, and recoverable." *Id.* at 22. Such ruminations are fanciful and, even if Plaintiff were to succeed in having every such foreclosure fee that is included in a Pennsylvania foreclosure action "passed through the described judicial process" before an award is issued to the lender, merely listing the flat fee in the foreclosure complaint still would not amount to a breach of contract. *See* Br. at 22-23. Moreover, the adoption of Plaintiff's theory would necessarily result in the conclusion that all Fannie Mae mortgage foreclosures involve the imposition of unreasonable fees that are violative of the underlying Fannie Mae-drafted mortgage. Such a result is absurd. Plaintiff's faulty premises should again be rejected and the District Court's decision should be affirmed.

## CONCLUSION

The District Court correctly dismissed Plaintiff's UTPCPL and FCEUA claims because Plaintiff has not paid any impermissible fees, and therefore Plaintiff has not shown ascertainable loss. Furthermore, Plaintiff's failure to show reliance on any supposed misrepresentation or deceptive conduct by Bank of America is also fatal to his UTPCPL and FCEUA claims and provides an alternative basis on which to affirm.

The District Court also correctly dismissed Plaintiff's breach of contract claim because Plaintiff did not show any damages. In addition, this Court can

affirm the dismissal of the breach of contract claim because Plaintiff has not

adequately alleged that Bank of America breached Plaintiff's mortgage.

Respectfully submitted,

/s/ Thomas L. Allen
Thomas L. Allen (PA I.D. 33243)
tallen@reedsmith.com
Nellie E. Hestin (PA I.D. 311788)
nhestin@reedsmith.com
**REED SMITH LLP**
225 Fifth Avenue
Pittsburgh, PA  15222
Telephone:  (412) 288.3066
Facsimile:  (412) 288.3063

Andrew J. Soven (PA I.D. 76766)
asoven@reedsmith.com
Marc A. Goldich (PA I.D. 93055)
mgoldich@reedsmith.com
**REED SMITH LLP**
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103-7301
Telephone:  (215) 851.8100
Facsimile:  (215) 851.1420

*Counsel for Defendant*
*Bank of America, N.A.*

Dated:  August 4, 2014

## **CERTIFICATIONS**

Thomas L. Allen, attorney for Appellee, hereby certifies that:

1.      I caused a true and correct copy of the foregoing Brief of Appellee to be served upon all counsel of record via the Court's ECF system, in accordance with L.A.R. Misc. 113.4, on this 4th day of August, 2014.

2.      This Brief of Appellee was filed with the Court via the Court's ECF system, and by UPS, postage prepaid, in accordance with Rule 25(a)(2)(B) of the Federal Rules of Appellate Procedure.

3.      I am admitted to the bar of the Third Circuit.

4.      This brief complies with the type/volume limitation contained in Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure.   The brief contains 10,239 words, excluding the Cover Page, Corporate Disclosure Statement, Table of Contents, Table of Authorities, and Certifications.

5.      The printed Brief of Appellee filed with the Court is identical to the text in the electronic version of the brief filed with the Court.

6.      The electronic version of the Brief of Appellee filed with the Court was virus checked using Trend Micro OfficeScan Client on August 4, 2014, and was found to have no viruses.

*/s/ Thomas L. Allen*
Thomas L. Allen